CA NO. 18-17031

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LEZMOND CHARLES MITCHELL,

Movant-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

DC NO. CV 3:09-CV-08089
(Criminal No. 3:01-CR-01062-DGC)

**DEATH PENALTY CASE**

# MOVANT'S MOTION FOR A CERTIFICATE OF APPEALIBILITY

On Appeal from the United States District Court for the District of Arizona,
The Honorable David G. Campbell Presiding

HILARY POTASHNER
Federal Public Defender
CELESTE BACCHI
Email: Celeste_Bacchi@fd.org
JONATHAN AMINOFF
Email: Jonathan_Aminoff@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Movant-Appellant
LEZMOND CHARLES MITCHELL

## TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION ........................................................................................1

II. STATEMENT OF THE CASE AND RELEVANT PROCEDURAL HISTORY ........................................................................................1

III. STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY ........................................................................................4

IV. ARGUMENT........................................................................................5

A. A COA should issue on Mitchell's request to re-open proceedings under Rule 60(b)(6). ..................................................5

1. Reasonable jurists could debate whether the district court abused its discretion in denying the Rule 60(b) motion. ............5

2. Reasonable jurists could debate whether Mitchell's petition states a valid claim of the denial of a constitutional right. ..................................................11

V. CONCLUSION........................................................................................13

# TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE**

*Batson v. Kentucky*,
476 U.S. 79 (1986) ..................................................................................... 9

*Buck v. Davis*,
137 S. Ct. 759 (2017) ................................................................................. 4

*Cota v. Ryan*,
2017 WL 713640 (D. Ariz. February 23, 2017) ............................................ 7

*Ellison v. Ryan*,
2017 WL 1491608 (D. Ariz. April 26, 2017) ................................................ 7

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) ................................................................................... 3

*Harrod v. Ryan*,
2016 WL 6082109 (D. Ariz. October 18, 2016) ............................................ 7

*Irvin v. Dowd*,
366 U.S. 717 (1961) ............................................................................ 10, 11

*Lambright v. Stewart*,
220 F.3d 1022 (9th Cir. 2000) ..................................................................... 4

*Martinez v. Ryan*,
566 U.S. 1 (2012) .................................................................................. 9-10

*Mesclaero Apache Tribe v. Jones*,
411 U.S. 145 (1973) ................................................................................... 8

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) ................................................................................... 4

*Mitchell v. United States*,
137 S. Ct. 38 (2016) ................................................................................... 3

*Mitchell v. United States*,
553 U.S. 1094 (2008) ................................................................................. 2

## TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE**

*Mitchell v. United States*,
790 F.3d 881 (9th Cir. 2015) .......... 3, 8-9

*Neder v. United States*,
527 U.S. 1 (1999) .......... 11, 12

*Payton v. Davis*,
906 F.3d 812 (9th Cir. 2018) .......... 12

*Petrocelli v. Angelone*,
248 F.3d 877 (9th Cir. 2001) .......... 5

*Peña-Rodriguez v. Colorado*,
137 S. Ct. 855 (2017) .......... 1, 3, 5, 10

*Tharpe v. Sellers*,
138 S. Ct. 545 (2018) (per curiam) .......... 10

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007) .......... 1

*United States v. Winkles*,
795 F.3d 1134 (9th Cir. 2015) .......... 4

*Valerio v. Crawford*,
306 F.3d 742 (9th Cir. 2002) (en banc) .......... 5

**FEDERAL STATUTES**

28 U.S.C. § 2253 .......... 4

28 U.S.C. § 2255 .......... 2

## I. INTRODUCTION

In this death-penalty case, appointed post-conviction counsel for Lezmond Mitchell sought to conduct a reasonable investigation in support of Mitchell's post-judgment motion to vacate his convictions and sentences. Part of that investigation should have included interviewing the jurors from Mitchell's trial. However, local rules of the District of Arizona barred Mitchell's counsel from speaking with the jurors, and Mitchell's request was denied.

The Supreme Court's decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017) casts doubt on the district court's prior ruling and warrants re-opening this case under Federal Rule of Civil Procedure 60(b)(6). Mitchell's Rule 60(b) motion was denied by the district court, as was his request for a Certificate of Appealability ("COA"). Mitchell now seeks a COA from this Court, as it is debatable whether the district court abused its discretion in denying a COA and in finding that the restriction on interviewing jurors did not deprive Mitchell of his constitutional right to due process.

## II. STATEMENT OF THE CASE AND RELEVANT PROCEDURAL HISTORY

Mitchell was sentenced to death on September 15, 2003. *United States v. Mitchell*, CR-01-1062, Doc. 425. The Ninth Circuit affirmed Mitchell's convictions and sentences, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007),

and the Supreme Court denied certiorari. *Mitchell v. United States*, 553 U.S. 1094 (2008).

