**C.A. No. 18-17031**

D. Ct. No. CV-09-08089-PCT-DGC

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

LEZMOND CHARLES MITCHELL,

Movant-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

# RESPONSE TO MOTION FOR A CERTIFICATE OF APPEALABILITY

ELIZABETH A. STRANGE
First Assistant U.S. Attorney
District of Arizona

ROBERT L. MISKELL
Appellate Chief

VINCENT Q. KIRBY
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Attorneys for Appellee

Date Submitted via ECF: February 4, 2019

## I. TABLE OF CONTENTS

Page

I. Table of Contents ........ i

II. Table of Authorities ........ ii

III. Factual and Procedural Background ........ 1

IV. Argument ........ 5

A. A Certificate of Appealability Should Not Issue Because Reasonable Jurists Would Not Find That The District Court Abused Its Discretion By Denying Movant's Motion to Reopen his Habeas Proceeding For the Express Purpose of Interviewing the Trial Jurors Without Cause ........ 6

V. Conclusion ........ 16

VI. Certificate of Service ........ 17

# II. TABLE OF AUTHORITIES

**CASES**


*Adkins v. Corr. Corp. of Am.*, 681 F. App'x 579 (9th Cir. 2017) ............................ 5
*Buck v. Davis*, 137 S. Ct. 759 (2017) ........................................................................ 6
*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ............................................................ 7
*Mitchell v. United States*, 137 S. Ct. 38 (2016) ...................................................... 4
*Mitchell v. United States*, 553 U.S. 1094 (2008) .................................................... 3
*Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015) ......................................... 4
*Mitchell v. United States*, 2018 WL 4467897
(D. Ariz. Sept. 18, 2018) ............................................................................ *passim*
*Mitchell v. United States*, No. CV-09-8089-PCT-MHM,
2010 WL 3895691 (D. Ariz. Sept. 30, 2010) ................................................ 3-4
*Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017) ..................................... *passim*
*Slack v. McDaniel*, 529 U.S. 473 (2000) ............................................................ 6-7
*Smith v. Cupp*, 457 F.2d 1098 (9th Cir. 1972) .................................................. 5, 13
*Tanner v. United States*, 483 U.S. 107 (1987) ......................................................... 11
*United States v. Baker*, 899 F.3d 123 (2d Cir. 2018) ........................................ 8, 10
*United States v. Birchette*, 908 F.3d 50 (4th Cir. 2018) .................................... 8, 10
*United States v. Leung*, 796 F.3d 1032 (9th Cir. 2015) ........................................ 12
*United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007) ...................................... 1-2
*United States v. Reyes*, No. 2:16-CR-00069,
2018 WL 705302 (D. Vt. Feb. 1, 2018) ............................................................ 11
*United States v. Robinson*, 872 F.3d 760 (6th Cir. 2017) .................................. 8, 11
*United States v. Stacey*, 475 F.2d 1119 (9th Cir. 1973) ........................................ 13
*United States v. Venske*, 296 F.3d 1284 (11th Cir. 2002) ...................................... 11
*Young v. Davis*, 860 F.3d 318 (5th Cir. 2017) .......................................................... 8


**STATUTES**


28 U.S.C. § 2253(c)(2) .............................................................................................. 6

**RULES**

Ariz. R. Sup. Ct. 42, E.R. 3.5 .......................................................................... 12

**MISCELLANEOUS**

Local Rules of Practice for the District of Arizona, LRCrim 24.2 (incorporating LRCiv 39.2), *available at* http://www.azd.uscourts.gov/local-rules.................... 3

## III. FACTUAL AND PROCEDURAL BACKGROUND

In 2001, in the midst of preparing for an armed robbery, Defendant carjacked and murdered Alyce Slim, a 63-year old grandmother, and "Jane Doe," her 9-year old granddaughter.[1] In order to steal the truck Alyce was driving, Defendant and a confederate set upon her with knives. They stabbed Alyce 33 times. Alyce was unarmed, but she fought back against the two men, suffering 16 incised defensive wounds to her hands before she succumbed to the knifing.

