CA NO. 18-17031

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEZMOND CHARLES MITCHELL,<br><br>Movant-Appellant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent-Appellee. | DC NO. CV 3:09-CV-08089 (Criminal No. 3:01-CR-01062-DGC)<br><br>**DEATH PENALTY CASE** |

# REPLY TO RESPONSE TO MOTION FOR A CERTIFICATE OF APPEALIBILITY

On Appeal from the United States District Court for the District of Arizona,
The Honorable David G. Campbell Presiding

HILARY POTASHNER
Federal Public Defender
CELESTE BACCHI
Email: Celeste_Bacchi@fd.org
JONATHAN AMINOFF
Email: Jonathan_Aminoff@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Movant-Appellant
LEZMOND CHARLES MITCHELL

# TABLE OF CONTENTS

**PAGE**

I. ARGUMENT .......... 1

A. The District of Arizona's Local Rule 39.2 is Inconsistent with *Peña-Rodriguez*, Which Establishes that the Existing Safeguards Against Racial Bias are Lacking .......... 1

II. CONCLUSION .......... 7

# I. ARGUMENT

## A. The District of Arizona's Local Rule 39.2 is Inconsistent with *Peña-Rodriguez*, Which Establishes that the Existing Safeguards Against Racial Bias are Lacking

The Supreme Court has reaffirmed time and again that "'[d]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice.'" *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Rose v. Mitchell*, 443 U.S. 545, 555 (1979)). "Relying on race to impose a criminal sanction 'poisons public confidence' in the judicial process," injuring the defendant individually as well as the community at large. *Id.* (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015)). Such concerns are "precisely" among those the Supreme Court has identified as supporting relief under Rule 60(b)(6). *Id.* The Supreme Court's recent decision in *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), is a direct descendant of this tradition and the Court's continuing commitment to eliminating racism in legal proceedings. *Id.* at 867-68.

The same concerns addressed in *Buck* and *Pena-Rodriguez* are at issue here. *Pena-Rodriguez* held that under the Sixth Amendment, evidence of racial animus held by jurors cannot be excluded under Rule 606(b) and its state equivalent, and that criminal defendants must be allowed to pursue racial bias issues. 137 S. Ct. at 869. Unfortunately, the District of Arizona's local rules have placed Mitchell in a

catch-22: to establish racial bias, he must investigate; to be permitted to investigate, he must establish racial bias. Indeed, Respondent endorses this catch-22, arguing that Mitchell's failure to comply with Local Rule 32 is in accordance with *Pena-Rodriguez*'s holding that "'[t]he practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules.'" Response to Motion for a Certificate of Appealability ("Resp.") at 8 (quoting *Pena-Rodriguez*, 137 S. Ct. at 869). However, Local Rule 39.2 does much more than set forth "practical mechanics" to guide counsel's post-trial contact with jurors; rather, it constitutes an all-out ban on counsel's ability to investigate the possibility of juror misconduct in the absence of specific evidence of racial bias on the part of a juror.

Respondent argues that because the jurors did not approach Mitchell's counsel of their own accord, and Mitchell could not otherwise find specific evidence of juror bias, Mitchell must live with the possibility of unrealized juror misconduct. Resp. at 13. But as *Pena-Rodriguez* establishes, the Sixth Amendment demands more. While local court rules may guide the juror interview process, when it comes to ferreting out racial animus, they cannot obstruct that process—yet this is exactly what happened in Mitchell's case. Local Rule 39.2 prevents any contact between the parties and a juror absent permission of the Court on a showing of good cause. This rule is more restrictive than virtually all other

district courts in this Circuit, and more restrictive than the Arizona state rule regarding juror contact. *See* Movant's Motion for a Certificate of Appealability ("Mot.") at 7. Solely by virtue of the fact that Mitchell was prosecuted federally in the District of Arizona, he is left with no mechanism, practical or otherwise, for investigating the type of misconduct at issue in *Pena-Rodriguez*.

Mitchell's position is simple: whether this Court sets aside Local Rule 39.2's good cause requirement, or finds that investigating racial bias satisfies the good cause requirement, under *Pena-Rodriguez* Mitchell must be afforded the right to investigate. Respondent faults Mitchell for failing to cite to a case "holding that *Pena-Rodriguez* . . . established a new constitutional right to post-verdict interrogation of jurors without good cause." Resp. at 5. However, this is not the standard that Mitchell needs to meet in order for his motion for a certificate of appealability to be granted. Rather, Mitchell needs to show that jurists of reason would debate whether the district court abused its discretion in denying the Rule 60(b) Motion in light of *Pena-Rodriguez*'s holding and the impediment to uncovering racial bias due to the good cause requirement of Local Rule 39.2. Citing *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972), Respondent contends this showing is impossible, because "this Court has long approved of the discretion of district courts to protect jurors from post-trial interrogations in the absence of some indication of good cause to do so, such as requiring, at a minimum, that a

party make a preliminary showing of misconduct." Resp. at 12-13. However, *Smith* does not state a general proposition adverse to juror interviews, but simply holds, pre-*Pena-Rodriguez*, that there is no federal constitutional right to interview jurors.

