CA No. 18-17031

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEZMOND C. MITCHELL,<br>Movant-Appellant,<br>v.<br>UNITED STATES OF AMERICA,<br>Respondent-Appellee. | DC No. 3:09-cv-08089-DGC<br>Criminal No. 3:01-cr-01062-DGC<br>**DEATH PENALTY CASE**<br>**EXECUTION SET FOR DECEMBER 11, 2019** |

# APPELLANT'S OPENING BRIEF

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

The Honorable David G. Campbell
United States District Judge

HILARY POTASHNER
Federal Public Defender
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310
Email: Jonathan_Aminoff@fd.org

Attorneys for Movant-Appellant
LEZMOND C. MITCHELL

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. STATEMENT OF JURISDICTION ..... 2

III. STATEMENT OF THE ISSUE ..... 3

IV. STATEMENT OF THE CASE ..... 3

A. Detention Status ..... 3

B. Scheduled December 11, 2019 Execution ..... 3

C. Course of Proceedings ..... 4

1. Convictions and Direct Appeal ..... 4

2. Section 2255 Proceedings ..... 5

3. Rule 60(b)(6) Proceedings ..... 10

V. STANDARD OF REVIEW ..... 11

VI. SUMMARY OF ARGUMENT ..... 12

VII. ARGUMENT ..... 12

A. Federal Rule of Civil Procedure 60(b)(6) Permits a Court to Reopen a Case for Any Reason that Justice Requires ..... 12

B. The District Court Correctly Held That Mitchell's Motion Was Not a Second or Successive Petition ..... 14

C. The District Court Abused Its Discretion in Denying Mitchell's Rule 60(b)(6) Motion ..... 15

1. The Ability to Interview Trial Jurors Unimpeded By Overly-Restrictive Local Rules is Necessary For the Holding of *Peña-Rodriguez* to Have Practical Effect ..... 16

## TABLE OF CONTENTS

**Page**


2. The District Court Applied the Good Cause Standard in a Manner That Violates Both *Peña-Rodriguez* and Local Rule 39.2 .......... 19

3. The District Court's Dependence on Trial Safeguards Constitutes a Reliance on an Erroneous View of the Law .......... 21

D. After Finding that the District Court's Decision Was Erroneous, This Court May Consider and Grant Mitchell's Motion in the First Instance. .......... 23

1. The *Gonzalez* Factors Weigh in Favor of Granting Mitchell's Rule 60(b)(6) Motion .......... 24

2. The *Ritter* Factors Weigh in Favor of Granting Mitchell's Rule 60(b)(6) Motion .......... 25

3. Justice and Equity Favor Granting Mitchell's Rule 60(b)(6) Motion .......... 30

VIII. CONCLUSION .......... 34

INDEX OF ADDENDUM .......... 35

ADDENDUM .......... 36

CERTIFICATE OF RELATED CASES .......... 39

CERTIFICATE OF COMPLIANCE .......... 40

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Batson v. Kentucky*,
476 U.S. 79 (1986)....................................................................................32

*Buck v. Davis*,
137 S. Ct. 759 (2017)..............................................................................31

*Christeson v. Roper*,
135 S. Ct. 891 (2015)..............................................................................14

*Cota v. Ryan*,
2017 WL 713640 (D. Ariz. February 23, 2017)...................................33

*Ellison v. Ryan*,
2017 WL 1491608 (D. Ariz. April 26, 2017)........................................33

*Flowers v. Mississippi*,
139 S. Ct. 2228 (2019).............................................................................31

*Furman v. Georgia*,
408 U.S. 238 (1972).................................................................................18

*Gonzalez v. Crosby*,
545 U.S. 524 (2005)...........................................................................*passim*

*Hall v. Haws*,
861 F3d 977 (9th Cir. 2017) ....................................................11, 14, 30

*Harrod v. Ryan*,
2016 WL 6082109 (D. Ariz. October 18, 2016) ...................................33

*Klapprott v. United States*,
335 U.S. 601 (1949)...........................................................................13, 30

*Mesclaero Apache Tribe v. Jones*,
411 U.S. 145 (1973).................................................................................31

**TABLE OF AUTHORITIES**

**Page(s)**

*Miller v. Alabama*,
567 U.S. 460 (2012)....................................................................................4

*Mitchell v. United States*,
137 S. Ct. 38 (2016)............................................................................10, 26

*Mitchell v. United States*,
553 U.S. 1094 (2008)..................................................................................5

*Mitchell v. United States*,
790 F.3d 881 (9th Cir. 2015) ..................................................1, 10, 29, 31

*Peña-Rodriguez v. Colorado*,
137 S. Ct. 855 (2017)...........................................................................*passim*

*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009) ...............................................................*passim*

*Plaut v. Spendthrift Farm, Inc.*,
514 U.S. 211 (1995)..................................................................................13

*Remmer v. United States*,
347 U.S. 227 (1954)............................................................................20, 21

*Riley v. Filson*,
__ F.3d __, 2019 WL 3757576 (9th Cir. Aug. 9, 2019)..................................11

*Ritter v. Smith*,
811 F.2d 1401 (11th Cir. 1987) .......................................25, 26, 27, 29

*Shillcutt v. Gagnon*,
827 F.2d 1155 (7th Cir. 1987) .................................................................24

*Sullivan v. Fogg*,
613 F.2d 465 (2d Cir. 1980) ....................................................................20

*Tanner v. United States*,
483 U.S. 107 (1987)......................................................................21, 22, 23

*Tharpe v. Ford*,
139 S. Ct. 911 (2019)...............................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Camacho*,
865 F.Supp. 1527 (S.D. Fl. 1994) .......... 8

*United States v. Henley*,
238 F.3d 1111 (9th Cir. 2001) .......... 24

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007) .......... 4, 5, 7

*United States v. Orsinger*,
2014 WL 2800828 (D. Ariz. June 19, 2014) .......... 4

*United States v. Orsinger*,
698 Fed. Appx. 527 (9th Cir. 2017) .......... 4

*United States v. Pulliam*,
405 F.3d 782 (9th Cir. 2005) .......... 19

*United States v. Villar*,
586 F.3d 76 (1st Cir. 2009) .......... 24

*United States v. Washington*,
653 F.3d 1057 (9th Cir. 2011) .......... 15

*Wilkerson v. Amco Corp.*,
703 F.2d 184 (5th Cir. 1983) .......... 20

*Woodson v. North Carolina*,
428 U.S. 280 (1976) .......... 19, 32

**Federal Statutes and Rules**

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 2253 .......... 2

28 U.S.C. § 2255 .......... *passim*

## TABLE OF AUTHORITIES

**Page(s)**

Federal Rule of Appellate Procedure 8 .......... 3

Federal Rule of Civil Procedure 60 .......... *passim*

Federal Rule of Evidence 606 .......... *passim*

# I. INTRODUCTION

The Supreme Court, the Ninth Circuit, and the American Bar Association Guidelines agree that postconviction counsel in death-penalty cases must undertake a reasonable investigation which includes interviewing the trial jurors. Recently, in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), the Supreme Court held that the fruits of juror interviews are exempt from Federal Rule of Evidence 606(b)'s restrictions on the admissibility of juror statements impeaching verdicts if those statements concerned racial bias that tainted the verdict. Yet, despite concerns about racial bias in his trial, Lezmond Mitchell awaits his execution having been continually denied the ability to speak to the jurors who deliberated over his federal death-penalty trial.