On June 8, 2009, Mitchell moved to vacate his convictions and sentences in the district court, pursuant to 28 U.S.C. Section 2255. *Mitchell v. United States*, CV-09-8089, Doc. 9. Before filing his Section 2255 motion, however, Mitchell moved for authorization to interview the jurors from his capital trial. *Id.* at Doc. 1. Leave of court was required pursuant to a District of Arizona rule that prohibits attorneys from contacting jurors after trial unless they submit written interrogatories to the district court "within the time granted for a motion for a new trial" and show "good cause" for the requested interviews. D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2. The government opposed the motion. Doc. 18.

The district court denied Mitchell's request to interview the trial jurors on two grounds. First, it indicated that Mitchell had not followed the local rule's procedures regarding submitting proposed interrogatories and an affidavit, and filing within the time granted for a motion for a new trial. Doc. 31. Alternatively, the district court concluded that Mitchell had not shown "good cause" for contacting the jurors. *Id.* Mitchell then amended his Section 2255 motion to include a claim that the district court violated his constitutional rights by denying him access to the jurors. Doc. 30 at 173.

The district court subsequently denied Mitchell's Section 2255 motion without holding an evidentiary hearing. Doc. 56. Mitchell appealed on several grounds, including the denial of his motion to interview jurors. This Court's opinion affirming the denial of his Section 2255 motion does not address the juror interviews. *Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015). The Supreme Court denied certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

On March 6, 2017, the Supreme Court issued its decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct 855 (2017). On March 5, 2018, Mitchell filed a motion to re-open his case pursuant to Rule 60(b)(6), arguing that *Peña-Rodriguez* established that he was erroneously denied the opportunity to interview the jurors in his case. Doc. 71. This error prevented Mitchell from presenting a fully investigated Section 2255 motion to the district court and prevented that court from conducting a full merits determination, which resulted in a "defect in the integrity of [his] federal habeas proceeding" under *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). *Id.* at 2.

Respondent objected, and Mitchell filed a reply. Docs 76, 79. On September 18, 2018, the district court denied Mitchell's 60(b) motion and denied a certificate of appealability ("COA"). Doc. 80. Mitchell timely appealed. Doc. 81.

//

//

## III. STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY

A federal habeas petitioner has no absolute right to appeal a district court's dismissal of his petition; he must receive a COA to appeal. *Miller-El v. Cockrell,* 537 U.S. 322, 327, 335-36 (2003). To obtain a COA, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a 60(b) motion has been denied in a section 2255 proceeding, a COA should issue if the movant shows that "(1) jurists of reason would find it debatable whether the district court abused its discretion in denying the Rule 60(b) motion and (2) jurists of reason would find it debatable whether the underlying section 2255 motion states a valid claim of the denial of a constitutional right." *United States v. Winkles*, 795 F.3d 1134, 1143 (9th Cir. 2015); *see also Buck v. Davis*, 137 S. Ct. 759, 777 (2017) (reviewing denial of Rule 60(b) motion for abuse of discretion). The COA standard is "modest"; "'the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor.'" *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000). A petitioner is not required to prove "that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.*

The nature of the penalty is a proper consideration in determining whether to issue a COA. *Valerio v. Crawford*, 306 F.3d 742, 767 (9th Cir. 2002) (en banc). As this is a capital case, this Court should "'resolve any doubt about whether [Mitchell] has met the [requisite] standard in his favor.'" *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001).

## IV. ARGUMENT

### A. A COA should issue on Mitchell's request to re-open proceedings under Rule 60(b)(6).

#### 1. Reasonable jurists could debate whether the district court abused its discretion in denying the Rule 60(b) motion.

In *Peña-Rodriguez v. Colorado*, defendant's counsel spoke with the jurors shortly after the jury issued its verdict finding the defendant guilty. During that inquiry, two jurors informed counsel that another juror had expressed anti-Hispanic bias toward the defendant and his alibi witnesses. *Peña-Rodriguez*, 137 S. Ct. at 861. Defense counsel ultimately submitted signed affidavits from those jurors, which memorialized the racist comments made by another juror. *Id.* at 862. Despite this evidence of juror misconduct, the trial court denied the defense motion for a new trial, finding that the affidavits were not admissible to impeach the verdict under Colorado's equivalent to Federal Rule of Evidence 606(b), which renders inadmissible virtually any post-verdict juror statement concerning the contents of the jury's deliberations. *Id.* at 862. The Colorado Supreme Court

affirmed, and the Supreme Court granted certiorari to decide if racial bias should be an exception to Rule 606(b) and its equivalent provisions in state law. *Id.* at 862-63. The Supreme Court reversed, finding that the Sixth Amendment requires that the no-impeachment rule give way in order to permit a trial court to consider evidence that a juror relied on racial stereotypes or animus to convict a criminal defendant. *Id.* at 869. The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee, that general evidence rules must be modified to root out racism in the criminal justice system. *Id.* at 871.