After Defendant finished killing Alyce, her body was placed in the back seat of the truck. Jane was also put into the back seat and was forced to ride next to her grandmother's mutilated corpse as Defendant drove the stolen truck 30-40 miles into the mountains. Reaching a secluded area, Defendant stopped, dragged Alyce's body out onto the ground, and ordered Jane to "lay down on the ground and die."

Defendant then slashed the 9 year-old's throat. Defendant cut her throat twice, but Jane still didn't die. So Defendant and his confederate found large, 20-pound rocks and took turns dropping them onto Jane's head until her skull was crushed. Afterward, the men dismembered Alyce's and Jane's bodies. They severed and buried the victims' heads and hands and dragged their torsos into the woods.

[1] The following background may be found in *United States v. Mitchell*, 502 F.3d 931, 942-46 (9th Cir. 2007), which provides more details.

There has never been any doubt about Defendant's guilt. He would later confess that he had stabbed the "old lady," that he told Jane to "lay down on the ground and die," that he cut the young girl's throat twice, that he and his confederate gathered rocks and took turns dropping them onto Jane's head, and that he helped dismember the bodies. He also made a variety of inculpatory statements about the other crimes he committed before being apprehended.

Defendant was charged and convicted of eleven criminal counts, including Count 2, Carjacking Resulting in Death, for which he was sentenced to the death penalty at the recommendation of the trial jury. Trial proceeded after completion of prescreening questionnaires and over a dozen days of exhaustive voir dire.[2] The jury unanimously found all four gateway intent factors, each of the statutory aggravating factors, and one non-statutory aggravating factor with respect to both victims. Defendant was sentenced on September 15, 2003.

The Ninth Circuit affirmed the conviction and sentence in all respects on September 5, 2007. *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007). The

---

[2] (*See* Criminal Case 01-1062, CR 253, 262, 266-270, 272, 277-78, 280, 285, 289-90, 292, 295.) All citations herein to Civil or Criminal Case numbers are to the docket of the District of Arizona. "CA" refers to this Court's docket. "CR" refers to the Clerk's Record of the District Court, followed by the document number(s). "RT" refers to the Reporter's Transcript from Defendant's criminal case, followed by a date and page number(s).

Supreme Court denied a petition for certiorari on June 9, 2008. *Mitchell v. United States*, 553 U.S. 1094 (2008).

Six years after his conviction, on May 22, 2009, Defendant filed a Motion for Authorization to Interview Jurors. (Civil Case 09-08089, CR-1.) The motion neither alleged nor offered reason to believe that any juror was racially biased; in fact, the motion asserted that it "does not seek to impeach the verdict" on this issue. (Civil Case 09-08089, CR-1 at 15.) The court denied the motion because it was untimely, because Defendant failed to provide the affidavits and interrogatories required by Local Rule 39.2[3], and because he failed to establish good cause to substantiate his request to interrogate the jurors under that rule. (Civil Case 09-08089, CR-21.) *Mitchell v. United States*, No. CV-09-8089-PCT-MHM, 2010 WL 3895691, at *2, *4 (D. Ariz. Sept. 30, 2010).

Defendant later amended his original habeas petition in an attempt to again raise his request to interview the jurors. (*See* Civil Case 09-08089, CR 42-1, at 303-09.) However, because the motion was raised in a post-conviction setting, rather than at trial or sentencing, the court ruled it was not a cognizable claim for relief under Section 2255. (Civil Case 09-08089, CR-56, at 60.) *Mitchell*, 2010 WL

[3] *See* Local Rules of Practice for the District of Arizona, LRCrim 24.2 (incorporating LRCiv 39.2), *available at* http://www.azd.uscourts.gov/local-rules.

3895691, at *42. The district court denied all claims. (Civil Case 09-08089, CR 56, at 62.) *Mitchell*, 2010 WL 3895691, at *42.