Respondent also cites to *United States v. Stacey*, 475 F.2d 1119, 1121 (9th Cir. 1973) for support that a "good cause" showing is necessary. Resp. at 13. But that case does no more than establish that evidence barred by Fed. R. Evid. 606(b) is not admissible. *See Stacey*, 475 F.2d at 1121 & n.1 ("After a verdict is returned a juror will not be heard to impeach the verdict when his testimony concerns his misunderstanding of the court's instructions. This rule does not violate a defendant's constitutional rights.") (internal citation omitted). Additionally, *Stacey* is not a death penalty case. Even if the good cause standard should apply in other criminal cases, death penalty cases require a heightened standard of reliability in jury decisions. *See, e.g., Zant v. Stephens*, 462 U.S. 862, 884 (1983).

The Ninth Circuit has considered the fruits of juror interviews when the subject matter is admissible under Rule 606(b). *See*, *e.g.*, *Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017) (en banc) (remanding for an evidentiary hearing in reliance on an alternate juror's declaration concerning juror's communication with outside source); *Estrada v. Scribner*, 512 F.3d 1227 (9th Cir. 2008) (finding juror declarations admissible where they detailed improper discussions and extraneous

evidence); *United States v. Maree*, 934 F.2d 196 (9th Cir. 1991) (juror's declaration was admissible where it detailed outside influence exerted on the jury) *overruled on other grounds by United States v. Adams*, 432 F.3d 1092 (9th Cir. 2006). Mitchell's request to interview jurors is consistent with the precedent of this Circuit, as Mitchell seeks to interview the jurors for evidence that is not rendered inadmissible by Rule 606(b).

Respondent also argues that Mitchell has failed to make the proper showing of racial bias under *Pena-Rodriguez* and instead "seeks to embark on a baseless fishing expedition." Resp. at 5, 11. But this statement ignores the evidence of racial bias in his prosecution that Mitchell presented in his Motion. Mot. at 5-6. Mitchell is a member of the Navajo Nation who was prosecuted and sentenced to death over vigorous opposition from the Nation, the victims' family, and the local United States Attorney's Office. *Mitchell v. United States*, 790 F.3d 881, 894-97 (9th Cir. 2015) (Reinhardt, J., dissenting). Mitchell's jury included only one Native American, out of a 207-person venire—and that juror was permitted to serve on the jury only after the Court sustained Mitchell's *Batson*[1] objection and denied the government's strike. RT 2506, 2509-13. Twelve members of the Navajo Nation and the sole African-American on the venire were excluded. RT

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

198-99, 336, 988, 1262-63, 1424, 1684, 2256, 2514-16. Thus, Respondent's claim that there is "no evidence whatsoever of racial bias" in this case (Resp. at 9) is false.

Respondent fails to address these facts and instead argues that trial measures such as *voir dire* guard against racial prejudice, and that if someone on the jury was biased, such bias would likely have been revealed to Mitchell by now. Resp. at 15. Of course, if the safeguards provided by *voir dire* were universally effective, then cases like *Peña-Rodriguez*, where a juror espouses racist views during deliberations, would not exist. Moreover, and more specifically, Mitchell has raised several claims about the *voir dire* process in his case and that his jury was not impartial. Dkt. No. 30 at Claim H, I, J, L, M. It may be true, as a general matter, that *voir dire* helps to safeguard against racial prejudice. However, as cases like *Peña-Rodriguez* demonstrate, the fact is that racist individuals exist and they end up on juries, and Mitchell should be permitted to investigate this issue, particularly in light of the fact that this is a death-penalty case. *Zant*, 462 U.S. at 884. Determining whether Mitchell was sentenced to death in part because of his race is of exceptional importance, and his inability to question jurors on this issue warrants re-opening the proceedings under Rule 60(b). *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988) (holding that relief under Rule 60(b) was appropriate to correct district court's failure to recuse itself based

on circumstances creating the appearance of impropriety and noting that "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.").

## II. CONCLUSION

Reasonable jurists could debate the district court's rulings and factual findings on Mitchell's Rule 60(b) motion, and Mitchell respectfully requests that this Court issue a COA.

HILARY POTASHNER
Federal Public Defender

Dated: February 19, 2019

*s/ Celeste Bacchi*
CELESTE BACCHI
JONATHAN AMINOFF
Deputy Federal Public Defenders

Attorneys for Movant-Appellant
LEZMOND CHARLES MITCHELL