Mitchell's case is an outlier for a number of reasons. *See, e.g., Mitchell v. United States*, 790 F.3d 881, 897 (9th Cir. 2015) ("The novel use of carjacking as a loophole to circumvent the tribal option also renders this an anomalous case. Mitchell will, unless spared by executive clemency, in all likelihood, suffer the ignominious fate of being the first person to be executed for an intra-Indian crime that occurred in Indian country.") (Reinhardt J. dissenting). The reason most germane to this appeal is the manner in which his postconviction investigation has been hampered. There are presently 117 people awaiting execution after receiving death sentences in courts in Arizona. The 116 inmates sentenced in Arizona state courts were all permitted to interview their jurors; but Mitchell, the one man

sentenced to death in a federal court in Arizona, was denied this opportunity. In fact, had Mitchell been tried in any other federal district court in the Ninth Circuit, with only one exception, he would have been permitted to interview his trial jurors.

Although the law calls for "heightened reliability" and forbids arbitrary and capricious application of the death penalty, Mitchell will be executed on December 11, 2019, without having been afforded the rights that *Peña-Rodriguez* guarantees and that virtually every other capital habeas petitioner that appears before this Court have exercised. The equities and the law are on Mitchell's side: the Court should reverse the district court's judgment and grant Mitchell's Rule 60(b) motion to permit him to interview the trial jurors.

## II. STATEMENT OF JURISDICTION

This is an appeal from a district court order denying a motion for relief from judgment under Fed. R. Civ. P. 60(b)(6). The district court entered its order on September 18, 2018. 1ER 1-8.[1] Mitchell timely filed his notice of appeal on October 17, 2018. 2ER 77-80. The Court granted a certificate of appealability on April 25, 2019. DE 10-1.[2] The Court has jurisdiction over this appeal under 28 U.S.C. § 1291 and 28 U.S.C. § 2253.

---

[1] "ER" refers to Mitchell's excerpts of record.

[2] "DE" refers to this Court's docket entries.

## III. STATEMENT OF THE ISSUE

Whether the district court properly denied Mitchell's motion to re-open his case pursuant to Fed. R. Civ. P. 60(b)(6) following the Supreme Court's opinion in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). DE 10-1.

## IV. STATEMENT OF THE CASE

### A. Detention Status

Mitchell is confined at the United States Penitentiary at Terre Haute, Indiana, under sentence of death.

### B. Scheduled December 11, 2019 Execution

On June 25, 2019, the Director of the Federal Bureau of Prisons scheduled Mitchell's execution for December 11, 2019. 2ER 73.

Mitchell has moved to stay his execution in the district court pending the outcome of this appeal. 2ER 56-76; Fed. R. App. Proc. 8(a)(1)(A). The Government filed an opposition to Mitchell's motion to stay the execution on August 19, 2019, and Mitchell filed a reply in support of his motion on August 26, 2019. 2ER 37-55; 21-36. At a prior status conference, the district court indicated that, if necessary, the court will hear oral argument on the motion on September 4, 2019.

If the district court denies Mitchell's request for a stay, Mitchell will move this Court for a stay of execution. Circuit Rule 22-2(e).

## C. Course of Proceedings

### 1. Convictions and Direct Appeal

On November 19, 2002, the Government filed a second superseding indictment in the District of Arizona charging 20-year-old Mitchell and 17-year-old Johnny Orsinger with the October 28, 2001 first-degree murders of Alyce Slim and Jane Doe, carjacking resulting in death, felony murder in the course of robbery and kidnapping, robbery, and kidnapping. 2ER 174-79. Mitchell was also charged with two counts of robbery and two firearms violations in connection with the robbery of a trading post on the Navajo Reservation on October 31, 2001. *Id.* Following a jury trial, Mitchell was convicted of all counts and sentenced to death on the carjacking count, and two consecutive life terms plus 384 months on the remaining counts. *United States v. Mitchell*, 502 F.3d 931, 996-97 (9th Cir. 2007). Orsinger, whose juvenile status rendered him statutorily ineligible for the death penalty, pled guilty and was sentenced to two consecutive terms of life imprisonment.[3]

[3] Orsinger was sentenced to two additional life sentences for two unrelated murders. Arizona District Court Case No. 01-CR-1072. His mandatory life sentences were vacated due to his juvenile status in light of *Miller v. Alabama*, 567 U.S. 460 (2012). *United States v. Orsinger*, 2014 WL 2800828 (D. Ariz. June 19, 2014). After a sentencing hearing in district court, he was re-sentenced to four life sentences. *United States v. Orsinger*, 698 Fed. Appx. 527 (9th Cir. 2017).

A divided panel of this Court affirmed Mitchell's convictions and sentences in a published opinion. *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007). The Supreme Court denied Mitchell's petition for certiorari on June 9, 2008. *Mitchell v. United States*, 553 U.S. 1094 (2008).

### 2. Section 2255 Proceedings

The Office of the Federal Public Defender ("FPD") for the Central District of California was then appointed to represent Mitchell for purposes of postconviction proceedings and executive clemency.

Arizona District Court Local Civil Rule 39.2(b), made applicable to criminal matters via Local Criminal Rule 24.2, states that:

> Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. *See* Federal Rules of Evidence, Rule 606(b). Following the interview, a second affidavit must be filed indicating the scope and results of the interviews with jurors and setting out the answers given to the interrogatories.