In denying substantive relief and a COA on Mitchell's 60(b)(6) motion, the district court held that Mitchell "has not alleged any reason to believe that any of the jurors in his case were biased against him due to his race," and as a result, his request to interview jurors is a "fishing expedition" that is not changed by the Supreme Court's decision in *Peña-Rodriguez*. Doc. 80 at 7. The district court also held that the "good cause threshold" of Local Rule 39.2 is permissible under *Peña-Rodriguez* because it is a local mechanism which only prohibits "baseless or speculative inquiries into potential racial bias." *Id.* at 6. However, in faulting Mitchell for not producing specific evidence of juror bias and calling his request speculative, the district court ignores the fact that Local Rule 39.2 precluded him from obtaining that kind of evidence in the first place.

*Peña-Rodriguez* held that the "practical mechanics of acquiring and presenting [evidence of juror bias] will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id*. at 869. However, Local Rule 39.2 goes far beyond *limiting* counsel's contacting with jurors. Rather, it *prevents* any contact between the parties and a juror absent permission of the Court on a showing of good cause. Indeed, of the fifteen district courts in the Ninth Circuit, only two—the District of Arizona and the District of Montana—require a "good cause" showing. D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2; D. Mont. Loc. Civ. R. 48.1(b); D. Mont. Loc. Crim. R. 24.2(b). Five other district courts require leave of court without a "good cause" showing. D. Alaska Loc. Civ. R. 83.1(h); D. Or. Loc. R. 48-2; E.D. Wash. Loc. R. 47.1(d); W.D. Wash. Loc. R. 47(d). Eight district courts in the Ninth Circuit impose no post-trial restrictions on juror contacts whatsoever.

Moreover, Local Rule 39.2 does not apply to habeas petitioners attacking state convictions and sentences in federal district courts in Arizona. *Ellison v. Ryan*, 2017 WL 1491608 (D. Ariz. April 26, 2017) at *2-3; *Cota v. Ryan*, 2017 WL 713640 (D. Ariz. February 23, 2017) at *2; *Harrod v. Ryan*, 2016 WL 6082109 (D. Ariz. October 18, 2016) at *3. As a practical matter, this means that

all 116 inmates on death row in Arizona[1] are free to conduct a reasonable investigation by informally interviewing their jurors and presenting the fruits of that investigation in support of their federal habeas petitions to federal district courts in Arizona. But Mitchell, solely by virtue of the fact that he was prosecuted federally, is barred from conducting that same reasonable investigation. Thus Mitchell is left with no mechanism, practical or otherwise, for investigating the type of misconduct at issue in *Peña-Rodriguez*.

There is no question that the death penalty has a long history of racial injustice—and the United States government has a particularly shameful history of oppressing the Native American people. *See, e.g.*, *Mesclaero Apache Tribe v. Jones*, 411 U.S. 145, 152 (1973) ("The intent and purpose of the Reorganization Act was 'to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'") (quoting H.R.Rep.No.1804, 73d Cong., 2d Sess., 6 (1934)). Lezmond Mitchell is a member of the Navajo Nation. At Mitchell's trial, the government arbitrarily sought a death sentence pursuant to "an aggressive expansion of the federal death penalty" and despite strong opposition from the Navajo Nation, the victims' family, and the local United States Attorney's Office. *Mitchell*, 790 F.3d at 894-

[1] https://corrections.az.gov/public-resources/death-row

897 (Reinhardt, J., dissenting). Mitchell's jury was picked from a 207-person venire which included 29 Native Americans. Of those 29 people, four were excluded based on their use of Navajo as their first language, RT 38, 119, 601-602, 1174, and eight more were excluded due to their Navajo beliefs in opposition to the death penalty. RT 198-99, 336, 988, 1262-63, 1424, 1684, 2256. When the government attempted to exclude the lone remaining Native American juror, the Court sustained Mitchell's *Batson*[2] objection and denied the government's strike. RT 2506, 2509-13. The government was, however, successful in removing the only African American juror on the venire. RT 2514-16. Mitchell was ultimately tried before a jury with only one Native American member regarding crimes committed on Native American land with Native American victims.