This issue was raised as part of Defendant's appeal of the court's denial of the habeas petition. (CA No. 11-99003, Dkt. # 23, at 78-84.) The Ninth Circuit, while not specifically addressing this issue, necessarily rejected the argument by affirming the district court's judgment in all respects and affirming the denial of a certificate of appealability for all uncertified claims. *Mitchell v. United States*, 790 F.3d 881, 894 & n.7 (9th Cir. 2015). The Supreme Court again denied certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016). Defendant failed to raise this issue in either his Petition for Writ of Certiorari (S. Ct. No. 15-8725) or his Petition for Rehearing and Petition for Rehearing En Banc (CA 11-99003, Dkt. # 74).

Most recently, on March 5, 2017, Defendant filed a motion to reopen his Section 2255 litigation in order to interview the jurors, this time citing *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). (Civil Case 09-08089, CR71.) Defendant again did not allege or offer any reason to believe his jurors were racially biased, nor did he submit an affidavit and proposed interrogatories. The district court denied the motion and denied a certificate of appealability. *Mitchell v. United States*, 2018 WL 4467897, at *3 (D. Ariz. Sept. 18, 2018) (David G. Campbell, J.).

Defendant filed the instant motion on November 29, 2018.

## IV. ARGUMENT

The district court properly denied Defendant's Rule 60(b) motion to reopen his habeas petition to interview the trial jurors. It has long been the rule that "there is no federal constitutional problem involved in the denial of a motion to interrogate jurors where, as here, there has been no specific claim of jury misconduct." *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972); *see also Adkins v. Corr. Corp. of Am.*, 681 F. App'x 579, 583 (9th Cir. 2017) ("Because Plaintiffs failed to provide the district court with any evidence of juror misconduct, the district court did not abuse its discretion in denying Plaintiffs' request to inquire into juror deliberations.").

Defendant has never made any showing, nor even any allegation, of racial bias by his jurors. His persistent failures to show good cause or to proffer interrogatories, as required by the local rule, are tacit concessions that he seeks to embark on a baseless fishing expedition to try to impeach the jury's lawful verdict. Defendant cites no case holding that *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), established a new constitutional right to post-verdict interrogation of jurors without good cause. To the contrary, the Supreme Court expressly recognized in *Pena-Rodriguez* that post-verdict juror contact remains subject to local rules like the District of Arizona's, and Defendant cites no case holding otherwise. Defendant's motion should be denied.

**A. A Certificate of Appealability Should Not Issue Because Reasonable Jurists Would Not Find That The District Court Abused Its Discretion By Denying Movant's Motion to Reopen his Habeas Proceeding For the Express Purpose of Interviewing the Trial Jurors Without Cause.**

1. Standard of Review

Defendant seeks a certificate of appealability ("COA") of the district court's denial of his Rule 60(b) motion to reopen his habeas case for the stated purpose of filing a motion to interview the trial jurors. To obtain a COA, Defendant is required to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). To make such a "substantial showing," the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Where the district court dismisses the petition on procedural grounds, the petitioner must also "demonstrate that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'" *Buck*, 137 S. Ct. at 777 (quoting *Slack*, 529 U.S. at 484). Since the Rule 60(b) holding would be reviewed for an abuse of discretion, "the COA question is therefore whether a reasonable jurist could conclude that the District Court abused its discretion in declining to reopen the judgment." *Id.*

"Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Slack*, 529 U.S. at 484.

"Each component of the § 2253(c) showing is part of a threshold inquiry," *id.* at 485, which "does not require full consideration of the factual or legal bases adduced in support of the claims," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). While the petitioner need not prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his or her part." *Id.* at 338 (internal quotations omitted). Rather, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quotation omitted).