In accordance with these rules, on May 22, 2009, Mitchell moved the district court for authorization to interview his jurors in advance of filing his section 2255 motion. 2ER 155-173. In that motion, Mitchell argued that in order to complete a

thorough investigation in support of his section 2255 litigation, Mitchell needed access to the jurors to determine "whether any member of the jury panel engaged in ex parte contacts, considered extra judicial evidence, allowed bias or prejudice to cloud their judgment, or intentionally concealed or failed to disclose material information relating to their qualifications to serve as jurors in Mr. Mitchell's case." 2ER 156. Mitchell laid out several grounds to establish good cause. He explained that the Supreme Court, Ninth Circuit, and the American Bar Association all place a high burden on postconviction counsel in death-penalty cases to conduct a thorough investigation into all possible constitutional violations, and the failure to do so will result in forfeiture of potentially meritorious claims. This high burden should suffice to establish good cause to carry out a reasonable investigation. *See* 2ER 158-62 (citing, amongst others, *McCleskey v. Zant*, 499 U.S. 467, 498 (1991) (postconviction applicant "must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition."); *Brown v. Vasquez*, 952 F.2d 1164, 1167 (9th Cir. 1992) (A federal postconviction applicant "must assert all possible violations of his constitutional rights in his initial application or run the risk of losing what might be a viable claim."); ABA Guideline 10.15.1 ("Postconviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense representation, including challenges to any overly restrictive procedural rules.");

Commentary to ABA Guideline 10.15.1 ("When a client will be killed if the case is lost, counsel should not let any possible ground for relief go unexplored or unexploited.")).

Additionally, Mitchell offered case-specific reasons satisfying the good cause standard and justifying juror interviews. 2ER 162-70. For example, on direct appeal, this Court noted that "the government's closing argument was riddled with comments that should not have been made." 502 F.3d at 995; *see also id*. ("We disagree with the government that these were fair comments on the evidence and were not, even arguably, calculated to arouse the passions of the jury or to suggest that Mitchell bore a burden he did not bear."). Some of those inappropriate comments related to religious beliefs and Navajo culture. But the Court placed the burden on Mitchell to establish that "the misconduct tainted the verdict." *Id*. at 996. Therefore, as part of his motion to interview jurors, Mitchell explained that he sought to inquire into the jurors' racial or religious prejudice to meet the burden that this Court had highlighted for him. 2ER 162. Mitchell further argued that his case garnered significant media attention, including inaccurate reporting, which established good cause to interview the jurors. *Id*. at 164-65. And finally, Mitchell pointed to juror notes indicating that the jurors may have misunderstood the Court's instructions, and questioned whether outside influences and extrajudicial material influenced the verdict. *Id*. at 165-66.

Finally, Mitchell argued that in the absence of controlling Ninth Circuit caselaw on what would establish "good cause" under Local Rule 39.2, the district court should adopt the Eleventh Circuit standard that "good cause under the local rule may be shown only by satisfying the requirements of the exception stated in [Federal Rule of Evidence 606(b)]."[4] *United States v. Camacho*, 865 F.Supp. 1527, 1531 (S.D. Fl. 1994) (quoting *United States v. Griek*, 920 F.2d 840, 842 (11th Cir. 1991)).

On June 8, 2009, Mitchell filed his initial motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. 2ER 183.

On September 4, 2009, the district court denied Mitchell's request to interview the trial jurors on two grounds. 1ER 11-20. First, it indicated that Mitchell had not followed the local rule's procedures which required the motion to be filed within the time granted for a motion for a new trial and to be submitted along with proposed interrogatories and an affidavit. Second, the district court concluded that Mitchell had not shown "good cause" for contacting the jurors. The district court held that good cause under Rule 39.2 is established by making a

---

[4] Federal Rule of Evidence 606(b) provides that "[d]uring an inquiry into the validity of a verdict," evidence "about any statement made or incident that occurred during the jury's deliberations" is inadmissible, subject to three exceptions. A juror may testify about whether "(A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form." Fed. R. Evid. 606(b)(2).

preliminary showing of juror misconduct. *Id*. at 13. And because Mitchell did not have evidence of actual misconduct on the part of the jurors, he could not meet the good cause standard.

On October 14, 2009, Mitchell filed an amended section 2255 motion which included a claim that the district court violated Mitchell's constitutional rights by denying his request to interview the jurors. 2ER 127-32 (Claim K). On September 30, 2010, the district court denied the amended section 2255 motion, without argument or an evidentiary hearing. 2ER 189. Specifically, with respect to Claim K, the court ruled that "[b]ecause this claim alleges error in a postconviction proceeding, not at trial or sentencing, the Court concludes that it fails to state a cognizable claim for relief under § 2255." 1ER 9-10. The district court granted Mitchell a certificate of appealability ("COA") on three claims related to ineffective assistance of trial counsel. The district court denied Mitchell's motion to alter or amend the judgment on December 21, 2010. 2ER 191.

Mitchell filed his opening brief in this Court on June 27, 2012. Among the several uncertified claims Mitchell asked this Court to address was whether the district court erred by not permitting Mitchell's postconviction counsel to interview the jurors in his case. Case No. 11-99003, DE 23 at 78-81. A divided panel of this Court affirmed the district court's denial of Mitchell's section 2255 motion, but did not address Mitchell's claim that the district court erroneously denied his request to interview the trial jurors. *Mitchell v. United States*, 790 F.3d

881 (9th Cir. 2015). The Supreme Court denied certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

**3. Rule 60(b)(6) Proceedings**

On March 6, 2017, the Supreme Court issued its decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), which created an exception to evidentiary rules barring post-trial verdict-impeaching statements of jurors concerning racial bias that may have affected the verdict. On March 5, 2018, Mitchell filed a motion to re-open his postconviction proceedings pursuant to Federal Rule of Civil Procedure 60(b)(6). 2ER 104-17. In that motion, Mitchell argued that *Peña-Rodriguez* established that the district court had erroneously denied him the opportunity to interview the jurors in his case, which prevented Mitchell from presenting a fully investigated section 2255 motion, and thereby prevented the district court from conducting a full merits determination resulting in a "defect in the integrity of [Mitchell's] federal habeas proceeding." *Id*. at 107 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)). The Government filed an opposition, and Mitchell filed a reply in support of his motion. 2ER 90-103; 81-89.

On September 18, 2018, the district court denied Mitchell's Rule 60(b) motion on the merits. 1ER 1-8. According to the district court, Mitchell failed to establish extraordinary circumstances because *Peña-Rodriguez* does not give Mitchell the right to interview the jurors absent a reason to believe his jurors may

have been biased against him. The court described *Pena-Rodriguez* as creating a "narrow exception to the no-impeachment rule," an exception that Mitchell did not satisfy. *Id*. at 6. The district court also denied Mitchell's request for a COA. *Id*. at 8. Mitchell timely appealed. 2ER 77-80.