Given the severity of Mitchell's sentence, and the racial undertones of this capital prosecution, Mitchell should have been permitted to conduct an investigation no more intrusive than necessary to determine what role, if any, racial bias played in his convictions and sentences. Indeed, the Supreme Court has emphasized the importance of investigation in the post-conviction context. *See, e.g.*, *Martinez v. Ryan*, 566 U.S. 1, 13 (2012) (explaining that post-conviction

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that a prosecutor's use of a peremptory challenge in a criminal case may not be used to exclude jurors solely on their race).

ineffective assistance of counsel claims can require extensive investigation such that an inmate's ability to file such a claim is significantly diminished absent the assistance of post-conviction counsel). But Mitchell was prohibited from engaging in this most essential element of post-conviction investigation by a local rule which hamstrings defendants and makes it nearly impossible to uncover racial animus unless a juror reveals it. If Peña-Rodriguez had been held to the same standard as Mitchell, he would never have been able to unearth the racism that so negatively affected his trial. *See also Tharpe v. Sellers*, 138 S. Ct. 545 (2018) (per curiam) (permitting the re-opening of a case under Rule 60(b)(6) based on racial animus of one of the trial jurors which was unearthed in a post-conviction investigation).

What lies at the heart of the *Peña-Rodriguez* opinion is the recognition that the specter of racial bias is an issue so repulsive that exceptions should be made to general rules to ensure that racism has not influenced criminal convictions or sentences. Thus, *Peña-Rodriguez* establishes that criminal defendants must be allowed to pursue racial bias issues. While the "practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules . . . and local court rules," *Peña-Rodriguez*, 137 S. Ct. at 869, those rules do not trump a defendant's constitutional right to a fair trial free of juror bias. *See Irvin v. Dowd*, 366 U.S. 717, 721 (1961). As Mitchell argued below, there were avenues available for the district court to grant the 60(b) motion and permit juror

interviews—whether by setting aside Local Rule 39.2's good cause requirement, or by finding that investigating racial bias in a capital case satisfies the good cause requirement. Either way, Mitchell should have been afforded the right to investigate. It is therefore reasonably debatable whether the district court's failure to recognize that Local Rule 39.2 must give way to the dictates of *Peña-Rodriguez* was an abuse of discretion.

**2. Reasonable jurists could debate whether Mitchell's petition states a valid claim of the denial of a constitutional right.**

Juror impartiality is a critical and necessary component of a fair trial and, in order to ensure such, the defendant must be afforded a meaningful opportunity to explore issues of juror misconduct. *See Irvin*, 366 U.S. at 721 (recognizing the right to trial by jury as "the most priceless" among constitutional safeguards); *see also Neder v. United States*, 527 U.S. 1, 8 (1999). Mitchell argued in his underlying 2255 motion that the district court's denial of his request to interview jurors deprived him of due process and the Eighth Amendment guarantees of heightened reliability in capital cases. *Mitchell v. United States*, CV-09-8089, Doc. 30 at 173. Mitchell alleged that without any opportunity to communicate with jurors, it was impossible for him to identify, much less prove, that an individual juror was biased or that the deliberations were otherwise compromised. *Id.* at 174. In light of the constitutional rights at stake and the grave sentence faced

by Mitchell, the district court should have exercised its discretion in granting Mitchell a limited opportunity to interview his jurors. *Id.*

In light of *Peña-Rodriguez*'s recognition that rules of court may not trump the need to expose racial animus in juries, it is at least reasonably debatable whether Mitchell's claim stated the denial of a constitutional right. As this Court recently stated in *Payton v. Davis*, 906 F.3d 812, 820 (9th Cir. 2018),

> We are mindful that the Supreme Court has emphasized the limited nature of [the COA] inquiry. . . [which] "is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

*Payton*, 906 F.3d at 820 (quoting *Buck*, 137 S. Ct. at 773). Contrary to the district court's holding in denying the 60(b)(6) motion, Mitchell was not required to allege specific racial bias before being granted the right to interview jurors under *Peña-Rodriguez*. And in order to be granted a COA, it was enough for him to argue that *Peña-Rodriguez* calls into question the validity of local rules, like Rule 39.2, which effectively require proof of racial bias before permitting an investigation into

whether such bias exists. Jurists of reason could debate whether such circular logic truly affords capital post-conviction petitioners the protections that *Peña-Rodriguez* requires.

## V. CONCLUSION

Reasonable jurists could debate the district court's rulings and factual findings on Mitchell's Rule 60(b) motion, and Mitchell respectfully requests that this Court issue a COA.

HILARY POTASHNER
Federal Public Defender

Dated: November 29, 2018

*/s/ Jonathan Aminoff*
JONATHAN AMINOFF
Deputy Federal Public Defender

Attorneys for Movant-Appellant
LEZMOND CHARLES MITCHELL

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2018, I electronically filed the foregoing **MOVANT'S MOTION FOR A CERTIFICATE OF APPEALIBILITY** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*Dolores Ramos*
DOLORES RAMOS