2. <u>Discussion</u>

(a) *Denial of Rule 60(b) Motion.*

Defendant does not meet the standard for issuance of a COA because no reasonable jurist could conclude that the district court abused its discretion in declining to reopen the judgment for a fishing expedition into juror deliberations with no cause whatsoever. *Pena-Rodriguez* does not require that. Rather, after a review of the no-impeachment rule and the impact of racial prejudice in the

administration of justice, *Pena-Rodriguez* carved out a narrow exception to Rule 606(b): "the Court now holds that where a juror makes a clear statement that he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any denial of the jury trial guarantee." 137 S. Ct. at 869.

Courts have consistently recognized that this was a narrow holding. *See United States v. Birchette*, 908 F.3d 50, 57 (4th Cir. 2018) ("There are sound reasons to read *Pena-Rodriguez* as a narrow exception."); *United States v. Baker*, 899 F.3d 123, 133-34 (2d Cir. 2018) (*Pena-Rodriguez* creates a "narrow exception"); *United States v. Robinson*, 872 F.3d 760, 764 (6th Cir. 2017) (exception applies "in very limited circumstances"); *Young v. Davis*, 860 F.3d 318, 333 (5th Cir. 2017) (exception applies "narrowly").

The Supreme Court expressly left the mechanics of acquiring such evidence to state and local rules, including those that limit post-verdict contact with jurors. "The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Pena-Rodriguez*, 137 S. Ct. at 869 (citing overviews of state and federal district court rules). "These limits seek to provide jurors some protection when they return to their daily affairs after

the verdict. But while a juror can always tell counsel they do not wish to discuss the case, jurors in some instances may come forward of their own accord." *Id.*[4]

The district court properly found that *Pena-Rodriguez* did not purport to create a new right to post-verdict interrogations of jurors where there is no evidence whatsoever of racial bias. *Mitchell*, 2018 WL 4467897, at *3-4. Defendant thus failed to sustain his burden of showing extraordinary circumstances justifying reopening the case. *Id.* at *2 (citing *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("[s]uch circumstances will rarely occur in the habeas context")).[5] As the district court explained, contrary to Defendant's argument, *Pena-Rodriguez* only addressed what courts should do when presented with clear evidence of racial bias, and the Supreme Court recognized that the methods of investigation of such claims remains governed by local rules. *Mitchell*, 2018 WL 4467897, at *3.

---

[4] Compliance with local rules is precisely what happened in *Pena-Rodriguez*. "Petitioner's counsel did not seek out" the jurors, as "[p]ursuant to Colorado's mandatory jury instruction, the trial court had set limits on juror contact." 137 S. Ct. at 870. The Court noted that "[s]imilar limits on juror contact can be found in other jurisdictions[.]" *Id*. "With the understanding that they were under no obligation to speak out, the jurors approached petitioner's counsel, within a short time after the verdict, to relay their concerns," after which, "[p]ursuant to local court rules, petitioner's counsel then sought and received permission from the court to contact the two jurors[.]" *Id*.

[5] The court pointed out that other trial safeguards, such as voir dire—in this case, spanning weeks of in-court examination, preceded by a written questionnaire—and in-court observations weighed against a finding of "extraordinary circumstances" necessary to reopen the case. *Mitchell*, 2018 WL 4467897, at *4.

Defendant cites no case holding otherwise. The Fourth Circuit, for example, affirmed the denial of a motion to interview jurors under a similar local rule. *Birchette*, 908 F.3d at 58. The court explained that "[t]o show 'good cause,' E.D. Va. Local Crim. R. 24, and avoid fishing expeditions in the present context, a party should give a trial court sound reason to believe that interviews would uncover the kind of evidence that moved the Court in *Pena-Rodriguez*." *Id*. The court reasoned that the district court "properly related the good cause standard in Local Criminal Rule 24 to the relevant standard for waiving the no-impeachment rule from *Pena-Rodriguez*," and "[w]hether that standard is met is quintessentially a judgment call for district courts." *Id*.