On April 25, 2019, this Court granted Mitchell's motion for a COA on the following issue: "[W]hether the district court properly denied appellant's motion to re-open his case pursuant to Fed. R. Civ. P. 60(b)(6) following the Supreme Court's opinion in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017)." DE 10-1. On that same day, the court ordered Mitchell to file his opening brief on August 28, 2019; the Government's brief is due September 27, 2019; Mitchell's reply is due 21 days later on October 18, 2019. DE 10-1 at 2.

## V. STANDARD OF REVIEW

This Court reviews the denial of a Rule 60(b) motion under the abuse of discretion standard. *Riley v. Filson*, __ F.3d __, 2019 WL 3757576 *3 (9th Cir. Aug. 9, 2019). "An abuse of discretion manifests where the decision rests 'upon an erroneous view of the law.'" *Id*. (quoting *Phelps v. Alameida*, 569 F.3d 1120, 1131 (9th Cir. 2009)). Any questions of law underlying the district court's decision are reviewed *de novo*. *Hall v. Haws*, 861 F3d 977, 984 (9th Cir. 2017) (citing *Jeff D. v. Kempthorne*, 365 F.3d 844, 850-51 (9th Cir. 2004)).

## VI. SUMMARY OF ARGUMENT

The district court abused its discretion in denying Mitchell's Rule 60(b) motion. The district court erroneously read *Peña-Rodriguez* in an overly narrow fashion, thereby removing any force from the decision. *Peña-Rodriguez* gives Mitchell the right to interview his jurors, and the district court's ruling to the contrary was erroneous. Moreover, the court abused its discretion when applying a good cause standard akin to the standard required to establish entitlement to an evidentiary hearing. And finally, the district court's reliance on classic trial safeguards, which the Supreme Court held were inadequate to protect a defendant's rights in this context, was an abuse of discretion.

This Court should decide Mitchell's Rule 60(b)(6) motion in the first instance. The Court has previously relied on a multitude of facts to guide the Rule 60(b) analysis, and all of those factors weigh in favor of granting Mitchell's motion. Moreover, the equities in the case, as well as long-standing Eighth Amendment and Equal Protection principles, counsel in favor of granting Mitchell's motion.

## VII. ARGUMENT

### A. Federal Rule of Civil Procedure 60(b)(6) Permits a Court to Reopen a Case for Any Reason that Justice Requires

Rule 60(b)(6) permits a federal district court to "relieve a party or its legal representative from a final judgment, order, or proceeding for … any [] reason that

justifies relief." Fed. Rule Civ. Proc 60(b)(6). The central concern of Rule 60(b)(6) is that justice is done. *Klapprott v. United States*, 335 U.S. 601, 615 (1949). Accordingly, Rule 60(b)(6) "vests power in courts . . . to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Id.* at 615. The Circuit Courts have long identified Rule 60(b)(6) as "a grand reservoir of equitable power." *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) (quoting *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992)). Rule 60(b)(6) provides courts the discretion and power "to vacate judgments whenever such action is appropriate to accomplish justice." *Gonzalez*, 545 U.S. at 542.

Pursuant to Rule 60(b)(6), a party can seek relief "from a final judgment, order, or proceeding" and request reopening of his case, for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) "reflects and confirms the courts' own inherent and discretionary power … to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233-34 (1995) (internal quotation omitted). The Supreme Court has held that Rule 60(b) applies to postconviction proceedings and "has an unquestionably valid role to play in habeas cases." *Gonzalez*, 545 U.S. at 534.

"The decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the

court's conscience that justice be done in light of all the facts." *Phelps*, 569 F.3d at 1133 (quoting *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007)). A court's ability to grant relief under Rule 60(b)(6) is constrained only by the requirements that a petitioner "demonstrate both the motion's timeliness and … that 'extraordinary circumstances justif[y] the reopening of a final judgment.'" *Christeson v. Roper*, 135 S. Ct. 891, 895-96 (2015) (quoting *Gonzalez*, 545 U.S. at 535). A change in intervening law may amount to extraordinary circumstances. *Hall*, 861 F.3d at 987.

Rule 60(b) is particularly important where, as here, federal review of the merits of a petitioner's claims has been limited. *Phelps*, 569 F.3d at 1140 ("a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard.").

### B. The District Court Correctly Held That Mitchell's Motion Was Not a Second or Successive Petition

District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings when such motions "attack[ ] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez*, 545 U.S. at 532. Thus, a district court can consider a Rule 60(b) motion when a petitioner "asserts that a previous ruling which precluded a merits determination was in error — for example, a denial for such

reasons as failure to exhaust, procedural default or statute-of-limitations bar." *Id.* at 532 n.4.

District courts do not, however, have jurisdiction to consider second or successive section 2255 motions absent prior certification by the circuit court. 28 U.S.C. § 2255(h). If a motion attacks the substance of the federal court's prior resolution of a claim, then it is considered a "disguised" second or successive section 2255 motion, and the district court must dismiss it for lack of jurisdiction. *United States v. Washington*, 653 F.3d 1057, 1058, 1059-60 (9th Cir. 2011).

As the district court correctly found, Mitchell "does not seek to vindicate a substantive claim. He consistently argues that he is seeking only to investigate, as a preliminary matter, whether a substantive claim exists." 1ER 4. Mitchell's motion is not a successor petition because it does not raise a new claim for relief, present new evidence in support of a claim already litigated, or revisit the court's denial on the merits of a claim for relief. Therefore, the district court had jurisdiction to consider the motion on its merits. *Phelps*, 569 F.3d at 1128.

### C. The District Court Abused Its Discretion in Denying Mitchell's Rule 60(b)(6) Motion

The district court held that because Mitchell could not proffer evidence of juror bias, he could not establish good cause to permit him to interview the trial jurors. As Mitchell "is no more entitled to interview jurors now than he was prior

to *Peña-Rodriguez*," Mitchell may not rely on that case as an intervening change in law to satisfy the extraordinary circumstances standard. 1ER 3:5-8.

The district court's holding is an abuse of discretion because it "rests upon an erroneous view of the law." *Phelps*, 569 F.3d at 1131. The court abused its discretion in three ways. First, the court misreads *Peña-Rodriguez. Peña-Rodriguez does* give Mitchell the right to interview his jurors. Second, the court's application of the good cause standard contradicts both *Peña-Rodriguez* and the typical application of Local Rule 39.2. And third, the court's reliance on other safeguards to justify limiting Mitchell's postconviction investigation contradicts *Peña-Rodriguez*.

### 1. The Ability to Interview Trial Jurors Unimpeded By Overly-Restrictive Local Rules is Necessary For the Holding of *Peña-Rodriguez* to Have Practical Effect

In *Peña-Rodriguez*, the Supreme Court created an exception to evidentiary rules barring post-trial verdict-impeaching statements of jurors where those statements documented that racial bias may have affected the verdict. The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee of the Sixth Amendment, that general evidentiary rules must be modified to root out racism in the criminal justice system. *Peña-Rodriguez*, 137 S. Ct. at 871.