The Second Circuit has also affirmed the denial of a motion to interview jurors in the absence of "concrete allegations of inappropriate conduct." *United States v. Baker*, 899 F.3d 123, 130 (2d Cir.), *cert. denied*, 139 S. Ct. 577 (2018). The court explained that "*Pena-Rodriguez* does not address the separate question of what showing must be made before counsel is permitted to interview jurors post-verdict to inquire into potential misconduct," and "as to this question, the decision simply reaffirms the importance of *limits* on counsel's post-trial contact with jurors 'to provide [them] some protection when they return to their daily affairs after the verdict has been entered.'" *Id.* at 134 (quoting *Pena-Rodriguez*, 137 S. Ct. at 869).

Similarly, the Sixth Circuit has recognized "*Pena-Rodriguez*'s reaffirmation of the validity of such local rules" in upholding a district court's dismissal of a motion for new trial based in part on alleged juror bias where the defense contacted jurors in violation of the district court's local rules. *Robinson*, 872 F.3d at 770. This is in keeping with longstanding precedent holding that a district court is within its discretion to refuse to consider a juror affidavit that was obtained in clear violation of local rules prohibiting contact with jurors. *Tanner v. United States*, 483 U.S. 107, 126 (1987); *United States v. Venske*, 296 F.3d 1284, 1291 (11th Cir. 2002) (upholding district court's exclusion of a juror affidavit obtained in violation of the local rule based on the need to protect jurors from threat and needless harassment).[6]

Here, the district court's local rule, like Rule 606(b) itself, was designed to support the courts' long-held position that jury verdicts and their deliberations must be protected from baseless fishing expeditions like the one sought here. *Mitchell*, 2018 WL 4467897, at *3; *see generally Tanner*, 483 U.S. at 127 (describing how "long-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry"). As this Court recognizes, that principle

[6] *See also United States v. Reyes*, No. 2:16-CR-00069, 2018 WL 705302, at *3 (D. Vt. Feb. 1, 2018) (denying motion to interview jurors where "[n]o juror has disclosed any suggestion of racial animus, nor is there any evidence the verdict was tainted in any manner," and noting that "[m]ere speculation . . . is insufficient because it would authorize counsel to investigate jurors merely to conduct a fishing expedition") (internal quotation omitted).

"exists for good reason—it protects jurors from harassment and maintains the integrity and finality of jury verdicts." *United States v. Leung*, 796 F.3d 1032, 1036 (9th Cir. 2015).

The district court also properly rejected Defendant's argument that Local Rule 39.2 effectively prohibited any access to jurors, pointing out that only a preliminary showing was required. Local Rule 39.2(b) provides:

> Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. See Federal Rules of Evidence, Rule 606(b). Following the interview, a second affidavit must be filed indicating the scope and results of the interviews with jurors and setting out the answers given to the interrogatories.[7]

As the court explained, this threshold requirement only "prohibits all *baseless or speculative* inquiries into potential racial bias." *Mitchell*, 2018 WL 4467897, at *4 (emphasis added). This Court has long approved of the discretion of district courts to protect jurors from post-trial interrogations in the absence of some

[7] Juror contact in violation of this rule is also unethical per the Arizona Rules of Professional Responsibility. *See* Ariz. R. Sup. Ct. 42, E.R. 3.5 ("E.R. 3.5"). E.R. 3.5 prohibits contact with jurors after they are discharged if the communication is prohibited by law or court order. All lawyers who practice in the District of Arizona are bound to follow Arizona's ethical rules.

indication of good cause to do so, such as requiring, at a minimum, that a party make a preliminary showing of misconduct. *See Smith*, 457 F.2d at 1100 ("there is no federal constitutional problem involved in the denial of a motion to interrogate jurors where, as here, there has been no specific claim of jury misconduct"); *United States v. Stacey*, 475 F.2d 1119, 1121 & n.1 (9th Cir. 1973) (no abuse of discretion for district court to refuse to permit juror depositions after the verdict where "the facts alleged in counsel's declaration do not demonstrate any jury misconduct").