The Court's intent in *Peña-Rodriguez* was to provide the lower courts with the tools to rid their courtrooms of racism. *Id*. at 871 ("The Court now seeks to

strengthen the broader principle that society can and must move forward by achieving the thoughtful, rational dialogue at the foundation of both the jury system and the free society that sustains our Constitution."). The district court's determination that *Peña-Rodriguez* is "a narrow decision" cannot be squared with the actual intent of the ruling, which is unquestionably to empower courts against racism and not to be beholden to procedural rules which may create hurdles. The Court makes reference to the "practical mechanics of acquiring" evidence of juror bias, *id*. at 869, and references jurisdictions that already recognized a racial bias exception to Rule 606(b), stating that those jurisdictions exhibit "no signs of an increase in juror harassment or a loss of juror willingness to engage in searching and candid deliberations." *Id*. at 870. Those jurisdictions "will inform the proper exercise of trial judge discretion in these and related matters." *Id*. Instead of looking to those jurisdictions' experience and recognizing the sea-change that *Peña-Rodriguez* is meant to promote, the district court abused its discretion by adhering to a dated procedural rule that bars simple, yet unquestionably necessary, inquiry.

The district court further abused its discretion in holding that *Peña-Rodriguez* does not create a right to interview trial jurors. The district court faults Mitchell for not already having evidence of juror bias, despite continually denying him access to the jurors, and contends that this omission is fatal to his request to interview jurors. This line of reasoning was rejected in *Peña-Rodriguez*, where the

Court recognized how difficult it is for jurors to come forward of their own accord and provide evidence of a fellow juror's racial bias. *Id*. at 869 (The Court explained: "The stigma that attends racial bias may make it difficult for a juror to report inappropriate statements during the course of juror deliberations. It is one thing to accuse a fellow juror of having a personal experience that improperly influences her consideration of the case. . . . It is quite another to call her a bigot.") (citing *Warger v. Shauers*, 135 S. Ct. 521 (2014)). Indeed, the dissent understood the ruling to mean that jurors are more likely to admit to bias during deliberations "after the verdict is announced and the jurors have gone home." *Id*. at 882 (Alito, J., dissenting). In light of this acknowledgment, the requirement that Mitchell provide evidence of racial bias prior to interviewing his trial jurors is an abuse of discretion.

For those inmates fortunate enough to be prosecuted in a district where they are not required to present clear evidence of racial bias as good cause *before* interviewing jurors, their Sixth Amendment right to a jury untainted by racism will not be infringed. But inmates like Mitchell are barred from conducting a reasonable investigation. This inequity flies in the face of two core death-penalty principles: the system's obligation to avoid "arbitrariness," in that Mitchell's ability to investigate is based on where he happened to be tried; and the need for "heightened reliability," in that Mitchell has been barred from investigating whether his convictions and death sentences were impacted by racial bias. *Furman*

*v. Georgia*, 408 U.S. 238 (1972); *Woodson v. North Carolina*, 428 U.S. 280 (1976).

Equally problematic is that despite *Peña-Rodriguez*'s recognition that racial bias is "a familiar and recurring evil," 137 S. Ct. at 868, the position taken by the district court leaves *Peña-Rodriguez* without any force. As discussed above, the *Peña-Rodriguez* Court left it to the lower courts to implement the decision. *Id*. at 869. If a juror does not come forward of his own accord, as in *Peña-Rodriguez*, the defendant's ability to investigate juror bias is limited by local court rules. But the district court's approach here "comes dangerously close to creating a right without a remedy, something which is strongly disfavored in American jurisprudence." *United States v. Pulliam*, 405 F.3d 782, 796 (9th Cir. 2005) (Wardlaw, J., dissenting). If "[t]he work of "purg[ing] racial prejudice from the administration of justice" is far from done, *Tharpe v. Ford*, 139 S. Ct. 911, 913 (2019) (quoting *Peña-Rodriguez*, 137 S. Ct. at 867) (Sotomayor J., respecting the denial of certiorari), then it is incumbent on courts to establish that *Peña-Rodriguez* is not just an exception to the rules of evidence, but also to the rules barring postconviction interviews with jurors.

### 2. The District Court Applied the Good Cause Standard in a Manner That Violates Both *Peña-Rodriguez* and Local Rule 39.2

In addition to erroneously determining that *Peña-Rodriguez* does not create a right to interview jurors absent good cause, the district court's decision was

based on a faulty application of its own good cause standard. Specifically, the court concluded, in order to establish "good cause," Mitchell must make a preliminary showing of juror misconduct. Dkt. 80 at 6. In support of this standard, the district court cited to Second and Fifth Circuit precedent. *Id*. (citing *Wilkerson v. Amco Corp.*, 703 F.2d 184, 185-86 (5th Cir. 1983) and *Sullivan v. Fogg*, 613 F.2d 465, 467 (2d Cir. 1980)). Yet these cases do not provide the support the district court claimed. In *Wilkerson*, the Fifth Circuit affirmed the denial of jury interviews in part because they required a preliminary showing of wrongdoing and in part because the proposed subject of the interviews — how the jury's deadlock was broken — was inadmissible under Federal Rule of Evidence 606(b). In contrast, Mitchell should not suffer the same fate as Wilkerson because the evidence he is seeking is now plainly admissible under Rule 606(b). *Peña-Rodriguez,* 137 S. Ct. at 863-71.

*Sullivan* is similarly inapposite. In *Sullivan*, a juror approached the District Attorney approximately a month after the trial and reported psychological delusions. 613 F.2d at 466. Following an examination by a court-appointed psychiatrist, who concluded that the juror had been a competent juror, the trial court conducted no further inquiry. Thus, the issue in *Sullivan* was whether the defendant had met his burden to establish a preliminary showing of juror incompetence to warrant a hearing under *Remmer v. United States*, 347 U.S. 227 (1954). *Id*. at 467. By relying on *Sullivan*, the district court here improperly

conflated the standard for entitlement to a hearing with the standard to permit postconviction counsel to undertake an investigation. If the district court's analysis was correct, then establishing entitlement to interview the jurors would automatically entitle a petitioner to a hearing under *Remmer*.

Finally, the district court intimated that the law-of-the-case doctrine may apply, and because Mitchell failed to demonstrate good cause in his previous request to interview jurors, he cannot re-litigate the issue. 1ER 4. When the district court denied Mitchell's original motion to interview the jurors in 2009, it explained that the "rationale for [Local Rule 39.2] comes from Federal Rule of Evidence 606(b)." 1ER 12-13. However, *Peña-Rodriguez* established that "the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." 137 S. Ct. at 869. Thus to the extent juror interviews were appropriately denied in 2009 because of Rule 606(b), that basis no longer stands, and the district court erred in finding to the contrary.