Though Defendant argues that some other districts do not have a specific requirement of cause, he cites to no case that has ever permitted a mere fishing expedition. Especially not where, as here, the jurors were advised by the court at the time of their discharge that they were free to talk with anyone about the case, including the lawyers, but that they were under no obligation to do so. (RT 5/23/2003 at 4207.) No juror came forward at that time, nor in the 15 years since the verdict was rendered, to report racial bias. In *Pena-Rodriguez,* the Court specifically noted that juror complaints about the racial bias of another juror are usually made quickly after the verdict. 137 S. Ct. at 870 ("A similar pattern is common in cases involving juror allegations of racial bias.").

In light of the dictates of *Pena-Rodriguez* and the absence of any authority to the contrary, jurists of reason would not debate whether the district court abused its discretion in denying the Motion to Reopen based on Defendant's failure to comply

with Local Rule 39.2. The same reasoning compels the conclusion that the district court was right to deny the motion based on the law of the case doctrine because the court had previously denied the request to interview the jurors in 2009. *Mitchell*, 2018 WL 4467897, at *3. As the court rightly noted, Defendant "is no more entitled to interview jurors now than he was prior to *Pena-Rodriguez*," as "that case does not entitle him to relief." *Id.*

(b) *Denial of a Constitutional Right*

Defendant next claims that reasonable jurists would debate whether his petition states a valid claim of the denial of a constitutional right. (Mot. at 11-13.) Defendant's arguments are functionally the same, and again, he offers no legal authority endorsing this position even though we are now some two years after the *Pena-Rodriguez* decision. Reasonable jurists have not and could not read *Pena-Rodriguez* as creating a new constitutional right—*sub silentio*—to interrogate jurors post-verdict without any showing of good cause to do so.

As discussed, *Pena-Rodriguez* specifically recognizes that the mechanics of interviewing jurors post-verdict are governed by "state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Pena-Rodriguez*, 137 S. Ct. at 869. "These limits seek to provide jurors some protection when they return to their daily affairs after the verdict. But while a

juror can always tell counsel they do not wish to discuss the case, jurors in some instances may come forward of their own accord." *Id*.

Defendant again erroneously argues that Local Rule 39.2 effectively prohibits any interview of jurors post-verdict because of the requirement of showing of good cause. Not so: "[t]he good cause threshold does not prohibit all inquiries into potential racial bias—it prohibits all *baseless or speculative* inquiries into potential racial bias," *Mitchell*, 2018 WL 4467897, at *4 (emphasis added), and reasonable jurists would not debate whether the Constitution compels jurors to submit to "baseless or speculative" post-trial interrogation by a party seeking to undermine their verdict.

Moreover, here, in addition to the exhaustive voir dire and other protections against racial bias, the trial jury was advised by the court at the time of their discharge that they were free to talk with anyone about the case, including the lawyers, but that they were under no obligation to do so. (RT 5/23/2003 at 4207.) The Supreme Court noted that juror complaints about the racial bias of another juror are usually made quickly after the verdict. *Pena-Rodriguez*, 137 S. Ct. at 870. Here, no juror came forward at that time, nor in the 15 years since the verdict was rendered, to report any whiff of racial bias among the jurors.

Reasonable jurists would not debate the district court's holding that Local Rule 39.2 was not silently overruled in light of the Supreme Court's recognition that

local rules would continue to control interviews of jurors and in the absence of any contrary court opinions in the two years that have followed *Pena-Rodriguez*.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for a Certificate of Appealability should be denied.

ELIZABETH A. STRANGE
First Assistant U.S. Attorney
District of Arizona

ROBERT L. MISKELL
Appellate Chief

*s/ Vincent Q. Kirby*
VINCENT Q. KIRBY
Assistant U.S. Attorney

## VI. CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Vincent Q. Kirby*
VINCENT Q. KIRBY
Assistant U.S. Attorney