### 3. The District Court's Dependence on Trial Safeguards Constitutes a Reliance on an Erroneous View of the Law

In response to Mitchell's Rule 60(b) motion, the Government argued that that the Supreme Court in *Tanner v. United States*, 483 U.S. 107 (1987), outlined various safeguards which were sufficient to protect Mitchell from the possibility of racial bias amongst his jurors. 2ER 101-03. The *Tanner* safeguards include *voir*

*dire*, the court and counsel's ability to observe jurors during trial, the jurors' ability to observe each other and report issues to the court, and the use of non-juror testimony after trial to impeach the verdict. *Tanner*, 483 U.S. 127. When denying Mitchell's motion, the district court agreed "with Respondent that those safeguards weigh against finding the 'extraordinary circumstances' that warrant reopening Petitioner's case." 1ER 7.

The district court's failure to recognize racial bias as a unique intrusion into juror deliberations was an abuse of discretion. The Court in *Pena-Rodriguez* contemplated the *Tanner* safeguards and held that, in the context of racial bias, the standard safeguards were insufficient. Specifically, the Court found that:

> Racial bias is distinct in a pragmatic sense as well. In past cases this Court has relied on other safeguards to protect the right to an impartial jury. Some of those safeguards, to be sure, can disclose racial bias. *Voir dire* at the outset of trial, observation of juror demeanor and conduct during trial, juror reports before the verdict, and nonjuror evidence after trial are important mechanisms for discovering bias. Yet their operation may be compromised, or they may prove insufficient. For instance, this Court has noted the dilemma faced by trial court judges and counsel in deciding whether to explore potential racial bias at *voir dire*. Generic questions about juror impartiality may not expose specific attitudes or biases that can poison jury deliberations. Yet more pointed questions "could well exacerbate whatever prejudice might exist without substantially aiding in exposing it."

*Id*. at 868-69 (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 195 (1981) (Rehnquist, J. concurring)).

Thus, the *Pena-Rodriguez* Court recognized an intolerable conflict arises between Rule 606(b) and a defendant's Sixth Amendment right to an impartial jury when other methods for detecting jury racial bias have failed. And it is because the *Tanner* protections may prove insufficient that postconviction counsel is expected to conduct a thorough, independent investigation that does not solely rely on the trial record. ABA Guidelines 10.15.1 Para C ("[C]ollateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation in accordance with Guideline 10.7. Subsection E(4).") Thus, the district court abused its discretion when it relied on the *Tanner* safeguards as a basis for denying Mitchell the right to conduct an adequate postconviction investigation.

### D. After Finding that the District Court's Decision Was Erroneous, This Court May Consider and Grant Mitchell's Motion in the First Instance.

"[A]ppellate courts may, in their discretion, decide the merits of a Rule 60(b) motion in the first instance on appeal." *Phelps*, 569 F.3d at 1134-35 (quoting *Gonzalez*, 545 U.S. at 536-38). The proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court. *Id*. at 1133. A movant establishes the requisite extraordinary circumstances when showing that there has been a change in the law and that the equities weigh in favor of re-

opening the judgment, as determined by a series of factors laid out in *Phelps*, 569 F.3d 1133-34.

### 1. The *Gonzalez* Factors Weigh in Favor of Granting Mitchell's Rule 60(b)(6) Motion

The first two factors originate from the Supreme Court's decision in *Gonzalez*. The first *Gonzalez* factor asks whether, when the district court issued its original decision, that decision was correct under then-prevailing law. *Phelps*, 569 F.3d at 1135 (citing *Gonzalez*, 545 U.S. at 536). The factor cuts against the movant if the law is firmly settled at the time the district court ruled against the movant such that the district court fairly and accurately applied the law. *Id*. at 1136. Here, this factor cuts in Mitchell's favor. At the time Mitchell filed his original motion to interview the jurors in 2009, three Circuits, including this Circuit, held or suggested that there is a constitutional exception to the no-impeachment rule for evidence of racial bias. *See United States v. Henley*, 238 F.3d 1111, 1119-21 (9th Cir. 2001) ("racial bias is generally not subject to Rule 606(b)'s prohibitions against juror testimony"); *United States v. Villar*, 586 F.3d 76, 87-88 (1st Cir. 2009) (holding the Constitution demands a racial-bias exception); *Shillcutt v. Gagnon*, 827 F.2d 1155, 1158-60 (7th Cir. 1987) (observing that in some cases of racial bias, fundamental fairness could require an exception); *see also Peña-Rodriguez*, 137 S. Ct. at 865 (discussing cases). The Supreme

Court's decision in *Peña-Rodriguez* solidifies that general proposition. Thus as in *Phelps*, this factor supports granting Mitchell's motion.

The second *Gonzalez* factor is the movant's diligence in pursuing the issue in question. The Supreme Court held that this factor weighed against *Gonzalez* because he failed to appeal the district court's original finding that he later challenged in his Rule 60(b) motion. *Gonzalez*, 545 U.S. at 537. In contrast, after the district court denied his original motion, Mitchell raised the issue in his amended section 2255 motion. When that motion was denied, he raised the issue as an uncertified procedural claim in this Court. And then, following the issuance of *Peña-Rodriguez,* Mitchell promptly moved for relief under Rule 60(b)(6), moved for a COA, and the issue is now the subject of this appeal. This factor cuts strongly in Mitchell's favor.

### 2. The *Ritter* Factors Weigh in Favor of Granting Mitchell's Rule 60(b)(6) Motion

In addition to the two *Gonzalez* factors, this Court adopted additional factors from the Eleventh Circuit's decision in *Ritter v. Smith*, 811 F.2d 1401 (11th Cir. 1987) to be considered in a Rule 60(b)(6) analysis. *Phelps*, 569 F.3d at 1133.

The first *Ritter* factor is whether granting the motion would "undo the past, executed effects of the judgment," and thereby disturb the parties' reliance interest in the finality of the case. 811 F.2d at 1402. In other words, "relief is less warranted when the final judgment being challenged has caused one or more of the

parties to change his legal position in reliance on that judgment." *Phelps*, 569 F.3d at 1138. The *Phelps* Court explained that in a habeas case, this factor weighs in favor of the movant because neither side has undergone any change in legal position: the movant's case ended and he remains in prison, the government stopped defending the imprisonment, and if the case is reopened both sides will pick up where they left off. *Id*. This factor thus weighs in Mitchell's favor. Perhaps one confounding variable is the Government's recent announcement that it plans to execute Mitchell on December 11, 2019. However, this fact does not amount to a "change [in] legal position" that should benefit the Government, as Mitchell's Rule 60(b)(6) motion was filed over a year before the Government's July 25, 2019 announcement concerning Mitchell's execution.

The second *Ritter* factor concerns delay between the finality of the judgment and the Rule 60(b)(6) motion. *Ritter*, 811 F.2d at 1402. Although this factor appears similar to the second *Gonzalez* factor, it is actually quite different. The second *Gonzalez* factor focuses on the movant's diligence in appealing the district court's original order; the second *Ritter* factor is focused on finality and looks to the time elapsed between when the movant's case became final and when he sought to re-open his case. Here, Mitchell's section 2255 proceedings became final when the Supreme Court denied review on October 3, 2016. *Mitchell v. United States*, 137 S. Ct. 38 (2016). The Supreme Court decided *Peña-Rodriguez v. Colorado* in 2017, and less than one year later Mitchell filed his motion on

March 5, 2018. 2ER 104-17. While this is marginally longer than the 9 month period of time that the *Ritter* court found was "only a very brief delay," 811 F.2d at 1402, the court below found Mitchell's motion was timely. Thus, this factor should still weigh in Mitchell's favor.

The third *Ritter* factor is the nexus between "the decision embodying the original judgment and the subsequent decision embodying the change in the law." *Phelps*, 569 F.3d at 1139 (citing *Ritter*, 811 F.2d at 1402). The focus of this factor is a recognition that laws change, but not every change in the law should prompt a re-opening of final judgments. "Rather, the *nature* of that change is important." *Id.* If there is a close connection between the two cases, this factor will weigh in favor of the movant. *Id.*

Here, the nexus factor weighs in Mitchell's favor. The original order denying Mitchell's motion to interview jurors stated that Rule 39.2, which has its basis in Rule 606(b), barred Mitchell from accessing his jurors. 1ER 12:8-90. Now, *Peña-Rodriguez* exempts the fruits of Mitchell's proposed investigation from Rule 606(b). The change is exactly what Mitchell previewed to the district court in 2009, 2ER 163 (citing *Henley*, 238 F.3d at 1120), and promptly re-raised once *Peña-Rodriguez* was decided. 2ER 104-17.

*Peña-Rodriguez* gives the courts the power to root out racism in the criminal justice system. 137 S. Ct. at 867 ("The duty to confront racial animus in the justice system is not the legislature's alone. Time and again, this Court has been called

upon to enforce the Constitution's guarantee against state-sponsored racial discrimination in the jury system.") And the Court makes absolutely clear that racial bias is a form of juror misconduct that will be treated differently than all other forms. *Id*. at 868 ("This Court's decisions demonstrate that racial bias implicates *unique* historical, constitutional, and institutional concerns. … Racial bias is distinct in a pragmatic sense as well."). *Peña-Rodriguez* now empowers courts to take evidence from jurors concerning racial bias and vacate criminal convictions on that basis. This empowerment would, of course, be meaningless if the lower courts had no mechanism for receiving that evidence. The Court spoke directly to this in *Peña-Rodriguez*, stating that:

> The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors. These limits seek to provide jurors some protection when they return to their daily affairs after the verdict has been entered. But while a juror can always tell counsel they do not wish to discuss the case, jurors in some instances may come forward of their own accord.

*Id.* at 869 (internal citation omitted).

The intent behind *Peña-Rodriguez* clearly supports allowing Mitchell, a Native American man, to conduct an adequate investigation into the deliberations that led to his convictions and death sentence. The history of the United States is littered with examples of racism in the death-penalty context, and towards the Native American people generally. Thus, the Supreme Court's desire to provide

lower courts the tools to "root[] out racial bias" in their courtrooms is best served by permitting Mitchell to conduct a reasonable investigation. 137 S. Ct. at 869. *Ritter* considered "both the direct relationship between the original and intervening decisions and the fact that the latter decision definitively resolved a preexisting conflict in the law as weighing in favor of granting relief under Rule 60(b)(6)." *Phelps*, 569 F.3d at 1139. Here, the direct relationship between Rule 606(b) and *Peña-Rodriguez* is to create the exception that Mitchell foreshadowed. *See* 2ER 163 (*quoting Henley*, 238 F.3d at 1120 (where racial bias is present, the "rule of juror incompetency cannot be applied in such an unfair manner as to deny due process"). Because *Peña-Rodriguez* definitively resolved a preexisting conflict that was left open when the district court made its original decision, this factor weighs in favor of finding extraordinary circumstances and granting Mitchell's motion.

The fourth and final *Ritter* factor concerns principles of comity and focuses on the import of adequately adjudicating a habeas petitioner's claims for relief. *Ritter*, 811 F.2d at 1403. Principles of comity are not a strong concern in this case because these proceedings concern federal review of a federal prosecution, and thus there are no issues of deference to a state judgment. *Mitchell*, 790 F.3d at 909 ("This is a purely federal habeas case — a federal court's review of a federal conviction. Any concern that we might have regarding the doctrine of comity when we review a state conviction does not apply.") (Reinhardt J. dissenting).

However, this factor also focuses on the intent of Rule 60(b) as an equitable remedy and the recognition that although a district court has broad discretion in most matters, the Circuit courts should reverse when the district court's denial of a Rule 60(b) motion has precluded examination of the full merits of the case. *Phelps*, 569 F.3d at 1140 (citing *Ruiz v. Quarterman*, 504 F.3d 523, 532 (5th Cir. 2007)). Such preclusion occurs when, for example, a petition is denied on procedural grounds such that the claims for relief contained therein are never adequately adjudicated. *See, e.g., Phelps,* 569 F.3d 1120. Here, however, Mitchell was not just denied the opportunity to have his claims considered on their merits; he was denied the ability to ever present those claims because his investigation was unconstitutionally curtailed.

### 3. Justice and Equity Favor Granting Mitchell's Rule 60(b)(6) Motion

Mitchell has established that the *Phelps* factors weigh in his favor. But as the Ninth Circuit has repeatedly held, "these factors are not 'a rigid or exhaustive checklist.'" *Hall*, 861 F.3d at 987 (quoting *Phelps*, 569 F.3d at 1135). Rather, the purpose of Rule 60(b)(6), "a grand reservoir of equitable power," is to afford the courts broad discretion to ensure that justice is done. *Phelps*, 569 F.3d at 1133; *see also Klapprott v. United States*, 335 U.S. 601, 615 (1949). The facts of this case support this Court's use of its equitable power to grant Mitchell's Rule 60(b)(6) motion.

It is uncontroverted that the death penalty has a long history of racial injustice. Indeed, the Supreme Court recently reversed a Texas capital conviction in which a man's death sentence may have been based on his race. *Buck v. Davis*, 137 S. Ct. 759 (2017). And just this term, the Court reversed a death-penalty case where a prosecutor, acting with a discriminatory intent, exercised peremptory challenges against African-American prospective jurors. *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019). Moreover, the United States government has a particularly shameful history of oppressing the Native American people. *See, e.g., Mesclaero Apache Tribe v. Jones*, 411 U.S. 145, 152 (1973) ("The intent and purpose of the Reorganization Act was 'to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'") (quoting H.R.Rep.No.1804, 73d Cong., 2d Sess., 6 (1934)).

In this case, the government arbitrarily pursued a death sentence pursuant to "an aggressive expansion of the federal death penalty," despite strong opposition from the Navajo Nation, members of the victims' family, and the local United States Attorney's Office. *Mitchell*, 790 F.3d at 894-97 (Reinhardt, J., dissenting). Mitchell was then tried before a jury that consisted of only one Native American. The jury was picked from a 207-person venire which included 29 Native Americans. Of those 29 people, four were excluded based on their use of Navajo as their first language, RT 38, 119, 601-602, 1174, and eight more were excluded due to their Navajo beliefs in opposition to the death penalty. RT 198-99, 336,

988, 1262-63, 1424, 1684, 2256. In fact, when the Government attempted to exclude the lone surviving Native American juror, the Court sustained Mitchell's *Batson*[5] objection and denied the Government's strike. RT 2506, 2509-13. The Government was, however, successful in removing the only African American juror on the venire. RT 2514-16.

Given the severity of Mitchell's sentence, and longstanding Supreme Court precedent calling for "heightened reliability" in death-penalty cases, *Woodson*, 428 U.S. at 305, equity favors departing from Local Rule 39.2 Indeed, Local Rule 39.2 goes far beyond *limiting* counsel's contact with jurors, as contemplated by *Peña-Rodriguez*. Rather, it *prevents* any contact between the parties and a juror absent permission of the Court on a showing of good cause. Indeed, of the fifteen district courts in the Ninth Circuit, only two — the District of Arizona and the District of Montana — require a "good cause" showing. D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2; D. Mont. Loc. Civ. R. 48.1(b); D. Mont. Loc. Crim. R. 24.2(b). Five other district courts require leave of court without a "good cause" showing. D. Alaska Loc. Civ. R. 83.1(h); D. Or. Loc. R. 48-2; E.D. Wash. Loc. R. 47.1(d); W.D. Wash. Loc. R. 47(d). Eight district courts in the Ninth Circuit impose no post-trial restrictions on juror contacts whatsoever. Such variability in

[5] *Batson v. Kentucky*, 476 U.S. 79 (1986).

the ability to conduct an investigation is inconsistent with Eighth Amendment jurisprudence.

In addition to the unlucky fact that Mitchell happens to have been tried in Arizona where the arcane Local Rule 39.2 bars his efforts to investigate his case, the fact that he was tried in a *federal* court in Arizona further compounds the fundamental unfairness. Local Rule 39.2 does not apply to habeas petitioners attacking state convictions and sentences in federal district courts in Arizona. *Ellison v. Ryan*, 2017 WL 1491608 (D. Ariz. April 26, 2017) at *2-3; *Cota v. Ryan*, 2017 WL 713640 (D. Ariz. February 23, 2017) at *2; *Harrod v. Ryan*, 2016 WL 6082109 (D. Ariz. October 18, 2016) at *3. As a practical matter, this means that all 116 inmates on death row in Arizona[6] are free to conduct a reasonable investigation by informally interviewing their jurors and presenting the fruits of that investigation in support of their federal habeas petitions to federal district courts in Arizona. But Mitchell, solely by virtue of the fact that he was prosecuted federally, is barred from conducting that same reasonable investigation. As a result, Mitchell is left with no mechanism, practical or otherwise, for investigating the type of misconduct at issue in *Peña-Rodriguez*.

The law, the equities, and common sense all weigh in favor of granting Mitchell's Rule 60(b)(6) motion.

---

[6] https://corrections.az.gov/public-resources/death-row

## VIII. CONCLUSION

The Court should vacate the district court's judgment, review Mitchell's motion in the first instance, and grant Mitchell relief under Rule 60(b)(6). The Court should then remand the case to the district court with instructions to allow Mitchell to interview the trial jurors in his case.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: August 28, 2019

By *<u>/s/ Jonathan C. Aminoff</u>*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Movant-Appellant

## INDEX OF ADDENDUM

Sixth Amendment to the United States Constitution ........................................ 36

Federal Rule of Evidence 606: Juror's Competency as a Witness ................... 36

Federal Rule of Civil Procedure 60: Relief From a Judgment or Order........... 37

Arizona Local Rule of Civil Procedure 39.2: Communication with Trial Jurors ........................................................................................... 37

Arizona Local Rule of Criminal Procedure 24.2: Communication with Trial Jurors ........................................................................................... 38

# ADDENDUM

**Sixth Amendment to the United States Constitution**

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

**Federal Rule of Evidence 606: Juror's Competency as a Witness**

(b) During an Inquiry Into the Validity of a Verdict or Indictment.

(1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) Exceptions. A juror may testify about whether:

(A) extraneous prejudicial information was improperly brought to the jury's attention;

(B) an outside influence was improperly brought to bear on any juror; or

(C) a mistake was made in entering the verdict on the verdict form.

**Federal Rule of Civil Procedure 60: Relief From a Judgment or Order**

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief

**Arizona Local Rule of Civil Procedure 39.2: Communication with Trial Jurors**

(b) After Trial. Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and

affidavit so filed will be granted only upon the showing of good cause. See Federal Rules of Evidence, Rule 606(b). Following the interview, a second affidavit must be filed indicating the scope and results of the interviews with jurors and setting out the answers given to the interrogatories.

(c) Juror's Rights. Except in response to a Court order, no juror is compelled to communicate with anyone concerning any trial in which the juror has been a participant.

**Arizona Local Rule of Criminal Procedure 24.2: Communication with Trial Jurors**

With regard to communications with trial jurors, see Rule 39.2, Local Rules of Civil Procedure.

## CERTIFICATE OF RELATED CASES

Counsel for Appellant certifies that he is unaware of any related case.

DATED: August 28, 2019

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1 and 32-4, I certify that this principal brief is proportionally spaced, has a typeface of 14 points or more, and contains approximately 9,619 words.

DATED: August 28, 2019

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF