CA No. 18-17031

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LEZMOND C. MITCHELL,

Movant-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

DC No. 3:09-cv-08089-DGC

Criminal No. 3:01-cr-01062-DGC

**DEATH PENALTY CASE**

**EXECUTION SET FOR DECEMBER 11, 2019**

# APPELLANT'S EXCERPTS OF RECORD VOLUME 2

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

The Honorable David G. Campbell
United States District Judge

HILARY POTASHNER
Federal Public Defender
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310
Email: Jonathan_Aminoff@fd.org
Attorneys for Movant-Appellant
LEZMOND C. MITCHELL

# INDEX TO MOVANT'S EXCERPTS OF RECORD

## VOLUME 1


| Document Title and Date | Location in District Court Record | ER Page(s) |
|---|---|---|
| Order Denying Movant's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6), filed Sept. 17, 2018 | Docket No. 80 | 001-008 |
| Memorandum of Decision and Order Denying Claim K to Motion to Vacate, Set Aside or Correct Sentence, filed Sept. 30, 2010 | Docket No. 56 | 009-010 |
| Order Denying Motion for Authorization to Interview Jurors in Support of Motion to Vacate, Set Aside or Correct the Sentence, filed Sept. 4, 2009 | Docket No. 21 | 011-020 |


## VOLUME 2


| | | |
|---|---|---|
| Reply in Support of Movant's Motion for Stay of Execution, filed Aug. 26, 2019 | Docket No. 90 | 021-036 |
| Response to Petitioner's Motion for Stay of Execution, filed Aug. 19, 2019 | Docket No. 88 | 037-055 |
| Motion for Stay of Execution, filed Aug. 5, 2019 | Docket No. 84 | 056-076 |
| Notice of Appeal, filed Oct. 17, 2018 | Docket No. 81 | 077-080 |

## INDEX TO MOVANT'S EXCERPTS OF RECORD

## VOLUME 2


| | | |
|---|---|---|
| Reply in Support of Defendant's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6), filed June 18, 2018 | Docket No. 79 | 081-089 |
| Government's Response to Defendant's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6), filed May 21, 2018 | Docket No. 76 | 090-103 |
| Notice of Motion and Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6), filed March 5, 2018 | Docket No. 71 | 104-117 |
| Claim K, Reply to Response to Amended § 2255 Motion, filed July 7, 2010 | Docket No. 55 | 118-121 |
| Claim K, Government's Response to Movant's Amended Motion to Vacate, Set Aside, or Correct Sentence, filed April 1, 2010 | Docket No. 49 | 122-126 |
| Claim K from the Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, filed Nov. 12, 2009 | Docket No. 30 | 127-132 |
| Movant's Reply to Government's Consolidated Response to Movant's Motions to Seal, for a Protective Order, and Interview Jurors, filed July 21, 2009 | Docket No. 19 | 133-140 |

**INDEX TO MOVANT'S EXCERPTS OF RECORD**

**VOLUME 2**


| | | |
|---|---|---|
| Government's Consolidated Response to Petitioner's (1) Motion for Authorization to Interview Jurors in Support of Motion to Vacate, Set Aside, or Correct Sentence; (2) Motion for Protective Order; and (3) Motion to Seal, filed July 14, 2009 | Docket No. 18 | 141-154 |
| Motion for Authorization to Interview Jurors in Support of Motion to Vacate, Set Aside, or Correct the Sentence, filed May 22, 2009 | Docket No. 1 | 155-173 |
| Redacted Second Superseding Indictment, *United States of America v. Lezmond Mitchell*, United States District Court of Arizona, Case No. CR-01-1062-PCT-MHL, filed Nov. 19, 2002 | Pursuant to Ninth Circuit Rule 30-1.4(b)(i) | 174-179 |
| United States District Court of Arizona, Docket for *Mitchell v. United States of America*, Case No. CV 09-08089-DGC, Aug. 27, 2019 | Pursuant to Ninth Circuit Rule 30-1.4(a)(ii) | 180-193 |

HILARY POTASHNER (CA Bar No. 167060)
Federal Public Defender
JONATHAN C. AMINOFF (CA Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (CA Bar No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Movant
LEZMOND CHARLES MITCHELL

**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lezmond Charles Mitchell,<br>Defendant/Movant,<br>v.<br>United States of America,<br>Plaintiff/Respondent. | Civil Case No. 3:09-cv-08089-DGC<br>(Criminal Case No. 3:02-cr-01062-DGC<br>**DEATH PENALTY CASE**<br>**EXECUTION SET FOR DECEMBER 11, 2019**<br>Honorable David B. Campbell<br>United States District Judge<br>**REPLY IN SUPPORT OF MOVANT'S MOTION FOR STAY OF EXECUTION**<br>**Oral Argument Requested** |

**TABLE OF CONTENTS**

Page

I. ARGUMENT ..... 1

A. This Court Has Jurisdiction to Rule on the Motion to Stay ..... 1

B. Mitchell Is Entitled to a Stay of Execution ..... 3

1. Mitchell is Entitled to a Stay as a Matter of Right ..... 3

2. Mitchell is Entitled to a Stay as A Matter of Equity ..... 6

II. CONCLUSION ..... 11

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alliance of Nonprofits for Ins., Risk Retention Group v. Barratt*,
2012 U.S. Dist. LEXIS 115431 (Dist. Nev., Aug. 16, 2012) .......... 2

*Barefoot v. Estelle*,
463 U.S. 880 (1983) .......... 3, 4, 5, 6

*Batson v. Kentucky*,
476 U.S. 79 (1986) .......... 10

*Benham v. Namba*,
2014 U.S. Dist. LEXIS 188139 (C.D. Cal. Sept. 30, 2014) .......... 2

*Buck v. Davis*,
137 S. Ct. 759 (2017) .......... 7

*Bucklew v. Lombardi*,
572 U.S. 1131 (2014) .......... 8

*Cook v. Ryan*,
688 F.3d 598 (9th Cir. 2012) .......... 5

*Greenawalt v. Stewart*,
105 F.3d 1268 (9th Cir. 1997) .......... 5

*In re Halvorson*,
2019 U.S. Dist. LEXIS 130886 (C.D. Cal. April 1, 2019) .......... 2

*Harris v. Copenhaver*,
2012 U.S. Dist. LEXIS 154931 (E.D. Cal. Oct. 26, 2012) .......... 2

*Hill v. McDonough*,
547 U.S. 573 (2006) .......... 4, 5

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .......... 2

*Hoffman v. Beer Drivers & Salesmen's Local Union 888*,
536 F.2d 1268 (9th Cir. 1976) .......... 1

*Jones v. Ryan*,
2018 U.S. Dist. LEXIS 178611 (Dist. Ariz., Oct. 17, 2018) .......... 1

**TABLE OF AUTHORITIES**

Page(s)

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ... 6

*Lonchar v. Thomas*,
517 U.S. 314 (1996) ... 3

*Morse v. ServiceMaster Global Holdings, Inc.*,
2013 U.S. Dist. LEXIS 3663 (N.D. Cal. Jan. 8, 2013) ... 6

*Natural Resources Defense Council Inc. v. Southwest Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) ... 1

*Peña-Rodriguez v. Colorado*,
137 S. Ct 855 (2017) ... 7, 8

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007) ... 10

*United States v. Winkles*,
795 F.3d 1134 (9th Cir. 2015) ... 7

*Workman v. Tate*,
958 F.2d 164 (6th Cir. 1992) ... 1

**Federal Rules and Statutes**

28 U.S.C. § 2255 ... 5

Federal Rule of Appellate Procedure 8 ... 1, 2, 3

Federal Rule of Civil Procedure 62 ... 2

Federal Rule of Evidence 606 ... 7

## I. ARGUMENT

### A. This Court Has Jurisdiction to Rule on the Motion to Stay

The Government argues that this Court has no jurisdiction to rule on the motion to stay because the filing of a notice of appeal typically "'divests the district court of control over those aspects of the case involved in the appeal.'" (Response to Movant's Mot. to Stay (hereinafter "Resp.") at 4-5 (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985)).) However, this general rule is neither "a creature of statute" nor "absolute in character." *Hoffman v. Beer Drivers & Salesmen's Local Union 888*, 536 F.2d 1268, 1276 (9th Cir. 1976). Thus, even though the filing of a notice of appeal confers jurisdiction on a court of appeal, "[t]he district court retains jurisdiction to grant a stay or injunction even after an appeal is filed." 20 MOORE'S FEDERAL PRACTICE - CIVIL § 308.12 (2019); *see also* Fed. R. App. P. 8(a)(1)(A) ("A party must ordinarily move first in the district court" for a stay pending appeal). So long as the district court's exercise of jurisdiction does not "materially alter the status of the case on appeal," the district court may act during the pendency of an appeal "to preserve the status quo." *Natural Resources Defense Council Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). Mitchell's request for a stay of execution will allow him to continue with habeas litigation that was instigated before the warrant was issued. Thus, a stay would serve only to preserve the status quo and enable Mitchell's appeal to proceed without the specter of an imminent execution. *See Workman v. Tate*, 958 F.2d 164, 167 (6th Cir. 1992) ("The district court . . . retains jurisdiction in aid of the appeal.").

Despite the guidance from Rule 8(a)(1)(A), the Government claims that Rule 62(d), which "only applies during injunctive appeals," exclusively controls the question of jurisdiction, rather than Rule 8(a)(1)(A). (Resp. at 7.) But that assertion is belied by recent precedent in this court which relied upon Rule 62(d) when granting relief in a habeas case that did not involve an injunctive appeal. In *Jones v. Ryan*, this Court issued a conditional writ granting habeas relief in a capital case. 2018 U.S. Dist.

LEXIS 178611 (Dist. Ariz., Oct. 17, 2018) at *3. The state filed a notice of appeal in the Ninth Circuit, and the appeal was docketed and a briefing schedule set. *Id.* The state subsequently filed a motion in this Court to stay the conditional writ and refuse petitioner's request for release. *Id.* Relying on Rule 62(c) (the predecessor to current Rule 62(d)) and Fed. R. App. P. 8(a)(1)(A), this Court denied the motion to stay.[1] *Id.* at *5, 36.

Other district courts have employed a similar analysis, based on Rule 8(a)(1)(A)'s mandate that the movant "should seek a stay pending appeal from the district court before seeking such a stay from the circuit court." *Harris v. Copenhaver*, 2012 U.S. Dist. LEXIS 154931, *1-2 (E.D. Cal. Oct. 26, 2012) (relying upon Rule 8(a)(1)(A) to establish jurisdiction over a habeas petitioner's request for a stay pending appeal). *See also In re Halvorson*, 2019 U.S. Dist. LEXIS 130886 (C.D. Cal. April 1, 2019), *4-5 (motion to stay pending appeal was properly before the court pursuant to Rule 8(a)(1) and Fed. R. Civ. P. 62, which "gives reviewing courts the power 'to stay proceedings or suspend, modify, restore, or grant an injunction while an appeal is pending' and the power 'to issue an order to preserve the status quo or the effectiveness of the judgment to be entered.'"); *Benham v. Namba*, 2014 U.S. Dist. LEXIS 188139, *2 (C.D. Cal. Sept. 30, 2014) (litigant was right to request district court for a stay even though the case was on appeal); *Alliance of Nonprofits for Ins., Risk Retention Group v. Barratt*, 2012 U.S. Dist. LEXIS 115431, *3 (Dist. Nev., Aug. 16, 2012) (on appeal from summary judgment for the plaintiff, district court's jurisdiction over defendant's

---

[1] The Supreme Court has held that factors relevant to the determination of whether a successful habeas petitioner should be released pending appeal are the same as those traditional factors governing the power of district and appellate courts to stay an order under Fed. R. Civ. P. 62 and Fed. R. App. P. 8(a), namely, "(1) likelihood of the stay applicant's success on the merits; (2) whether the stay applicant will be irreparably harmed; (3) whether the issuance of the stay would injure other interested parties; and (4) the public interest—are equally applicable to the determination of whether a successful habeas petitioner should be released pending appeal." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

motion to stay was proper because Rule 8(a)(1)(A) "requires that the moving party request to stay an order or judgment to file a motion in district court").

Finally, the Government claims that it would be prudent and make "much more sense for jurisdiction to be with the appellate court right now" because to assert jurisdiction "would require this Court to speculate about the Ninth Circuit's timeliness in ruling on the appeal." (Resp. at 7.) This argument is without merit. If the Ninth Circuit, or any appellate court, was concerned about district courts improperly speculating on its timeliness, it would have been unlikely to create a rule urging litigants to file their motions to stay in the district court first. Fed. R. App. P. 8(a)(1)(A). Mitchell respectfully asks this Court to follow in the steps of the *Jones* Court and act to preserve the status quo in this case by staying the warrant.

**B. Mitchell Is Entitled to a Stay of Execution**

**1. Mitchell is Entitled to a Stay as a Matter of Right**

The Government first contends that stays are not a matter of right, purely a matter of equity. (Resp. at 8.) The Government is wrong. *Barefoot v. Estelle*, 463 U.S. 880 (1983) is clear:

> When a certificate of probable cause is issued by the district court, as it was in this case, or later by the court of appeals, petitioner must then be afforded an opportunity to address the merits, and the court of appeals is obligated to decide the merits of the appeal. Accordingly, a court of appeals, where necessary to prevent the case from becoming moot by the petitioner's execution, *should* grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal.

*Id*. at 893-94 (emphasis added).

The Supreme Court extended *Barefoot* in *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996), holding that: "the same principle applies when a district court is faced with a request for a stay in a first federal habeas case: If the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and *must* issue a stay to prevent the case from becoming moot." (emphasis added).

The Government further attempts to confabulate the *Barefoot* stay standard with the *Hill*[2] equitable stay standard by noting that *Hill* cited to *Barefoot* in support of the proposition that inmates must establish the requirements for a stay. (Resp. at 8.) Mitchell has not shied away from his obligation to meet the relevant stay standards. Under *Barefoot*, Mitchell need only show that he was granted a certificate of appealability in an appeal concerning his initial habeas proceeding. (*See* Dkt. 84 at 5-7.) The Government claims that even under *Barefoot*, however, Mitchell would need to establish his entitlement to a stay using the equitable factors. (Resp. at 8, 9.) The Government misreads *Barefoot*. *Barefoot* is unequivocal that when a petitioner appeals the denial of his initial federal habeas appeal, and he has been given a COA by either the district or circuit court, he is entitled to a stay of execution if the court of appeals is unable to resolve the merits of his appeal before the scheduled date of execution. *Barefoot*, 463 U.S. at 888. The equitable considerations are not at issue, and the Government is incorrect when stating that "*Barefoot* nonetheless recognized equitable considerations (like whether there is a "significant possibility" of merits success, "a likelihood [of] irreparable harm," and the like)." (Resp. at 8.) In actuality, the *Barefoot* Court stated that with respect to stays of execution *pending review of petitions for writ of certiorari*, a stay is not automatic and the Court would consider such factors as the likelihood of irreparable harm. *Id*. at 895-96. But those factors do not come into play in the situation presently before this Court: whether Mitchell is entitled to a stay such that the Ninth Circuit has adequate time to review his appeal after granting a COA. And on that point, *Barefoot* is clear that the equitable factors are not at issue.

The Government next contends that the *Hill* standard should apply to this stay request because this proceeding does not concern Mitchell's initial habeas appeal, but rather an appeal from a Rule 60(b)(6) denial. Opposition at 9-10. First, *Hill* on its face does not apply. The ruling of Hill is that "inmates seeking time to challenge the

---

[2] *Hill v. McDonough*, 547 U.S. 573 (2006).

manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584. This appeal does not concern the manner in which the Government plans to execute Mitchell. Rather, the appeal concerns "a defect in the integrity of [Mitchell's] federal habeas proceeding." Dkt. No. 71 at 2:16-17 (citing *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)). In his Rule 60(b)(6) motion, Mitchell challenges an earlier ruling of this Court barring him from conducting a post-conviction investigation regarding his jurors. Should the Ninth Circuit rule in his favor, Mitchell's original Section 2255 proceedings would be re-opened and he would be permitted to conduct an investigation and further pursue relief under Section 2255. Given the relief under this appeal would be identical to the relief at issue in his initial Section 2255 litigation, it would not make any logical sense for a different standard to be applied to his first appeal versus this appeal. The Government believes *Cook v. Ryan*, 688 F.3d 598 (9th Cir. 2012), rebuts this position. But *Cook* was not eligible for a stay under *Barefoot:* when the Ninth Circuit decided that Cook was not entitled to a stay, the Ninth Circuit had already decided the merits of his appeal. As a result, there was no appeal pending on which a COA had been granted, and no concern that the Ninth Circuit would not be able to decide the appeal prior to an execution date. And in instances where petitioners have sought to appeal the denials of Rule 60(b)(6) motions, the Ninth Circuit has applied the *Barefoot* standard. *See, e.g., Greenawalt v. Stewart*, 105 F.3d 1268, 1277 (9th Cir. 1997).

The Government continually suggests that the Ninth Circuit will have ample time to resolve Mitchell's appeal prior to Mitchell's December 11, 2019 execution date and thus Mitchell is not entitled to a stay. The Government points to *Barefoot* in support of this point, noting that "*Barefoot* upheld the denial of a motion to stay execution where the appellate schedule allowed for two-and-a-half months between the district court's order and the execution date." (Resp. at 10:8-10.) What the Government fails to note is that the Fifth Circuit applied an expedited schedule to Barefoot's appeal such that the

briefs were submitted, the parties were afforded unlimited time in oral argument to state their positions, and the court issued a decision the next day. *Barefoot*, 463 U.S. at 886. Here, however, because the Government arbitrarily decided to issue an execution warrant during the course of this appeal and absent consultation with Mitchell or the Court, there is no expedited schedule. On average, in the Ninth Circuit, oral argument is scheduled 9-12 months after the reply brief is filed in a civil appeal and, in a criminal appeal, oral argument is scheduled approximately 4-5 months after the reply brief is filed. *See* Ninth Circuit Office of the Clerk, Frequently Asked Questions, "Briefing/Hearing Process," available at: https://www.ca9.uscourts.gov/content/faq.php. Under either calculation, Mitchell will have no opportunity to argue his cause to the Ninth Circuit before his December 11, 2019 execution date. Thus Mitchell is entitled to a stay of execution as a matter of right.

### 2. Mitchell is Entitled to a Stay as A Matter of Equity

#### a. Mitchell has Established a Likelihood of Success on the Merits

The Government contends that Mitchell claims that because he has been granted a COA, that necessarily means he has established a likelihood of success on the merits. (Resp. at 12.) In actuality, Mitchell never made this argument. (Mot. at 8-9.) It is Mitchell's burden to establish that his appeal presents a "substantial case for relief on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). "The Ninth Circuit has not clearly defined this phrase. Often a 'substantial case' is one that raises genuine matters of first impression within the Ninth Circuit." *Morse v. ServiceMaster Global Holdings, Inc.*, 2013 U.S. Dist. LEXIS 3663, at *3 (N.D. Cal. Jan. 8, 2013) (citing *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)). As the parties appear to agree, the Ninth Circuit has not yet definitively ruled on the issues presented in Mitchell's Rule 60(b) motion. Moreover, the Government, relying on out-of-circuit precedent, apparently intends to contest the propriety of this Court's decision that

Mitchell's motion was not a second or successive habeas petition. (Resp. at 9 n.3.) The Government's arguments are an acknowledgement that these issues have yet to be decided by the Ninth Circuit, and an apparent concession that Mitchell's appeal thus presents a substantial case, thereby satisfying this first factor.

Relatedly, the Government misleadingly claims that the Ninth Circuit granted a COA because it had previously granted Mitchell a COA in his initial Section 2255 appeal. The Ninth Circuit actually stated:

> The district court previously determined that at least three of the constitutional claims raised in appellant's underlying 28 U.S.C. § 2255 motion met the substantive certificate of appealability standard. *See* 28 U.S.C. § 2253(c)(2). Accordingly, we grant the request for a certificate of appealability (Docket Entry No. 3) with respect to the following procedural issue: whether the district court properly denied appellant's motion to re-open his case pursuant to Fed. R. Civ. P. 60(b)(6) following the Supreme Court's opinion in *Peña-Rodriguez v. Colorado*, 137 S. Ct 855 (2017).

DE 10-1.

Obviously, Mitchell is not entitled to a COA simply because he previously received a COA. *United States v. Winkles*, 795 F.3d 1134, 1143 (9th Cir. 2015); *Buck v. Davis*, 137 S. Ct. 759, 777 (2017). And if the Government actually believed that the Ninth Circuit wrongfully granted Mitchell's request for a COA, they could have moved for reconsideration. Yet, they stood silent, and thus cannot now complain about the basis for the COA.

The Government attempts to cast *Peña-Rodriguez* as a narrow holding, yet the language of *Peña-Rodriguez* tells a different story. The Supreme Court's intent in *Peña-Rodriguez* was to provide lower courts the tools to "root[] out racial bias" in their courtrooms. 137 S. Ct. at 869. The Court acknowledged its "duty to confront racial animus in the jury system" and noted that "[t]ime and again, this Court has been called upon to enforce the Constitution's guarantee against state-sponsored racial discrimination in the jury system." 137 S. Ct. at 867. Given the purpose of this ruling, its strains credulity to accept the Government's position that the Court sought to create an exception to Federal Rule of Evidence 606(b) to permit evidence about "racial bias,

a familiar and recurring evil that, if left unaddressed, would risk systemic injury to the administration of justice," yet believe there is no issue with depriving Mitchell, a Native American man, of the ability to even investigate the possibility that his death-penalty trial suffered from racial bias. 137 S. Ct. at 868.

**b. Mitchell Will Suffer Irreparable Harm Absent a Stay**

If Mitchell's stay is denied, he will suffer irreparable harm. He will be barred from completing his appeal, which the Ninth Circuit has already authorized to go forward, and he will be executed absent a full merits review. The Government contends Mitchell has no legal right to avoid execution. (Resp. at 15.) If the Ninth Circuit rules in Mitchell's favor, this case will be sent back to this Court presumably to allow Mitchell to finally interview the trial jurors, and if this Court determines that racial bias did infect the jurors' deliberations, then Mitchell will likely be entitled to a new trial. The Government is incorrect, Mitchell does have a legal right to avoid execution such that he may pursue his lawful appeal. *See, e.g., Bucklew v. Lombardi*, 572 U.S. 1131 (2014) (application for a stay of execution treated as an application for stay pending appeal in the Eighth Circuit; stay granted "pending disposition of petitioner's appeal").

**c. The Balance of Equities Favors Mitchell**

It is difficult to credit the Government's argument that the United States has a strong federal interest in enforcing Mitchell's death judgment when it has not carried out an execution in over 16 years and now attempts to rush through five executions without a thorough vetting of its lethal injection proceedings. (Resp. at 15.) The Government continually touts that the Courts have previously upheld Mitchell's convictions and sentence, yet those rulings must be squared with the fact that Mitchell has been denied the ability to conduct a reasonable investigation. As previously mentioned, Mitchell's current appeal centers on a "defect in the integrity of [his] federal habeas proceedings" and, as such, prior court's decisions with respect to those proceedings are not necessarily reliable.

It is similarly difficult to understand why the Government would be so resistant to Mitchell's investigation, especially considering that this is a death-penalty case. Mitchell is not proposing to harass, embarrass, assault, or otherwise overly inconvenience the trial jurors. He is simply asking for the opportunity to carry out the investigation that almost every other criminal defendant would be permitted to conduct if they were tried in any other district court in the Ninth Circuit.

The Government's statement that Mitchell "should not be able to delay justice through speculative insinuations about his jurors" is misplaced. (Resp. at 16.) Mitchell timely filed his Rule 60(b) motion over a year ago, well before the Government gave any indication that it intended to execute Mitchell in December, 2019. The present time crunch is the Government's creation, not Mitchell's.

**d. An Injunction is in the Public's Interest**

The Government's argument that finality is a strong interest of the United States rings hollow for the reasons previously discussed concerning lethal injection. The Government does not acknowledge this long delay, or explain why it suddenly has a strong interest in finality after years of delay.

The Government then argues that Mitchell is attempting to speak for the people of Arizona and the victim's family. (Resp. at 16, 17.) In actuality, Mitchell cited the opinion of the late Justice Reinhardt of the Ninth Circuit, who in turn cited the positions of the Navajo Nation, members of the Slim family, and the Office of the United States Attorney for the District of Arizona, for the proposition that the people of Arizona did not want a death sentence in this particular case. (Mot. at 11-12.) The Government's argument that "the jury spoke for the community and unanimously recommended a capital sentence" ironically highlights one of the key reasons why Mitchell wanted to interview the jurors in the first place: In a case committed by a Navajo, with Navajo victims on Navajo land, the trial in which Mitchell was convicted and sentenced to death was moved by the Government hundreds of miles from the reservation and heard

by a jury comprised of eleven white people and one Navajo.[3] The Government claims that the public interest here is really "a federal one" spearheaded by an Attorney General "striving for consistency" as Mitchell "was convicted of a federal crime under a statute of nationwide applicability." Opposition at 16-17. Yet Mitchell has consistently questioned whether his prosecution was truly an attempt at national consistency given the circumstances of his prosecution and the fact that he is the only Native American on federal death row.[4]

//

//

//

---

[3] The Government actually exercised a peremptory challenge against this juror, but this Court sustained Mitchell's objection under *Batson v. Kentucky,* 476 U.S. 79 (1986). The Government was permitted, over Mitchell's objection, to strike the one African-American potential juror from the panel. *United States v. Mitchell*, 502 F.3d 931, 956-58 (9th Cir. 2007).

[4] If this Court needs further information on whether the public interest, which the Government claims "lies in the stewardship of the Attorney General," (Resp. at 17) would be better served by granting or denying Mitchell an opportunity to interview jurors, Mitchell respectfully requests that the Court permit an inquiry into this issue and grant Mitchell subpoena power with respect to the Government's charging decision in this case.

## II. CONCLUSION

For the foregoing reasons, the Court should grant Mitchell's request for a stay until such time that his appeal is resolved and the Ninth Circuit issues its mandate.

Mitchell respectfully asks that the Clerk of this Court serve any stay order on the Government and T.J. Watson, Complex Warden at FCC Terre Haute, at:

**T.J. Watson, Complex Warden**
U.S. Penitentiary Terre Haute
4700 Bureau Road South
Terre Haute, IN 47802
812.244.4400 (phone)
812.244.4791 (fax)

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: August 26, 2019

By */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Defendant/Movant
Lezmond Charles Mitchell

## Responses and Replies

3:09-cv-08089-DGC Mitchell v. United States of America **CASE CLOSED on 09/30/2010**

2255,APPEAL,CLOSED,CMX,DTE,PROTO

**U.S. District Court**

**DISTRICT OF ARIZONA**

### Notice of Electronic Filing

The following transaction was entered by Aminoff, Jonathan on 8/26/2019 at 5:17 PM MST and filed on 8/26/2019

**Case Name:** Mitchell v. United States of America
**Case Number:** 3:09-cv-08089-DGC
**Filer:** Lezmond Mitchell
**WARNING: CASE CLOSED on 09/30/2010**
**Document Number:** 90

**Docket Text:**
**REPLY to Response to Motion re: [84] MOTION to Stay *Execution* filed by Lezmond Mitchell. (Aminoff, Jonathan)**

**3:09-cv-08089-DGC Notice has been electronically mailed to:**

Celeste Bacchi celeste_bacchi@fd.org

Jonathan C Aminoff jonathan.aminoff@fd.org

Sean K Kennedy sean_kennedy@fd.org

Sharon K Sexton Sharon.Sexton@usdoj.gov, CaseView.ECF@usdoj.gov, marjorie.dieckman@usdoj.gov

Statia Peakheart statia_peakheart@fd.org

William G Voit William.Voit@usdoj.gov, CaseView.ECF@usdoj.gov

**3:09-cv-08089-DGC Notice will be sent by other means to those listed below if they are affected by this filing:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=8/26/2019] [FileNumber=19655232-0] [0342c8f60b4a212267417ba51c128545a3548259e13fa575a049213d42aec8dfc1 4e53abaf31f81f4c43a92dfb6c854f8411d6f858c23a67eacff24459400600]]

MICHAEL BAILEY
United States Attorney
District of Arizona
WILLIAM G. VOIT
Arizona State Bar No. 025808
Email: William.Voit@usdoj.gov
SHARON K. SEXTON
Arizona State Bar No. 012359
Email: Sharon.Sexton@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Respondent*
*United States of America*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Charles Mitchell,<br>Petitioner,<br>v.<br>United States of America,<br>Respondent. | No. CV-09-08089-PCT-DGC<br><br>Related Criminal Case<br>No. CR-01-1062-PCT-DGC<br><br>**RESPONSE TO PETITIONER'S MOTION FOR STAY OF EXECUTION**<br><br>(Capital Case)<br><br>**(Oral Argument Requested)** |

Petitioner Lezmond Charles Mitchell was convicted and sentenced to death for the double murder of a 63-year old grandmother and her 9-year old granddaughter. In the nearly two decades since his crime, Petitioner's conviction and sentence have been consistently and repeatedly upheld by every court to review them, including this Court, the Ninth Circuit, and the Supreme Court. The judgment is final and enforceable. Pursuant to his lawful authority, the Attorney General has scheduled Petitioner's execution to take place in four months, on December 11, 2019.

This Court should not stay the execution. First and foremost, it lacks jurisdiction in light of Petitioner's most recent notice of appeal. Rule 62(d) only applies in the context of injunctive appeals. There is also no need for district court jurisdiction. The Ninth Circuit has set a briefing schedule that will conclude in mid-October, leaving

sufficient time to resolve the single discrete issue on appeal. It would be both speculative and premature for the district court to enjoin an execution set months in the future on the assumption that the appellate court will not act promptly.

Even if there were jurisdiction, a stay would not be warranted. The Supreme Court has been clear that "a stay of execution is an equitable remedy" and thus "is *not* available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (emphasis added). Petitioner fails to meet the equitable requirements for a stay. As no case has ever adopted his argument, he does not establish a likelihood of success on the merits. Nor does he show that the equities tip substantially in his favor. Petitioner's conviction and sentence have been repeatedly upheld, the United States has a strong federal interest in ensuring the finality of the judgment, and Petitioner has no constitutional, statutory, or other right to avoid the consequences of his crime.

For all these reasons, Petitioner's motion should be denied.

## I. BACKGROUND[1]

In 2001, in the midst of preparing for an armed robbery, Petitioner carjacked and murdered Alyce Slim, a 63-year old grandmother, and "Jane Doe," her 9-year old granddaughter. In order to steal the truck Alyce was driving, Petitioner and a confederate set upon her with knives and butchered her alive. As Jane Doe looked on, they stabbed Alyce 33 times. Alyce was unarmed, but she fought back against the two men, suffering 16 incised defensive wounds to her hands before she finally succumbed.

After Petitioner finished killing Alyce, her body was shoved into the back seat of the truck—along with Jane Doe, who was forced to ride next to her grandmother's mutilated corpse as Petitioner drove the stolen truck 30-40 miles into the mountains. Reaching a secluded area, Petitioner stopped, dragged Alyce's body out onto the ground, and ordered Jane Doe to lay down on the ground and die.

Petitioner then slashed the 9 year-old's throat, twice. But Jane Doe still didn't die. So Petitioner and his confederate found large, 20-pound rocks and took turns dropping

[1] *See generally United States v. Mitchell*, 502 F.3d 931, 942-46 (9th Cir. 2007).

them onto Jane Doe's head until her skull was crushed in. Afterward, the men stripped the victims down to their panties and dismembered their bodies. They severed and buried the victims' heads and hands and dragged their naked torsos into the woods.

Petitioner would later confess that he stabbed the "old lady," told Jane Doe to lay down on the ground and die, cut the young girl's throat twice, gathered rocks and took turns dropping them onto her head, and helped to dismember the bodies. He ultimately led law enforcement to where the bodies were located.

Petitioner was charged and convicted of eleven counts, including Carjacking Resulting in Death, for which he was sentenced to death at the recommendation of the trial jury. Trial proceeded after prescreening questionnaires and over a dozen days of exhaustive juror voir dire. There has never been any evidence of racial bias by any member of the jury, which included a Native American.

The Ninth Circuit affirmed the conviction and sentence in all respects. *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007). The Ninth Circuit rejected as meritless every single argument Petitioner made regarding his jury pool, including many of the arguments that he continues to repeat in his briefing.[2] The Supreme Court denied certiorari. *Mitchell v. United States*, 553 U.S. 1094 (2008).

In 2009, six years after his conviction, Petitioner filed a motion for authorization to interview jurors (CR 1) alongside a motion under 28 U.S.C. § 2255 to vacate his convictions and sentence (CR 9-12). The motion to interview jurors neither alleged nor offered reason to believe that any juror was racially biased; in fact, the motion asserted that it "does not seek to impeach the verdict" on this issue. (CR 1 at 15.) This Court denied the motion because it was untimely, failed to provide the affidavits and interrogatories required by local rule (something he still has not done), and failed to establish good cause to interrogate jurors years after the verdict. (CR 21.)

[2] For example, the Ninth Circuit found the jury pool was fair and representative. *See Mitchell*, 502 F.3d at 950 (affirming district court's findings that "36 of the 207-person venire (17.39%) identified themselves as Native American" while "Native Americans comprise 16.7% of the Prescott master jury wheel (from which the jury was drawn in this case)" and "the adult population of the Prescott Division was 18.64% Native American").

Petitioner later amended his original 2255 motion in an attempt to again raise his request to interview the jurors. (CR 42-1 at 303-09.) Because the motion was raised in a post-conviction setting, rather than at trial or sentencing, this Court ruled it was not a cognizable claim for relief. (CR 56 at 60.) The Court denied all claims. (*Id*. at 62.)

This issue was raised yet again as part of Petitioner's appeal of the Court's denial of the 2255 motion. (CA No. 11-99003, Dkt. # 23, at 78-84.) The Ninth Circuit, while not specifically addressing this issue, affirmed the district court's judgment in all respects and affirmed the denial of a certificate of appealability ("COA") for all uncertified claims. *Mitchell v. United States*, 790 F.3d 881, 894 & n.7 (9th Cir. 2015). The Supreme Court again denied certiorari. *Mitchell v. United States*, 137 S.Ct. 38 (2016).

In 2018, Petitioner filed a motion to reopen his 2255 litigation to interview the jurors, citing *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855 (2017). (CR 71.) Petitioner again did not offer any reason to believe his jurors were actually biased, nor did he submit an affidavit and proposed interrogatories. This Court denied the motion and denied a COA. (CR 80.) The Ninth Circuit granted a COA on the reasoning that one had been granted for other claims in the prior 2255 appeal, and it set a briefing schedule that will conclude no later than October 18. (CA 18-17031, Dkt. # 10-1 (reply due within 21 days of the answering brief, which is due September 27).)

On July 25, 2019, the Attorney General exercised his authority to set Petitioner's execution date for December 11, 2019, then some four-and-a-half months in the future. Petitioner now moves this Court to enjoin that execution. (CR 84 ("Mot.").)

## II. JURISDICTION

"It is clear that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). It is equally clear that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Thus, the "filing of a notice of appeal confers jurisdiction on the court of appeals and

divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985).

Here, Petitioner asserts that this Court has jurisdiction pursuant to Federal Rule of Civil Procedure 62(d). (*See* Mot. at 4 (citing pre-amendment Rule 62(c)).) By its plain language, however, Rule 62(d) only applies during injunctive appeals. The rule allows district courts to grant or modify injunctions "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify *an injunction*." Fed. R. Civ. P. 62(d) (emphasis added).

"Rule 62(d) addresses the trial court's continuing jurisdiction over its rulings on claims *for injunctive relief* after those rulings have been appealed." 2 FEDERAL RULES OF CIVIL PROCEDURE, RULES & COMMENTARY § 62, Practice Commentary (West 2019 ed.) (emphasis added). *See also Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 819 (5th Cir. 1989) (the rule provides "limited injunctive powers during the pendency of an appeal" that "allow a district judge to retain jurisdiction for purposes of granting or modifying an injunction subsequent to the filing of an appeal of the injunction"); *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, No. CV 09-00598 DAE-KSC, 2011 WL 2441679, at *4 (D. Haw. June 14, 2011) ("Rule 62(c) [now (d)], by its terms, requires that the appealed matter relate to an injunction."). To apply the rule outside that context would require ignoring the plain language of the rule, as well as the Advisory Committee Notes, which also explain that subdivision (d) applies "to interlocutory *injunction* orders and to final judgments that grant, refuse, or otherwise deal with *an injunction*." Fed. R. Civ. P. 62, Advisory Committee Notes, 2018 Amendments (emphases added).

The only case Petitioner cites is *NRDC v. Sw. Marine Inc.*, 242 F.3d 1163 (9th Cir. 2001), but that case involved an appeal of an injunction order. The court found that "the district court had jurisdiction and discretion to make the post-appeal modifications, *which slightly modified and enforced the injunction*, to preserve the status quo." *Id.* at 1165 (emphasis added). *NRDC* confirmed that the "exception to the jurisdictional transfer principle has been codified in Rule 62(c) [now (d)]," *id.* at 1166, and it concluded that

"the district court had jurisdiction under Rule 62(c) to make the modifications" because "neither modification at issue here impermissibly altered the status quo *with respect to the appeal of the injunction*," *id.* at 1168 (emphasis added).

The cases *NRDC* cited likewise all involved injunctive appeals. *See id.* at 1166 (citing *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 172, 177 (1922) (appeal involving an amended "decree which imposed conditions upon continuation of the injunction"); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976) (district court had jurisdiction to grant "further injunctive relief and compliance fines" and to "modif[y] the temporary injunction" during appeal of contempt fines imposed for party's ongoing refusal to comply with the injunction's terms; explaining that then-Rule 62(c) "provides that, in the case of an appeal *from an order granting an injunction*, the district court does not lose jurisdiction to alter the injunction") (emphasis added); *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 64, 79 (9th Cir. 1951) (opining that the district court would have jurisdiction to grant a temporary injunction against sale of misbranded drugs during the pendency of "an appeal from an order of the district court denying permanent injunctions")).

Here, Petitioner has not appealed from an order granting or denying injunctive relief, directing the course of conduct of a party, or anything even remotely analogous. His appeal is from an order denying a Rule 60(b)(6) motion to reopen the judgment. (CR 71, 80, 81.) Indeed, the relief Petitioner requested was not even directed to the conduct of the opposing party. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (an injunction is an order "by which a court directs the conduct of a party") (quotation omitted); *Thompson v. Enomoto*, 815 F.2d 1323, 1326 (9th Cir. 1987) ("Injunctions are orders that are directed to a party, enforceable by contempt . . . .") (quotation omitted). The Rule 60(b)(6) motion was instead directed to the Court, seeking to allow Petitioner to interrogate jurors without having to comply with the Court's local rules requiring good cause. (CR 71.) Rule 62(d) provides no jurisdictional basis for issuing injunctions during the appeal of such an order.

Although Petitioner did not raise the issue, the Court at the status conference inquired about Federal Rule of Appellate Procedure 8(a)(1)(A), which provides that "[a] party must ordinarily move first in the district court" for a stay of the judgment or an injunction. FRAP 8(a)(1) is not an independent grant of jurisdiction to the district court. "The grant of a stay or injunction by the district court is regulated by Civil Rule 62, not Appellate Rule 8." 20 MOORE'S FEDERAL PRACTICE - CIVIL § 308.12 (2019).

FRAP 8(a)(1) recognizes that there are many cases in which a stay of judgment may indeed be obtained in the district court, including as a matter of right by providing bond or other security (Rule 62(b)) and in genuine Rule 62(d) situations where an injunctive order is under appeal. The questions likely to arise in such cases are ones the district court is best suited to answer (for instance, the amount of the bond or security necessary or the scope of the injunction being appealed). FRAP 8(a)(1) thus codifies the principle articulated in *Cumberland Tel. & Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 260 U.S. 212, 219 (1922), that where multiple courts have jurisdiction to grant an injunction, the request should first be directed to "the court which is best and most conveniently able to exercise the nice discretion needed to determine [the] balance of convenience[.]" That rule of prudence does not create jurisdiction where it does not otherwise exist.

Moreover, prudentially, it makes much more sense for jurisdiction to be with the appellate court right now. Adopting Petitioner's argument would require this Court to speculate about the Ninth Circuit's timeliness in ruling on the appeal. There is no reason to believe the Ninth Circuit will be dilatory; it has established a briefing schedule that will conclude, at the latest, by October 18. Petitioner's execution will not take place until December 11, almost two months later, leaving sufficient time to rule. This is especially true because the issue on appeal is discrete, it has already been briefed several times, and a capital case like this one will surely be a priority. But if the Ninth Circuit needs more time to address this matter, that should be for the Ninth Circuit to say.

For all these reasons, the Court lacks jurisdiction and should refrain from issuing a stay order regarding Petitioner's execution date.

## III. PETITIONER IS NOT ENTITLED TO AN INJUNCTION

Although the Court lacks jurisdiction, in an abundance of caution, the United States also notes that Petitioner does not meet his heavy burden to obtain an injunction.

### A. Petitioner is Not Entitled to a Stay as a "Matter of Right"

Petitioner claims he is "entitled to a stay of execution as a matter of right." (Mot. at 4.) But "[a] stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). The Supreme Court has expressly held that "a stay of execution is an equitable remedy" and thus "is *not* available as a matter of right." *Hill*, 547 U.S. at 584 (emphasis added). The Ninth Circuit, of course, follows this principle. *See Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) ("[A] stay of execution is an equitable remedy. It is not available as a matter of right . . . ."). Thus, to obtain a stay of execution, Petitioner must meet the traditional standard for equitable relief, which he does not do. *See infra* Part III.B.

*Barefoot v. Estelle*, 463 U.S. 880 (1983), is not to the contrary. Indeed, *Hill* cited *Barefoot* as support for the proposition that "like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584 (citing *Barefoot*, 463 U.S. at 895-96). Although predating the Supreme Court's current articulation of the equitable stay standard, *Barefoot* nonetheless recognized equitable considerations (like whether there is a "significant possibility" of merits success, "a likelihood [of] irreparable harm," and the like). *See id.* at 892-96. *Barefoot* does not excuse compliance with *Hill*.

Rather, *Barefoot* laid out "general guidelines" for appellate courts evaluating stay requests. *Id.* at 892. The principle Petitioner appears to invoke is that "a circuit court, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal." *Id.* at 893-94 (such a certificate requiring a substantial showing of the denial of a federal right).

This is inapplicable for several reasons (in addition to the lack of probable success on the merits, *see infra* Part III.B.1). First, the matter currently before the Ninth Circuit is not Petitioner's "initial habeas appeal." *Id.* at 894. Petitioner's initial 2255 appeal ended years ago, and his conviction and sentence were affirmed. Petitioner cites no case holding that a second appeal in a such a case, from an order denying a Rule 60(b)(6) motion, is the same as his "initial habeas appeal." *Id.* In fact, he concedes the Ninth Circuit employs the equitable stay analysis in just such circumstances. (Mot. at 6.) *See, e.g.*, *Cook v. Ryan*, 688 F.3d 598, 608, 612-13 (9th Cir. 2012); *Wood*, 759 F.3d at 1121.

Petitioner argues he is entitled to a stay because his motion was not a second or successive petition. (Mot. at 6.) Assuming that for present purposes,[3] it still would not change the need to apply the equitable test. *Hill* itself held the inmate's 1983 action was not a second or successive petition, but that still "does not entitle the complainant to an order staying an execution as a matter of course." 547 U.S. at 584. Rather, like other stay applicants, the petitioner was required to satisfy the equitable factors. *Id.* *See also* *Cook*, 688 F.3d at 608, 612-13 (applying equitable test even though the Rule 60(b)(6) motion was not a second or successive petition).

Petitioner argues *Cook* is also not dispositive because "the stay request was moot when denied." (Mot. at 6.) The stay request was not denied as moot; the Ninth Circuit analyzed and denied it on the merits of the equitable test. *See Cook*, 688 F.3d at 612-13.

---

[3] We acknowledge the Court's prior holding that Petitioner's motion was not a second or successive petition, although the United States does respectfully disagree. After this Court issued the Order under appeal, the Fifth Circuit in similar circumstances reached the opposite conclusion. *See In re Robinson*, 917 F.3d 856, 865 (5th Cir. 2019) ("Robinson is attempting to advance a new habeas claim related to jury impartiality (in light of [*Pena-Rodriguez*]) under the guise of a Rule 60(b)(6) motion. His motion seeks to re-open the proceedings for the purpose of adding new claims and, as such, is the definition of a successive claim.") (internal quotations omitted). As a second petition, it would be barred because *Pena-Rodriguez* is not a new rule of constitutional law made retroactive on collateral review. 28 U.S.C. § 2255(h)(2); *see, e.g.*, *Tharpe v. Warden*, 898 F.3d 1342, 1344 (11th Cir. 2018) (denying certificate of appealability because the inmate's "claim arises from the rule announced in [*Pena-Rodriguez*], and that rule does not apply retroactively"), *cert. denied sub nom. Tharpe v. Ford*, 139 S.Ct. 911 (2019); *Robinson*, 917 F.3d at 869 (describing the argument that *Pena-Rodriguez* announced a new substantive rule that applies retroactively as "exceedingly doubtful," but declining to reach the issue).

Second, Petitioner fails to establish that a stay is "necessary to prevent the case from becoming moot." *Barefoot*, 463 U.S. at 894. A stay may be necessary "if a court of appeals is unable to resolve the merits of an appeal before the scheduled date of execution." *Id.* at 889. Here, there is no reason to believe that the Ninth Circuit will be unable to resolve the appeal before December 11. As noted above, the parties have a briefing schedule that will conclude almost two months beforehand, and this Court should not presume the Ninth Circuit would delay a ruling past that date.

*Barefoot* itself undercuts Petitioner's assumption on this point. *Barefoot* upheld the denial of a motion to stay execution where the appellate schedule allowed for two-and-a-half months between the district court's order and the execution date. *See id.* at 886, 890. The execution date was January 25, 1983, and "[f]rom the time the District Court ruled on the petition on November 9, 1982, petitioner had 71 days in which to prepare the briefs and arguments which were presented to the Fifth Circuit on January 19, 1983." *Id.* at 890. The Court of Appeals ruled on the merits and denied the stay the very next day. *Id.* at 886. The Supreme Court held that there was no prejudice to the inmate from such a schedule and that "[t]he course pursued by the Court of Appeals in this case was within the bounds" of its precedent. *Id.* at 890.

Another example is *Rodriguez v. Texas*, 515 U.S. 1307, 1308 (1995) (Scalia, as Circuit Justice). In *Rodriguez*, an inmate scheduled to be executed on November 8 was denied a stay of execution when he filed his cert petition on August 15. *Id.* at 1307-08. Recognizing that a stay of execution "is no small matter, and should not be considered when no need exists," the stay request was denied because the purpose of a stay is to prevent the execution date from interfering with appellate proceedings, and "there is no reason to believe such interference will occur" where sufficient time remains for those proceedings to take place. *Id.*

The same is true here. Sufficient time remains to address Petitioner's appeal. He is not entitled to a stay "as a matter of right," nor does prudence dictate entry of a stay by a district court based on conjecture about the appellate court's schedule.

**B. Petitioner Does Not Meet His Burden to Obtain an Equitable Stay**

Standard injunctive principles "apply even in the context of an impending execution." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citing *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012)). Thus, to obtain a stay of execution, an inmate "must demonstrate (1) that he is likely to succeed on the merits of such a claim, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Alternatively, injunctive relief could be granted if he demonstrated either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005) (internal quotation and brackets omitted). "These two alternatives represent extremes of a single continuum, rather than two separate tests." *Id.* (quotation omitted).

"It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Indeed, a preliminary injunction carries with it the "requirement for substantial proof," a standard "much higher" than "even a defendant's motion for summary judgment." *Id.*

**1. No Significant Possibility of Success on the Merits**

"A federal court will only grant a stay of execution where the inmate seeking the stay can show a significant possibility of success on the merits." *Moormann v. Schriro*, 672 F.3d 644, 647 (9th Cir. 2012). A stay of execution must be denied where the inmate fails to meet this burden. *See, e.g.*, *Cook*, 688 F.3d at 613 ("Because Cook . . . fails to show a significant possibility of success on the merits, we must deny his request for a stay [of execution].") (internal quotation omitted).

Where the "motion for a stay of execution depends on the availability of Rule 60(b)(6) review," the inmate must show "a likelihood of success on the merits of his Rule

60(b)(6) motion." *Diaz v. Stephens*, 731 F.3d 370, 379 (5th Cir. 2013); *see also Workman v. Bell*, 484 F.3d 837, 839 (6th Cir. 2007) ("The success-on-the-merits inquiry here relates to the district court's rejection of [the inmate's] Rule 60(b) motion[.]").

Here, Petitioner claims he has a "strong likelihood of success on the merits" simply because a COA has been granted by the Ninth Circuit. (Mot. at 8.) But the mere fact that a COA has been issued does not equate to a stay. *See Moran v. McDaniel*, 80 F.3d 1261, 1268 (9th Cir. 1996) ("By issuing the certificate [of appealability], Moran argues, the district court implicitly determined that a stay was justified. We disagree."). "The standard for a stay is, in part, a showing of a substantial likelihood of success on the merits of the claims, *which is a higher standard than the one for a COA*." *Lambrix v. Sec'y, DOC*, 872 F.3d 1170, 1183 n.6 (11th Cir. 2017) (emphasis added).[4]

Petitioner does not make a substantial showing that his argument will succeed. By its own terms, *Pena-Rodriguez* simply carved out an exception to Federal Rule of Evidence 606(b), which otherwise bars impeachment of a verdict by evidence of what happened during jury deliberations. The Supreme Court held that "where a juror makes a clear statement that he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any denial of the jury trial guarantee." *Pena-Rodriguez*, 137 S.Ct. at 869.

Courts have recognized this was a narrow holding. *See United States v. Birchette*, 908 F.3d 50, 57 (4th Cir. 2018) ("There are sound reasons to read *Pena-Rodriguez* as a narrow exception."); *United States v. Baker*, 899 F.3d 123, 133-34 (2d Cir. 2018) (*Pena-Rodriguez* creates a "narrow exception"); *United States v. Robinson*, 872 F.3d 760, 764 (6th Cir. 2017) (exception applies "in very limited circumstances"); *Young v. Davis*, 860 F.3d 318, 333 (5th Cir. 2017) (exception applies "narrowly").

---

[4] Notably, the Ninth Circuit here did not offer commentary about the merits of Petitioner's current argument; rather, it simply granted the COA because in the initial appeal a decade ago, "[t]he district court previously determined that at least three of the constitutional claims raised in appellant's underlying 28 U.S.C. § 2255 motion met the substantive certificate of appealability standard." (CA 18-17031, Dkt. # 10-1 at 1.)

Petitioner cites no case interpreting *Pena-Rodriguez* as granting criminal defendants an unfettered right to interrogate jurors, with no court oversight and without showing good cause. (Mot. at 8-9.) Rather, the Supreme Court expressly left the mechanics of acquiring such evidence to state and local rules, including those (like our district's) that limit post-verdict contact with jurors. *See Pena-Rodriguez*, 137 S.Ct. at 869 (citing overviews of state and federal district court rules and explaining that "[t]he practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, *both of which often limit counsel's post-trial contact with jurors*") (emphasis added).

Petitioner's next argument reveals why these rules have long existed. He claims he has raised "serious questions going to the merits" by suggesting "racial bias" in his jurors (Mot. at 9)—with no evidence whatsoever. He repeats arguments about the racial composition of his venire pool that the Ninth Circuit conclusively resolved against him more than a decade ago. *See Mitchell*, 502 F.3d at 949-59 (affirming district court's findings that the jury pool represented a fair cross-section of the community, including Native Americans; noting settled law that no such claim can be raised about petit juries; and rejecting every single challenge to jury selection).

Petitioner next points out that not all of his jurors found the Navajo Nation letter mitigating, but this was a non-statutory factor committed to the jury's discretion. No court reviewing this case has found any juror misconduct. Indeed, the letter, emphasizing the seriousness of taking human life, only served to highlight the aggravated nature of Petitioner's heinous murders. In the Ninth Circuit's apt summation: "As full review of the record shows, the evidence was overwhelming. By any reasonable measure, the mitigating factors proffered by Mitchell were weak when compared to the gruesome nature of the crimes and the impact they had on the victims' family." *Id.* at 996.

Nor are Petitioner's jurors to be suspected of "racial bias" because of "this country's history . . . of discrimination towards the Native people." (Mot. at 9.) People should be judged by the content of their own character. The jurors, following their oath

and in accordance with 18 U.S.C. § 3593(f), attested that race played no part in their decision. (Criminal Case 01-1062, RT 4206.) One of them was Native American. Each juror was subjected to exhaustive questioning during voir dire that spanned more than a dozen days. (Criminal Case 01-1062, CR 253, 262, 266-270, 272, 277-78, 280, 285, 289-90, 292, 295.) The jurors were told that if they wished to speak with the lawyers, they were free to do so, and this was made easy because the lawyers were instructed to stand in the hallway as the jurors filed past them after the trial ended. (Criminal Case 01-1062, RT 4207-08.) Having completed their public service in a lengthy trial about a gruesome and emotionally wrenching double murder, the jurors became entitled to peace and protection from baseless interrogations designed to impugn their verdict.

Courts "decline to denigrate jury trials by afterwards ransacking the jurors in search of some ground for a new trial." *Wilkerson v. Amco Corp.*, 703 F.2d 184, 185-86 (5th Cir. 1983) (internal quotation and ellipsis omitted). There are "very cogent reasons for requiring parties to make a showing of likely misconduct before allowing such an inquiry," including "protecting the jury from post-verdict misconduct and the courts from time-consuming and futile proceedings," "reducing the chances and temptations for tampering with the jury," and "increasing the certainty" of the verdict. *Id.* at 185.

Petitioner does not show a likelihood of success in establishing a constitutional right to juror interrogations about supposed racial bias, for which there has never been any actual evidence. He therefore cannot obtain injunctive relief.

**2. Petitioner's Injury Argument is Speculative**

Petitioner claims that it is "beyond dispute" that he will suffer irreparable harm without a stay because "he will be executed before his appeal can be resolved." (Mot. at 9.) This is entirely speculative, and indeed implausible on its face. The appeal will be fully briefed well before the execution date, and the Ninth Circuit is unlikely to be dilatory. It would be premature for this Court to stay his execution on the assumption that the Ninth Circuit will not have time to resolve his case before December. Speculation that the appeal might remain unresolved in another court four months from

now is not enough, and Petitioner has not shown that he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20-22.

Moreover, Petitioner has no legal right to avoid execution. He was duly convicted and sentenced, and his conviction and sentence have been repeatedly upheld by every court to consider them. The Supreme Court cautions that "direct appeal is the primary avenue for review of a conviction or sentence, and death penalty cases are no exception." *Autry v. Estelle*, 464 U.S. 1, 3 (1983) (quotation omitted). Thus, "[w]hen the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence." *Id.* (quotation omitted). Here, Petitioner's sentence is final and enforceable. His only cognizable interest is in "being executed *in a constitutional manner*." *Beaty*, 649 F.3d at 1072 (emphasis added). To show irreparable harm, then, he would have to show that his execution would actually be unconstitutional, a showing he has not made. This is far from a sufficient showing of irreparable harm.

**3. The Balance of the Equities Cuts Against Petitioner**

Measured against Petitioner's speculative claim, the United States has a strong federal interest in enforcing its judgment. Equity must be sensitive to the government's "strong interest in enforcing its criminal judgments." *Hill*, 547 U.S. at 584; *see also Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) ("Equity must take into consideration the State's strong interest in proceeding with its judgment . . . ."); *Cook*, 688 F.3d at 613 (recognizing the government's "compelling interest" in seeing a lawful judgment enforced). Suits that are "dilatory or speculative" impinge on those interests, as does "[r]epetitive or piecemeal litigation." *Hill*, 547 U.S. at 584-85.

The fact that this case has been repeatedly affirmed, in both direct and collateral appeals, provides the United States with a strong interest in finality. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998) ("A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief.").

Petitioner claims "the Government has no interest in pursuing an execution tainted by racial bias" (Mot. at 10), but as discussed, he has never offered any legitimate reason

to suspect that his jurors were "tainted by racial bias," and he should not be able to delay justice through speculative insinuations about his jurors. The federal courts have universally rejected every challenge Petitioner has ever raised to his conviction and sentence. The judgment is final, and the Attorney General has exercised his lawful authority to effect that repeatedly-upheld judgment. The equities cut against Petitioner.

**4. An Injunction is Not in the Public Interest**

Finality is not just a strong interest of the United States as a litigant. "Finality is essential to both the retributive and the deterrent functions of criminal law," and "[w]ithout finality, the criminal law is deprived of much of its deterrent effect." *Calderon*, 523 U.S. at 554 (quotation omitted). "Only with an assurance of real finality can the State execute its moral judgment in a case" and vindicate the public's "'powerful and legitimate interest in punishing the guilty.'" *Id.* at 556 (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Petitioner's crimes were heinous, cruel, and depraved. The public has a strong interest in executing the moral judgment and just punishment of the penalty imposed and repeatedly affirmed in this case. The public interest does not support a stay in the absence of any evidence of an illegal verdict.

Petitioner recognizes "that the public has an interest in seeing a judgment enforced," but he asserts (citing only a dissenting opinion) that is "rebutted" because "the people of Arizona did not want a capital prosecution in this case." (Mot. at 11-12.) This argument is not persuasive on its own terms, as Petitioner cannot claim to speak for the people of Arizona. The jury spoke for the community and unanimously recommended a capital sentence. Further, if this were the issue, the fact that the State of Arizona has adopted the death penalty would contravene his argument.

But more importantly, Petitioner misapprehends the nature of the public's interest, which is a federal one. Petitioner was convicted of a federal crime under a statute of nationwide applicability. The decision to seek the death penalty is committed to the sole discretion of the Attorney General in his role as the nation's chief law enforcement officer. Here, the decision to seek, obtain, maintain, and carry out a capital sentence has

been made and upheld by Attorneys General in every administration for almost two decades. The Attorney General strives for "[n]ational consistency," employing a "multi-tier process" that is "carefully designed to provide reviewers with access to the national decision-making context, and thereby, to reduce disparities across districts." JUSTICE MANUAL § 9-10.140. The public interest is that of the nation at large, and through the democratic process, that interest lies in the stewardship of the Attorney General.

Finally, Petitioner claims that the family of his victims has no interest in finality because, he asserts, "the victims' family requested that the Government not seek death." (Mot. at 12.) Petitioner can no more speak for the victims' family than for the people of Arizona. Many victim impact statements were submitted in the criminal case; some supported a capital sentence, others did not. (*See* Criminal Case 01-1062, PSR & Att.)[5] As recently as last week, the father of the murdered child expressed strong support for the capital sentence and his desire to be personally present when it is carried out.

Doubtless, the many family members who have been victimized by Petitioner's crimes are of as diverse and complicated views on the death penalty as any group of people. But all of them have a strong interest in the finality of the judgment. Indeed, since Petitioner's plan appears to be to try to undermine the entire verdict by accusing his jurors of racial animus, he is seeking to subject the victims' family to years of additional litigation and *yet another trial*. It is implausible any family members support that.

In sum, Petitioner fails to establish any, let alone all, of the equitable requirements for a stay of execution. His motion therefore should be denied.

## **IV. CONCLUSION**

For the foregoing reasons, Petitioner's motion should be denied.

---

[5] (*See, e.g.*, Statements of K.H. ("I [am] requesting that the defendant Lezmond Mitchell pay for what he has done to my mother and niece and how he has hurt our family/families. I'm for the death penalty. He knew right from wrong."), B.H. ("He had no respect for life and no remorse for what he did to my grandma and cousin. I want the death penalty for him."), D.H. ("I want Justice which is the death penalty.").)

RESPECTFULLY SUBMITTED this 19th day of August, 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*/s William G. Voit*
WILLIAM G. VOIT
SHARON K. SEXTON
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of August, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Celeste Bacchi
Email: Celeste_Bacchi@fd.org
Jonathan C. Aminoff
Email: Jonathan.Aminoff@fd.org
Sean K. Kennedy
Email: Sean_Kennedy@fd.org
Statia Peakheart
Email: Statia_Peakheart@fd.org
Federal Public Defender's Office
Central District of California
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Petitioner Lezmond Charles Mitchell

*/s William G. Voit*
U.S. Attorney's Office

HILARY POTASHNER (CA Bar No. 167060)
Federal Public Defender
JONATHAN C. AMINOFF (CA Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (CA Bar No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Movant
LEZMOND CHARLES MITCHELL

**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lezmond Charles Mitchell,<br>Defendant/Movant,<br>v.<br>United States of America,<br>Plaintiff/Respondent. | Civil No. 3:09-CV-08089-DGC<br>(Criminal No. 3:02-CR-01062-DGC)<br>**DEATH PENALTY CASE**<br>**EXECUTION SET FOR DECEMBER 11, 2019**<br>Honorable David G. Campbell<br>United States District Judge<br>**MOTION FOR STAY OF EXECUTION**<br>**Oral Argument Requested** |

**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| LEZMOND CHARLES MITCHELL,<br>Defendant/Movant,<br>v.<br>United States of America,<br>Plaintiff/Respondent. | Civil No. 3:09-CV-08089-DGC<br>(Criminal No. 3:02-CR-01062-DGC)<br>**<u>EXECUTION SET FOR DECEMBER 11, 2019</u>**<br>Honorable David G. Campbell<br>United States District Judge<br>**MOTION FOR STAY OF EXECUTION**<br>**Oral Argument Requested** |

Movant Lezmond Charles Mitchell moves for a stay of execution until his pending appeal is resolved. This motion is based on the attached memorandum of points and authorities and all the files and records of this case.

Respectfully submitted,

Dated: August 5, 2019

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

## TABLE OF CONTENTS


Page

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

- A. Proceedings Before This Court and the Relevant Appeals ........ 1
- B. Other Relevant Proceedings ........ 3

III. THIS COURT HAS JURISDICTION TO DECIDE THIS MOTION ........ 4

IV. ARGUMENT ........ 4

- A. Mitchell is Entitled to a Stay of Execution as a Matter of Right ........ 5
- B. Alternatively, Mitchell is Entitled to a Stay as a Matter of Equity ........ 7
  1. Legal Standard ........ 7
  2. Mitchell Has Established a Likelihood of Success on the Merits ........ 8
  3. Mitchell Will Suffer Irreparable Harm Without a Stay ........ 9
  4. The Balance of Hardships Tips in Mitchell's Favor ........ 9
  5. A Stay is in the Public Interest ........ 11

V. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ........ 9

*Barefoot v. Estelle*,
463 U.S. 880 (1983) ........ 4, 5, 6

*Beaty v. Brewer*,
649 F.3d 1071 (9th Cir. 2011) ........ 7, 9

*Buck v. Davis*,
137 S. Ct. 759 (2017) ........ 10

*Cook v. Ryan*,
688 F.3d 598 (9th Cir. 2012) ........ 6, 11, 12

*Garrison v. Patterson*,
391 U.S. 464 (1968) ........ 6

*Gomez v. U.S. Dist. Court*,
503 U.S. 653 (1992) ........ 10

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) ........ 2

*Hill v. McDonough*,
547 U.S. 573 (2006) ........ 4, 6, 7, 10

*Lonchar v. Thomas*,
517 U.S. 314 (1996) ........ 6

*Lopez v. Brewer*,
680 F.3d 1068 (9th Cir. 2012) ........ 7

*Marrese v. American Academy of Orthopaedic Surgeons*,
470 U.S. 373 (1985) ........ 4

*Mitchell v. United States*,
137 S. Ct. 38 (2016) ........ 2

*Mitchell v. United States*,
553 U.S. 1094 (2008) ........ 1

**TABLE OF AUTHORITIES**

Page(s)

*Mitchell v. United States*,
790 F.3d 881 (9th Cir. 2015) .......... 2, 11, 12

*Natural Resources Defense Council Inc. v. Southwest Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) .......... 4

*Nelson v. Campbell*,
541 U.S. 637 (2004) .......... 7

*Peña-Rodriguez v. Colorado*,
137 S. Ct. 855 (2017) .......... *passim*

*Preminger v. Principi*,
422 F.3d 815 (9th Cir. 2005) .......... 11

*Towery v. Brewer*,
672 F.3d 650 (9th Cir. 2012) .......... 7

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007) .......... 1, 9

*Wood v. Ryan*,
759 F.3d 1117 (9th Cir. 2014) .......... 6, 10

**Federal Statutes and Rules**

28 U.S.C. § 2253 .......... 4, 6

28 U.S.C. § 2255 .......... *passim*

Federal Rule of Civil Procedure 60 .......... 2, 3

Federal Rule of Civil Procedure 62 .......... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Movant Lezmond Charles Mitchell is currently litigating the constitutionality of his death sentence in the Ninth Circuit. Despite this ongoing litigation, on July 25, 2019, without any prior warning, the Government gave notice that it intends to execute Mitchell on December 11, 2019.

Mitchell respectfully moves this Court for a stay of execution such that he may litigate his appeal to conclusion. There are two types of stays of execution: stays as a matter of right and stays as a matter of equity. Under either standard, Mitchell is entitled to a stay until such time as the issues raised in his appeal are resolved and the Ninth Circuit issues its mandate.

## II. BACKGROUND

### A. Proceedings Before This Court and the Relevant Appeals

Mitchell was sentenced to death on September 15, 2003. *United States v. Mitchell*, CR-01-1062, Dkt. No. 425. The Ninth Circuit affirmed Mitchell's convictions and sentences, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), and the Supreme Court denied certiorari. *Mitchell v. United States*, 553 U.S. 1094 (2008).

On June 8, 2009, Mitchell moved to vacate his convictions and sentences in this Court, pursuant to 28 U.S.C. § 2255. *Mitchell v. United States*, CV-09-8089, Doc. 9. Before filing his section 2255 motion, however, Mitchell moved for authorization to interview the jurors from his capital trial. *Id.* at Doc. 1. Leave of court was required pursuant to a District of Arizona rule that prohibits attorneys from contacting jurors after trial unless they submit written interrogatories to the district court "within the time granted for a motion for a new trial" and show "good cause" for the requested interviews. D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2. In that motion, Mitchell, a member of the Navajo Nation, specifically requested to speak with jurors out of a concern that the jury panel "allowed bias or prejudice to cloud their judgment." Doc. 1. The government opposed the motion. Doc. 18.

This Court denied Mitchell's request to interview the trial jurors on two grounds. First, it indicated that Mitchell had not followed the local rule's procedures regarding the submission of proposed interrogatories and an affidavit, and did not file within the time granted for a motion for a new trial. Doc. 31. Alternatively, this Court concluded that Mitchell had not shown "good cause" for contacting the jurors. *Id.* Mitchell then amended his section 2255 motion to include a claim that this Court violated his constitutional rights by denying him access to the jurors. Doc. 30 at 173.

This Court subsequently denied Mitchell's section 2255 motion without holding an evidentiary hearing. Doc. 56. Mitchell appealed on several grounds, including the denial of his motion to interview jurors. The Ninth Circuit's opinion affirming the denial of his section 2255 motion does not address the juror interviews. *Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015). The Supreme Court denied certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

On March 6, 2017, the Supreme Court issued its decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct 855 (2017). On March 5, 2018, Mitchell filed a motion to re-open his case pursuant to Federal Rule of Civil Procedure 60(b)(6), arguing that *Peña-Rodriguez* established that he was erroneously denied the opportunity to interview the jurors in his case. Doc. 71. This error prevented Mitchell from presenting a fully investigated section 2255 motion to this Court and prevented the Court from conducting a full merits determination, which resulted in a "defect in the integrity of [his] federal habeas proceeding" under *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). *Id.* at 2. On September 18, 2018, this Court denied Mitchell's Rule 60(b) motion. Doc. 80. In doing so, the Court rejected the Government's jurisdictional argument that Mitchell's motion was a disguised second or successive petition under 28 U.S.C. § 2255. Doc. 80. Rather, the Court denied the motion on the merits and denied a certificate of appealability ("COA"). Doc. 80. Mitchell timely appealed. Doc. 81.

On April 25, 2019, the Ninth Circuit granted Mitchell's motion for a COA on the following issue: "whether the district court properly denied appellant's motion to re-

open his case pursuant to Fed. R. Civ. P. 60(b)(6) following the Supreme Court's opinion in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017)." *Mitchell v. United States*, No. 18-17031, 9th Cir. doc. 10. On that same day, the court ordered Mitchell to file his opening brief on August 28, 2019; the government's brief is due September 27, 2019; Mitchell's reply is due 21 days later on October 18, 2019. 9th Cir. Doc. 10. No party has requested any extensions of time.

**B. Other Relevant Proceedings**

In December 2005, a group of death-sentenced inmates filed a lawsuit against the Attorney General, *et. al.*, in the District Court for the District of Columbia challenging the legality of the method of execution that the Government intended to use to carry out the plaintiffs' death sentences. *Roane v. Gonzales*, D.C. Dist. Court Case No. 05-CV-2337. In 2011, the defendants informed the court that the Bureau of Prisons had decided to modify its lethal injection protocol, but the protocol revisions had yet to be finalized. The district court then stayed the matter pending the finalization of the protocol with the intention of re-opening discovery within 30 days of the issuance of the new protocol. *Id*. at Order (November 3, 2011). On July 25, 2019, the defendants filed a notice indicating that they had adopted a revised lethal injection protocol. DC Dkt. No. 385.

That same day, July 25, 2019, T.J. Watson, Warden of United States Penitentiary at Terre Haute, informed Mitchell via letter that his execution date[1] was set for December 11, 2019. (Ex. A, 7/25/2019 Letter setting date.)[2] Neither the Warden's letter, nor a press release issued by the Department of Justice that same day, indicated an awareness of the current litigation before the Ninth Circuit. *See*: https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-

[1] The letter did not indicate a time for the execution.

[2] Due to errors in the letter dated July 25, 2019, the Warden subsequently issued an amended letter on July 31, 2019 notifying Mitchell of his impending execution. (Ex. B, 7/31/2019 Letter setting date). The date of his execution (December 11, 2019) remains the same.

nearly-two-decade-lapse (Last visited July 25, 2019) (Stating that Mitchell and four other federal inmates set for execution have "exhausted their appellate and post-conviction remedies, and currently no legal impediments prevent their executions."). This motion for a stay of execution followed.

## III. THIS COURT HAS JURISDICTION TO DECIDE THIS MOTION

When a notice of appeal is filed, jurisdiction over the matters being appealed normally transfers from the district court to the appeals court. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."). An exception exists under the Federal Rules of Civil Procedure, however, that allows the district court to retain jurisdiction to "suspend, modify, restore, or grant an injunction during the pendency of the appeal . . . as it considers proper for the security of the rights of the adverse party." Fed. R. Civ. P. 62(c).

Mitchell seeks to invoke this Court's jurisdiction not to reach the merits of his case, but to preserve the status quo such that his appeal can be resolved. This is a valid exercise of the Court's jurisdiction. *Natural Resources Defense Council Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo.") (citations omitted).

## IV. ARGUMENT

If Mitchell is successful in his appeal, his original section 2255 proceeding would be re-opened to allow him to conduct an adequate investigation into the jurors who sentenced him to death. As such, Mitchell is entitled to a stay of execution as a matter of right under *Barefoot v. Estelle*, 463 U.S. 880, 888 (1983) *superseded on other grounds by* 28 U.S.C. § 2253(c). Alternatively, Mitchell is entitled to a stay of execution as a matter of equity under *Hill v. McDonough*, 547 U.S. 573, 584 (2006), because he meets all four factors of the injunction standard.

**A. Mitchell is Entitled to a Stay of Execution as a Matter of Right**

Under *Barefoot*, a "sentence of death cannot begin to be carried out by the State while substantial legal issues remain outstanding." 463 U.S. at 888. Mitchell is entitled to a stay of execution if he demonstrates "substantial grounds upon which relief might be granted." *Id.* at 895. When there is not enough time to resolve the merits of a claim before the scheduled execution date, a court should grant a stay to "give non-frivolous claims of constitutional errors the attention they deserve." *Id.* at 888-89.

Mitchell is entitled to a stay because he has demonstrated substantial grounds for relief. The Rule 60(b) appeal pending before the Ninth Circuit asks whether Mitchell should be allowed to re-open proceedings to conduct an investigation into racial bias on the part of his jury. *Peña-Rodriguez* shows this type of investigation is crucial to ensuring that the death penalty was imposed in accordance with the Sixth Amendment. The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee, that general evidence rules must be modified to root out racism in the criminal justice system. *Peña-Rodriguez*, 137 S. Ct. at 871. Yet Mitchell was deprived of the opportunity to look into racial bias. This was particularly concerning in this case given the United States Government's history of mistreatment of the Native American people, the unique nature of this prosecution, and the fact that Native Americans were almost entirely excluded from serving on Mitchell's jury.

At a minimum, Mitchell is entitled to a stay because he has presented a non-frivolous claim of constitutional error. The Ninth Circuit found that Mitchell had met the applicable standard for a COA, and therefore his appeal should be permitted to continue unabated by the Government's sudden and arbitrary scheduling of his execution. *Barefoot*, 463 U.S. at 893-94 ("[A] circuit court, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a

certificate of probable cause on his initial habeas appeal.")[3]; *see Garrison v. Patterson*, 391 U.S. 464, 466 (1968) (per curiam) (holding that "[i]f an appellant persuades an appropriate tribunal that probable cause for an appeal exists, he must then be afforded an opportunity to address the underlying merits").

The Ninth Circuit has tended to evaluate stay requests based on Rule 60 appeals under *Hill v. McDonough* rather than *Barefoot. See Wood v. Ryan*, 759 F.3d 1117 (9th Cir. 2014) and *Cook v. Ryan*, 688 F.3d 598 (9th Cir. 2012). However, those cases are distinguishable. In *Wood*, the Ninth Circuit applied the *Hill* standard to Wood's Rule 60 appeal filed in conjunction with his original habeas petition. There, however, both the district court and the Ninth Circuit found that Wood's Rule 60 motion was, in actuality, a disguised second or successive habeas petition, *id*. at 1121, and therefore *Barefoot* would not apply. In contrast, this Court has already explicitly found that Mitchell's juror claim was properly raised in a Rule 60 motion rather than a second or successive habeas petition. Doc. 80. And in *Cook*, the Ninth Circuit denied Cook's stay request only after the parties fully briefed and argued the Rule 60 appeal, and after the circuit court affirmed the district court's denial. Because the stay request was moot when denied, the decision is not dispositive regarding the propriety of the application of *Barefoot.*

Thus, Mitchell urges the Court to apply *Barefoot* in this context because the question at issue in his Rule 60 appeal goes to the adequacy of his initial section 2255 proceeding. Logically, if the claim raised in his Rule 60(b) motion is not second or successive, then that claim is on equal footing with the claim presented in the first habeas petition. *Cf. Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (holding that if a district court lacks authority to directly dispose of the petition on the merits, it would

---

[3] The standard for the issuance of a certificate of probable cause and the standard for the issuance of a COA are similar: a certificate of probable cause required the petitioner to make a "substantial showing of the denial of a federal right," *Barefoot*, 463 U.S. at 893, while the COA standard requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

abuse its discretion by attempting to achieve the same result indirectly by denying a stay). Just as it makes sense to stay an execution such that an appeal may go forward from an initial section 2255 proceeding, so too does it make sense that this appeal should go forward to resolve whether Mitchell's initial section 2255 proceedings were adequate to protect his constitutional rights.

**B. Alternatively, Mitchell is Entitled to a Stay as a Matter of Equity**

**1. Legal Standard**

Alternatively, Mitchell is entitled to a stay as a matter of equity. In *Hill v. McDonough*, 547 U.S. 573, 584 (2006) and *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004) the Supreme Court held that "like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584. In considering a request for a stay of execution, the Court considers "not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649-50. In order to obtain a stay of execution as a matter of equity, a death-row prisoner must show that the following four factors, balanced against each other, weigh in his favor: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm unless a stay is issued; (3) the balance of hardships tips in the prisoner's favor; and (4) a stay is in the public interest. *See Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7 (2008)). "[A] stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012); *see also Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) (same).

**2. Mitchell Has Established a Likelihood of Success on the Merits**

As established above, the Ninth Circuit has already held that Mitchell is entitled to a COA on the subject of his appeal. There is a strong likelihood of success on the merits.

*Peña-Rodriguez* establishes the admissibility of evidence showing that racial bias influenced the jury's verdict. Yet Local Rule 39.2 barred Mitchell from investigating whether such evidence existed. It is only by virtue of the fact that Mitchell was tried in Arizona, versus virtually any other district in the Ninth Circuit, and tried by the federal government, as opposed to a state prosecution in Arizona, that Mitchell is deprived of the ability to conduct an adequate investigation into his jury. *See* Doc. No. 71 at 6:8-20 (comparing local rules for all of the districts in the Ninth Circuit and establishing that only two of fifteen require a "good cause" showing to interview trial jurors) and 6:21-25 (establishing that Local Rule 39.2 does not apply to the 116 people on Arizona's state death row). This intra-circuit variation in whether and when an individual might investigate possible racial bias leads to the obvious conclusion that a criminal defendant tried in federal district court in Arizona will have a much more difficult time rooting out racial bias in his case than a similarly situated individual tried in state court or basically any other district court in the Ninth Circuit. Yet racial disparity in the criminal justice system is exactly what cases like *Peña-Rodriguez* are meant to do away with. Moreover, the *Peña-Rodriguez* decision specifically contemplates the "practical mechanics" of acquiring evidence of juror bias, but relies on "state rules of professional ethics and local court rules" to define those mechanics. *Id*. at 869. As Mitchell has established that Local Rule 39.2 poses the most extreme limitations on investigating juror bias, he is likely to succeed on the merits and establish that Rule 39.2 runs in contradiction to *Peña-Rodriguez.* Resolving these issues is almost certainly why the Ninth Circuit granted Mitchell's request for a certificate of appealability and why Mitchell is likely to be successful on the merits.

However, if the Court does not find that Mitchell has established a likelihood of success on the merits, this finding is not fatal to Mitchell's entitlement to a stay. Mitchell may alternatively demonstrate that "serious questions going to the merits" of his claims are presented in his appeal, and obtain a stay as long as the other three factors weigh in his favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Mitchell has established that he has been deprived of the ability to litigate a fully investigated section 2255 motion because he was barred from interviewing the jurors in his trial. At this stage, no one knows for certain whether racial bias affected the verdict in Mitchell's case. However, there are indications in the record that racial bias may have been a factor in his conviction. The record establishes that despite a 207-person venire which included 29 Native Americans, only one Navajo made it onto Mitchell's jury. The record further establishes that only seven of Mitchell's 12 jurors found a letter from the Navajo Nation expressing its views against capital punishment mitigating. *Mitchell*, 502 F.3d at 989. And this country's history is littered with examples of discrimination towards the Native people generally, and minorities in the death penalty context specifically. Dkt. No. 71 at 5. Accordingly, Mitchell's inability to investigate racial bias at his trial is a serious question going to the merits of his case.

### 3. Mitchell Will Suffer Irreparable Harm Without a Stay

If the Court does not grant Mitchell a stay, he will be executed before his appeal can be resolved.[4] It is beyond dispute that Mitchell will suffer irreparable harm without a stay.

### 4. The Balance of Hardships Tips in Mitchell's Favor

The Ninth Court has consistently acknowledged that death-row prisoners have a "strong interest in being executed in a constitutional manner." *Beaty*, 649 F.3d at 1072.

---

[4] If for some reason the appeal is resolved prior to the December 11, 2019 execution date, then the stay would be dissolved.

Thus Mitchell will suffer serious injury if the denial of his Sixth Amendment right to an unbiased jury and adequate post-conviction review leads directly to his execution.

Conversely, the Government suffers no injury should this Court enter a stay to allow for the consideration of Mitchell's "appeal in the normal course." *Buck v. Davis*, 137 S. Ct. 759, 774 (2017). There has not been a federal execution since 2003, the year Mitchell was sentenced to death, and the Government has been "modifying" its lethal injection protocol since 2011. A stay long enough to allow this appeal to resolve cannot realistically be considered an injury to the Government after such a long delay of the Government's own creation. Moreover, the Government has no interest in pursuing an execution tainted by racial bias or infirmities, and therefore the Government should welcome the opportunity to have this appeal resolved.

Generally, when courts find that the balance-of-hardships factor weighs in favor of the Government, it is due to a last-minute request for stay of execution or some other delay on the part of the movant. *See, e.g., Gomez v. U.S. Dist. Court,* 503 U.S. 653, 654 (1992) (per curiam) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay) and *Hill*, 547 U.S. at 584 (explaining that where a prisoner has delayed bringing his claim, the equities cut sharply against him). But that is not the case here. Mitchell filed his Rule 60 motion within one year of the Supreme Court issuing its decision in *Peña-Rodriguez.* When this Court denied Mitchell's motion, the Court did not find that Mitchell's motion was untimely. Dkt. No. 80. Nor was the motion filed in response to the Government's filing of the execution warrant. Rather, the motion was filed over sixteen months *prior* to the Government's sudden announcement that it planned to execute Mitchell, and well after the Ninth Circuit had set a briefing schedule for Mitchell's appeal. *Contra Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) ("[T]he filing of the Rule 60(b) motion on the eve of the execution … weigh[s] against issuing a stay."). And the motion relates to issues that Mitchell has repeatedly raised with this Court, starting with the first pleading he filed in this Court in advance of his

section 2255 motion. *See* Dkt. 1 ("Motion For Authorization to Interview Jurors In Support of Motion to Vacate, Set Aside, Or Correct the Sentence").

The balance of hardships clearly weigh in Mitchell's favor and support granting a stay.

**5. A Stay is in the Public Interest**

Generally, the public has an interest in finality of judgments. However, *Peña-Rodriguez* is an exception to the rule of finality. Indeed, the Court struggled with this issue extensively in the *Peña -Rodriguez* decision, *see* 137 S. Ct. at 863-69, 885 (Alito, J., dissenting), but ultimately decided that the interest in finality is outweighed by the principle that "discrimination on the basis of race, 'odious in all aspects, is especially pernicious in the administration of justice.'" *Id*. at 868 (quoting *Rose v. Mitchell*, 443 U.S. 545, 555 (1979)); *see also id*. ("The jury is to be a criminal defendant's fundamental protection of life and liberty against race or color prejudice. Permitting racial prejudice in the jury system damages both the fact and the perception of the jury's role as a vital check against the wrongful exercise of power by the State.") (internal quotations and citations omitted).

Further, the public interest is served by enforcing constitutional rights. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). As a result, given that Mitchell is trying to vindicate his rights under *Peña -Rodriguez* and conduct an adequate investigation to ensure his capital trial was not tainted by racial bias, finality of judgment does not weigh against Mitchell.

In prior cases, the Ninth Circuit has decided that the citizens of the location from which the prosecution originated have an interest in seeing lawful judgments enforced and that interest weighs against the movant. *Cook*, 688 F.3d at 613. Here, however, the local United States Attorney's Office and the Navajo Nation all urged the Department of Justice not to seek death in this case. *Mitchell v. United States*, 790 F.3d 881, 896 (9th Cir. 2015) ("In light of the position of the Navajo Nation and the family of the victims, United States Attorney Charlton, a local Arizonan appointed by

President George W. Bush, who was intimately familiar with the relations between the Navajo tribe and the citizens of the State of Arizona, declined to seek the death penalty.") (Reinhardt J. dissenting). The general presumption that the public has an interest in seeing a judgment enforced is rebutted here because the public's view is explicit: the people of Arizona did not want a capital prosecution in this case.

The Ninth Circuit has also found that victims' families have a particularly compelling interest in finality. *See, e.g., Cook*, 688 F.3d at 613 ("In addition, the citizens of the State of Arizona—especially the families of [the victims]—have a compelling interest in seeing that Arizona's lawful judgments against Cook are enforced."). Again, this maxim does not hold true in this case, as the victims' family requested that the Government not seek death against Mitchell. *Mitchell*, 790 F.3d at 896 ("[I]n the words of the victims' family, the request that the federal government not seek the death penalty was ultimately 'ignored and dishonored.'") (Reinhardt J. dissenting).

This factor, like the other four, weighs heavily in Mitchell's favor.

## V. CONCLUSION

This Court should stay Mitchell's execution through the conclusion of appellate proceedings.

Mitchell respectfully asks that the Clerk of this Court serve any stay order on Respondent and the Warden.

Respectfully submitted,

Dated: August 5, 2019

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

July 25, 2019

Mr. Lezmond Charles Mitchell
Reg. No. 48685-008
Special Confinement Unit
United States Penitentiary
Terre Haute, Indiana 47802

Dear Mr. Mitchell:

The purpose of this letter is to inform you that a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on January 8, 2004, by Senior Judge David G. Campbell of the United States District Court for the District of Arizona. This letter will serve as official notification that pursuant to Title 28, Code of Federal Regulations, Section 26.3 (a)(1), the Director of the Federal Bureau of Prisons has set December 11, 2019, as the date for your execution by lethal injection.

Under Title 28, Code of Federal Regulations, Sections 1.1 and 1.10, if you wish to seek commutation of sentence or reprieve from the President, petitions may be emailed directly to the DOJ Pardon Attorney at USPARDON.Attorney@usdoj.gov. If email is not available, petitions may be mailed to with the Office of the Pardon Attorney, U.S. Department of Justice, 950 Pennsylvania Avenue, RFK Main Justice Building, Washington, D.C 20530. The Office of the Pardon Attorney is responsible for receiving and processing on behalf of the President all requests for clemency. If you wish to apply for commutation of sentence your petition must be filed within 30 days of the date you receive this notice.

Soon, I will come to your housing unit to personally discuss with you many of the details surrounding the execution. At that time, I will be available to answer any questions you may have regarding the execution process.

Sincerely,

T.J. Watson
Complex Warden

cc: The Honorable David G. Campbell, U.S. District Court (D. Arizona)
Mr. Brian D. Karth, Clerk of the Court (D. Arizona)
Mr. Michael G. Bailey, United States Attorney (D. Arizona)
Mr. William Voit, Assistant United States Attorney (D. Arizona)
Ms. Statia Peakheart, Esq.
Mr. Josh Minkler, Acting US Attorney (S.D. of Indiana)
Mr. Joseph "Dan" McClain, US Marshal (S.D. of Indiana)
Mr. Joseph H. (Jody) Hunt, Assistant Attorney General, Civil Division

**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

July 31, 2019

Mr. Lezmond Charles Mitchell
Reg. No. 48685-008
Special Confinement Unit
United States Penitentiary
Terre Haute, Indiana 47802

Dear Mr. Mitchell:

The purpose of this amended letter is to inform you that a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on January 8, 2004, by Judge Mary H. Murguia of the United States District Court for the District of Arizona. This letter will serve as official notification that pursuant to Title 28, Code of Federal Regulations, Section 26.3 (a)(1), the Director of the Federal Bureau of Prisons has set December 11, 2019, as the date for your execution by lethal injection. This does not change your execution date, but was amended to accurately reflect the name of your sentencing judge.

Under Title 28, Code of Federal Regulations, Sections 1.1 and 1.10, if you wish to seek commutation of sentence or reprieve from the President, petitions may be emailed directly to the DOJ Pardon Attorney at USPARDON.Attorney@usdoj.gov. If email is not available, petitions may be mailed to with the Office of the Pardon Attorney, U.S. Department of Justice, 950 Pennsylvania Avenue, RFK Main Justice Building, Washington, D.C 20530. The Office of the Pardon Attorney is responsible for receiving and processing on behalf of the President all requests for clemency. If you wish to apply for commutation of sentence your petition must be filed within 30 days of the date you receive this notice.

Soon, I will come to your housing unit to personally discuss with you many of the details surrounding the execution. At that time, I will be available to answer any questions you may have regarding the execution process.

Sincerely,

T.J. Watson
Complex Warden

cc: The Honorable David G. Campbell, U.S. District Court (D. Arizona)
Mr. Brian D. Karth, Clerk of the Court (D. Arizona)
Mr. Michael G. Bailey, United States Attorney (D. Arizona)
Mr. William Voit, Assistant United States Attorney (D. Arizona)
Ms. Statia Peakheart, Esq.
Mr. Josh Minkler, Acting US Attorney (S.D. of Indiana)
Mr. Joseph "Dan" McClain, US Marshal (S.D. of Indiana)
Mr. Joseph H. (Jody) Hunt, Assistant Attorney General, Civil Division

## Motions

3:09-cv-08089-DGC Mitchell v. United States of America **CASE CLOSED on 09/30/2010**

2255,APPEAL,CLOSED,CMX,DTE,PROTO

**U.S. District Court**

**DISTRICT OF ARIZONA**

### Notice of Electronic Filing

The following transaction was entered by Aminoff, Jonathan on 8/5/2019 at 6:54 PM MST and filed on 8/5/2019

**Case Name:** Mitchell v. United States of America
**Case Number:** 3:09-cv-08089-DGC
**Filer:** Lezmond Mitchell
**WARNING: CASE CLOSED on 09/30/2010**
**Document Number:** 84

**Docket Text:**
**MOTION to Stay *Execution* by Lezmond Mitchell. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Text of Proposed Order [Proposed] Order)(Aminoff, Jonathan)**

**3:09-cv-08089-DGC Notice has been electronically mailed to:**

Celeste Bacchi celeste_bacchi@fd.org

Jonathan C Aminoff jonathan.aminoff@fd.org

Sean K Kennedy sean_kennedy@fd.org

Sharon K Sexton Sharon.Sexton@usdoj.gov, CaseView.ECF@usdoj.gov, marjorie.dieckman@usdoj.gov

Statia Peakheart statia_peakheart@fd.org

William G Voit William.Voit@usdoj.gov, CaseView.ECF@usdoj.gov, stephanie.ludwig@usdoj.gov

**3:09-cv-08089-DGC Notice will be sent by other means to those listed below if they are affected by this filing:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=8/5/2019] [FileNumber=19563193-0

] [61122a5d29b9e049fc882c4bb208de51f1e53b5b91e7f187fe163ff2fdf6efcc1f9
27916bb0675982511846edd9e39a75bb93c8cb61107c135c013e06ee543ce]]
**Document description:**Exhibit A
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=8/5/2019] [FileNumber=19563193-1
] [9a2f04d0dc87351fadae6dd6e84280424e5ef4a7509b4c88f5d64f1fadecba8765c
c097abf4fd6b17cb0c41975a71b604e856d32611c04382115750da8ae11b7]]
**Document description:**Exhibit B
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=8/5/2019] [FileNumber=19563193-2
] [1b5c9d3418a1c0b086723a6c37ffb3d25c4cfa680240ec47d094f9f7b5c4aaa182e
7d37c136e456534e7ffb4b487f0a61058126fd5cb76f4fad45a470cbaf9c3]]
**Document description:**Text of Proposed Order [Proposed] Order
**Original filename:**n/a
**Electronic document Stamp:**
CMECF.widgit.ProcessingWindowDestroy()> [STAMP dcecfStamp_ID=1096393563 [Date=8/5/2019]
[FileNumber=19563193-3
] [a5fa9678f0fc9b3e3195e759b0f46e2b5bbad4536dbb499cf12fdaa9af1ca1f54b6
1c4b34af8ff99a019e5e61f45615660a6b4c8dadd3772dfded221951ccd96]]

HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
JONATHAN C. AMINOFF (Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (Bar No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Movant
LEZMOND CHARLES MITCHELL

**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lezmond Charles Mitchell,<br><br>Defendant/Movant,<br><br>v.<br><br>United States of America,<br><br>Plaintiff/Respondent. | Civil No. 3:09-CV-08089-DGC<br>(Criminal No. 3:01-CR-01062-NVW-1)<br><br>**DEATH PENALTY CASE**<br><br>Honorable David G. Campbell<br>United States District Judge<br><br>**NOTICE OF APPEAL** |

Notice is hereby given that Movant Lezmond Charles Mitchell hereby appeals to the United States Court of Appeals for the Ninth Circuit from the District Court's Order denying Mitchell's motion for relief from judgment, filed pursuant to Federal Rule of Civil Procedure 60(b)(6), entered on September 18, 2018. (Dkt. No. 80.)

No filing or docket fee is required because Movant is in forma pauperis and the Federal Public Defender represents him pursuant to the Criminal Justice Act.

Movant's notice of appeal is timely filed pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

///

The parties to the judgment and order are:

| | |
|---|---|
| Movant: | Lezmond Mitchell<br>Reg. No. 48685-008<br>USP Terre Haute<br>4700 Bureau Road South<br>Terre Haute, IN 94974 |
| Movant's Counsel: | Jonathan C. Aminoff<br>Celeste Bacchi<br>Deputy Federal Public Defenders<br>321 East 2nd Street<br>Los Angeles, CA 90012 |
| Respondent: | United States of America |
| Respondent's Counsel: | Vincent Q. Kirby<br>Assistant United States Attorney<br>Two Renaissance Square<br>40 N. Central Ave., Suite 1800<br>Phoenix, Arizona 85004 |

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: October 17, 2018

By */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

Attorneys for Movant
LEZMOND CHARLES MITCHELL

## Appeal Documents

3:09-cv-08089-DGC Mitchell v. United States of America **CASE CLOSED on 09/30/2010**

2255,CLOSED,CMX,DTE,PROTO

**U.S. District Court**

**DISTRICT OF ARIZONA**

### Notice of Electronic Filing

The following transaction was entered by Aminoff, Jonathan on 10/17/2018 at 3:58 PM MST and filed on 10/17/2018

**Case Name:** Mitchell v. United States of America
**Case Number:** 3:09-cv-08089-DGC
**Filer:** Lezmond Mitchell
**WARNING: CASE CLOSED on 09/30/2010**
**Document Number:** 81

**Docket Text:**
**NOTICE OF APPEAL to 9th Circuit Court of Appeals re: [80] Order on Motion to Reopen Case by Lezmond Mitchell. (Aminoff, Jonathan)**

**3:09-cv-08089-DGC Notice has been electronically mailed to:**

Jonathan C Aminoff jonathan.aminoff@fd.org

Sean K Kennedy sean_kennedy@fd.org

Statia Peakheart statia_peakheart@fd.org

Vincent Quill Kirby Vincent.Kirby@usdoj.gov, CaseView.ECF@usdoj.gov, heidi.kinwald@usdoj.gov

**3:09-cv-08089-DGC Notice will be sent by other means to those listed below if they are affected by this filing:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=10/17/2018] [FileNumber=18286407-0] [3712edb98b8a704a374b8fb7598f430e95a3dfc2f79406459084a7a0061bc81fa89b2bda45c87b116dc1e50ecdf02db42d5012c4fc40a046e8ce1deb21ec7e3a]]

HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
JONATHAN C. AMINOFF (No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Movant
LEZMOND CHARLES MITCHELL

**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lezmond Charles Mitchell,<br><br>Defendant/Movant,<br><br>v.<br><br>United States of America,<br><br>Plaintiff/Respondent. | Civil No. 3:09-CV-08089-DGC<br>(Criminal No. 3:01-CR-01062-NVW-1)<br><br>**<u>DEATH PENALTY CASE</u>**<br><br>Honorable David G. Campbell<br>United States District Judge<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)**<br><br>**Oral Argument Requested** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A. The Law of the Case Doctrine Does Not Bar Relief**

The Government argues that law-of-the-case doctrine bars the Court from granting Mitchell's Rule 60 motion. Because Rule 60 allows for post-judgment relief from judgment or orders, however, the Government's logic would dictate that no Rule 60 motion could be granted absent a law-of-the-case analysis, which is belied by Supreme Court precedent. *Christeson v. Roper*, 135 S. Ct. 891, 895-96 (2015) (stating that a petitioner must establish only timeliness and extraordinary circumstances to avail himself of relief under Rule 60). Assuming arguendo that the Government is correct, however, Mitchell has already cited to *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), which constitutes "an intervening change in the law" that justifies departing from the law-of-the-case doctrine. *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996). Moreover, Mitchell established in his motion the injustice of depriving him of an opportunity to interview the jurors, Motion at 4-7, which also warrants a departure from the law-of-the-case doctrine. *Id*. at 281.

**B. The Underlying Issues Are Not Procedurally Barred**

The Government argues that because Mitchell raised the Court's denial of his request for juror interviews on "direct appeal," Mitchell is barred from raising the issue in a habeas proceeding. Opposition at 6:14-16. Separately, the Government asserts that Mitchell first sought authorization for juror interviews during his section 2255 proceedings, after his direct appeal was denied. Opposition at 3:7-11. The former is incorrect. The parties agree that Mitchell first sought approval for juror interviews in 2009, dkt. no. 1, his direct appeal proceedings ended when the Supreme Court denied his petition for writ of certiorari on June 9, 2008. *Mitchell v. United States*, 553 U.S. 1094 (2008). When he appealed the District Court's denial of his section 2255 motion, Mitchell included the District Court's denial of his request for juror interviews in his appeal. However, an appeal of his section 2255 motion and a "direct appeal" are two separate proceedings. *Wall v. Kholi*, 562 U.S. 545, 553 (2011) ("'collateral review' of

a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding *outside of the direct review process*.") (emphasis added).

It appears this argument may simply be an oversight by the Government as the Government makes reference to Mitchell's "direct appeal" but then cites to the collateral proceedings. *See* Opposition at 6:4-7. Regardless, the procedural rule that the Government advances – namely, if an issue is raised on direct appeal, the defendant is barred from raising the same issue in a habeas proceeding – is obviously not applicable here because the juror interviews were not raised on direct review.

**C. Mitchell's Motion Is Not a Second or Successive 2255 Motion**

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court held that Federal Rule of Civil Procedure, Rule 60 is applicable to habeas corpus proceedings, but cautioned that courts should be wary of second or successive habeas petitions disguised as Rule 60 motions. The Court explained that a Rule 60(b) motion "that seeks to revisit the federal court's denial *on the merits* of a claim for relief should be treated as a successive habeas petition." *Id.* at 534 (emphasis added). But where the motion "confines itself not only to the first federal habeas petition, but to a nonmerits aspect of the first federal habeas proceeding," that motion is not a second or successive petition; rather, it is a valid exercise of Rule 60(b). *Id.* Indeed, a motion that "challenges only the District Court's failure to reach the merits does not warrant such treatment, and can therefore be ruled upon by the District Court without precertification by the Court of Appeals pursuant to § 2244(b)(3)." *Id.* at 538.

Here, Mitchell's motion raises a single issue: the Court's rejection of his request to interview his trial jurors. The parties agree that this is a procedural ruling. Opposition at 8:2-4.

Although acknowledging that Mitchell is not currently presenting a new claim in his motion or seeking to revisit a claim already denied on its merits, the Government argues that Mitchell's motion is a second or successive motion. Opposition at 8. The Government's theory is that if Mitchell's discovery request is granted, and in discovery

he finds evidence that may form the basis for a claim not currently included in his section 2255 motion, then that new claim would constitute a second or successive motion. *Id*. at 8:12-19. The Government offers no authority for this theory, and its citations to *Gonzalez* do not support this principle. Moreover, whether granting Mitchell's Rule 60(b) motion ultimately leads to an opportunity for Mitchell to amend his petition with a new claim is not part of the analysis at this stage. In fact, in *Gonzalez*, 545 U.S. 524 (2005), the Supreme Court found that challenging a timeliness denial via a Rule 60(b) motion was a proper function of a Rule 60(b) motion. If Gonzalez's motion was granted, it would obviously have allowed him to litigate his underlying substantive claims for relief and if, in the ordinary course of proceedings, discovery was granted, Gonzalez may indeed have amended his petition with new claims. Thus, whether litigation on this procedural issue ultimately allows Mitchell to re-open his habeas proceedings is not a question to be considered by this court, nor does it provide justification to deny this motion. Additionally, Mitchell raised several claims related to his jury in his section 2255 motion, and claimed in his amended section 2255 motion that the jury was not impartial. *See* Dkt. No. 30 at Claim M. Depending on what evidence is ultimately discovered, Mitchell may not need to amend his petition to add new claims.

**D. *Peña-Rodriguez* Establishes that the Existing Safeguards Against Racial Bias are Lacking**

The Government argues that trial measures such as *voir dire* guard against racial prejudice. Opposition at 12-14. Of course, if those safeguards were effective, then cases like *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), where a juror espouses racist views during deliberations, would not exist. Moreover, and more specifically, Mitchell has raised several claims about the *voir dire* process in his case. Dkt. No. 30 at Claim H, I, J, L, M. It may be true, as a general matter, that *voir dire* helps to safeguard against racial prejudice. However, as cases like *Peña-Rodriguez*

demonstrate, the fact is that racist individuals exist and they end up on juries, and Mitchell should be permitted to investigate this issue.

**E. Local Rule 39.2 is Inconsistent with *Peña-Rodriguez***

The District of Arizona's local rules have placed Mitchell in a catch-22: to establish racial bias, he must investigate; to be permitted to investigate, he must establish racial bias. Indeed, the Government endorses this catch-22, arguing that Mitchell "must make a preliminary showing of misconduct to establish good cause to conduct juror interviews." Opposition at 12:13-14.

In support of its position, the Government contends that the "Ninth Circuit disfavors post-verdict interrogation of jurors and has consistently disallowed such interrogation…." Opposition at 12:10-12. In support of this theory, the Government cites to *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972) which does not state a general proposition adverse to juror interviews, but simply holds, pre- *Peña-Rodriguez*, that there is no federal constitutional right to interview jurors. The Government also cites to *Northern Pacific Railway Co. v. Mely*, 219 F.2d 199, 202 (9th Cir. 1954), which also does not state a general proposition against juror interviews. Instead, it simply holds that it is inappropriate to inquire into the course of jury deliberations, as prohibited by Federal Rule of Evidence 606(b), but says nothing about inquiring into juror misconduct or evidence that is not barred by Rule 606(b). The additional cites offered by the Government do no more than to establish that evidence barred by 606(b) is not admissible. *United States v. Stacey*, 475 F.2d 1119, 1121 (9th Cir. 1973) ("After a verdict is returned a juror will not be heard to impeach the verdict when his testimony concerns his misunderstanding of the court's instructions. This rule does not violate a defendant's constitutional rights." (internal citation omitted)).

In actuality, the Ninth Circuit has considered the fruits of juror interviews when the subject matter is admissible under Rule 606(b). *See, e.g., Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017) (en banc) (remanding for an evidentiary hearing in reliance on an alternate juror's declaration concerning juror's communication with outside source);

*Estrada v. Scribner*, 512 F.3d 1227 (9th Cir. 2008) (finding juror declarations admissible where they detailed improper discussions and extraneous evidence); *United States v. Maree*, 934 F.2d 196 (9th Cir. 1991) (juror's declaration was admissible where it detailed outside influence exerted on the jury) *overruled on other grounds by United States v. Adams*, 432 F.3d 1092 (9th Cir. 2006). Mitchell's request to interview jurors is consistent with Ninth Circuit precedent as Mitchell seeks to interview the jurors for evidence that is not rendered inadmissible by Rule 606(b).

Both Mitchell and the Government cite to the Supreme Court's language in *Peña-Rodriguez v. Colorado*, where the Court states "[t]he practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." 137 S. Ct. at 859-60; Opposition at 11:16-18; Motion at 6:8-11. Yet the Government does not respond to the fact that Local Criminal Rule 39.2, requiring good cause as a prerequisite to juror interviews, is far more limiting than almost any rule on this topic in the entire Ninth Circuit. Indeed, Local Criminal Rule 39.2 does not set forth "practical mechanics" guiding counsel's post-trial contact with jurors; rather, it constitutes an all-out ban on counsel's ability to investigate the possibility of juror misconduct. The Government's only response is that because the jurors did not approach Mitchell's counsel of their own accord, and Mitchell could not otherwise find evidence of juror misconduct, Opposition at 11-12, Mitchell must live with the possibility of unrealized juror misconduct.

The Government's arguments do not comport with *Peña-Rodriguez*. Federal Rule of Evidence 606(b) prohibits jurors from testifying about the substance of their deliberations. In *Peña-Rodriguez*, however, the Supreme Court held that the Sixth Amendment required that Rule 606(b), and its state equivalent, cannot bar evidence of racial animus. 137 S. Ct. 855 (2017). Allowing a petitioner to advance evidence of a juror's racial bias is inconsistent with barring a petitioner from investigating racial bias amongst jurors. Indeed, the Supreme Court discusses at length rules that "limit"

attorneys contact with jurors and provide the jurors "some protection" when their juror obligations are complete. *Id*. at 869. Rules like Rule 39.2 that go beyond *limiting* contact and instead create total bans on juror interviews, render the rights articulated in *Peña-Rodriguez* meaningless.

Constitutional rights implicitly protect those closely related acts necessary to their exercise. *Luis v. United States*, 136 S. Ct. 1083, 1097 (2016) (Thomas, J. dissenting). Inevitably, "[t]here comes a point ... at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." *Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting). The Supreme Court has applied this principle in a number of cases. For example, because criminal defendants have a right to an initial appeal, the Court has determined that defendants must also have the right to counsel for that appeal, or else the appellate right is diminished. *Douglas v. California*, 372 U.S. 353 (1963). And later, continuing this trend, the Court held that if defendants on appeal have a right to counsel, then that right must encompass the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387 (1985). The same logic applies here: If criminal defendants have the constitutional right to present evidence of juror bias, then they must be given the tools to investigate that evidence, and Local Rule 24.1 bars the ability to do so.

This past term, the Supreme Court emphasized that "[d]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice." *Buck*, 137 S. Ct. at 778 (quoting *Rose v. Mitchell,* 443 U.S. 545, 555 (1979)); *Peña-Rodriguez*, 137 S. Ct. at 868 (same). The *Buck* court continued that:

> Relying on race to impose a criminal sanction "poisons public confidence" in the judicial process. *Davis v. Ayala,* 135 S. Ct. 2187, 2208 (2015). It thus injures not just the defendant, but "the law as an institution, … the community at large, and ... the democratic ideal reflected in the processes of our courts." *Rose,* 443 U.S. at 556 (internal quotation marks omitted).

> Such concerns are precisely among those we have identified as supporting relief under Rule 60(b)(6).

137 S. Ct. at 778.

Those same concerns are at issue here. Mitchell has already highlighted the racial issues at play in his case and in death-penalty prosecutions at large. Motion at 5-6. These issues warrant relief under Rule 60(b).

**CONCLUSION**

For all of the foregoing reasons, Mitchell respectfully requests that the Court grant this motion, re-open this case, and allow Mitchell to move for access to the jurors.

Respectfully submitted,

Dated: June 18, 2018

*<u>/s/ Jonathan C. Aminoff</u>*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

## Responses and Replies

3:09-cv-08089-DGC Mitchell v. United States of America **CASE CLOSED on 09/30/2010**

2255,CLOSED,CMX,DTE,PROTO

**U.S. District Court**

**DISTRICT OF ARIZONA**

### Notice of Electronic Filing

The following transaction was entered by Aminoff, Jonathan on 6/18/2018 at 2:37 PM MST and filed on 6/18/2018

**Case Name:** Mitchell v. United States of America
**Case Number:** 3:09-cv-08089-DGC
**Filer:** Lezmond Mitchell
**WARNING: CASE CLOSED on 09/30/2010**
**Document Number:** 79

**Docket Text:**
**REPLY to Response to Motion re: [71] MOTION to Reopen Case *Pursuant to Federal Rule of Evidence, Rule 60(b)(6)* filed by Lezmond Mitchell. (Aminoff, Jonathan)**

**3:09-cv-08089-DGC Notice has been electronically mailed to:**

Jonathan C Aminoff jonathan.aminoff@fd.org

Sean K Kennedy sean_kennedy@fd.org

Statia Peakheart statia_peakheart@fd.org

Vincent Quill Kirby Vincent.Kirby@usdoj.gov, CaseView.ECF@usdoj.gov, julia.soza@usdoj.gov

**3:09-cv-08089-DGC Notice will be sent by other means to those listed below if they are affected by this filing:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=6/18/2018] [FileNumber=17795443-0] [654b9adfbdcd297af359038b6ad206cd12a717dab2d795f0430b84ef77afd6c7a2
5b74eadc20ff66e60f0f652696cdd28e98cd56e45b5ab0d509a9e386680fb8]]

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
VINCENT Q. KIRBY
Assistant U.S. Attorney
Arizona State Bar No. 006377
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Vincent.Kirby@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Lezmond Mitchell,<br><br>Defendant. | CV-09-08089-DGC<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF FROM JUDGEMENT PURSUANT TO RULE 60(b)(6) FED. R. CIV. P.** |

The government respectfully requests the Court to deny the Defendant's Motion based on this Court's prior ruling that since the defendant's original Motion To Interview Jurors was raised in a post-trial setting there was "not a cognizable claim for relief under § 2255." *Mitchell v. United States*, No. CV-09-8089-PCT-MHM, 2010 WL 3895691, *42 (D. Ariz. Sept. 30, 2010). The Ninth Circuit affirmed the decision. *Mitchell v. United States* 790 F.3d 881, 894 (9th Cir. 2015).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Alternatively, the Rule 60 (b)(6) Motion is a disguised § 2255 Petition which would require a COA. Finally, *Pena-Rodriguez v. Colorado,* 137 S.Ct. 855 (2017) is not retroactive, nor does it permit a defendant to interview jurors to determine whether there was juror racial bias without any preliminary evidence. For all of these reasons the Motion should be denied. This request is based on the attached Memorandum.

Respectfully submitted this 21st day of May 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*S/Vincent Q. Kirby*
VINCENT Q. KIRBY
Assistant U.S. Attorney

# MEMORANDUM

## I. Facts and Procedural History

The defendant was convicted of eleven criminal counts related to the brutal murders of a 63-year old grandmother and her 9-year old granddaughter. Among the counts of conviction was Count 2 - Carjacking Resulting in Death, for which the defendant received the death penalty at the recommendation of the trial jury. The defendant was sentenced on September 15, 2003. The Ninth Circuit later affirmed the conviction and sentenced on September 5, 2007. *United States v. Mitchell* 502 F.3d 931 (9th Cir. 2007). A petition for certiorari was denied June 9, 2008. *Mitchell v. United States*, 553 U.S. 1094 (2008).

Six years after conviction, on May 22, 2009, the defendant filed a Motion for Authorization to Interview Jurors. (CV 09-08089, CR-1.) The Court denied the Motion as untimely, failure to provide requisite affidavits, interrogatories and establish "good cause" to substantiate his request. (CV 09-08089, CR-21; *Mitchell v. United States*, No. CV-09-8089-PCT-MHM, 2010 WL 3895691, *2, *4 (D. Ariz. Sept. 30, 2010)

The defendant amended his original habeas petition in an attempt to again raise his request to interview the jurors. (CV 09-08089, CR- 42-1.) However, this Court ruled that the Motion for Authorization to Interview Jurors had been raised in a post-conviction setting, rather than in a trial/sentencing setting and therefore was not a "cognizable claim for relief under § 2255." *Mitchell v. United States*, No. CV 09-08089, CR-56; 2010 WL 3895691 at *42 (D. AZ. September 30, 2010)

The issue was raised as part of the defendant's appeal of the Court's denial of the habeas petition. The Ninth Circuit, while not specifically addressing this issue, implicitly rejected the argument by affirming the judgment of this Court. *Mitchell v. United States* 790 F.3d 881, 894 (9th Cir. 2015); *Certiorari Denied Mitchell v. United States* 137 S.Ct. 38, U.S., Oct. 3, 2016. The defense failed to raise it again either in his Motion for Rehearing or the Petition for Certiorari.

The defendant has now filed another Motion seeking permission to reopen his Section 2255 litigation in order to interview the jurors citing *Pena-Rodriguez v. Colorado*,

137 S.Ct. 855 (2017).

**ARGUMENT**

**Court's Prior Orders Precludes the Reopening of the Habeas Proceedings.**

The defendant seeks to reopen his "Section 2255 litigation to correct the defects in the integrity of the post-conviction proceedings that deprived him of a resolution of his claims on their merits" in order to again seek permission to interview the trial jurors. (CR-71 p. 2.) He is seeking relief pursuant to Fed. R. Civ. P. 60 60(b)(6) that allows a court, in very limited circumstances, to grant relief in habeas cases for "any other reason that justifies relief." However, before the Court can reach the Rule 60(b)(6) issue, there is the question of whether the defense can even request to reopen the habeas proceeding.

In 2009, the defendant sought authorization to interview the trial jurors pursuant to LRCiv 39.2(b) made applicable to criminal cases by Local Rule Criminal 24.2, which provides in part:

> Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. See Federal Rules of Evidence, Rule 606(b). Following the interview, a second affidavit must be filed indicating the scope and results of the interviews with jurors and setting out the answers given to the interrogatories.

The defendant did not file a motion in compliance with LRCiv 39.2(b) after the verdict was rendered in May 2003. It was not until approximately six years later, on May 22, 2009, that the defendant filed his Motion Seeking Authorization to Interview Jurors. (CV 09-08089, CR-1.)

The Court denied the Motion noting Rule 606(b)'s limitations on juror testimony. Further, it found that not only was the request untimely, but the defendant failed to proffer proposed interrogatories, or an affidavit as required by the Rule. Finally, even overlooking

the procedural failures the Court ruled that the defendant failed to show "good cause." *Mitchell v. United States,* CV-09-08089, 2009 WL 2905958 *2. The Court also rejected the defendant's argument that the good cause was established by the American Bar Association's Guidelines in Death Penalty cases directing habeas counsel to interview jurors post-verdict. It found no support in case law that death cases were entitled to exceptions of the strong policy against such interviews. *Mitchell v. United States*, CV-09-08089, 2009 WL 2905958 *2 (CR-21 p. 3.) The Supreme Court has agreed that the ABA Guidelines are only guidelines. *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009).

In response to that ruling, the defendant amended his original habeas petition to include the Court's denial of the request to interview jurors. (CV-09-08089, CR 42-1.) However, the Court ruled that the Motion for Authorization to Interview Jurors had been raised in a post-conviction setting rather than trial or sentencing and therefore was "not a cognizable claim for relief under § 2255." *Mitchell v. United States*, No. CV 09-08089, CR-56; 2010 WL 3895691 at *42 (D. AZ. September 30, 2010). Under the doctrine of the "law of the case," courts are "generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 ((9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)).

A court may depart from the law of the case and grant reconsideration only where 1) the first decision was clearly erroneous, 2) an intervening change in the law has occurred, 3) the evidence on remand is substantially different, 4) other changed circumstances exist, or 5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion. *Id*. at 876. The original decision was not clearly erroneous, there has been no intervening change in the law, as no case has authorized the interviews of jurors without some preliminary showing of an issue; nothing else has changed; and there is no manifest injustice when after 15 years no juror has come forward to allege racial bias. Therefore, the Court's decision that the original request to interview jurors was not timely, failed to demonstrate good cause as well

as its subsequent ruling that the Motion was "not a cognizable claim for relief under § 2255", are the law of case. Therefore, there is no Habeas Proceeding to reopen on the matter of juror interviews.

Furthermore, the defendant raised the denial on direct appeal, (CA-11-99003, CR-23). While the Ninth Circuit's opinion did not include a discussion of the juror interview issue, it implicitly rejected the claim in ruling: "[t]he judgment of the district court is AFFIRMED." *Mitchell v. United States* 790 F.3d 881, 894 (9th Cir. 2015). The defendant failed to raise it any further with the Ninth Circuit in its Motion for Rehearing. (CA-11-99003, CR-74-1) Nor did it bring the issue to the attention of the Supreme Court in its petition for certiorari. (No 15-8725). He also failed to seek a Certificate of Appealability from the Ninth Circuit. Had he been denied a certificate by the Court of Appeals he could have sought a review by the United States Supreme Court via petition for Writ of Certiorari. *Hohn v. United States*, 524 U.S. 236 (1998).

Since he raised this issue on direct appeal, he is also barred from raising it in a habeas proceeding. The Ninth Circuit has long held that "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent petition under 2255." *Stein v. U.S.*, 390 F.2d 625, 626 (9th Cir. 1968). "Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding. The fact that the issue may be stated in different terms is of no significance." *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979); *Mitchell v. United States*, 2012 WL 1768088 *4 (D. Az. May 17, 2012).

Based on the Court's prior rulings and his direct appeal the defendant's request to reopen his § 2255 Habeas proceeding must be denied.

**<u>RULE 60(b)(6) and SECOND OR SUCCESSIVE MOTION</u>**.

To the extent that the Court disagrees with the argument that the Habeas Proceeding is not directly available based on its prior rulings, the Court must first determine whether this Motion is a legitimate Rule 60(b)(6) motion or a disguised second or successive habeas petition. If it is the latter, the Court lacks jurisdiction to consider the matter. *United States v. Washington*, 653 F.3d 1057, 1065 (9th Cir. 2011).

Federal criminal defendants are generally limited to a single motion under § 2255, and may not bring a "second or successive motion" unless it meets the exacting standards of 28 U.S.C. § 2255(h). Under that provision, a subsequent motion cannot be considered absent certification by the circuit court of appeals that it contains "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or "(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* § 2255(h). To avoid this onerous standard, petitioners sometimes characterize their pleadings as motions under Rule 60(b) of the Federal Rules of Civil Procedure, which "allows a party to seek relief from a final judgment, and request reopening of a case, under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)[1]; *United States v. Washington*, 653 F.3d 1057, 1059 (9th Cir. 2011). When a Rule 60(b) motion is actually a disguised second or successive § 2255 motion, it must meet the criteria set forth in § 2255(h). *Gonzalez*, 545 U.S. at 528.

The Supreme Court has not adopted a bright-line rule for distinguishing bona fide Rule 60(b) motions from disguised second or subsequent § 2255 motions, instead holding that a Rule 60(b) motion that attacks "some defect in the integrity of the federal habeas proceedings" is not a disguised § 2255 motion but rather "has an unquestionably valid role to play in habeas cases." *Id.* at 532, 534; see also *United States v. Buenrostro*, 638 F.3d 720, 722–23 (9th Cir. 2011) (per curiam). A legitimate Rule 60(b) motion may challenge a district court's procedural ruling, such as a "failure to exhaust, procedural default, or statute-of-limitations bar," that actually "precluded a merits determination." *Gonzalez*, 545 U.S. at 532 n. 4. On the other hand, if the motion presents a "claim," i.e., "an asserted federal basis for relief from a ... judgment of conviction," then it is, in substance, a new request for relief

[1] Although *Gonzalez* dealt with a § 2254 proceeding the Ninth Circuit has held it also applies to § 2255 motions as well. *United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011).

on the merits and should be treated as a disguised § 2255 motion. *Id.* at 530.

In this case, Mitchell purports to attack a procedural ruling – the denial of a request to interview jurors – but does so in the service of a claim he never made; that racial bias amongst the jurors prejudiced the verdict against him. (CR-30). Indeed, this Court has already held that Mitchell's complaints about the denial of juror interviews failed to state a claim upon which collateral relief might lie. *Mitchell v. United States*, No. CV-09-8089, CR-56 p. 60.) The Court did so despite Mitchell's complaints that "without any opportunity to communicate with the jurors, it would be impossible for him to identify, much less prove, that an individual juror was biased or that the deliberations were otherwise compromised." (CR-30 at 174.) Therefore, while Mitchell does attack a procedural ruling by this Court, the issue he identifies could not form the basis of relief absent permission by the Ninth Circuit for him to raise the substantive question of juror bias. As such, it appears that he has used Rule 60(b) in an improper attempt to smuggle a substantive issue before the Court, notwithstanding § 2255(h). Stated another way, Mitchell's arguments cannot satisfy Rule 60(b) because they allege a "defect in the integrity of the federal habeas proceedings" that did not impact this Court's adjudication of the merits as presented in the amended motion for relief. Cf. *Gonzalez*, 545 U.S. at 532, 534. Indeed, the defendant states that he is seeking to reopen the Section 2255 litigation to correct defects in those prior proceeding in order to pursue a "resolution of his claims on their merits." (CR 71, p. 2)

Even were the court to conclude that the defendant is entitled to reopen his habeas petition, the defendant is still not eligible for relief. He cannot sustain his burden of showing "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. at 535. The Court has explained that "[s]uch circumstances will rarely occur in the habeas context." Gonzalez, 545 U.S., at 535, 125 S.Ct. 2641. He fails to show that *Pena-Rodriguez* applies retroactively to his case. Even if the Court does determine that *Pena-Rodriguez* applies to the case, the defendant is unable to establish that the opinion supports his request to interview the jurors without a preliminary showing.

In *Tharpe v. Sellers*, 138 S. Ct. 545 (2018)(per curiam), a post *Pena-Rodriguez*

case, the Supreme Court remanded that case to the Eleventh Circuit for further consideration of whether a COA should issue on the issue of juror-bias. Although the opinion did not discuss *Pena-Rodriguez*, Justice Thomas, in dissent, provided an instructive analysis in concluding that *Pena-Rodriguez* did not apply retroactively:

> *Pena–Rodriguez* established a new rule: The opinion states that it is answering a question "left open" by this Court's earlier precedents. 580 U.S., at ——, 137 S.Ct., at 867. A new rule does not apply retroactively unless it is substantive or a "watershed rul[e] of criminal procedure." *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). Since *Pena–Rodriguez* permits a trial court "to consider [certain] evidence," 580 U.S., at ——, 137 S.Ct., at 869–70, and does not "alte[r] the range of conduct or the class of persons that the law punishes," *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), it cannot be a substantive rule. And Tharpe does not even attempt to argue that *Pena–Rodriguez* established a watershed rule of criminal procedure—a class of rules that is so "narrow" that it is " 'unlikely that any has yet to emerge.' " *Schriro*, supra, at 352, 124 S.Ct. 2519 (quoting *Tyler v. Cain*, 533 U.S. 656, 667, n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001); alterations omitted). Nor could he. Not even the right to have a jury decide a defendant's eligibility for death counts as a watershed rule of criminal procedure. *Schriro*, supra, at 355–358, 124 S.Ct. 2519. *Tharpe v. Sellers*, 138 S. Ct. 545, 551–52, 199 L. Ed. 2d 424 (2018) (Justice Thomas dissenting)

While Pena-Rodriguez carved out an exception to Rule 606(b) and allow for a review of racial bias of jurors, the Ninth Circuit had already raised the possibility. *United States v. Henley*, 238 F.3d 1111, 1120 (9th Cir. 2001). Nevertheless, the defendant failed to avail himself of the opportunity to pursue this area of inquiry in his 2009 Motion. He now submits that *Pena-Rodriguez* supports his request to interview jurors without any preliminary showing of racial bias. There is no approval from the Supreme Court or any other court for fishing expeditions in the absence of some information of racial bias. Rather the case law is to the contrary.

In *Pena-Rodriguez,* the jury was discharged and advised by the court that they were free to discuss the case with anyone if they chose. *Pena-Rodriguez*, 137 S.Ct. at 861. The defense attorney entered the jury room and was approached by two jurors. They informed counsel that another juror had expressed anti-Hispanic bias toward the defendant. *Id*. 861.

Following the local court rules, defense counsel sought and obtained permission from the court to again contact the two jurors and obtain their affidavits limited solely to the issue of racial bias. *Id.* 870. However, the district denied the motion for a new trial because of Colorado's version of Rule 606(b) ruling that it was powerless to consider the affidavits and the Colorado Supreme Court agreed. *Id.* 862.

The Supreme Court set out to determine "whether there is an exception to the no-impeachment rule when, after the jury is discharged, *a juror comes forward* with compelling evidence that another juror made clear and explicit statements that racial animus was a significant motivating factor in his or her vote to convict." *Id*. 861(emphasis added).

The Court had previously addressed the issue of jury impeachment in *Tanner v. United States*, 483 U.S. 107 (1987). It expressed concerns that allegations of juror misconduct raised after a verdict would "seriously disrupt the finality of the process." "Moreover, full and frank discussion on the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of post-verdict scrutiny of juror conduct." *Id*. 120-121. "While persistent inquiry into internal jury processes could "in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior," our very system of trial by jury might not "survive such efforts to perfect it." *Id. 120*.

More recently, the Court rejected losing plaintiff's attempts to introduce a juror affidavit in an attempt to prove the foreperson lied during *voir dire*. *Warger v. Shauers* 135 S.Ct. 521 (2014). It stated, "Congress' enactment of Rule 606(b) was premised on the concern that the use of deliberation evidence to challenge verdict would represent a threat to both jurors and finality in those circumstances not covered by the Rule's express exceptions." *Id*. at 528.

In *Pena-Rodriguez*, the Court again reviewed *Tanner* and *Warger* in conjunction with the history behind the no-impeachment rule found in Rule 606 Fed. R. Evid. It reiterated that Rule 606 continued to have substantial merit. "It promotes full and vigorous discussion by jurors with considerable assurance that after being discharged they will not be

summoned to recount their deliberations, and they will not otherwise be harassed or annoyed by litigants seeking to challenge the verdict. Additionally, it provides stability and finality to the verdict." *Pena-Rodriguez,* 137 S.Ct. at 865. "Once a jury has pronounced its judgment, Rule 606(b) helps ensure jurors' ability to 'separate and melt anonymously in to the community from which they came.'" *United States v. Leung,* 796 F.3d 1032, 1038 (9th Cir. 2015) (internal citation omitted).

The *Pena-Rodriguez* Court, after a review of the no-impeachment rule and the impact of racial prejudice in the administration justice carved out another exception to Rule 606(b). "[T]hat where a juror makes a clear statement that he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any denial of the jury trial guarantee." *Pena-Rodriguez,* 137 S.Ct. at 869.

The defendant argues that the only way for him to determine whether racial bias played any role in the jury deliberations is to interview the members of the jury. However, the Court rejected the idea of open season on interviewing jurors. Rather, it left the mechanics of acquiring such evidence to the "state rules of professional ethics and local court rules both of which often limits counsel's post-trial contact with jurors." *Pena-Rodriguez,* 137 S.Ct. at 869. "These limits seek to provide jurors some protection when they return to their daily affairs after the verdict. But while a juror can always tell counsel they do not wish to discuss the case, jurors in some instances may come forward of their own accord." *Pena-Rodriguez,* 137 S.Ct. at 869. The Sixth Circuit concluded that this language allowed for the enforcement of local rules limiting juror contact. *United States v. Robinson*, 872 F.3d 760, 770 (6th Cir. 2017). It upheld a district court's dismissal of a motion for new trial, in part, based on juror racial bias where the defense contacted jurors in violation of its local rules. *Id*. 770.

The Court repeatedly emphasized in *Pena-Rodriguez* that it was the jurors who came forward and that defense counsel followed the local court rules and obtained

permission to seek the affidavit of the jurors. *Pena-Rodriguez,* 137 S.Ct. at 870. The argument offered here of the need to interview jurors to determine whether there was racial bias in the jury room was rejected in *United States v. Reyes*, 2018 WL 705302 (D. Vermont 2/01/2018 *3. The judge ruled that *Pena-Rodriguez* did not support mere speculation since it was premised on jurors coming forward, which had not happened in *Reyes*. * 3

In this District, Ariz. R. Sup. Ct. 42, E. R. 3.5 ("E.R. 3.5"). Arizona Rule of Professional Conduct Rule ER 3.5(a)(1) ""prohibits contact with jurors after they are discharged if the communication is prohibited by law or court order. LRCiv 39.2(b) prohibits such contact unless the court grants permission under a limited set of circumstances. The Ninth Circuit disfavors post-verdict interrogation of jurors and has consistently disallowed such interrogation for the purpose of discovering potential, but unspecified, jury misconduct. *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972); *N. Pac. Ry. Co. v. Mely*, 219 F.2d 199, 202 (9th Cir. 1954). At minimum, a party must make a preliminary showing of misconduct to establish good cause to conduct juror interviews. *See United States v. Stacey*, 475 F.2d 1119, 1121 & n. 1 (9th Cir. 1973); *Smith,* 457 F.2d at 1100. The defense cites to no authority in which a court allowed a fishing expedition without some type of preliminary showing of misconduct.

**TRIAL SAFEGUARDS AGAINST RACIAL BIAS**

The *Tanner* Court also outlined existing safeguards to protect an individual's right to an impartial and competent jury without the need to delve into juror testimony. It listed *voir dire* as a means of probing impartiality, the ability of the court and counsel to observe and learn of juror misconduct during the course of the trial, the opportunity of jurors to observe each other and to report issues prior to the verdict and finally the use of non-juror testimony after trial to impeach the verdict. *Tanner,* 483 U.S. at 127. The Supreme Court again acknowledged those safeguards in *Warger,* 135 S.Ct. *at* 529 and *Pena-Rodriguez,* 137 S.Ct. at 871.

In the instant case, there were many such safeguards. More so than a usual trial. First, each member of the venire panel answered a 22-page questionnaire with 77 questions,

which they answered under the penalty of perjury. Question 40 inquired whether the individual, close family members or friends were Native American. They were asked in Question 41 whether they, close family member or friends ever lived or worked on an Indian Reservation or had substantial work or personal contacts with a Reservation or its tribal members. Question 42 sought out whether any contacts or relationships with Native Americans would make it difficult for the potential juror to be fair and impartial in a case where the defendant was alleged to be a Native American. Finally, in question 43, they were asked whether there was any reason, such as personal experiences, or what they had heard or read or visits to a Reservation, that they believed would make it difficult for them to be a fair and impartial juror. Some potential jurors were struck based on their answers to the questionnaires prior to the actual selection process. (RT 3/26/03 pp. 88-153.)

Over the course of approximately 16 days, the venire was interviewed in small groups and then one by one by both the court and counsel. At the end of the penalty phase, the jurors were instructed:

> Finally – finally, in your consideration of whether the death sentence is appropriate, you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant of the victims. You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to race, color, religious beliefs, national origin or sex of either the defendant or any victim.
>
> To emphasize the importance of this consideration, Section VII of the Special Verdict Forms contains a certification statement. Each juror should carefully read the statement and sign your name in the appropriate place if the statement accurately reflects the manner in which you reach your individual decision.

(RT 5/16/2003 pp. 4103-04.)

Each of the jurors signed this document at the conclusion of their deliberations. (RT 5/20/2003 pp. 4201, 4206.) (CR-01-01062, CR 325.)

Finally, as the court discharged the jury it advised them that they were free to talk with anyone about the case including the lawyers, but that they were under no obligation to

do so. (RT 5/23/2003 p. 4207.) No juror came forward at that time nor in the 15 years since the verdict was rendered in this case to report racial bias. The Supreme Court found that juror complaints about the racial bias of another juror are usually made quickly after the verdict. *Pena-Rodriguez*, 137 S.Ct. at 870.

**CONCLUSION**

The law of the case that the original request to interview jurors was untimely, failed to show good cause and that the Motion was not a cognizable claim under Section 2255 precludes reopening the Habeas Proceedings. Further, the Ninth Circuit's affirmance of the district court's decision also bars the reopening.

Alternatively, the defendant's Rule 60(b)(6) Motion is a disguised Section 2255 Petition which requires a Certificate Of Appealability to proceed. Further, *Pena-Rodriguez* is not retroactive to this case nor does it support the defense contention that he is entitled to interview the jurors without any showing of racial bias. Therefore, the defendant cannot sustain his burden of demonstrating "extraordinary circumstances" to support the reopening of a final judgement under Rule 60(b)(6). For these reasons, the Motion should be denied.

Respectfully submitted this 21st day of May, 2018.

ELIZABETH A. STRANGE
Acting United States Attorney

*s/ Vincent Q. Kirby*
VINCENT Q. KIRBY
Assistant United States Attorney

HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
JONATHAN C. AMINOFF (No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Movant
LEZMOND CHARLES MITCHELL

**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lezmond Charles Mitchell,<br><br>Defendant/Movant,<br><br>v.<br><br>United States of America,<br><br>Plaintiff/Respondent. | Civil No. 3:09-CV-08089<br>(Criminal No. 3:01-CR-01062-NVW-1)<br><br>**DEATH PENALTY CASE**<br><br>Honorable Neil V. Wake<br>United States District Judge<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)**<br><br>**Oral Argument Requested** |

**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lezmond Charles Mitchell<br>Defendant/Movant,<br>v.<br>United States of America,<br>Plaintiff/Respondent. | Civil No. 3:09-CV-08089<br>(Criminal No. 3:01-CR-01062-NVW-1)<br>**DEATH PENALTY CASE**<br>Honorable Neil V. Wake<br>United States District Judge<br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)**<br>**Oral Argument Requested** |

Movant Lezmond Mitchell moves pursuant to Federal Rule of Civil Procedure, Rule 60(b)(6) for relief from the judgment of this Court due to the extraordinary circumstances of this case. This motion is based on the attached memorandum of points and authorities and all the files and records of this case.

Respectfully submitted,

Dated: March 5, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

In this death-penalty case, appointed post-conviction counsel for Lezmond Mitchell sought to conduct a reasonable investigation in support of Mitchell's post-judgment motion to vacate his conditions and sentences. Part of that investigation should have included interviewing the jurors from Mitchell's trial, but Mitchell's counsel was barred from speaking with the jurors. The Supreme Court subsequently issued *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), which casts doubt on this Court's prior ruling and warrants re-opening this case to allow Mitchell to brief his right to access the jurors from his trial.

## II. BACKGROUND

This Court sentenced Lezmond Mitchell to death on September 15, 2003. *United States v. Mitchell*, CR-01-1062, Dkt. No. 425. The Ninth Circuit affirmed Mitchell's convictions and sentences, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), and the Supreme Court denied certiorari. *Mitchell v. United States*, 553 U.S. 1094 (2008).

On June 8, 2009, Mitchell moved to vacate his convictions and sentences in this Court, pursuant to 28 U.S.C. Section 2255, *Mitchell v. United States*, CV-09-8089, Dkt. No. 9. Before filing his Section 2255 motion, however, Mitchell moved for authorization to interview the jurors from his capital trial. *Id*. at Dkt. No. 1. Leave of court was required pursuant to a District of Arizona rule that prohibits attorneys from contacting jurors after trial unless they submit written interrogatories to the district court "within the time granted for a motion for a new trial" and show "good cause" for the interview. D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2. The government opposed the motion. Dkt. No. 18.

This Court denied Mitchell's request to interview the trial jurors on two grounds. First, it indicated that Mitchell had not followed the local rule's procedures regarding

submitting proposed interrogatories and an affidavit,[1] and filing within the time granted for a motion for a new trial. Dkt. No. 31. Alternatively, the district court concluded that Mitchell had not shown "good cause" for contacting the jurors. *Id.* Mitchell then amended his Section 2255 motion to include a claim that this Court violated his constitutional rights by denying him access to the jurors. Dkt. No. 30 at 173.

This Court subsequently denied Mitchell's Section 2255 motion without holding an evidentiary hearing. Dkt. No. 56. Mitchell appealed on several grounds, including the denial of his motion to interview jurors. The Ninth Circuit's opinion affirming the denial of his Section 2255 motion does not address the juror interviews. *Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015). The Supreme Court denied certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

In its recent decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct 855 (2017), the Supreme Court established that Mitchell was erroneously denied the opportunity to interview the jurors in his case. This error prevented Mitchell from presenting a fully investigated Section 2255 motion to this Court, and prevented the Court from conducting a full merits determination resulting in a "defect in the integrity of [his] federal habeas proceeding." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). Mitchell moves to re-open the Section 2255 litigation to correct the defects in the integrity of the post-conviction proceedings that deprived him of a resolution of his claims on their merits.

## III. ARGUMENT

The central concern of Federal Rule of Civil Procedure 60(b)(6) is that justice is done. *Klapprott v. United States*, 335 U.S. 601, 615 (1949). Accordingly, Rule

---

[1] Mitchell submits that Local Rule 39.2 is unduly burdensome and should not impact Mitchell's ability to conduct a reasonable investigation including informal interviews with jurors. If, however, the Court grants this motion but insists on Mitchell's compliance with Local Rule 39.2, Mitchell will submit interrogatories as directed by the Court.

60(b)(6) "vests power in courts . . . to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Id*. at 615. Pursuant to Rule 60(b)(6), a party can seek relief "from a final judgment, order, or proceeding" and request reopening of his case, for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) "reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc*., 514 U.S. 211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co*., 322 U.S. 238, 244 (1944).

The Circuit Courts have long identified Rule 60(b)(6) as "a grand reservoir of equitable power," *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) (quoting *Harrell v. DCS Equip. Leasing Corp*., 951 F.2d 1453, 1458 (5th Cir. 1992)), that affords courts the discretion and power "to vacate judgments whenever such action is appropriate to accomplish justice." *Gonzalez*, 545 U.S. at 542, (quoting *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 864 (1988)). A court's ability to grant relief under Rule 60(b), is constrained only by the requirements that a petitioner "demonstrate both the motion's timeliness and … that 'extraordinary circumstances justif[y] the reopening of a final judgment.'" *Christeson v. Roper*, 135 S. Ct. 891, 895-96 (2015) (quoting *Gonzalez*, 545 U.S. at 535).

Rule 60(b), "like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings" and "has an unquestionably valid role to play in habeas cases." *Gonzalez*, 545 U.S. at 534. District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings when such motions "attack[ ] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez*, 545 U.S. at 532. Thus, a district court can consider a Rule 60(b) motion when a petitioner "asserts that a previous ruling which precluded a merits determination was in error — for example, a denial for such reasons as failure to exhaust, procedural default or statute-of-limitations bar." *Id*. at 532 n.4.

Rule 60(b) is particularly important where federal review of the merits of a petitioner's claims has been limited. *Phelps v. Alameida*, 569 F.3d 1120, 1140 (9th Cir. 2009) ("a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard.").

**A. The Lack of Due Process Afforded to Mitchell Constitutes an Extraordinary Circumstance Justifying Relief**

Post-conviction counsel in a capital case is duty-bound to conduct "an aggressive investigation of all aspects of the case." American Bar Association ("ABA") 2003 Death Penalty Guidelines 10.15.1(E)(4). The commentary to the ABA Death Penalty Guidelines explains that post-conviction counsel must conduct a "thorough, independent investigation" of, *inter alia*, juror misconduct, because "the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case." 31 Hofstra L. Rev. 913, 1085-86 (2003).

In the course of litigating his Section 2255 motion, Mitchell was denied the ability to conduct the type of investigation mandated by the ABA. Intervening Supreme Court caselaw reaffirms that this denial, which precluded a full and fair merits determination, was erroneous.

The Supreme Court's recent decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), supports Mitchell's case for interviewing the jurors and demonstrates the error of this Court's decision. In that case, Peña-Rodriguez's counsel was permitted to speak with the jurors, and two jurors informed counsel that another juror had expressed anti-Hispanic bias toward the defendant and his alibi witnesses. *Id*. at 861. Defense counsel ultimately submitted signed affidavits from those jurors, which memorialized the racist comments made by another juror. *Id.* at 862. Despite this evidence of juror misconduct, the trial court denied the defense motion for a new trial, finding that the affidavits were not admissible to impeach the verdict under Colorado's equivalent to Federal Rule of Evidence 606(b), which renders inadmissible virtually any post-verdict

juror statement concerning the contents of the jury's deliberations. *Id.* at 862. The Colorado Supreme Court affirmed, and the Supreme Court granted certiorari to decide if racial bias should be an exception to the general, firmly rooted provisions behind Rule 606(b). *Id.* at 862-63. The Supreme Court reversed, finding that the Sixth Amendment requires that the no-impeachment rule give way in order to permit a trial court to consider evidence that a juror relied on racial stereotypes or animus to convict a criminal defendant. *Id.* at 869. The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee, that general evidence rules must be modified to root out racism in the criminal justice system. *Id.* at 871.

It is uncontroverted that the death penalty has a long history of racial injustice. Indeed, just last term the Supreme Court reversed a Texas capital conviction in which a man's death sentence may have been based on his race. *Buck v. Davis*, 137 S. Ct. 759 (2017). The United States government has a particularly shameful history of oppressing the Native American people. *See, e.g., Mesclaero Apache Tribe v. Jones*, 411 U.S. 145, 152 (1973) ("The intent and purpose of the Reorganization Act was 'to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'") (quoting H.R.Rep.No.1804, 73d Cong., 2d Sess., 6 (1934)). Indeed, in this case, the government arbitrarily pursued a death sentence pursuant to "an aggressive expansion of the federal death penalty" despite strong opposition from the Navajo Nation, the victims' family, and the local United States Attorney's Office. *Mitchell*, 790 F.3d at 894-897 (Reinhardt, J., dissenting). Mitchell was then tried before a jury that consisted of only one Native American. The jury was picked from a 207-person venire which included 29 Native Americans. Of those 29 people, four were excluded based on their use of Navajo as their first language, RT 38, 119, 601-602, 1174, and eight more were excluded due to their Navajo beliefs in opposition to the death penalty. RT 198-99, 336, 988, 1262-63, 1424, 1684, 2256. In fact, when the government attempted to exclude the lone

surviving Native American juror, the Court sustained Mitchell's *Batson*[2] objection and denied the government's strike. RT 2506, 2509-13. The government was, however, successful in removing the only African American juror on the venire. RT 2514-16. Given the severity of Mitchell's sentence, and the racial undertones of this capital prosecution, Mitchell should be permitted to conduct an investigation no more intrusive than necessary to determine what role, if any, racial bias played in his convictions and sentences.

The Supreme Court noted in *Peña-Rodriguez* that the "practical mechanics of acquiring and presenting [evidence of juror bias] will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id*. at 869. In Arizona, however, Local Rule 39.2 goes far beyond *limiting* counsel's contacting with jurors. Rather, it *prevents* any contact between the parties and a juror absent permission of the Court on a showing of good cause. Indeed, of the fifteen district courts in the Ninth Circuit, only two — the District of Arizona and the District of Montana — require a "good cause" showing. D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2; D. Mont. Loc. Civ. R. 48.1(b); D. Mont. Loc. Crim. R. 24.2(b). Five other district courts require leave of court without a "good cause" showing. D. Alaska Loc. Civ. R. 83.1(h); D. Or. Loc. R. 48-2; E.D. Wash. Loc. R. 47.1(d); W.D. Wash. Loc. R. 47(d). Eight district courts in the Ninth Circuit impose no post-trial restrictions on juror contacts whatsoever.

Moreover, Local Rule 39.2 does not apply to habeas petitioners attacking state convictions and sentences in federal district courts in Arizona. *Ellison v. Ryan*, 2017 WL 1491608 (D. Ariz. April 26, 2017) at *2-3; *Cota v. Ryan*, 2017 WL 713640 (D. Ariz. February 23, 2017) at *2; *Harrod v. Ryan*, 2016 WL 6082109 (D. Ariz. October 18, 2016) at *3. As a practical matter, this means that all 116 inmates on death row in

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

Arizona[3] are free to conduct a reasonable investigation by informally interviewing their jurors and presenting the fruits of that investigation in support of their federal habeas petitions to federal district courts in Arizona. But Mitchell, solely by virtue of the fact that he was prosecuted federally, is barred from conducting that same reasonable investigation. Thus Mitchell is left with no mechanism, practical or otherwise, for investigating the type of misconduct at issue in *Peña-Rodriguez*.

Ultimately, the *Peña-Rodriguez* case emphasizes that the specter of racial bias is an issue so repulsive that exceptions should be made to general rules to ensure that racism has not influenced criminal convictions or sentences. The Supreme Court has also emphasized the importance of investigation in the post-conviction context. *See, e.g., Martinez v. Ryan*, 566 U.S. 1, 13 (2012) (explaining that post-conviction ineffective assistance of counsel claims can require extensive investigation such that an inmate's ability to file such a claim is significantly diminished absent the assistance of post-conviction counsel). On balance, *Peña-Rodriguez* establishes that criminal defendants must be allowed to pursue racial bias issues, and whether this Court sets aside Local Rule 39.2's good cause requirement, or finds that investigating racial bias satisfies the good cause requirement, Mitchell must be afforded the right to investigate. Mitchell's inability to adequately investigate his case prevented a full and fair merits determination, which warrants re-opening the proceedings under Rule 60(b) and permitting Mitchell to move the Court for an order granting Mitchell access to the jurors from his trial.

**B. This Motion is Timely**

Mitchell has diligently pursued his rights. He timely appealed his convictions and sentences in this Court and timely filed his Section 2255 motion and related appeals.

---

[3] https://corrections.az.gov/public-resources/death-row

Mitchell has filed this motion under Federal Rule of Civil Procedure, Rule 60(b)(6). A motion brought pursuant to Rule 60(b)(6) must be filed within a reasonable time to be considered timely. Rule 60(c)(1). "What constitutes "reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam).

The interest in finality has been minimized by the Supreme Court in the context of a Rule 60(b) motion because the purpose of Rule 60(b) is to create an exception to finality. *Gonzalez*, 545 U.S. at 520 ("[Finality], standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality."). Setting aside the first factor, Mitchell has good reason for any delay, as this motion is based on the Supreme Court's recent decision in *Peña-Rodriguez*, which was issued less than a year from the date of filing this motion. The third factor also weighs in Mitchell's favor because he obviously could not have known how this decision would impact his case before the Supreme Court issued its opinion. Indeed, the circuit courts have legitimized waiting for subsequent decisions to be issued before filing a Rule 60(b) motion. *Clarke v. Burke*, 570 F.2d 824, 831-32 (8th Cir. 1978) (where the "movants acted reasonably in waiting for the district court's decision in a later, but related, case before filing the Rule 60(b) motion because it was the unfavorable ruling in the later case that precipitated the need for the Rule 60(b) motion."). Finally, the government will not suffer prejudice if the Court grants this motion. While the Supreme Court opinion upon which this motion is based is new, the underlying issue has been previously argued in this case. As a result, the government should be familiar with these issues and not prejudiced by the timing of this motion.

The primary concern for timeliness is avoiding a scenario where the movant has allowed "the normal appeals channels [to] lapse" or "ignored normal legal recourses" and now seeks a "second bite at the apple." *In re Pacific Far East Lines, Inc.*, 889 F.2d

242 (9th Cir. 1989). That is not the situation here. Mitchell timely moved to interview the jurors in his case. When the Court denied his request, he raised the issue in his Amended 2255 Motion. *Mitchell v. United States*, Case No. 09-CV-8089, Dkt. No. 30, Claim K at 173. When his 2255 Motion was denied, Mitchell raised the issue on appeal. *Mitchell v. United States*, Ninth Circuit Case No. 11-99003, Dkt. Entry 23 at 78.

In *Buck v Davis,* the Supreme Court overturned the Fifth Circuit's denial of a COA and found that Buck had demonstrated entitlement to relief under Rule 60(b)(6). 137 S. Ct. 759 (2017). The Supreme Court reached this decision notwithstanding that Buck's motion primarily relied on the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), but was filed almost two years after *Martinez* was decided and 8 months after *Trevino* was decided. *Id*. at 767, 771. Mitchell's motion is being filed less than one year after *Peña-Rodriguez* was decided. *Buck* establishes that Mitchell has filed his motion within a reasonable time.

## IV. CONCLUSION

For all of the foregoing reasons, Mitchell respectfully requests that the Court grant this motion, re-open this case, and allow Mitchell to move for access to the jurors.

Respectfully submitted,

Dated: March 5, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

**THE STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lezmond Charles Mitchell,<br>Defendant/Movant,<br>v.<br>United States of America,<br>Plaintiff/Respondent. | Civil No. 3:09-CV-08089<br>(Criminal No. 3:01-CR-01062-NWVW-1)<br>**<u>DEATH PENALTY CASE</u>**<br>Honorable Neil V. Wake<br>United States District Judge<br>**[PROPOSED ORDER] GRANTING NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)** |

Upon the motion of Movant Lezmond Charles Mitchell,

**IT IS HEREBY ORDERED** that Mitchell's motion for relief from judgment pursuant to Federal Rule of Civil Procedure, Rule 60(b) is granted.

## Motions

3:09-cv-08089-MHM Mitchell v. United States of America **CASE CLOSED on 09/30/2010**

2255,CLOSED,CMX,DTE,PROTO

**U.S. District Court**

**DISTRICT OF ARIZONA**

### Notice of Electronic Filing

The following transaction was entered by Aminoff, Jonathan on 3/5/2018 at 5:49 PM MST and filed on 3/5/2018

**Case Name:** Mitchell v. United States of America
**Case Number:** 3:09-cv-08089-MHM
**Filer:** Lezmond Mitchell
**WARNING: CASE CLOSED on 09/30/2010**
**Document Number:** 71

**Docket Text:**
**MOTION to Reopen Case *Pursuant to Federal Rule of Evidence, Rule 60(b)(6)* by Lezmond Mitchell. (Attachments: # (1) Proposed Order)(Aminoff, Jonathan)**

**3:09-cv-08089-MHM Notice has been electronically mailed to:**

Jonathan C. Aminoff jonathan.aminoff@fd.org

Sean K Kennedy sean_kennedy@fd.org

Statia Peakheart statia_peakheart@fd.org

Vincent Quill Kirby Vincent.Kirby@usdoj.gov, CaseView.ECF@usdoj.gov, Heidi.Kinwald@usdoj.gov, julia.soza@usdoj.gov

**3:09-cv-08089-MHM Notice will be sent by other means to those listed below if they are affected by this filing:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=3/5/2018] [FileNumber=17367481-0
] [59f29dfdf4289cf7ab39217ec7eadebac650e94727ca1f5f94cab756dc06171a48c
b6808ea30bf3f2cd261aa726d041568cb1c1ccf1a13b8d348a615bfb0359b]]
**Document description:** Proposed Order
**Original filename:**n/a

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=3/5/2018] [FileNumber=17367481-1
] [6134a529cb15ee929881946caf44cb1cd4c292fda3b4b0a4271e722db31faae90b6
58442073c8101b9520066367eeaffafc628ad762561ca013588179dd610dc]]

SEAN KENNEDY (Calif. Bar No. 145632)
sean_kennedy@fd.org
Federal Public Defender
STATIA PEAKHEART (Calif. Bar No. 200363)
statia_peakheart@fd.org
Deputy Federal Public Defender
Office of the Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant-Movant
LEZMOND CHARLES MITCHELL

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LEZMOND CHARLES MITCHELL,<br>Movant,<br>v.<br>UNITED STATES OF AMERICA,<br>Respondent. | No. CV-09-8089-MHM<br>**Reply to Response to Amended § 2255 Motion** |

counsel sought a full and fair opportunity to speak to Veniremember No. 20 in order to clarify her views, but was denied such opportunity.

**4. Jury of Volunteers**

Mitchell offered a side-by-side comparison of a juror who wanted to be on the case but presented potential problems and jurors who did not want to be on the case who presented potential problems. (Amended § 2255 Motion, pp. 168-73.) Only the juror who wanted to be on the case was allowed to proceed to individual *voir dire*. The Government's response is limited to conclusory statements that Mitchell's allegations are a disservice to the Court because Mitchell allegedly has no evidence to support his issue. (Response, p. 50.) The Government's argument is not well taken because the Government has adamantly opposed Mitchell's requests to interview jurors and thus, despite the fact that Mitchell has been limited to the record, the Government does not respond to the side-by-side comparison Mitchell offered in his Amended § 2255 Motion. Furthermore, the Government cites the juror questionnaire as further proof of the adequacy of the voir dire process – a document which this Court has already deemed inadequate. (RT 1537). And finally, it is the Government who does a disservice to this Court and the criminal justice system at large by attempting to deny Mitchell his right to fully develop his issues. Indeed, the Government should welcome any opportunity to right an unjust criminal proceeding.

**K. <u>This Court Violated Mitchell's Constitutional Rights by Denying His Request to Interview the Jurors in his Capital Case</u>**

The Government contends that this issue was not timely raised because Mitchell had not raised it in his first § 2255 motion, but rather in his Amended § 2255 Motion. As the Government notes, however, Mitchell could not raise this issue in his original motion because the issue had not been resolved. (Response, p. 50.) Indeed, Mitchell filed his motion to interview jurors on May 22, 2009 – over two weeks before the date he filed his first § 2255 motion. (*See* Dkt. Nos. 1

and 9a.) This Court denied Mitchell's motion to interview Jurors on September 4, 2009 – over four months after Mitchell filed the original request. (*See* Dkt. No. 21.) Post-conviction counsel for Mitchell made his best efforts to file the motion as early as possible, and successfully filed the motion to interview jurors in advance of the one-year deadline.

The Government then contends that Mitchell's issues should be denied because Mitchell allegedly failed to establish good cause to conduct the interviews. (Response, p. 51.) The Government is incorrect. In addition to the four subissues Mitchell has alleged which provide good cause to interview the jurors – counsel's duties under the ABA guidelines, prosecutorial misconduct, publicity, juror misconduct – Mitchell relies on the "death is different" doctrine, *Schriro v. Farley*, 510 U.S. 222, 239, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994), and the clearly established principle that death verdicts require increased reliability. *Lowenfield v. Phelps*, 484 U.S. 231, 238-39, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988); *McKoy v. North Carolina*, 494 U.S. 433, 110 S. Ct. 1227, 108 L. Ed. 2d 369 (1990); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978).

The need for juror interviews is evident. Mitchell has outlined several areas of issues related to jurors, and in every instance the Government faults Mitchell for failing to affirmatively prove his issues. In addition to the fact that Mitchell is not obligated to affirmatively prove his case in his Amended § 2255 Motion, but rather should be permitted to avail himself of full discovery, access to this Court's subpoena power, and an evidentiary hearing, Mitchell further contends that the Government should be estopped from the defense that Mitchell cannot affirmatively prove any of his juror-related issues because of the Government's position prohibiting Mitchell from interviewing any of the jurors. As a matter of equity, Mitchell cannot be deprived of his right to fully investigate his issues and

also be faulted for failing to provide information only available via full investigation.

This Court's denial of Mitchell's reasonable request to adequately investigate his issues violates both the due process clause, and the longstanding Eighth Amendment right to "increased reliability" of the process by which capital punishment may be imposed. *Herrera v. Collins*, 506 U.S. 390, 405, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993).

**L. *Voir Dire* Was Constitutionally Inadequate to Secure Mitchell's Constitutional Right to an Impartial and Life-qualified Jury**

Mitchell explained in his Amended § 2255 Motion that *voir dire* at his capital trial was constitutionally inadequate because this Court inappropriately rehabilitated jurors and prevented defense counsel from asking prospective jurors questions specific to Mitchell's case. (Amended § 2255 Motion, pp. 178-87.) The Government responds that *voir dire* took approximately four weeks to complete. (Response, p. 52.) Mitchell assumes that the Government is well aware that a lengthy *voir dire* does not equate to an adequate *voir dire*. Indeed, *voir dire* could last years, but the relevant inquiry is whether it meets the standards set forth by the Supreme Court. *Morgan v. Illinois*, 504 U.S. 719, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992). The Government then contends that trial counsel did not object to the nature of the questioning of the venire. The Government misstates the record. In fact, John Sears, learned counsel for Mitchell, made this precise objection several times. (*See, e.g.*, RT 486-89.) Finally, the Government contends that appellate counsel did not raise this issue. To the extent appellate counsel failed to raise this issue, they provided ineffective assistance. (*See* Amended § 2255 Motion, Issue AA.)

The Government does not respond to Mitchell's issue concerning this Court's inappropriate rehabilitation of pro-death jurors and cites from the record to prove this issue. Thus, Mitchell assumes the Government concedes this point.

DENNIS K. BURKE
United States Attorney
District of Arizona

VINCENT Q. KIRBY
Assistant U.S. Attorney
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004
Arizona State Bar No. 6377
Telephone (602) 514 7500

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Mitchell, Movant, v. United States of America, Respondent. | **CV-09-8089-MHM (JI)** **GOVERNMENT'S RESPONSE TO MOVANT'S AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

The United States of America, by and through undersigned counsel, hereby responds to the Petitioner's Amended Motion based on the attached Memorandum of Points and Authorities.

Respectfully submitted this 1st day of April 2010.

DENNIS K. BURKE
United States Attorney
District of Arizona

/s/ Vincent Q. Kirby

VINCENT Q. KIRBY
Assistant U.S. Attorney

There is not a scintilla of evidence to back Petitioner's claim that he was tried by juror composed solely of those who *wanted* to serve on the jury. Such statements are a great disservice to the court, the parties and the people who answered the call to perform their civic duty. The jury selection process extended over a four week period, included a 21 page questionnaire containing 77 questions, as well as group and individual voir dire by both the court and the respective attorneys. Petitioner cannot point to one seated juror and prove that they were not fair and impartial

Petitioner fails to demonstrate, in light of all of the circumstances, that appellate counsel's identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. Furthermore, he cannot prove that the results of the proceeding would have been different. *Strickland,* 466 U.S. at 687. Further, *Coleman*, 501 U.S. at, 753-54 does not support his claim that the Court must hear the issue on its merits despite the fact that this issue was not properly raised at trial or on appeal. The Court held that when counsel, who is not constitutionally mandated to represent a defendant, fails to file a timely claim, there is no ineffective assistance of counsel. *Id*.

**Issue K. Juror Interviews Post-Verdict**

Petitioner raises for the first time in his Amended Habeas Motion that the court erred by denying his request to interview jurors post-verdict.

**1. Issue Waived**

This issue was not raised in his initial Habeas Motion and should therefore be dismissed. The burden in on Petitioner to show that the matters in the amended motion properly relate back to the original motion. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). He will argue that the issue had not been resolved by the court at that time. As the Court noted, he never offered any explanation why the issue could not have been raised well in advance of the AEDPA deadline.

**2. Discussion**

Petitioner argues that the Court rested its denial of his motion to interview jurors solely on LRCiv. 39.2. However, the ruling was primarily based on the law: "Petitioner must, at a minimum, make a preliminary showing of juror misconduct to establish good cause to conduct juror interviews. *See United States v. Stacey*, 475 F.2d 1119, 1121 & n.1 (9th Cir. 1973); *Smith v. Cupp*, 457 F.2d 1098,1100 (9th Cir. 1972)." This Court found none. Petitioner cites no case that has ever held that in capital cases, the Federal Rules of Evidence are to be interpreted differently.

The Supreme Court has made it abundantly clear that verdicts are sacrosanct, and jurors are to be protected:

> [L]et it once be established that verdict solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation-to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267-68 (1915).

> There is little doubt that post verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts after irresponsible of improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupts the finality of the process . . . Moreover, full and frank discussion in the jury room, juror's willingness to return an unpopular verdict, and the communities trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct"

*Tanner v. United States*, 483 U.S. 107, 120-21 (1987).

This issue should be dismissed as it was not timely raised and further there is no legal basis to support it.

**L. Inadequate Voir Dire**

Movant alleges, for the first time, that his voir dire proceedings were constitutionally inadequate.

**1. Issue Waived**

The issue was not raised on appeal and he is therefore procedurally barred from raising the issue. No plain error was found on appeal.

**2. Discussion**

Petitioner cannot argue that the voir dire in this case "was not a serious meaningful, inquiry into the qualifications and biases of the prospective jurors." (Pet. Motion p. 126.) Voir dire took the better part of four weeks to complete. Trial counsel never complained that the court was not conducting a thorough and complete questioning of the venire. Even appellate counsel saw no reason to complain.

Counsel is accorded great deference during voir dire along with a strong presumption of competence. *Keith v. Mitchell*, 455 F.3d 662, 676 (6th Cir. 2006).

The Court should reject Petitioner's unwarranted assault on the integrity of the Court. He claims, without any support from the record, that [t]he jurors' answers were meaningless because the Judge had devalued their oath and the Court's actions rendered their responses untrustworthy."

Trial counsel asked a significant number of probing questions. The Court took issue with only one hypothetical question posed by the defense:

> If you had just sat on the jury and you found after you heard the whole case at trial, all the evidence, and you concluded that my client was guilty, that he committed carjacking and that he caused the death of two people, a nine-year-old girl and a 65-year-old woman, and then you are going to be asked what the punishment was, can you personally imagine yourself under any circumstances voting for anything other than the death penalty?

(RT 1517.) It found the question to be misleading, incomplete and not germane to the issues (RT 1520-27.)

The Court was correct in ruling that the answer to this defense hypothetical question did not satisfy the test set forth by the Supreme Court of "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright*, 469 U.S. at, 424. The Court was obligated to ask follow-up questions to clarify that issue. It did not have to accept the defense strategy of ignoring case law.

Petitioner then attempts to argue that his counsel were "forbidden from asking prospective jurors questions specific enough" to determine whether they could fairly and impartially serve on Mitchell's case. However, he cannot point to one example where he was denied a right to ask a death/life qualifying questions of the venire.

Petitioner fails to demonstrate, in light of all of the circumstances, that appellate counsel's identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. Furthermore, he fails to prove that the results of the proceeding would have been different. *Strickland,* 466 U.S. at 687. Speculation is not sufficient to establish prejudice under *Strickland*. *Gonzales*, 515 F.3d at, 1015-16.

This issue should be dismissed.

**M. Cumulative Effect of Errors During Jury Selection**

**1. Issue Waived**

Petitioner never objected, either at the time of the proceedings or now, that his jury was not fair and impartial. The issue was not raised on appeal and he is therefore procedurally barred from raising the issue in a habeas motion. No plain error was found on appeal.

**2. Discussion**

There were no errors during jury selection . The true focus is whether the jurors who sat in judgment were fair and impartial. *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988). Petitioner does not allege that any members of the jury were not fair and impartial. The essence of his attacks on jury selection is that venire persons, whom he believed *might* have been favorable to him or

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LEZMOND CHARLES MITCHELL | Case No.: CV-09-8089-MHM |

# Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, Or, in the Alternative, Pursuant to 28 U.S.C. § 2241

---------------

**Filed Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure**

SEAN KENNEDY (Calif. Bar No. 145632)
Federal Public Defender
STATIA PEAKHEART (Calif. Bar No. 200363)
Deputy Federal Public Defender
Office of the Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant-Movant
LEZMOND CHARLES MITCHELL

assistance in not asserting it sooner, and the Court should consider the claim on the merits. *Coleman v. Thompson*, 501 U.S. at 753-54; *Strickland v. Washington*, 466 U.S. 668. (*See* Claim AA, *infra*.)

## K. <u>This Court Violated Mitchell's Constitutional Rights by Denying His Request to Interview the Jurors In His Capital Case</u>

407. Mitchell's conviction, sentences and death judgment violate the Fifth, Sixth, and Eighth Amendments of the United States Constitution because he was deprived of the his right to fully and adequately investigate his habeas claims.

408. In support of this claim, Movant alleges the following facts, among others to be presented after full discovery, investigation, access to this Court's subpoena power, and an evidentiary hearing.

409. Those facts and allegations set forth in the Amended Motion, declarations, claims of constitutional violations, and the accompanying exhibits are incorporated by reference as if fully set forth herein to avoid unnecessary duplication of relevant facts.

410. Mitchell sought to complete a reasonable and diligent investigation into possible juror claims pursuant to *Williams v. Taylor*, 529 U.S. at 442-43, and sought this Court's permission to interview jurors. (Dkt. No. 1.) On September 1, 2009, this Court denied Mitchell's request to interview the jurors who deliberated in his capital case. (Dkt. No. 21.) This decision stated that Mitchell had failed to establish good cause to merit juror interview pursuant to Local Rule 24.2. Mitchell respectfully disagrees with this Court's findings regarding good cause, and contends that this Court's ruling deprives Mitchell of the due process and Eighth Amendment guarantees of heightened reliability in capital cases.

411. Assuming, without conceding, that Mitchell cannot make the requisite showing under Rule 24.2, Mitchell contends that without any opportunity to communicate with the jurors, it would be impossible for him to identify, much less prove, that an individual juror was biased or that the deliberations were otherwise compromised. Nevertheless, given the importance of the constitutional right at stake and the grave sentence that Mitchell faces, this Court should have exercised its discretion in granting Mitchell a limited opportunity to interview jurors.

412. "Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decisionmaker." *Virgil v. Dretke*, 446 F.3d 598, 605 (5th Cir. 2006); U.S. Const., amend. VI (guaranteeing the right to be tried by an impartial jury). Due to the inherent limitations of criminal proceedings, juror bias is not always exposed during trial. *Voir dire*, the primary mechanism for uncovering, among other situations, juror prejudice and bias, is utterly ineffective at exposing dishonesty or deliberate concealment. *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984) ("the necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious"); *Williams*, 529 U.S. at 440-44 (mandating hearing to address deliberate omission by juror). Even when the court succeeds in empaneling a jury free from bias, the impartiality of the jury may later be subverted by unknown forces. *Remmer v. United States*, 350 U.S. 377, 381, 76 S. Ct. 425, 100 L. Ed. 435 (1956) ("the integrity of jury proceedings must not be jeopardized by unauthorized invasions"); *Parker v. Gladden*, 385 U.S. 363, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966) (comments by bailiff to jury about the defendant being "wicked" and "guilty"); *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966) (holding extensive media coverage deprived defendant of a fair trial

"by an impartial jury free from outside influences"). Juror impartiality is a critical and necessary component of a fair trial and, in order to ensure such, the defendant must be afforded a meaningful opportunity to explore issues of juror misconduct. *See Irvin v. Dowd*, 366 U.S. 717, 721, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961) (recognizing the right to trial by jury as "the most priceless" among constitutional safeguards); *see also Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

413. The right to investigate juror claims is commensurate with the Supreme Court's recognition of the defendant's right to an evidentiary hearing to address such claims. In cases of juror bias, the Supreme Court has consistently held that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). The High Court has afforded the defendant a similar opportunity to prove allegations that extraneous influences affected the jury. *Tanner v. United States*, 483 U.S. 107, 121, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987); *Mattox v. United States*, 146 U.S. 140, 148-49, 13 S. Ct. 50, 36 L. Ed. 917 (1892). These decisions guaranteeing the defendant a right to an evidentiary hearing would be largely hollow if a defendant could be denied any and all avenues for investigating the underlying claim in the first instance.

414. In addition to contravening well-established Supreme Court precedent, a complete deprivation of the opportunity to investigate juror claims would violate the spirit, if not the letter, of the federal evidentiary rules. *See Carlisle v. United States*, 517 U.S. 416, 426, 116 S. Ct. 1460, 134 L. Ed. 2d 613 (1996) (holding that the district courts may not pass rules that "circumvent or conflict" with the Federal Rules of Criminal Procedure). Rule 606(b), which is entitled, "Inquiry into validity of verdict or indictment," expressly permits inquiry of jurors into "extraneous

prejudicial information" or "outside influences" affecting the deliberative process. Fed. R. Evid. 606(b). Though circumscribing the type of information that may be elicited from jurors, the rule clearly contemplates questioning of the jurors.

415. Even if juror access may be withheld in the typical case, this case warrants an exception as it is a capital case. The Supreme Court has consistently stressed the need for reliability in capital cases. *Lowenfield v. Phelps*, 484 U.S. 231, 238-39, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988) (the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). *See McKoy v. North Carolina*, 494 U.S. 433, 110 S. Ct. 1227, 108 L. Ed. 2d 369 (1990); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964, 57 L. Ed. 2d 973 (1978). In fact, the Ninth Circuit cited the general principle in Mitchell's direct appeal and explained that, at least in terms of the penalty phase, increased reliability requires flexibility in the admission of evidence and an emphasis on the increased admission of evidence. *Mitchell*, 502 F.3d at 979-80. *See United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004) (citing *Gregg v. Georgia*, 428 U.S. 153, 203-04, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976)); *accord United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004) (agreeing that "the admission of more rather than less evidence during the penalty phase" enhances reliability). While an emphasis is put on the penalty phase, "heightened reliability is required at all stages of the capital trial." *Schriro v. Farley*, 510 U.S. 222, 239, 114 S. Ct. 783, L. Ed. 2d 47 (1994).

416. The United States Supreme Court has explicitly ruled that death cases are distinct from non-death cases. Indeed the Supreme Court has explained "that death is 'different'" and described this doctrine as a "fundamental principle" of the legal system. *Schriro v. Farley*, 510 U.S. at 239 (quoting *Gardner v. Florida*, 430

U.S. 349, 357, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) (plurality opinion)) (*citing Woodson v. North Carolina*, 428 U.S. at 305 (plurality opinion); *see also Furman v. Georgia*, 408 U.S. 238, 306, 92 S. Ct. 2726, 2760, 33 L. Ed. 2d 346 (1972) (Stewart, J., concurring)). Mitchell believes this Court impliedly recognizes this distinction in that none of the cases the Court cites in support of its order rejecting Mitchell's request are capital cases, with the exception of Mitchell's direct appeal which does not address this issue. (Dkt. No. 21, pp.2-6.)

417. This fundamental principle applies in the context of juror impartiality. As the Supreme Court stressed more than a century ago: "It is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiased judgment." *Mattox v. United States*, 146 U.S. at 149. In keeping with this fundamental principle, Local Rule 24.2 should have been set aside in favor of a thorough and reasonable investigation to ensure the reliability of Mitchell's trial. Juror interviews are a vital part of the investigative process that accompanies a § 2254 or § 2255 proceeding.[26] (*See* Ex. 140.) This Court's denial of Mitchell's request to reasonably and adequately investigate all possible claims violates his right to due process and his Eighth Amendment right to "increased reliability" of the process by which capital punishment may be imposed. *Herrera v. Collins*, 506 U.S. 390, 405, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993).

---

[26] The Ninth Circuit has admitted juror declarations on the issue of juror misconduct or bias in several cases. *See Ramirez v. Ayers*, No. CV 91-3802-CBM (9th Cir. 2008) (granting relief in a death penalty case based upon juror misconduct), *mandate issued*; *Fields v. Brown*, 503 F.3d 755, 778 (9th Cir. 2007) (en banc.); *United States v. Rosenthal*, 445 F.3d 1239, 1242 (9th Cir. 2006); *United States v. Saya*, 247 F.3d 929, 937 (9th Cir. 2001); *Erlandson v. Payne*, 163 F.3d 605 (9th Cir. 1998); *Lawson v. Borg*, 60 F.3d 608, 613 (9th Cir. 1995).

SEAN K. KENNEDY (145632)
(Sean_Kennedy@fd.org)
Federal Public Defender
STATIA PEAKHEART (200363)
Deputy Federal Public Defender
(Statia_Peakheart@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-2854
Facsimile (213) 894-0081

Attorneys for Defendant-Movant
LEZMOND CHARLES MITCHELL

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LEZMOND CHARLES MITCHELL,<br>Movant,<br>v.<br>UNITED STATES OF AMERICA,<br>Respondent. | Case No. CV 09-8089-MHM<br><br>**CAPITAL CASE**<br>28 U.S.C. § 2255<br><br>**MOVANT'S REPLY TO GOVERNMENT'S CONSOLIDATED RESPONSE TO MOVANT'S MOTIONS TO SEAL, FOR A PROTECTIVE ORDER, AND INTERVIEW JURORS**<br><br>ORAL ARGUMENT REQUESTED |

Movant, Lezmond Mitchell, through his counsel, the Office of the Federal Public Defender, replies to the Government's responses to his motions. As shown in the Motion and below, Movant is entitled to the relief he requested: the Court should authorize counsel to interview the jurors who deliberated in his case, issue Movant's proposed protective order, and direct the Office of the Clerk to file the three exhibits under seal.

## I. MITCHELL'S MOTION TO INTERVIEW JURORS

Throughout its Response, the Government cites "fishing expeditions," "good cause," and Mitchell's preliminary showing required to warrant post-verdict juror interviews. The government, however, never defines what constitutes "good cause." This is a curious omission given that this Court must decide whether

Mitchell has shown "good cause" under Local Rule 39.2 to warrant interviewing the jurors in his case.

Mitchell's burden is to show that the anticipated juror statements would be admissible under Federal Rule of Evidence 606(b). *See United State. v. Griek*, 920 F.2d 840 (11th Cir. 1991) ("good cause under the local rule [of the District of Florida, which is equivalent to this Court's Local Rule 39.2] may be shown only by satisfying the requirements of the exception stated in the Federal Rule [606(b)]"). The government's position on this view is unclear and contradictory: It cites 606(b) as the "controlling authority that bars MOVANT's request to interview the jurors" (Response at 2) but also states that 606(b) alone does not control the present situation (Response at 12n.3). The government further states that Mitchell's request to interview jurors is "directly in opposition of Federal Rule of Evidence 606(b)." This is incorrect. To be clear, Rule 606(b) is a rule of *admissibility*, it does not speak to the issue of interviewing jurors post-verdict. *See* Fed. Rule of Evid. 606(b). Local Rule 39.2 simply requires a showing of "good cause" before allowing juror interviews. Neither the Ninth Circuit nor the District of Arizona has clearly defined what constitutes "good cause" in this scenario. (Motion at 12-14). Mitchell advances the approach taken by the Eleventh Circuit and urges this Court to link Local Rule 39.2's "good cause" requirement to Rule 606(b), and require that Mitchell show that the evidence or information he obtains from the jurors would be admissible under 606(b).

Additionally, Mitchell advances that "good cause" can be shown by the burden placed on habeas counsel to conduct a thorough and complete investigation for constitutional error, and that interviewing the jurors furthers that constitutional requirement. (Motion at 5n1.) And finally, because 606(b) cannot be used to deny Mitchell due process, and because the Ninth Circuit has required

Mitchell to meet a burden that requires his representatives to interview the jurors[1] then he must be allowed to do so.

In its response, rather than defining the standard for post verdict juror interviews, namely "good cause," the government cites several easily-distinguishable cases where the courts have rejected post-verdict requests to interview jurors. In *Smith v. Cupp*, 457 F.2d 1098 (9th Cir. 1972), the movant was denied the opportunity to interview jurors because he advanced no specific jury misconduct, but rather sought *carte blanche* in interviewing jurors. *Id.* at 1100. In *United States v. Stacey*, 475 F.2d 1119 (9th Cir. 1973), the conduct the movant sought to investigate via juror interviews did not involve extraneous prejudicial information, outside influence, or mistake in filling out the jury form and therefore was plainly inadmissible under 606(b). *Id*. at 1120-21. The government then lists a series of cases that echo the point that the movant must specifically allege juror misconduct or some extraneous influence on the jury. (Response at 4-5.) Mitchell has met this burden by clearly articulating specific areas of likely misconduct, all of which are admissible under 606(b).

**1. The Prosecution's Inappropriate Racial and Religious Comments**

In response to Mitchell's request to interview jurors concerning racial bias in light of the prosecutor's racially charged closing argument, the government states that such information is banned by 606(b). (Response at 6). As Mitchell clearly laid out in his original motion on this issue, this is not the case. The Ninth Circuit held in *United States v. Henley*, 238 F.3d 1111 (9th Cir. 2001) that "racial bias is a mental bias that is unrelated to the specific issues that the juror was called upon to decide" and thus that "racial bias is generally not subject to Rule 606(b)'s prohibitions against juror testimony." *Id*. at 1120. The fact of the matter is that if the prosecutor's closing argument incited racial bias amongst the jurors, which it

---

[1] *See United States v. Mitchell*, 502 F.3d. at 995-96 (citing *Henley,* 238 F.3d at 1120).

very likely did, then a juror may testify to such, pursuant to *Henley*. The government argues that its argument was not extraneous information, which is true, but the mental bias that the argument incited is indeed extraneous information. *Id*.

The government is correct that the Ninth Circuit has already commented on the prosecutor's comments. (Response at 6, Motion at 8.) While the Ninth Circuit appeared to consider the comments improper, they did not arise to the level of plain error to warrant relief. *Mitchell,* 502 F.3d 931, 995-996 (9th Cir. 2007). The Ninth Circuit thus put an affirmative duty on Mitchell to "show that the misconduct tainted the verdict." *Id*. at 996. The government suggests that Mitchell now seeks to undermine that ruling (Response at 7), but this is simply not the case. Rather than challenge the Ninth Circuit's decision, Mitchell is abiding by it and seeks to meet the burden the Ninth Circuit has set. The only direct evidence available to Mitchell to meet this burden is post-verdict juror interviews. Given that the Ninth Circuit has explicitly ruled that 606(b) cannot be used to deny due process, *Henley,* 238 F.3d at 1120, the Ninth Circuit has implicitly required juror interviews in this case, and it is the government who seeks to undermine the Ninth Circuit's ruling by opposing Mitchell's request to meet his Ninth Circuit mandated burden. *Mitchell*. 502 F.3d at 996.

**2. Publicity and Alleged Juror Misconduct**

With respect to the publicity surrounding this case, the government correctly responds that prospective jurors were asked during voir dire whether they had read anything about the case. (Response at 8-9.) Most jurors responded that they had not. Mitchell seeks to discover whether, after being directly involved in the case, jurors sought out or were exposed to any information on this case. This was a highly publicized case for a period of time, and highly inflammatory articles were readily available to the jurors (a computer search for "Lezmond Mitchell" yields over 300 results). There is a strong likelihood that

jurors accessed this information, and Mr. Mitchell seeks to inquire as to the effect these articles had on any juror who later deliberated his case.

Generally speaking, the government is correct that jurors are presumed to follow the courts instructions. *Richards v. Marsh*, 481 U.S. 200, 211 (1987). This is, however, only a presumption. Mitchell points to a note from the jurors querying a simple instruction on outside information. Motion at 12. This note indicates that the jurors either did not understand the most basic of instructions or that they were not following the instructions. In light of such evidence, the *Richards* presumption is rebutted and the possibility of misconduct reaches the level successful to satisfy Mitchell's required burden. This point is further emphasized by Prospective Juror Murphy's comments to the court illustrating his willingness to speak about the case to outside sources. (RT 2909.) Perhaps the most basic of admonitions is for jurors to avoid discussing the case with outside sources. In the present case, Murphy indicated a willingness to do just that. Clearly there is a strong likelihood of misconduct. Furthermore Mitchell is concerned, if not baffled, by the government's strong opposition to his motion to request post-verdict interviews with these jurors. First of all, Mitchell's representatives do not seek confidential information, but rather simply the court's permission to use publicly available information to contact these citizens. Secondly, these interviews would be entirely voluntary. As indicated in the Giner declaration (attached to the Motion), counsel's investigators do not compel jurors to submit to an interview; if a juror refuses, s/he is thanked and no longer contacted. Third, the Court could ensure the citizens are not harassed by approving juror questions in advance in accordance with Local Rule 39.2, thus jurors could refuse to answer the court's approved questions or even take part in this process. All Mitchell seeks is to ensure that in the face of likely juror misconduct, he was afforded the fair trial to which he is entitled.

Lezmond Mitchell is awaiting the most dire and severe punishment this country can inflict. It would behoove all involved to ensure that he was afforded all of his rights before this country moves forward with a penalty that it can not change once inflicted. The government should welcome the opportunity to test the reliability of Mitchell's conviction. Prosecutors have a "unique responsibility" in the criminal justice system. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803, 107 S. Ct. 2124, 2137 (1987). That unique responsibility is the prosecutor's "duty to seek justice, not merely convict." *Id*. at 803 (quoting Ethical Consideration 7-13 of Canon 7 of the ABA Model Code of Professional Responsibility (1982)). If the United States Attorney's Office for the District of Arizona is going to adhere to this duty, then they should relish the opportunity to ensure justice before hurrying Mitchell towards the execution chamber.

**II. MITCHELL'S PROTECTIVE ORDER**

The government apparently concedes that Mitchell is entitled to a protective order. It appears that for brevity alone the government advocates an edited version of the protective order be granted. Mitchell would request, however, that his originally proposed order be granted and not edited in the manner in which the government suggests. Mitchell's version does not afford him additional rights or privileges, but rather simply explains certain points in more detail. For example, the government's version cites "Movant's defense team" without explaining who that team includes. Mitchell's proposed language, while considerably longer, is much clearer in specifically naming who is included in this order. (See Proposed Order at 1 referring to "Movant and the members of the legal team, i.e., lawyers, paralegals, investigators, and support staff assigned to *Mitchell v. United States*, and persons retained by Movant's counsel to assist in 2255 proceedings involving the Movant, including but not limited to outside investigators, consultants and expert witnesses".) Mitchell's proposed protective order also extends to clemency proceedings, while the government's proposed language does not. While these

issues may seem trivial, *Bittaker* recognized the valid protection of a habeas Movant's attorney-client relationship, and Mitchell only seeks to protect this right with unambiguous language.

## III. MITCHELL'S MOTION TO SEAL

A motion to seal is the appropriate medium to protect Mitchell's confidentiality. *See Bittaker*, 331 F.3d at 728. The government contends that Mitchell has failed to show the harm that would result if the portions of the report that Mitchell has kept confidential were to be made public. Obviously, Mitchell will not clearly spell out the contents of this report as that would run contrary to his interests and the purpose behind his Motion to Seal. The fact of the matter is that there is no question that the documents in question were prepared for the purpose of litigation, and thus qualify as work product. Fed. Rules of Evid. 502. Work product is protected under *Bittaker*, 331 F.3d at 722. Mitchell urges this Court to simply review the documents *in camera* and, in accordance with *Bittaker*, seal these exhibits.

## IV. CONCLUSION

For all the foregoing reasons, there is good cause to authorize counsel for Mitchell to conduct a thorough investigation, which includes interviewing trial jurors, and therefore the motion should be granted. Furthermore for the foregoing reasons, and in accordance with *Bittaker*, Mitchell's motion to seal exhibits and request for protective order in its original form should be granted.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

Dated: July 21, 2009

By: /s/ *Statia Peakheart*
STATIA PEAKHEART
Deputy Federal Public Defender

Counsel for Movant
LEZMOND CHARLES MITCHELL

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on July 21, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:
VINCENT Q. KIRBY, AUSA

☒ I hereby certify that on July 21, 2009, I served the attached document by MAIL
(insert service method: mail, courier service, in-person delivery, e-mail)
on the following, who are not registered participants of the CM/ECF System:
CAPITAL CASE STAFF ATTORNEY, EVO A. DECONCINI COURTHOUSE
405 W. CONGRESS, SUITE 1500, TUCSON, AZ 85701-5010

s/ JENNIFER BYRD

DIANE J. HUMETEWA
United States Attorney
District of Arizona

VINCENT Q. KIRBY
Assistant U.S. Attorney
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004
Arizona State Bar No. 6377
Telephone (602) 514-7500

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Mitchell,<br>Petitioner,<br>v.<br>United States of America,<br>Respondent. | **CV-09-8089-MHM (JI)**<br><br>**GOVERNMENT'S CONSOLIDATED RESPONSE TO PETITIONER'S (1) MOTION FOR AUTHORIZATION TO INTERVIEW JURORS IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE; (2) MOTION FOR PROTECTIVE ORDER; AND (3) MOTION TO SEAL** |

The United States of America, by and through undersigned counsel, hereby responds to Petitioner's Motion for Authorization to Interview Jurors, Motion for Protective Order and Motion to Seal. The government respectfully requests that the Court deny Petitioner's Motion for Authorization to Interview Jurors for the reasons set forth in the attached Memorandum of Points and Authorities.

Respectfully submitted this 14th day of July, 2009.

DIANE J. HUMETEWA
United States Attorney
District of Arizona

S/ *Vincent Q. Kirby*

VINCENT Q. KIRBY
Assistant U.S. Attorney

**MEMORANDUM OF POINTS AND AUTHORITIES**

Petitioner, without any legal authority, and directly in opposition of Federal Rule of Evidence 606(b), seeks leave of this Court to contact and interview the trial jurors based upon nothing more than speculation and conjecture. The courts have routinely rejected such requests and so should this Court.

## I. ANALYSIS

### A. Standard for Post Verdict Juror Interviews

A litigant is entitled to a fair trial but not a perfect one. *United States v. Hard*, 870 F.2d 1454, 1460 (9th Cir. 1989). Even if it is shown that a juror was exposed to extrinsic material, Petitioner must still prove that a "reasonable possibility existed that the extrinsic evidence could have affected the verdict." *United States v. Keating*, 147 F.3d 895, 900 (9th Cir. 1998). It is true that a "writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290-91 (1969). However, it is not without its limitations. For example, there is no constititional right to counsel even for a habeas petitioner under a sentence of death. *Brown v. Vasquez*, 952 F.2d 1164, 1168 (9th Cir. 1992). Courts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation. *Calderon v. U.S.D.C. (Nicolaus),* 98 F.3d 1102, 1106 (9th Cir.1996) Moreover, even though the American Bar Association (ABA) may have guidelines for the courts to consider in death penalty cases, they are after all only a guide and not legal authority. *Wiggins v. Smith*, 539 U.S. 510, 546 (2003)(J. Scalia - dissent)

The controlling authority that bars Petitioner's request to interview the jurors is Fed. R. Evid. 606(b), which states:

> Upon an inquiry into the validity of a verdict or an indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any

> statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

The Supreme Court has made it abundantly clear that verdicts are sacrosanct, and jurors are to be protected:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation- to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267-68 (1915).

The Supreme Court has also clarified that generalized post verdict investigations into juror misconduct are strongly disfavored:

> There is little doubt that post verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts after irresponsible of improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupts the finality of the process . . . Moreover, full and frank discussion in the jury room, juror's willingness to return an unpopular verdict, and the communities trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.

*Tanner v. United States*, 483 U.S. 107, 120-21 (1987).

The Ninth Circuit, as well as other circuit courts, has historically frowned upon discovery of juror identifying information and generally prohibits post verdict interviews of jurors absent a preliminary showing of juror misconduct. For example, in *Smith v Cupp*, 457 F.2d 1098 (9th Cir 1972), the Ninth Circuit found no constitutional violation where a state court denied the defendant's request to interview jurors for the purpose of discovering possible, but unspecified jury misconduct. *Id*. at 1100. Subsequently, relying on *Cupp*, the Ninth Circuit again affirmed the denial of a request to interview jurors based on failure of the defense to demonstrate any jury misconduct. *United States v. Stacey*, 475 F.2d 1119, 1121 & n. 1. (9th Cir. 1973).

Similarly, in *United States v. Davila*, 704 F.2d 749, 754 (5th Cir. 1983), the Fifth Circuit

upheld the denial of a motion to interview jurors post verdict to determine solely whether the acquittal of John Hinckley during the course of the trial had any impact on the jurors. The Court found the defendant failed to make any preliminary showing of misconduct. "The motion sought simply to discover what happened in the jury's deliberations in the hope of uncovering an impropriety." *Id.* at 754. Similar to the Ninth and Fifth Circuits' approach, the Fourth Circuit held that, despite statements of jurors in the press that they had rendered a decision under stress, the trial court properly denied the request to interview the jurors due to the defendant's failure to make a threshold showing of improper outside influences; the defendant's request to interview the jurors was nothing more than a fishing expedition. *United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988); *see also United States v. Eagle*, 539 F.2d 1166, 1170-71 (8th Cir.1976) (the trial court's denial of a motion to interview jurors upheld due to the defendant's failure to make specific allegations that any of the jurors engaged in "overt acts susceptible of proof").

Numerous district courts in the Ninth Circuit and other circuits have also held that a defendant may not interview jurors during the course of a post verdict investigation of juror misconduct absent specific, well-founded allegations of juror misconduct. For example, in *Muhammad v. Wofford*, 2008 WL 1734235, *2 (E.D.Cal.), the trial court denied a habeas petitioner's request to interview jurors to determine whether the jurors impermissibly discussed the case or engaged in any misconduct during an 11-day break in deliberations. *Id.* The court found that th petitioner failed to make any preliminary showing or specific allegation of juror misconduct. *Id.* The court stated further that "[h]abeas is an important safeguard whose goal is to correct real and obvious wrongs. It was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'" *Id.* (*citing Calderon v. U.S.D.C. (Nicolaus),* 98 F.3d 1102, 1106 (9th Cir.1996)); *see also Economou v. Little*, 850 F.Supp. 849, 852-53 (N.D.Cal.1994) (denying defendant's request to interview jurors for the purpose of discovering possible grounds for a new trial for lack of preliminary showing of likely juror misconduct); *Harris Corporation v. Independent Technologies*, 2002 WL 31006045, *1 (C.D.Cal.) (trial court refused request to interview jurors to assess impact of a closing statement

because the defendant failed to allege any extraneous influences on the jurors); *United States v. Allen,* 2008 WL 80061, *1 (E.D.Mo.) (the courts have "wide discretion" to protect jurors from "fishing expeditions" and absent a proper preliminary threshold showing a request to interview the jurors will be denied).

Petitioner relies primarily upon *McClesky v. Zant*, 499 U.S. 467 (1991), *Williams v. Taylor*, 529 U.S. 420 (2000), and *Woratzeck v. Stewart*, 118 F.3d 648 (9th Cir. 1997), in support of his claim that he is entitled to contact and interview jurors because courts have imposed upon post-conviction applicants an obligation to conduct a reasonable and diligent investigation to identify and raise all claims in the first habeas petition. However, Petitioner's reliance on these cases is misplaced because they do not address the issue in this case whether Petitioner is entitled to contact and interview jurors. To the contrary, *McClesky*, *Taylor,* and *Woratzeck* address only the circumstances in which a petitioner is entitled to an evidentiary hearing or may bring a successive habeas petition where the petitioner has failed to fully develop or raise a claim in prior proceedings. While these cases involve records in which petitioners' counsel have contacted jurors, they do not provide any guidance concerning whether Petitioner is entitled to such an extraordinary remedy in this case. Plainly, *McClesky*, *Taylor,* and *Woratzeck* do not support Petitioner's request to embark upon a strongly disfavored "fishing expedition" concerning juror misconduct based upon mere speculation.

To allow a defendant to engage in interviews with jurors without so much as a scintilla of evidence is to allow a full scale assault on the jury system. Once a court allows a defendant to contact jurors for the purpose of discovering whether there are issues, the floodgates will open and all defendants convicted by a jury will demand the same access on predominately meritless claims.[1] *United States v. Dioguardi*, 492 F.2d 70, 79 (2d Cir. 1974). Petitioner is not entitled

[1] Moreover, the Supreme Court has ruled that a defendant's constitutional right to a fair and impartial and competent jury can be protected through *voir dire*, the court's observation of jurors as well as the jurors' observations of each other and the ability to report misconduct before the verdict and the use of non-juror evidence to impeach a verdict. *Tanner*, at 127. In the instant (continued...)

to conduct post verdict juror interviews.

**B. Petitioner Fails to Justify His Request to Interview Jurors**

In this case, Petitioner raises several grounds in support of his request to interview the jurors, including whether (1) the prosecutor's comments in penalty phase closing arguments inflamed the jurors, and whether the jurors harbored racial or religious prejudice concerning his Navajo beliefs (Motion at 8-10); (2) jurors were exposed to publicity surrounding his trial (Motion at 10-11); and (3) jurors engaged in misconduct by considering extraneous information during deliberations or otherwise engaging in improper *ex parte* contact with non-jurors during the trial (Motion at 11-12). However, Petitioner fails to allege any misconduct that rises to the requisite level of a preliminary showing of juror misconduct to justify post verdict juror interviews.

1. The Prosecutor's Comments.

Petitioner argues that he is entitled to interview jurors to determine whether the prosecutor's statements made during the penalty phase closing argument improperly inflamed jurors' prejudices against his Navajo beliefs. (Motion at 8-10.) Such an attempt is clearly designed to examine the thought processes of the jurors, which is clearly prohibited by Rule 606(b). Moreover, contrary to Petitioner's claim, the prosecutor's statements are not extraneous information, but rather, were made before the jury during the course of the proceedings. *See, e.g., United States v. Bussell*, 414 F.3d 1048, 1055 (9th Cir. 2004). Jurors may only testify to the existence of extraneous prejudicial information or outside influences, not the impact on thought processes or deliberations. *Hard,* 870 F.2d at 1461.

Moreover, in this case, the Ninth Circuit has already determined that the prosecutor's comments did not improperly inflame the jury. In its review for plain error, the Court ruled:

Reversal is appropriate 'only if the prosecutor's improper conduct so affected the

---

[1] (...continued)
case, for over six years post verdict not a hint of impropriety has been reported about any misconduct of this jury.

> jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived [Mitchell] of a fair trial.'" *United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir.2005) (quoting *United States v. Smith*, 962 F.2d 923, 935 (9th Cir.1992)). The comments were not, in and of themselves, nearly as inflammatory as the graphic evidence of the murders, or as powerful as the extensive victim impact testimony, which was quite properly before the jury. The jury was clearly instructed on the burden of proof, and that the statements and argument of counsel were not evidence; that it must avoid any influence of passion, prejudice, or any other arbitrary consideration; and that whether or not the circumstances call for a sentence of death is a personal judgment that the law leaves entirely up to each member of the jury.

*United States v. Mitchell*, 502 F.3d 931, 995-96 (9th Cir. 2007).

Petitioner, without any legal authority, seeks to undermine the Ninth Circuit's ruling and establish new precedent that any time an appellate court finds harmless error, a defendant is entitled to make inquiries of the jury in order invalidate the court's conclusion. Petitioner's argument is untenable.

In any event, the Ninth Circuit did not find, as Petitioner claims, that the prosecutor's comment that Petitioner had rejected the Navajo religion was error. To the contrary, the Ninth Circuit noted the general prohibition against referencing religion in closing arguments described in *United States v Sandoval*, 241 F.3d 765, 777 (9th Cir. 2001), but proceeded to clarify that the prosecutor did not act improperly:

> However, the circumstances here are a far cry from those in *Sandoval*. Although the AUSA did, at least indirectly, allude to religion, it was in the same sense that the Navajo Nation's letter did when it stated:
>
> <u>As part of Navajo cultural and religious values we do not support the concept of capital punishment. Navajo hold life sacred. Our culture and religion teach us to value life and instruct against the taking of human life for vengeance</u>.
>
> As the letter was in evidence and was relied upon by Mitchell in mitigation, it was not plainly erroneous for the government to challenge the credibility of Mitchell's reliance.

*Id.* at 995 (emphasis added).

Plainly, Petitioner should not be permitted to question jurors concerning the effect of the prosecutor's statements made during the course of trial, which the Ninth Circuit has already determined did not prejudice the jury. *See Reed v. Farley*, 512 U.S. 339, 358 (1994)("[C]laims

will ordinarily not be entertained under § 2255 that have already been rejected on direct review.")

2. Potential Juror Bias

Petitioner also seeks to interview the jurors to determine whether racial and religious prejudice played any part in their decision to impose a sentence of death. (Motion at 8-10.) Petitioner's request is based upon mere speculation and is belied by the record.

During Petitioner's trial, in accordance with 18 U.S.C. § 3593(f), entitled "Special Precaution to Ensure Against Discrimination," this Court instructed the jurors:

> Finally -- finally, in your consideration of whether the death sentence is appropriate, you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victims. You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to race, color, religious beliefs, national origin or sex of either the defendant or any victim.
>
> To emphasize the importance of this consideration, Section VII of the Special Verdict Forms contains a certification statement. Each juror should carefully read the statement and sign your name in the appropriate place if the statement accurately reflects the manner in which you reach your individual decision.

(RTT 4103-04.)

Here, each of the jurors signed the form avowing an absence of any prejudice against Petitioner. Moreover, Petitioner has failed to provide any evidence whatsoever that any juror harbored any racial or religious prejudice. (RTT 4201, 4206.) This issue is foreclosed by the jurors' signatures on this form and the absence of any evidence whatsoever that jurors misled the parties about their lack of prejudice. Consequently, Petitioner is not entitled to embark upon a fishing expedition in search of juror prejudice.

3. Publicity

While this case generated some media interest primarily at the times of the crimes and arrests in late 2001, by the time jury selection began it was no longer of interest to the press. While Petitioner claims the publicity was widespread, the record belies Petitioner's suggestion that jurors were exposed to media coverage prejudicial to him. In fact, only one of the jurors who sat in judgment recalled reading something about the case, but could not remember any

details. The other 11 jurors had not heard anything of the case except what they had learned during the jury selection process. (RTT 150, 476-77, 497, 1162, 1331, 1339, 1349, 1425, 1490, 2052, 2235, 2246.) There is not a shred of evidence that the jurors were exposed to any outside information related to the case, including media coverage.

Petitioner is not entitled to interview jurors concerning their exposure to media coverage of the case because his claim is purely speculative and he fails to make a preliminary showing of juror misconduct.

4. Alleged Juror Misconduct

Petitioner contends that he is entitled to interview jurors concerning (1) a juror's question concerning whether the juror may reference a more detailed map during deliberations and (2) another juror's advisement to the Court, by written note, that the juror had heard some non-jurors mention the name of the case. (Motion at 11-12.)

As to the map question, a juror sent a note to the Court asking, "are we allowed to consult detailed maps of this location to familiarize ourself (sic) with the aspects of this case?" (RTT 2769.) The Court advised the parties that it intended to remind the jury of the prohibition against accessing information outside of the trial, and defense counsel stated "that's fine, other than possibly referring them to their duty to consider the evidence presented in court." (RTT 2769-70.) The court properly instructed the jury:

> I want to remind you all again, ladies and gentlemen of the jury, of the admonition not to do any research, to consult dictionaries, or other reference materials, including <u>maps</u> or to use the Internet to answer any questions you might have concerning this case.
>
> I also want to remind you that in deciding this case, you may consider only the sworn testimony of any witnesses, the exhibits which are admitted into evidence, and any facts to which the lawyers stipulate or agree to.

(RTT 2907-08 ) (emphasis added).

Here, Petitioner has not even remotely alleged juror misconduct, much less offered evidence of misconduct sufficient to justify post verdict interviews of jurors. A juror simply asked the Court whether it was permissible to consult a map. In response to the question, the

Court timely and unambiguously reminded the jury that it may not consider any evidence outside the record, including maps. Jurors are presumed to follow the court's instruction. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). There is no reason to assume that the jurors failed to follow the Court's instructions or otherwise engaged in any misconduct.

Likewise, during a break in the trial, one of the jurors overheard non-jurors mention the name of the case. At the request of the defense, the Court questioned the juror, who eventually was designated an alternate, outside the presence of the jury. (RTT 2770.) The alternate advised the Court that he had heard several men mention the name of the case, but they said nothing more. The defense did not ask any questions at the time, nor did they seek the alternate's removal. (RTT 2909-10.) Now, Petitioner asserts that he is entitled to conduct a post verdict interview of the jurors to determine whether the alternate, who *sua sponte* brought to the Court's attention that he overheard other non-jurors mention the name of the case, may have concealed the fact that he engaged in some other prohibited, prejudicial *ex parte* contact with non-jurors. Once again, Petitioner fails to point to any articulable facts to support his request to interview jurors and, instead, relies upon mere speculation concerning alleged juror misconduct. Petitioner's claims fail as a matter of fact and law.[2]

**C. <u>Local Rule 39.2 District of Arizona</u>**

District of Arizona Local Rule 39.2 prohibits contact between counsel and the jury post verdict except:

---

[2] Moreover, Petitioner is procedurally barred from pursuing these alleged juror misconduct claims because he failed to raise these issues in his direct appeal. Failure to raise a claim on direct appeal ordinarily results in a procedural default of the claim. *See, e.g., United States v. Guess*, 203 F.3d 1143, 1145 (9th Cir. 2000); *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal."). To overcome such default, a defendant must show either cause and actual prejudice to explain the default, or that he was actually innocent of the charged crime. *Guess*, 203 F.3d at 1145. Petitioner fails to establish any reason to excuse his failure to raise these alleged juror misconduct claims concerning the map or *ex parte* contact in his direct appeal. He was fully aware of these matters because they were part of the record. This Court should not allow Petitioner an opportunity to revisit these issues in light of his failure to raise them on direct appeal.

> on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon a showing of good cause. See Federal Rules of Evidence, Rule 606(b).

Here, Petitioner failed to comply with the Local Rule within the time prescribed and no affidavit or proposed interrogatories have ever been filed.

The Court advised the jury, just prior to discharge, that they were free to discuss the case with anyone if they desired. Further, the Court told the jurors that the lawyers would be standing in the hallway as the jurors left and they could approach and talk to the jurors if they wished. (RT 5/20/03 7.) Apparently, no one contacted the defense at that time to report any juror misconduct or other inappropriate conduct on behalf of any juror. In fact, given the nature of Petitioner's fishing expedition request, it is apparent that no juror has contacted the defense in the over six years since the trial ended. Under Local Rule 39.2, jurors may not be questioned on the basis of mere suspicion. *TIG Insurance Company v. Liberty Mutual Insurance Company*, 250 F.Supp.2d 1197, 1199 (D. Ariz 2003).

In *TIG*, counsel were permitted to speak with jurors about the effectiveness of their presentations, not for inquiry into the jury's deliberative process. *TIG Ins. Co.*, 250 F.Supp.2d at 1198. Defense counsel later filed an affidavit alleging that a juror had advised that she had brought a "dictionary" into the jury room. *Id.* The defense sought permission to interview at least two other jurors to determine the extent of any possible use of the dictionary. *Id.* The request was denied by Judge Silver on the basis that, despite their claim that they were in the investigative phase, they did not possess sufficient information to meet their burden of proving, by a preponderance, that the outcome would have been different. *Id.* at 1198-99. Local Rule 39.2, as well as Rule 606(b), plainly support the well-settled principle that fishing expeditions in search of juror misconduct simply are not authorized. *See, e.g., Gravely*, 840 F.2d at 1159 (applying Rule 606(b)). Petitioner fails to establish "good cause" within the meaning of Local

Rule 39.2 to justify his request to conduct post verdict juror interviews.[3]

## II. PROTECTIVE ORDER

Petitioner requests that this Court enter a protective order. The government agrees that Petitioner is entitled to a protective order. *See Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003). However, rather than adopt the lengthy order proposed by Petitioner, the government requests that the Court use the following concise order approved in *Bittaker*:

> All discovery granted to respondent pursuant to respondent's motion to discover trial counsels' files and conduct depositions of trial counsel, petitioner's defense team and petitioner, shall be deemed to be confidential. These documents and material (hereinafter "documents") may be used only by representatives from the United States Attorney's Office and only for purposes of any proceedings incident to litigating the claims presented in the petition for writ of habeas corpus pending before this Court. Disclosure of the contents of the documents and the documents themselves may not be made to any other persons or agencies, including any other law enforcement or prosecutorial personnel or agencies, without an order from this Court. This order shall continue in effect after the conclusion of the habeas corpus proceedings and specifically shall apply in the event of a retrial of all or any portion of petitioner's criminal case, except that either party maintains the right to request modification or vacation of this order upon entry of final judgment in this matter.

## III. MOTION TO SEAL

Petitioner seeks to seal three documents Exhibits 92, 93 and 94 that he desires to file in connection with his habeas petition. *Bittaker v. Woodford*, 331 F.3d 175 (9th Cir 2003), allows the court to fashion a protective order that permits the disclosure of attorney client communications or the work product only to the extent necessary to ensure the fairness of the

---

[3] In an effort to circumvent Local Rule 39.2's "showing of good cause" standard, Petitioner cites *United States v. Griek*, 920 F.2d 840, 842 (11th Cir. 1991), for the proposition that he is entitled to conduct post verdict juror interviews merely if he satisfies the Rule 606(b) exception, namely, that the jury was improperly subjected to outside influence. (Motion at 16.) However, Petitioner's reliance upon *Griek* does advance his claim because, even under the *Griek* standard, Petitioner must actually demonstrate that the jury was subjected to outside influences. *Id.* at 843-44 (affirming the district court's order denying the defendant's request to question jurors concerning the verdict where a juror contacted the defendant's counsel the day after the verdict and said, "[w]e were pressed into making our decision and I want to let you know that I am sorry"). *Griek* simply clarifies that a defendant is not entitled to conduct post verdict juror interviews unless he can demonstrate that the jury was subject to outside influences. In any event, unlike this case, *Griek* actually involved a juror's *sua sponte* claim that the deliberative process was marred by irregularities. In this case, there is no such evidence of juror misconduct.

proceedings. *Id.* at 721-22. While the government is not in possession of Exhibits 92-94, and therefore can not accurately assess the nature of the material, it appears the listed exhibits involve some type of doctors' reports and a social history. It is not clear from Petitioner's motion to seal why these documents must be sealed. In fact, there are numerous references in his Petition, which is a public record, to information contained in these reports. (See Petition at 28, 29, 34 and 58.) Consequently, Petitioner has failed to demonstrate that any additional harm would result if the rest of the reports were placed in the public purview. Moreover, most of that material will find its way into the public record as these proceedings progress.

## IV. <u>CONCLUSION</u>

Petitioner has failed to make any preliminary showing of juror misconduct. Consequently, Rule 606(b) and the many cases interpreting the rule require that this Court deny Petitioner's request to interview jurors.

Respectfully submitted this 14th day of July, 2009.

DIANE J. HUMETEWA
United States Attorney
District of Arizona

S/ *Vincent Q. Kirby*

VINCENT Q. KIRBY
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on July 14, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean K. Kennedy
Federal Public Defenders Office

Statia Peakheart
Federal Public Defenders Office

*s/Joyce Stern*

SEAN K. KENNEDY (145632)
(Sean_Kennedy@fd.org)
Federal Public Defender
STATIA PEAKHEART (200363)
Deputy Federal Public Defender
(Statia_Peakheart@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-2854
Facsimile (213) 894-0081

Attorneys for Defendant-Movant
LEZMOND CHARLES MITCHELL

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LEZMOND CHARLES MITCHELL,<br>Movant,<br>v.<br>UNITED STATES OF AMERICA,<br>Respondent. | **<u>CAPITAL CASE</u>**<br>28 U.S.C. § 2255<br>Case No. _________<br>(Trial Case No. CR-01-1062-MHM)<br>ORAL ARGUMENT REQUESTED |

**MOTION FOR AUTHORIZATION TO INTERVIEW JURORS IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT THE SENTENCE**

Petitioner, Lezmond Charles Mitchell, through undersigned counsel, respectfully moves the Court to permit his federal habeas counsel, or their representatives, to contact and interview the jurors in his case. Such an opportunity is essential to secure rights guaranteed to Mr. Mitchell by 28 U.S.C. § 2255, 18 U.S.C. § 3599, and the Fifth, Sixth, and Eighth Amendments to the United States Constitution.

**A. Introduction**

Petitioner Lezmond Mitchell hereby moves the Court for authorization to conduct a complete investigation that includes ascertaining whether any member of the jury panel engaged in *ex parte* contacts, considered extrajudicial evidence, allowed bias or prejudice to cloud their judgment, or intentionally concealed or failed to disclose material information relating to their qualifications to serve as jurors in Mr. Mitchell's case. In pursuing this investigation, federal postconviction counsel cannot be foreclosed from interviewing the witnesses who would be the most reliable source of evidence on these claims – the jurors themselves. *See McCleskey v. Zant*, 499 U.S. 467, 498 (1991) (imposes on all post-conviction applicants the obligation to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." ).

**B. Procedural History**

On September 15, 2003, following a jury trial and penalty phase proceeding, Hon. Mary H. Murguia, United States District Judge for the District of Arizona, sentenced Lezmond Mitchell to death. Mr. Mitchell's direct appeal to the United States Court of Appeals for the Ninth Circuit was not successful, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), and the United States Supreme Court denied the petition for writ of *certiorari* on June 9, 2008, *Mitchell v. United States*, 128 S.Ct. 2902. Mr. Mitchell is in custody on federal death row in Terre Haute, Indiana.

Section 2255 of Title 28 of the United States Code sets forth a one-year period of limitations for filing a motion to vacate, set aside or correct the sentence. Thus, Mr. Mitchell must file his motion no later than June 9, 2009. In the course

of preparing the § 2255 motion, Mr. Mitchell's federal habeas counsel consider it necessary to interview the jurors who deliberated and decided Mr. Mitchell's capital case. Counsel for Mr. Mitchell hereby move this Court for leave to conduct a full and complete investigation in preparation for Mr. Mitchell's forthcoming motion to vacate, set aside or correct the sentence.

Rule 24.2 of the Local Rules of Criminal Procedure for the District of Arizona makes applicable Civil Rule 39.2 to criminal matters concerning communication with trial jurors. The rule requires the movant to request leave of the Court to interview the jurors post-trial. L.Civ.R. 39.2(b). Approval for the interview should be granted "upon the showing of good cause." *Id.*

**C. Factual Background**

An investigation into potential jury misconduct – no different than an investigation into possible instances of ineffective assistance of counsel or prosecutorial suppression of material evidence – is a standard and essential aspect of any minimally competent federal capital postconviction § 2255 investigation. In this case, no reasonably competent postconviction counsel would fail to question the jurors.

Petitioner's counsel does not seek discovery, but only permission to conduct his investigation. The identities of the jurors are not secret. Their names are publicly available in the district court record. Other identifying information and (dated) contact information are available to counsel in non-public parts of the record. Federal habeas counsel do not request disclosure of any information. This motion seeks only permission for federal habeas counsel to contact these jurors.

## D. ARGUMENT

### 1. Petitioner's Counsel Must Conduct a Reasonable Investigation Including Allegations of Possible Jury Bias, Taint, or Misconduct

A federal postconviction applicant "must assert all possible violations of his constitutional rights in his initial application or run the risk of losing what might be a viable claim." *See, e.g.*, *Brown v. Vasquez*, 952 F.2d 1164, 1167 (9th Cir. 1992). The Supreme Court has made clear that counsel for a postconviction applicant "must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *McCleskey v. Zant*, 499 U.S. 467, 498 (1991). The Ninth Circuit has characterized this as "a substantial burden." *Brown*, 952 F.2d at 1167. As the Supreme Court explained,

> If what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim.

*McCleskey*, 499 U.S. at 498.

The United States Constitution guarantees the defendant a trial by impartial jurors who are not exposed to extraneous information or influence or motivated by bias. *See Williams v. Taylor*, 529 U.S. 420 (2000); *Remmer v. United States*, 350 U.S. 377 (1956); *Remmer v. United States*, 347 U.S. 227 (1954). It has long been recognized that jurors' exposure to extrajudicial evidence or their participation in *ex parte* contacts regarding the substance of the trial can undermine the fairness of

the proceeding and entitle a defendant to a new trial.[1] The Supreme Court has affirmed that "an attempt to investigate [a] petitioner's jury" constitutes "diligent . . . efforts to develop the facts" supporting potential claims. *Williams v. Taylor*, 529 U.S. 420, 442-43 (2000).

The American Bar Association's Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases reinforce the necessity of federal postconviction counsel's proposed investigation. *Wiggins v. Smith*, 539 U.S. 510, 524, 534 (2003) (Supreme Court has "long [. . .] referred" to the American Bar Association's standards as "guides to determining what is reasonable" in the representation of capital defendants), *citing Strickland v. Washington*, 466 U.S. 668, 688 (1984), and *Williams v. Taylor*, 529 U.S. 362, 396 (2000)). Those Guidelines make clear that:

> Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense

---

[1] *Mattox v. United States*, 146 U.S. 140 (1892) (jurors' exposure to media article in jury room recounting facts relating to prior trial and public anticipation of quick guilty verdicts is prejudicial error warranting relief); *Remmer v. United States*, 347 U.S. 227 (1954) (attempted bribery of juror warrants relief); *Parker v. Gladden*, 385 U.S. 363 (1966) (bailiff's comments to jurors regarding strength of evidence requires relief); *Gibson v. Clanon*, 633 F.2d 851 (9th Cir. 1980) (juror's library research held prejudicial); *United States v. Tebha*, 770 F.2d 1454 (9th Cir. 1985) (receipt of exhibit not introduced in evidence was prejudicial); *Marino v. Vasquez*, 812 F.2d 499 (9th Cir. 1987) (dictionary research and experiment required habeas relief); *Dickson v. Sullivan*, 849 F.2d 403 (9th Cir. 1988) (improper comments by bailiff to jurors compelled habeas relief); *United States v. Maree*, 934 F.2d 196 (9th Cir. 1991) (juror's *ex parte* conversation with friend regarding deliberations was prejudicial error); *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (concealment of material evidence during voir dire required habeas relief).

> representation, including challenges to any overly restrictive procedural rules. Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review.

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.15.1 (Duties of Post-conviction Counsel) ¶ C, reprinted in *The Guiding Hand of Counsel*, 31 HOFSTRA L. REV. 913, 1079 (2003).[2]

The commentary explains:

> [C]ollateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation in accordance with Guideline 10.7. (Subsection E(4)). As demonstrated by the high percentage of reversals and disturbingly large number of innocent persons sentenced to death, the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case.

*Id.*, Guideline 10.15.1, ¶ C (31 HOFSTRA L. REV. at 1085-86).[3]

---

[2] These obligations were not new to the 2003 Guidelines, but a restatement of principles contained in the earlier 1989 Guidelines:

> B. . . . Counsel should consider conducting a full investigation of the case, relating to both the guilt/innocence and sentencing phases. . . . Postconviction counsel should obtain and review a complete record of all court proceedings relevant to the case. With the consent of the client, postconviction counsel should obtain and review all prior counsel's file(s).
>
> C. Postconviction counsel should seek to present to the appropriate court or courts all arguably meritorious issues, including challenges to overly restrictive rules governing postconviction proceedings.

ABA Guidelines for the Appointment and Performance of Counsel In Death Penalty Cases, Guideline 11.9.3 (Duties of Postconviction Counsel) (1989).

The extent of the burden on federal habeas counsel has, of course, increased as a result of the Supreme Court's 1991 *McCleskey* decision.

[3]
> [I]t is of critical importance that counsel on direct appeal proceed, like all post-conviction counsel, in a manner that maximizes the client's ultimate chances of success. 'Winnowing' issues in a capital

"Collateral counsel should assume that any meritorious issue not contained in the initial application will be waived or procedurally defaulted in subsequent litigation, or barred by strict rules governing subsequent applications." *Id.* (31 HOFSTRA L. REV. at 1086).[4]

As the Supreme Court recognized in *Williams*, claims of possible jury misconduct are often capable of being discovered upon a reasonable and diligent investigation. *Williams*, 529 U.S. at 442-43. In fact, in *Worstzeck v. Stewart*, 118 F.3d 648, 653 (9th Cir. 1997), the inmate-petitioner was barred from filing a successive request for postconviction relief alleging juror impropriety because he had not previously interviewed jurors and could not show that he could not have uncovered this evidence through previous exercise of due diligence. The commentators to the ABA Guidelines recognize that juror misconduct is among the grounds that can give rise to relief and therefore must be thoroughly investigated. Guideline 10.15.1 (31 HOFSTRA L. REV. at 1086). But Petitioner's

---

> appeal can have fatal consequences. Issues abandoned by counsel in one case, pursued by different counsel in another case and ultimately successful, cannot necessarily be reclaimed later. When a client will be killed if the case is lost, counsel should not let any possible ground for relief go unexplored or unexploited.

Commentary to Guideline 10.15.1 (31 Hofstra L. Rev. at 1083 (footnotes omitted)).

[4] It is premature to ask whether the investigation will uncover facts revealing meritorious, cognizable claims. "Until previously unpresented issues are fully explored, there is no way to determine whether or not any arguably applicable forfeiture doctrines may be overcome." Commentary to Guideline 10.15.1 (31 HOFSTRA L. REV. at 1086 n.350).

attorneys cannot conduct that investigation unless this court grants them the ability to contact the jurors.

The obligation placed on federal habeas counsel by the United States Supreme Court, the Ninth Circuit, and the American Bar Association to conduct a thorough investigation and to assert all possible constitutional violations in the habeas petition constitutes a showing of good cause sufficient to satisfy Rule 39.2.

**2. This Court Should Allow Federal Postconviction Counsel to Conduct the Required Investigation**

In his direct appeal to the Ninth Circuit, Lezmond Mitchell argued that prosecutorial misconduct in the form of improper statements made as a part of its closing argument deprived Mitchell of a fair trial. The Ninth Circuit agreed with Mr. Mitchell that the comments were indeed improper, however the Ninth Circuit denied relief stating that the burden is on Mitchell "to show that the misconduct tainted the verdict." *United States v. Mitchell*, 502 F.3d 931, 996 (9th Cir. 2007). The Ninth Circuit ruled that Mr. Mitchell had failed to meet his burden, and thus ruled that the government's misconduct did not affect Mitchell's substantial rights. *Id.*

Here, Mr. Mitchell seeks the opportunity to meet his burden. The only objective measure to determine whether Mitchell's rights were impacted is by actually interviewing the jurors on this issue. Frequently, however, when a petitioner requests post-verdict contact with jurors, courts hesitate to grant such contact based upon Federal Rule of Evidence 606(b). *See, e.g.*, *United States v. Rice*, 446 F.2d 1390 (9th Cir. 1971).

Federal Rule of Evidence 606(b) states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the

> course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict on to the verdict form.

The Ninth Circuit has specifically stated that the "rule of juror incompetency [Rule 606(b)] cannot be applied in such an unfair manner as to deny due process." *United States v. Henley*, 238 F.3d 1111 (9th Cir. 2001). In the present case, Mr. Mitchell would indeed be denied due process if the Court insisted he meet a burden of proof, but denied him access to the only direct evidence to meet that burden.

In *Rushen v. Spain*, 464 U.S. 114 (1983), the United States Supreme Court clarified that a "juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide . . . ." *Rushen v. Spain*, 464 U.S. 114, 121 n.5 (1983) (citing Fed.R.Evid. 606(b)). The Ninth Circuit has specifically ruled that "racial prejudice is a mental bias that is unrelated to the specific issues that the juror was called upon to decide." *Henley*, 238 F.3d at 1120. And thus suggested that "racial bias is generally not subject to Rule 606(b)'s prohibitions against juror testimony." *Id.*

Regarding the prosecutor's many comments that the Ninth Circuit agreed were inappropriate, one comment dealt specifically with Lezmond Mitchell's apparent rejection of the Navajo religion. *See* RTT 4180[5]; *Mitchell*, 502 F.3d at 994-5. There is no debate that religious comments are inappropriate in penalty

---

[5] "RTT" refers to the Reporter's Transcript at Trial.

phase proceedings (*see e.g.*, *Sandoval v. Calderon*, 241 F.3d 765, 777 (9th Cir. 2001)), but the Ninth Circuit found that Mitchell had failed to meet his burden of showing that the prosecutor's comments tainted the verdict. *Mitchell*, 502 F.3d at 996. Mitchell seeks to interview the jurors about racial and religious prejudice on this point to see whether Mitchell's Navajo beliefs, or the allegation that the crime violated his Navajo beliefs, played any part in his death sentence. Religious prejudice, like racial prejudice, is a mental bias "unrelated to the specific issues that the juror was called upon to decide" and thus should not be subject to Rule 606(b). *See Rushen*, 464 U.S. at 121 n.5, and *Henley*, 238 F.3d at 1120.

Furthermore, Mr. Mitchell's crimes and trial were highly publicized in both the local and state-wide media. The importance of close scrutiny for any inappropriate juror contact is heightened when a sensational case results in an emotionally charged, highly publicized trial. *See Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966) (quoting *Patterson v. State of Colorado*, 205 U.S. 454, 462 (1907)).

Mitchell's case is considered a "landmark" federal trial because it marked the first time that federal officials in the United States Department of Justice and, consequently, in Arizona, prosecuted a case under the 1994 Federal Death Penalty Act. The many articles published in connection with the case spoke of "crime sprees," "brutal killings," a remorseless Lezmond Mitchell, and increasing gang violence. Moreover, many reporters put the blame for these acts on two men: Lezmond Mitchell and another man who, they explained, was ineligible for the death penalty. Furthermore, some of the articles included information about a second multiple-murder and an erroneous report that Lezmond Mitchell was arrested in connection with that crime. Perhaps most damning, however, was an

article stating that Mitchell, along with the other five men with whom he had been arrested, had been bragging about their violent escapades to such an extent that the other inmates at the Window Rock jail had twice beaten them. The article explained that as a result of these beatings, Mitchell and his cohorts had to be separated from the general population. It is well settled that a juror's consideration of news articles is prejudicial and can warrant a new trial, *see e.g., United States v. Littlefield*, 752 F.2d 1429 (9th Cir. 1985), and extensive media coverage can deprive a defendant of a fair trial. *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). Obviously the articles concerning Mr. Mitchell are highly prejudicial, and inquiry as to whether they were improperly brought to the jury's attention is legitimate and admissible under Federal Rule of Evidence 606(b)(1).

Finally, there were at least two acts of potential juror misconduct that occurred during the guilt phase portion of the case. On April 30, 2003, Judge Murguia received a note from an unnamed juror asking if the jury was permitted to consult "detailed maps" of the locations involved in the case. RT 2769. The Court's response was to give the jury an instruction at the end of the day informing them that they should not conduct any independent investigation or consult outside sources. (RTT 2769.) The jurors were never questioned as to who sent this note or for what purpose. Present counsel has never been provided a copy of this note.

The note itself is ambiguous, it is not clear if the author is asking if she can consult an outside source for her own knowledge or if she is writing in response to others in the jury room consulting outside sources and wondering if this is allowed. This is an important distinction as the latter would involve extraneous,

possibly prejudicial information and/or outside influence, evidence of which is admissible under Rule 606(b).

Also on April 30, 2003, Judge Murguia received a note from Alternate Juror Murphy stating that he had been in the company of three men who were discussing Mitchell's trial. (RTT 2770.) At the end of the day, the Court addressed this issue with Mr. Murphy who stated that the men only said the name of the case in his presence. (RT 2909.) He did, however, make a comment that Mitchell finds deeply disturbing, after telling the Court that the men said the name of the case he stated: "Yeah, that's all that was said. I was kind of glad because I didn't want to say anything about it either." (*Id.*) Mr. Murphy clearly indicates that had the men spoke further about the case, he would have been inclined to speak about the case as well.

Jurors are obviously banned from engaging in such conversations, and knowing Mr. Murphy's inclination to not abide by this rule, he must be interviewed to ensure that no such indiscretions took place. Such testimony would be admissible per Rule 606(b) as this would be evidence of an outside influence that may have improperly affected Mr. Murphy.

These notes indicate a strong possibility that outside influence and extraneous prejudicial information tainted the jury, and Mr. Mitchell's representatives must be permitted to investigate fully to ensure that this was not the case. Moreover, given that Mitchell was never provided with copies of these notes, it is all the more imperative that Mitchell confirm exactly what happened.

Neither this Court nor the Ninth Circuit has explicitly defined what constitutes "good cause" under Rule 39.2. This Court has, however, defined good cause under Rule 1.11, the predecessor to Rule 39.2, articulating a high burden of

proof for the individual seeking to interview jurors. The court cited Ninth Circuit precedent in support of this position, stating:

> Defendants bear the burden of showing that the verdict would have been different but for the presence of the external influence. 'Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a preponderance of the evidence that the outcome would have been different.' *Hard*, 870 F.2d at 1461. Without such a showing, the Court need not order additional investigation, since, 'an evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside a verdict.' *Id.*

*TIG Ins. Co. v. Liberty Mut. Ins. Co.*, 250 F.Supp.2d 1197, 1199 (D. Ariz. 2003) (quoting *Hard v. Burlington Northern Railroad Co.*, 870 F.2d 1454, 1461 (9th Cir. 1989)) .

In *TIG*, after losing a civil judgement, the defense sought to interview jurors based upon belief that extraneous evidence influenced the jury. This Court denied this request stating that the "Defendants' burden . . . is to show that the information they seek will show by a preponderance of the evidence that the outcome would have been different." *TIG Ins. Co.*, 250 F.Supp.2d at 1199. Because the defense stated that they were currently in the "investigation stage" of the case and could not yet meet this burden, the court denied them the opportunity to investigate. *Id.*

Mr. Mitchell's situation is distinguished from *TIG* for several reasons. First and most obvious, *TIG* involved an appeal stemming from a civil matter while Mitchell's case concerns a § 2255 proceeding following the appeal of a criminal conviction resulting in a death sentence. The Ninth Circuit was careful in noting that the burden of proof applied in a *civil* case. *Id.*; *Hard*, 870 F.2d at 1461. Neither the Ninth Circuit nor this Court has articulated the burden in a criminal

case, and certainly not in a postconviction proceeding challenging judgments of conviction and death sentence. This is noteworthy because, unlike an ordinary trial motion, the writ of habeas corpus is explicitly recognized in the Constitution.[6] U.S. Const. Art. I, § 9, cl. 2. Dubbed the "Great Writ," this procedural remedy "plays a vital role in protecting constitutional rights." *Hamdi v. Rumsfeld*, 542 U.S. 507, 536, (2004); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Due to the importance of the habeas corpus right, it is incumbent on counsel to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief." *McCleskey v. Zant,* 499 U.S. 467, 498 (1991). This necessarily entails conducting an appropriate inquiry of the jurors to determine whether a constitutional violation has occurred.

Secondly, and perhaps most importantly, this Court misapplied the standard the Ninth Circuit articulated. In *TIG,* the defense sought the court's permission to interview jurors. In *Hard*, the defense had *already* interviewed the jurors and was before the court seeking a new trial based upon affidavits from jurors. As a matter of fact, the standard that the court applied was taken entirely out of context. The Ninth Circuit reviewed the defense position in *Hard* and stated:

> Looking only at affidavits and testimony admissible under Rule 606(b), the court must decide whether an evidentiary hearing is required to determine whether a new trial is necessary. An evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside the verdict. Where a losing party in a civil case seeks to impeach a jury verdict, it must be

---

[6] While federal habeas petitions are now brought under the statutory scheme adopted by Congress, the writ has been in no way diluted. *See* 28 U.S.C. § 2255 (2006); *Davis v. United States*, 417 U.S. 333, 343 (1974) (section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"); *Hill v. United States*, 368 U.S. 424, 427 (1962).

> shown by a preponderance of the evidence that the outcome would have been different. Unless the affidavits on their face support this conclusion, no evidentiary hearing is required. Unless such a showing is made at the evidentiary hearing, no new trial is required.

*Hard*, 870 F.2d at 1461.

The Ninth Circuit did not articulate a standard to determine if juror interviews should be allowed, but rather articulated the standard to be applied *after* the interviews had taken place to determine whether to grant a motion for a new trial based upon those interviews. The Ninth Circuit's standard, in context, is logical. Indeed it is prudent and efficient to require the moving party to show that the outcome would have been different once they have completed their investigation, provided all evidence to the court, and moved for a new trial. This Court, however, applied this standard *before* the moving party was given an opportunity to investigate, thus it is entirely illogical to require that they show they would win on a motion for a new trial before they have filed or been given the opportunity to investigate such.

In the present case, Mitchell does not seek to impeach the verdict and is not currently filing a motion for a new trial. Rather Mitchell simply seeks to address the burden the Ninth Circuit set for him in his direct appeal and to conduct a full and thorough investigation as required by law. Thus the burden set forth in *Hard* is inapplicable to Mitchell's motion to interview jurors.

Finally, as the Ninth Circuit has clearly articulated with regards to Rule 606(b), the rule must give away to the demands of due process. *See Henley*, 238 F.3d at 1120. If the Ninth Circuit has ruled that the Federal Rules of Evidence cannot bar due process then certainly Local Rule 39.2 must be likewise limited.

Given that the Ninth Circuit has not ruled on "good cause" as it relates to Rule 39.2 and the closest District of Arizona opinion is limited to civil cases, misapplies the laws, and, in this case, would violate due process, the appropriate standard is not clear. The Eleventh Circuit has clearly defined "good cause" as it relates to a Southern District of Florida local rule almost identical to Rule 39.2, explaining that "good cause under the local rule may be shown only by satisfying the requirements of the exception stated in [Federal Rule of Evidence 606(b)]." *United States v. Camacho*, 865 F.Supp. 1527, 1531 (S.D. Fl. 1994) (quoting *United States v. Griek*, 920 F.2d 840, 842 (11th Cir. 1991)).

The Ninth Circuit standard, as it relates to Rule 39.2, is in all likelihood the same as the Eleventh Circuit approach. Admissibility under rule 606(b) is often the deciding factor in issues related to requests for post-verdict contact with jurors, suggesting that this is the major impediment to receiving the court's approval for such interviews. *See, e.g.*, *United States v. Rice*, 446 F.2d 1390 (9th Cir. 1971). Moreover the structure of Rule 39.2, where the "good cause" language is immediately followed by a citation to Federal Rule of Evidence 606(b), suggests that the key to attaining the court's permission to interview jurors is that the information sought is admissible under 606(b).

The burden placed on Mr. Mitchell by the Ninth Circuit and the fact that the information Mitchell seeks is admissible under 606(b) constitutes a showing of good cause sufficient to satisfy the requirements of Rule 39.2.

///

///

///

## E. CONCLUSION

For all the foregoing reasons, there is good cause to authorize counsel for Mr. Mitchell to conduct a thorough investigation, which includes interviewing the trial jurors, and therefore this motion should be granted.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: May 22, 2009

By: */s/ Statia Peakheart*
STATIA PEAKHEART
Deputy Federal Public Defender

Counsel for Petitioner
LEZMOND CHARLES MITCHELL

**CERTIFICATE OF SERVICE**

☐ I hereby certify that on , I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

☒ I hereby certify that on 05/22/09 , I served the attached document by mail
(insert service method: mail, courier service, in-person delivery, e-mail)
on the following, who are not registered participants of the CM/ECF System:
Kristine Fox, Senior Capital Case Staff Attorney
Evo A. DeConcini Courthouse, 405 W. Congress, Suite 1500
Tucson, AZ 85701-5010

s/ ______________________

## Motions

2:09-cv-01097

**U.S. District Court**

**DISTRICT OF ARIZONA**

### Notice of Electronic Filing

The following transaction was entered by Peakheart, Statia on 5/22/2009 at 12:07 PM MST and filed on 5/22/2009

**Case Name:**
**Case Number:** 2:09-cv-1097
**Filer:** Lezmond Charles Mitchell
**Document Number:** 1

**Docket Text:**
**MOTION for Authorization to Interview Jurors *In Support of Motion to Vacate, Set Aside, Or Correct the Sentence* by Lezmond Charles Mitchell. (Peakheart, Statia)**

**2:09-cv-1097 Notice has been electronically mailed to:**

Statia Peakheart statia_peakheart@fd.org

**2:09-cv-1097 Notice will be sent by other means to those listed below if they are affected by this filing:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=5/22/2009] [FileNumber=4072961-0
] [a4e7473f9ac0ffbe7e04f55034c491a518c395d78d2f5d40bd0e46349e302a9406c
3e0e3bcba5811999d16212ee8f6e16887c70a5cc64ace9121a803591ac5f3]]

X FILED ___ LODGED
___ RECEIVED ___ COPY

NOV 19 2002

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Lezmond Mitchell;<br>Jason Kinlicheenie;<br>Johnnie Orsinger; and<br>Gregory Nakai;<br>Defendants. | NO. CR-01-1062-PCT-MHM<br>**REDACTED SECOND SUPERSEDING INDICTMENT**<br><br>VIO: 18 U.S.C. §§ 1153, 1111 and 2 (CIR-First Degree Murder; Aiding and Abetting) Counts 1 & 5<br><br>18 U.S.C. §§ 2119 and 2 (Carjacking, Resulting in Death; Aiding and Abetting) Count 2<br><br>18 U.S.C. §§ 1153, 1111, 2111 and 2 (CIR-Felony Murder, Robbery; Aiding and Abetting) Count 3<br><br>18 U.S.C. §§ 1153, 2111 and 2 (CIR-Robbery; Aiding and Abetting) Count 4, 8 & 10<br><br>18 U.S.C. §§ 1153, 1111 & 1201(a)(2) and 2 (CIR-Felony Murder, Kidnaping; Aiding and abetting) Count 6<br><br>18 U.S.C. §§ 1153 & 1201(a)(2) and 2 (CIR: Kidnaping; Aiding and Abetting) Count 7<br><br>18 U.S.C. § 924(c)(1)(A)(i, ii and iii) and 2 (Use of a Firearm in a Crime of Violence; Aiding and Abetting) Counts 9 and 11 |

130

THE GRAND JURY CHARGES THE FOLLOWING ACTS :

**COUNT 1**

On or about October 28, 2001, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, LEZMOND MITCHELL and JOHNNIE ORSINGER, each an Indian, did, with premeditation and malice aforethought, willfully kill and murder Alyce R. Slim.

In violation of Title 18, United States Code, Sections 1153, 1111 and 2.

**COUNT 2**

On or about October 28, 2001, in the District of Arizona, LEZMOND MITCHELL and JOHNNIE ORSINGER, did, with intent to cause death or serious physical injury, take and attempt to take a motor vehicle, a 2001 GMC Sierra pickup truck, Arizona license 843-FSB, VIN # 2GTEC19V111273052, that had been shipped, transported or received in interstate commerce, from Alyce R. Slim and Jane Doe by force, violence or intimidation and as a result caused the death of Alyce R. Slim and Jane Doe.

In violation of Title 18, United States Code, Sections 2119 and 2.

**COUNT 3**

On or about October 28, 2001, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, LEZMOND MITCHELL and JOHNNIE ORSINGER, each an Indian, did, with malice aforethought and in perpetration and attempted perpetration of a robbery of a 2001 GMC Sierra pickup truck, Arizona license 843-FSB, VIN # 2GTEC19V111273052 and other things of value, willfully kill and murder Alyce R. Slim and Jane Doe.

In violation of Title 18, United States Code, Sections 1153, 1111, 2111 and 2.

**COUNT 4**

On or about October 28, 2001, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, LEZMOND MITCHELL and JOHNNIE ORSINGER, each an Indian, did, by force, violence, and intimidation, take and attempt to take from the person and presence of Alyce R. Slim and Jane Doe, a 2001 GMC Sierra pickup truck, Arizona license 843-FSB, VIN # 2GTEC19V111273052 and other things of value.

In violation of Title 18, United States Code, Sections 1153, 2111 and 2.

**COUNT 5**

On or about October 28, 2001, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, LEZMOND MITCHELL and JOHNNIE ORSINGER, each an Indian, did, with premeditation and malice aforethought, willfully kill and murder Jane Doe.

In violation of Title 18, United States Code, Sections 1153, 1111 and 2.

**COUNT 6**

On or about October 28, 2001, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, LEZMOND MITCHELL and JOHNNIE ORSINGER, each an Indian, did, with malice aforethought and in perpetration and attempted perpetration of a kidnaping, willfully kill and murder Jane Doe.

In violation of Title 18, United States Code, Sections 1153, 1111, 1201(a)( 2) and 2.

**COUNT 7**

On or about October 28, 2001, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, LEZMOND MITCHELL and JOHNNIE ORSINGER, each an Indian, did unlawfully seize, confine, kidnap, abduct and carry away, Jane Doe.

In violation of Title 18, United States Code, Sections 1153, 1201(a)( 2) and 2.

**COUNT 8**

On or about October 31, 2001, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, LEZMOND MITCHELL, JASON KINLICHEENIE and GREGORY NAKAI, each an Indian, did, by force, violence, and intimidation, take and attempt to take from the person and presence of Charlotte Yazzie of the Red Valley Trading Post in Red Valley Arizona, approximately $5,542.32 in cash and other things of value.

In violation of Title 18, United States Code, Sections 1153, 2111 and 2.

**COUNT 9**

On or about October 31, 2001, in the District of Arizona, LEZMOND MITCHELL, JASON KINLICHEENIE and GREGORY NAKAI did use, brandish and discharge a firearm, that is a shotgun and a rifle, during and in relation to a crime of violence, that is Robbery as alleged in Count 8, a felony prosecutable in a Court of the United States.

In violation of Title 18, United States Code, Sections, 924(c)(1)(A)(i, ii and iii) and 2.

**COUNT 10**

On or about October 31, 2001, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, LEZMOND MITCHELL, JASON KINLICHEENIE and GREGORY NAKAI, each an Indian, did, by force, violence, and intimidation, take and attempt to take from the person and presence of Charlotte Yazzie of the Red Valley Trading Post in Red Valley Arizona, a purse and other things of value.

In violation of Title 18, United States Code, Sections 1153, 2111 and 2.

**COUNT 11**

On or about October 31, 2001, in the District of Arizona, LEZMOND MITCHELL, JASON KINLICHEENIE and GREGORY NAKAI did use, brandish and discharge a firearm, that is a shotgun and a rifle, during and in relation to a crime of violence, that is Robbery as

alleged in Count 10, a felony prosecutable in a Court of the United States.

In violation of Title 18, United States Code, Sections, 924(c)(1)(A)(i, ii and iii) and 2.

## NOTICE OF SPECIAL FINDINGS

FURTHER, THE GRAND JURY FINDS THAT:

1. Lezmond Mitchell was over the age of eighteen years at the time of the offenses charged herein.

2. Lezmond Mitchell intentionally killed Alyce R. Slim and Jane Doe. Title 18 U.S.C. Section 3591(a)(2)(A).

3. Lezmond Mitchell intentionally inflicted serious bodily injury that resulted in the death of Alyce R. Slim and Jane Doe. Title 18 U.S.C. Section 3591(a)(2)(B).

4. Lezmond Mitchell intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Alyce R. Slim and Jane Doe died as a direct result of the act. Title 18 U.S.C. Section 3591(a)(2)(C).

5. Lezmond Mitchell intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Alyce R. Slim and Jane Doe died as a direct result of the act. Title 18 U.S.C. Section 3591(a)(2)(D).

6. The death or injury resulting in the death of Jane Doe occurred during the commission and attempted commission of the Kidnaping of Jane Doe. Title 18 U.S.C. Sections 1201 and 3592(c)(1).

7. Lezmond Mitchell committed the killings in an especially heinous, cruel or depraved manner in that the killing involved torture and serious physical abuse to Alyce R. Slim and Jane Doe. Title 18 U.S.C. Section 3592(c)(6).

8. Lezmond Mitchell committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value in that the defendant obtained the vehicle which had inherent value and also took it as part of an armed robbery plan involving the Red Valley Trading Post on October 31, 2001 for which Lezmond Mitchell received stolen money. Title 18 U.S.C. Section 3592(c)(8).

9. Lezmond Mitchell committed the offense after substantial planning and premeditation to cause the death of Alyce R. Slim and Jane Doe. Title 18 U.S.C. Section 3592(c)(9).

10. Lezmond Mitchell committed the offense against 65-year-old Alyce R. Slim who was vulnerable because of her age and 9-year-old Jane Doe who was vulnerable because of her age. Title 18 U.S.C. Section 3592(c)(11).

11. Lezmond Mitchell intentionally killed more than one person, by killing Jane Doe in addition to killing Alyce R. Slim, in a single criminal episode. Title 18 U.S.C. Section 3592(c)(16).

A TRUE BILL

FOREMAN OF THE GRAND JURY
Date: November 19, 2002

PAUL K. CHARLTON
United States Attorney
District of Arizona

VINCENT Q. KIRBY
Assistant U.S. Attorney

2255,APPEAL,CLOSED,CMX,DTE,PROTO

# U.S. District Court
# DISTRICT OF ARIZONA (Prescott Division)
# CIVIL DOCKET FOR CASE #: 3:09-cv-08089-DGC

Mitchell v. United States of America
Assigned to: Judge David G Campbell
Related Case: 3:01-cr-01062-DGC-1
Case in other court: Ninth Circuit, 11-99003; Mandate filed 11/06/15
USDC, District of Arizona, CV 09-1097 (Incorrect Div.)
18-17031, Ninth Circuit
Cause: 28:2255 Motion to Vacate / Correct Illegal Sentence

Date Filed: 05/22/2009
Date Terminated: 09/30/2010
Jury Demand: None
Nature of Suit: 535 Prisoner: Death Penalty - Habeas Corpus
Jurisdiction: U.S. Government Defendant

**Petitioner**

| | | |
|---|---|---|
| **Lezmond Mitchell**<br>*also known as*<br>Lezmond Charles Mitchell | represented by | **Celeste Bacchi**<br>Federal Public Defender -- Central District of California<br>321 E 2nd St.<br>Los Angeles, CA 90012<br>213-894-2854<br>Fax: 213-894-0081<br>Email: celeste_bacchi@fd.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Jonathan C Aminoff**<br>Federal Public Defenders Office - Los Angeles, CA<br>321 E 2nd St.<br>Los Angeles, CA 90012<br>213-894-2854<br>Fax: 213-894-0081<br>Email: jonathan.aminoff@fd.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Sean K Kennedy**
Federal Public Defenders Office
321 E 2nd St.
Los Angeles, CA 90012-4202
213-894-2854
Email: sean_kennedy@fd.org
*ATTORNEY TO BE NOTICED*

**Statia Peakheart**
Federal Public Defenders Office
321 E 2nd St
Los Angeles, CA 90012-4206
213-894-2854
Email: statia_peakheart@fd.org
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**United States of America** represented by **Sharon K Sexton**
US Attorneys Office - Phoenix, AZ
2 Renaissance Square
40 N Central Ave., Ste. 1800
Phoenix, AZ 85004-4408
602-514-7500
Fax: 602-514-7650
Email: Sharon.Sexton@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kurt Michael Altman - Inactive**
US Attorney's Office
2 Renaissance Sq
40 N Central Ave
Ste 1800
Phoenix, AZ 85004-4408
602-514-7500
Fax: 602-514-7650
Email:
USAAZ.DepartedAUSAs@usdoj.gov
*TERMINATED: 05/29/2009*
*ATTORNEY TO BE NOTICED*

**Vincent Quill Kirby - Inactive**
US Attorneys Office - Phoenix, AZ
2 Renaissance Square
40 N Central Ave., Ste. 1800
Phoenix, AZ 85004-4408
602-514-7500
Fax: 602-514-7650
Email:
USAAZ.DepartedAUSAs@usdoj.gov
*TERMINATED: 06/12/2019*
*ATTORNEY TO BE NOTICED*

**William G Voit**
US Attorneys Office - Phoenix, AZ
2 Renaissance Square
40 N Central Ave., Ste. 1800
Phoenix, AZ 85004-4408
602-514-7685
Email: William.Voit@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/22/2009 | 1 | MOTION for Authorization to Interview Jurors *In Support of Motion to Vacate, Set Aside, Or Correct the Sentence* by Lezmond Charles Mitchell. (Peakheart, Statia) (Entered: 05/22/2009) |
| 05/22/2009 | 2 | CERTIFICATE OF SERVICE by Lezmond Charles Mitchell re 1 MOTION for Authorization to Interview Jurors *In Support of Motion to Vacate, Set Aside, Or Correct the Sentence* (Peakheart, Statia) (Entered: 05/22/2009) |
| 05/22/2009 | 3 | NOTICE OF ASSIGNMENT: This case has been assigned to the Honorable Mary H. Murgia and Magistrate Judge Mark E. Aspey. The case was originally filed in the Phoenix division in error as case # CV 09-1097-PHX. All future pleadings or documents should bear the correct case number: CV 09-8089-PCT-MHM-MEA. (Entered by REK) (Entered: 05/26/2009) |
| 05/26/2009 | 4 | NOTICE TO FILER OF DEFICIENCY re 1 MOTION for Authorization to Interview Jurors *In Support of Motion to Vacate, Set Aside, Or Correct the Sentence* filed by Lezmond Mitchell. Description |

| | | |
|---|---|---|
| | | of deficiency: Document not in compliance with Local Rule 7.1(c). Document should be in PDF format and text-searchable. Party not added to case (United States of America). Incorrect division of Phoenix selected and correct division was Prescott. The following required document was not attached: Civil Cover Sheet. (REK) (Entered: 05/26/2009) |
| 05/27/2009 | 5 | Notice re Civil Cover Sheet by Lezmond Mitchell re 1 MOTION for Authorization to Interview Jurors *In Support of Motion to Vacate, Set Aside, Or Correct the Sentence* (Peakheart, Statia) (Entered: 05/27/2009) |
| 05/27/2009 | 6 | CERTIFICATE OF SERVICE by Lezmond Mitchell re 5 Other Notice *; NOTICE OF SERVICE OF CIVIL COVER SHEET* (Peakheart, Statia) (Entered: 05/27/2009) |
| 05/29/2009 | 7 | Notice re Conflict by United States of America (Kirby, Vincent) (Entered: 05/29/2009) |
| 06/03/2009 | 8 | ORDER - ORDERED that I hereby recuse myself from any action in the above-captioned matter and order that movant's section 2255 petition be referred to another Magistrate Judge for preparation of a report and recommendation. Signed by Magistrate Judge Mark E Aspey on 6/1/2009. (Referred to Magistrate Judge Jay R. Irwin by random draw this date)(LAD) (Entered: 06/03/2009) |
| 06/08/2009 | 9 | MOTION to Vacate, Set Aside or Correct Sentence (2255) Re: Criminal Case No CR 01-1062, filed by Lezmond Mitchell. (Attachments: # 1 Cover Page, # 2 Exhibit 1-10, # 3 Exhibit 11-15, # 4 Exhibit 16-17, # 5 Exhibit 17b, # 6 Exhibit 17c, # 7 Exhibit 17d, # 8 Exhibit 17-e-17f, # 9 Exhibit 17g, # 10 Exhibit 17h-26)(Peakheart, Statia) (Entered: 06/08/2009) |
| 06/08/2009 | 10 | Additional Attachments to Main Document re 9 Motion to Vacate/Set Aside/Correct Sentence (2255), Motion to Vacate/Set Aside/Correct Sentence (2255) by Petitioner Lezmond Mitchell. (Attachments: # 1 Exhibit 27-36, # 2 Exhibit 37-39, # 3 Exhibit 40a, # 4 Errata 40b-43, # 5 Exhibit 44-52, # 6 Exhibit 53a, # 7 Exhibit 53b-60, # 8 Exhibit 61-62a, # 9 Exhibit 62b-67)(Peakheart, Statia) (Entered: 06/08/2009) |
| 06/08/2009 | 11 | Additional Attachments to Main Document re 9 Motion to Vacate/Set Aside/Correct Sentence (2255), Motion to Vacate/Set Aside/Correct Sentence (2255) by Petitioner Lezmond Mitchell. (Attachments: # 1 Exhibit 68-69, # 2 Exhibit 70, # 3 Exhibit 71a-1, # 4 Exhibit 71a-2--71b, # 5 Exhibit 71c, # 6 Exhibit 71d--71e-1, # 7 Exhibit 71e-2--71f-1, |

| | | |
|---|---|---|
| | | # 8 Exhibit 71f-2, # 9 Exhibit 71g)(Peakheart, Statia) (Entered: 06/08/2009) |
| 06/08/2009 | 12 | Additional Attachments to Main Document re 9 Motion to Vacate/Set Aside/Correct Sentence (2255), Motion to Vacate/Set Aside/Correct Sentence (2255) by Petitioner Lezmond Mitchell. (Attachments: # 1 Exhibit 72-73a, # 2 Exhibit 73b, # 3 Exhibit 73c-1, # 4 Exhibit 73c-2, # 5 Exhibit 74-83, # 6 Exhibit 84-91, # 7 Exhibit 92-94, # 8 Exhibit 95-103, # 9 Exhibit 104-113, # 10 Exhibit 114-126)(Peakheart, Statia) (Entered: 06/08/2009) |
| 06/08/2009 | 13 | MOTION for Protective Order by Lezmond Mitchell. (Attachments: # 1 Proposed Protective Order)(Peakheart, Statia) (Entered: 06/08/2009) |
| 06/08/2009 | 14 | SEALED LODGED Proposed Exhibits from Trial File re: 16 MOTION to Seal. Document to be filed by Clerk if Motion to Seal is granted. Filed by Lezmond Mitchell. (Attachments: # 1 Exhibit 92, # 2 Exhibit 93, # 3 Exhibit 94)(Peakheart, Statia) MODIFIED TO CORRECT DOCUMENT LINKAGE ON 6/11/2009 (ALR). (Entered: 06/08/2009) |
| 06/10/2009 | 15 | NOTICE TO FILER OF DEFICIENCY re 14 Sealed Lodged Proposed Document, filed by Lezmond Mitchell. Description of deficiency: Motion to Seal must be filed separately in addition to the Sealed Lodged Proposed Document. Atty. noticed to file a separate Motion to Seal. (MHU) (Entered: 06/10/2009) |
| 06/10/2009 | 16 | MOTION to Seal Document re Exhibits 92-94 *Memorandum of Points and Authorities* by Lezmond Mitchell. (Attachments: # 1 Proposed Order)(Peakheart, Statia) (Entered: 06/10/2009) |
| 06/29/2009 | 17 | ORDER that no later than 90 days after the filing date of this order, respondent shall file an answer to petitioner's 9 MOTION to Vacate, Set Aside or Correct Sentence (2255) Re: Criminal Case No CR 01-1062. FURTHER ORDERED no later than 45 days after the filing of respondents' answer, petitioner may file a reply. FURTHER ORDERED no later than 10 days after the filing of this order, respondent shall file a consolidated reply to petitioner's motion to interview jurors 1 , for protective order 13 and to seal exhibits 92-94 16 . Any consolidated reply shall be filed no later than 5 days after the filing of the response. Signed by Judge Mary H Murguia on 6/26/2009. (LAD) (Entered: 06/29/2009) |
| 07/14/2009 | 18 | RESPONSE to Motion re 1 MOTION for Authorization to Interview Jurors *In Support of Motion to Vacate, Set Aside, Or Correct the Sentence*, 16 MOTION to Seal Document re Exhibits 92-94 *Memorandum of Points and Authorities*, 13 MOTION for Protective |

| | | |
|---|---|---|
| | | Order filed by United States of America. (Kirby, Vincent) (Entered: 07/14/2009) |
| 07/21/2009 | 19 | REPLY to Response to Motion re 1 MOTION for Authorization to Interview Jurors *In Support of Motion to Vacate, Set Aside, Or Correct the Sentence*, 16 MOTION to Seal Document re Exhibits 92-94 *Memorandum of Points and Authorities*, 13 MOTION for Protective Order filed by Lezmond Mitchell. (Peakheart, Statia) (Entered: 07/21/2009) |
| 08/26/2009 | 20 | EX PARTE MOTION *for Schedule to File Amended § 2255 Motion, Answer and Reply; Declaration of Counsel* by Lezmond Mitchell. (Attachments: # 1 Text of Proposed Order)(Peakheart, Statia) Modified on 9/4/2009 (LAD). DOCUMENT TREATED AS NORMAL PER ORDER 20 FILED 9/4/09. (Entered: 08/26/2009) |
| 09/04/2009 | 21 | ORDER denying 1 motion for authorization; granting 13 motion for protective order; denying 16 Ex Parte Motion to File Under Seal without prejudice; Petitioner shall file a renewed motion to seal no later than 10 days after the filing of this order; FURTHER ORDERED the Clerk shall file petitioner's Ex Parte Application 20 as an ordinary filing on the public docket. FURTHER ORDERED denying 20 Ex Parte Motion. (See document for further details). Signed by Judge Mary H Murguia on 9/1/2009. (cc: all counsel) (Entered: 09/04/2009) |
| 09/14/2009 | 22 | MOTION for Reconsideration re *Order 21 of 9/4/09 re Protective Order* by Lezmond Mitchell. (Peakheart, Statia) Modified on 9/16/2009 (INCORRECT EVENT SELECTED. THIS ENTRY HAS BEEN MODIFIED FROM (Motion for Protective Order) TO (Motion for Reconsideration) (KMG). (Entered: 09/14/2009) |
| 09/22/2009 | 23 | MOTION for Extension of Time IN WHICH TO FILE A RESPONSE TO MOVANT'S PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE by United States of America. (Kirby, Vincent) (Entered: 09/22/2009) |
| 09/22/2009 | 24 | Additional Attachments to Main Document re 23 MOTION for Extension of Time IN WHICH TO FILE A RESPONSE TO MOVANT'S PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE *and ORDER* by Respondent United States of America. (Kirby, Vincent) (Entered: 09/22/2009) |
| 10/06/2009 | 25 | ORDER denying Petitioner's 22 Motion for Reconsideration of 9/4/09 order. FURTHER ORDERED petitioner shall file a renewed motion to seal no later than 5 days after the filing of this order. Signed by Judge Mary H Murguia on 10/2/2009. (LAD) (Entered: 10/06/2009) |

| | | |
|---|---|---|
| 10/06/2009 | 26 | ORDER granting in part Respondent's 23 Motion for Extension of Time. Respondent's answer shall be filed no later than 11/30/09. Signed by Judge Mary H Murguia on 10/2/2009.(LAD) (Entered: 10/06/2009) |
| 10/14/2009 | 27 | AMENDED MOTION to Seal Document re Motion to Seal *Privileged Exhibits* by Lezmond Mitchell. (Peakheart, Statia) (Entered: 10/14/2009) |
| 10/16/2009 | 28 | RESPONSE to Motion re 27 MOTION to Seal Document re Motion to Seal *Privileged Exhibits* filed by United States of America. (Kirby, Vincent) (Entered: 10/16/2009) |
| 11/03/2009 | 29 | MOTION for Ruling re Attorney-Client Privilege *Government's Motion for Order to Declare Attorney-Client Privilege Waived* by United States of America. (Attachments: # 1 Text of Proposed Order)(Kirby, Vincent) (Entered: 11/03/2009) |
| 11/12/2009 | 30 | AMENDED MOTION to Vacate re Motion Under 28 U.S.C. § 2255 *To Vacate, Set Aside, or Correct Sentence Filed Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure* by Lezmond Mitchell. (Attachments: # 1 Exhibit 127-134, # 2 Exhibit 135-142, # 3 Exhibit 143-144) (Peakheart, Statia) (Entered: 11/12/2009) |
| 11/13/2009 | 31 | RESPONSE in Opposition re 29 MOTION for Ruling re Attorney-Client Privilege *Government's Motion for Order to Declare Attorney-Client Privilege Waived* filed by Lezmond Mitchell. (Peakheart, Statia) (Entered: 11/13/2009) |
| 11/17/2009 | 32 | MOTION for Extension of Time to File Answer re GOVERNMENT'S SECOND MOTION TO EXTEND TIME IN WHICH TO FILE A RESPONSE TO MOVANT'S PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE by United States of America. (Kirby, Vincent) (Entered: 11/17/2009) |
| 11/17/2009 | 33 | MOTION to Strike re GOVERNMENT'S MOTION TO STRIKE PETITIONER'S AMENDED MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE by United States of America. (Kirby, Vincent) (Entered: 11/17/2009) |
| 11/17/2009 | 34 | REPLY to Response to Motion re 29 MOTION for Ruling re Attorney-Client Privilege *Government's Motion for Order to Declare Attorney-Client Privilege Waived* filed by United States of America. (Kirby, Vincent) (Entered: 11/17/2009) |
| 11/20/2009 | 35 | SUPPLEMENT of Notice of Filing of Additional Declaration In Support of Mitchells Amended Motion re 30 MOTION to Vacate re Motion Under 28 U.S.C. § 2255 *To Vacate, Set Aside, or Correct* |

| | | |
|---|---|---|
| | | *Sentence Filed Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure* MOTION to Vacate re Motion Under 28 U.S.C. § 2255 *To Vacate, Set Aside, or Correct Sentence Filed Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure Exhibit 145* by Petitioner Lezmond Mitchell. (Attachments: # 1 Exhibit Decl of Anne Herring Ph.D.) (Peakheart, Statia) (Entered: 11/20/2009) |
| 11/30/2009 | 36 | RESPONSE in Opposition re 33 MOTION to Strike re GOVERNMENT'S MOTION TO STRIKE PETITIONER'S AMENDED MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE *Filed Pursuant to 28 U.S.C. § 2255* filed by Lezmond Mitchell. (Peakheart, Statia) (Entered: 11/30/2009) |
| 12/01/2009 | 37 | ORDER granting 32 Motion for Extension of Time to Answer. IT IS ORDERED that Respondents Second Motion to Extend Time In Which to File a Response to Movants Petition to Vacate, Set Aside, or Correct Sentence is GRANTED. Respondents answer shall be filed no later than March 1, 2010. Absent a showing of extraordinary circumstances, no further continuances for Respondents Answer will be granted.Signed by Judge Mary H Murguia on 12/1/09.(KSP) (Entered: 12/01/2009) |
| 12/03/2009 | 38 | RESPONSE TO 9 Motion to Vacate/Set Aside/Correct Sentence (2255), Motion to Vacate/Set Aside/Correct Sentence (2255) filed by United States of America. (Kirby, Vincent) (Entered: 12/03/2009) |
| 12/04/2009 | 39 | ORDER granting 29 Respondents Motion to Declare Attorney-Client Privilege Waived.Signed by Judge Mary H Murguia on 12/3/09.(KSP) (Entered: 12/04/2009) |
| 12/04/2009 | 40 | ORDER denying 27 Motion to Seal Document. Signed by Judge Mary H Murguia on 12/3/09.(KSP) (Entered: 12/04/2009) |
| 12/08/2009 | 41 | ORDER denying 33 Motion to Strike. IT IS FURTHER ORDERED that no later than fifteen (15) days after entry of this Order, Petitioner shall file a redlined version of his Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence that indicates deletions by bracketing or striking through and additions by underlining. The paper courtesy copy provided to the Court shall be spiral bound on the left side and not fastened at the top.Signed by Judge Mary H Murguia on 12/7/09.(KSP) (Entered: 12/08/2009) |
| 12/23/2009 | 42 | Notice re Notice of Filing Pursuant to LRCiv 15.1 by Lezmond Mitchell re 30 MOTION to Vacate re Motion Under 28 U.S.C. § 2255 *To Vacate, Set Aside, or Correct Sentence Filed Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure* MOTION to Vacate re Motion Under 28 U.S.C. § 2255 *To Vacate, Set Aside, or Correct Sentence Filed* |

| | | |
|---|---|---|
| | | *Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure* (Attachments: # 1 Exhibit Redline/Strike-Out Version of Amended Sec. 2255 Motion)(Peakheart, Statia) (Entered: 12/23/2009) |
| 12/23/2009 | 43 | Additonal Attachments: Exs. 92-94 In Support of 42 Amended Sec. 2255 Motion by Lezmond Mitchell re 30 MOTION to Vacate Under 28 U.S.C. § 2255 *To Vacate, Set Aside, or Correct Sentence Filed Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure* (Peakheart, Statia) Modified on 12/29/2009 INCORRECT DOCUMENT EVENT SELECTED; THIS ENTRY HAS BEEN MODIFIED FROM (Notice) TO (Additonal Attachments); LINKAGE ADDED (REW, ). (Entered: 12/23/2009) |
| 02/02/2010 | 44 | NOTICE of Deposition of Gregory Bartolomei, filed by United States of America. (Kirby, Vincent) (Entered: 02/02/2010) |
| 02/02/2010 | 45 | NOTICE of Deposition of Jeffrey Williams, filed by United States of America. (Kirby, Vincent) (Entered: 02/02/2010) |
| 02/05/2010 | 46 | NOTICE of Deposition of John Sears, filed by United States of America. (Kirby, Vincent) (Entered: 02/05/2010) |
| 02/19/2010 | 47 | MOTION for Extension of Time IN WHICH TO FILE A RESPONSE TO MOVANTS PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE by United States of America. (Attachments: # 1 Text of Proposed Order)(Kirby, Vincent) (Entered: 02/19/2010) |
| 02/24/2010 | 48 | ORDER granting 47 Motion for Extension of Time. Respondent's answer shall be filed no later than April 1, 2010. Signed by Judge Mary H Murguia on 2/23/10.(KSP) (Entered: 02/24/2010) |
| 04/01/2010 | 49 | RESPONSE TO 9 Motion to Vacate/Set Aside/Correct Sentence (2255), Motion to Vacate/Set Aside/Correct Sentence (2255) filed by United States of America. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Kirby, Vincent) (Entered: 04/01/2010) |
| 05/05/2010 | 50 | First MOTION for Extension of Time for Reply *(Unopposed)* by Lezmond Mitchell. (Peakheart, Statia) (Entered: 05/05/2010) |
| 05/06/2010 | 51 | ORDER granting 50 Motion for Extension of Time. Petitioner's reply shall be filed no later than 6/16/10. Signed by Judge Mary H Murguia on 5/6/10.(KSP) (Entered: 05/06/2010) |
| 06/14/2010 | 52 | MOTION for Extension of Time to file Reply by Lezmond Mitchell. (Peakheart, Statia) (Entered: 06/14/2010) |
| 06/14/2010 | 53 | ERRATA re 49 Response to Motion to Vacate/Set Aside/Correct Sentence (2255) by Respondent United States of America. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit)(Kirby, Vincent) (Entered: 06/14/2010) |
| 06/23/2010 | 54 | ORDER granting 52 Motion for Extension of Time. Reply shall be filed no later than 7/7/10. No further continuances will be granted. Signed by Judge Mary H Murguia on 6/22/10.(KSP) (Entered: 06/23/2010) |
| 07/07/2010 | 55 | REPLY to Response to Motion re 30 MOTION to Vacate re Motion Under 28 U.S.C. § 2255 *To Vacate, Set Aside, or Correct Sentence Filed Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure* MOTION to Vacate re Motion Under 28 U.S.C. § 2255 *To Vacate, Set Aside, or Correct Sentence Filed Pursuant to Rule 15(a)(1), Federal Rule of Civil Procedure* filed by Lezmond Mitchell. (Attachments: # 1 Exhibit 146-155, # 2 Exhibit 156-165)(Peakheart, Statia) (Entered: 07/07/2010) |
| 09/30/2010 | 56 | ORDER as to Lezmond Mitchell, denying Petitioner's 30 Amended MOTION Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, Or, in the Alternative, Pursuant to 28 U.S.C. § 2241; the Clerk shall enter judgment accordingly and terminate this action; GRANTING a Certificate of Appealability as to the following issues: Claim A Whether counsel's failure to investigate, prepare, and present evidence of intoxication resulted in ineffective assistance at trial; Claim B Whether counsel's failure to investigate, prepare, and present evidence of addiction and intoxication resulted in ineffective assistance at sentencing; and Claim D Whether counsels failure to investigate, prepare, and present evidence of Mitchell's social history and executive functioning deficits resulted in ineffective assistance at sentencing. Signed by Judge Mary H Murguia on 9/30/10. (REW) (Entered: 09/30/2010) |
| 09/30/2010 | 57 | JUDGMENT, pursuant to the Court's Order of September 30, 2010, denying Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. 2255, movant shall take nothing and the action be, and same hereby is, dismissed. (REW) (Entered: 09/30/2010) |
| 10/28/2010 | 58 | MOTION to Amend/Correct 57 Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), 56 Order,,, *Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Procedure 59(e)* by Lezmond Mitchell. (Attachments: # 1 Exhibit)(Peakheart, Statia) (Entered: 10/28/2010) |
| 10/28/2010 | 59 | MOTION for Leave to File Excess Pages for Motion for Leave to File Brief In Excess of Page Limit *and Proposed Order* by Lezmond Mitchell. (Attachments: # 1 Text of Proposed Order)(Peakheart, Statia) (Entered: 10/28/2010) |

| | | |
|---|---|---|
| 11/03/2010 | 60 | NOTICE re of Supplemental Exhibits in Support of Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Procedure 59(e) by Lezmond Mitchell re 58 MOTION to Amend/Correct 57 Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), 56 Order,,, *Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Pr MOTION to Amend/Correct 57 Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), 56 Order,,, Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Pr. (Attachments: # 1 Exhibit)(Peakheart, Statia) (Entered: 11/03/2010)* |
| 11/15/2010 | 61 | RESPONSE to Motion re 58 MOTION to Amend/Correct 57 Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), 56 Order,,, *Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Pr MOTION to Amend/Correct 57 Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), 56 Order,,, Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Pr filed by United States of America. (Attachments: # 1 Exhibit)(Kirby, Vincent) (Entered: 11/15/2010)* |
| 11/17/2010 | 62 | MOTION for Leave to File Excess Pages for Reply Memorandum by Lezmond Mitchell. (Attachments: # 1 Text of Proposed Order) (Peakheart, Statia) Modified on 11/18/2010 (LSP). LODGED proposed document event not entered. (Entered: 11/17/2010) |
| 11/18/2010 | 63 | NOTICE TO FILER OF DEFICIENCY re 62 MOTION for Leave to File Excess Pages for Reply Memorandum filed by Lezmond Mitchell. Description of deficiency: Original proposed pleading not electronically lodged using the "Lodged Proposed Document" event. Electronically lodge the original proposed pleading using the "Lodged Proposed Document" event. (LSP) (Entered: 11/18/2010) |
| 11/18/2010 | 64 | ORDER granting 59 Motion for Leave to File Excess Pages; denying 62 Motion for Leave to File Excess Pages. Signed by Judge Mary H Murguia on 11/18/10.(KSP) (Entered: 11/18/2010) |
| 11/22/2010 | 65 | REPLY to Response to Motion re 58 MOTION to Amend/Correct 57 Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), 56 Order,,, *Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Pr MOTION to Amend/Correct 57 Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), Judgment on Motion to* |

| | | |
|---|---|---|
| | | *Vacate/Set Aside/Correct Sentence (2255), 56 Order,, Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Pr 59(e) filed by Lezmond Mitchell. (Attachments: # 1 Exhibit)(Peakheart, Statia) (Entered: 11/22/2010)* |
| 12/21/2010 | 66 | ORDER denying 58 Motion to Alter or Amend the Judgment. Signed by Judge Mary H Murguia on 12/21/10.(KSP) (Entered: 12/21/2010) |
| 02/17/2011 | 67 | NOTICE OF APPEAL to 9th Circuit, as to 57 Judgment on Motion to Vacate/Set Aside/Correct Sentence (2255), 66 Order on Motion to Amend/Correct by Lezmond Mitchell. (Peakheart, Statia) Modified on 2/17/2011 (SAT). COA granted as to Claims A, B and D in District Court on 9/30/2010. (Entered: 02/17/2011) |
| 02/17/2011 | 68 | CERTIFICATE OF RECORD TRANSMITTED TO 9TH CIRCUIT COURT OF APPEALS re 67 Notice of Appeal. (SAT) (Entered: 02/17/2011) |
| 03/01/2011 | 69 | Ninth Circuit Case Number 11-99003 for 67 Notice of Appeal. (LSP) (Entered: 03/01/2011) |
| 11/06/2015 | 70 | MANDATE of USCA affirming the decision of the district court re: 67 Notice of Appeal filed by Lezmond Mitchell. (Attachments: # 1 Order, # 2 Opinion, # 3 NDA) (LAD) (Distributed by the Ninth Circuit) (Entered: 11/06/2015) |
| 03/05/2018 | 71 | MOTION to Reopen Case *Pursuant to Federal Rule of Evidence, Rule 60(b)(6)* by Lezmond Mitchell. (Attachments: # 1 Proposed Order) (Aminoff, Jonathan) (Entered: 03/05/2018) |
| 03/06/2018 | 72 | MINUTE ORDER: That this case has been reassigned to Senior Judge Neil V Wake for all further proceedings. All future filings shall reflect the following case number: CV-09-8089-PCT-NVW. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (MAP) (Entered: 03/06/2018) |
| 03/07/2018 | 73 | ORDER OF RECUSAL. ORDERED these cases be reassigned, by lot, to another judge in the District of Arizona. FURTHER ORDERED that these matters have been reassigned by random lot to the Honorable David G. Campbell. All future pleadings and papers submitted for filing shall bear the following complete case numbers: CV-09-08089-PCT-DGC and CR-01-01062-PCT-DGC. Signed by Senior Judge Neil V Wake on 3/7/18. (MAP) (Entered: 03/07/2018) |
| 03/16/2018 | 74 | MOTION for Extension of Time to File Response/Reply as to 71 MOTION to Reopen Case *Pursuant to Federal Rule of Evidence, Rule* |

| | | |
|---|---|---|
| | | *60(b)(6)* by United States of America. (Attachments: # 1 Text of Proposed Order)(Kirby, Vincent) (Entered: 03/16/2018) |
| 04/10/2018 | 75 | ORDER granting 74 Motion for Extension of Time to File Response/Reply re: 71 MOTION to Reopen Case Pursuant to Federal Rule of Evidence, Rule 60(b)(6). Defendant shall file its response to Plaintiff's motion for relief from judgment on or before 5/21/2018. Signed by Judge David G Campbell on 4/10/2018. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (DGC, nvo) This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (DGC, nvo) (Entered: 04/10/2018) |
| 05/21/2018 | 76 | *RESPONSE in Opposition re: 71 MOTION to Reopen Case *Pursuant to Federal Rule of Evidence, Rule 60(b)(6)* filed by United States of America. (Kirby, Vincent) *Modified on 5/22/2018 to correct filer to Plaintiff (ATD). (Entered: 05/21/2018) |
| 06/01/2018 | 77 | MOTION for Extension of Time to File Response/Reply by Lezmond Mitchell. (Attachments: # 1 Proposed Order)(Aminoff, Jonathan) (Entered: 06/01/2018) |
| 06/14/2018 | 78 | ORDER: Defendant shall file his reply on or before June 18, 2018. Signed by Judge David G Campbell on 6/14/2018. (REK) (Entered: 06/14/2018) |
| 06/18/2018 | 79 | REPLY to Response to Motion re: 71 MOTION to Reopen Case *Pursuant to Federal Rule of Evidence, Rule 60(b)(6)* filed by Lezmond Mitchell. (Aminoff, Jonathan) (Entered: 06/18/2018) |
| 09/18/2018 | 80 | ORDER denying Petitioner's Notice of Motion and Motion of Relief from Judgment Pursuant to Federal Rule of Civil Procedure Rule 60(b)(6) (Doc. 71 ). No certificate of appealability shall be issued. Signed by Senior Judge David G Campbell on 9/17/18. (DXD) (Entered: 09/18/2018) |
| 10/17/2018 | 81 | NOTICE OF APPEAL to 9th Circuit Court of Appeals re: 80 Order on Motion to Reopen Case by Lezmond Mitchell. (Aminoff, Jonathan) (Entered: 10/17/2018) |
| 10/18/2018 | 82 | USCA Case Number re: 81 Notice of Appeal. Case number Ninth Circuit, 18-17031. (EJA) (Entered: 10/18/2018) |
| 06/12/2019 | 83 | NOTICE OF ATTORNEY SUBSTITUTION: William G. Voit and Sharon K. Sexton appearing for United States of America. Attorney Vincent Quill Kirby terminated. . (Voit, William) (Entered: 06/12/2019) |
| 08/05/2019 | 84 | MOTION to Stay *Execution* by Lezmond Mitchell. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order [Proposed] Order) (Aminoff, Jonathan) (Entered: 08/05/2019) |
| 08/06/2019 | 85 | ORDER. Status Conference set for 8/15/2019 at 11:00 AM in Courtroom 603, 401 West Washington Street, Phoenix, AZ 85003 before Senior Judge David G Campbell.Signed by Senior Judge David G Campbell on 8/6/2019. (DGC, nvo) (Entered: 08/06/2019) |
| 08/15/2019 | 86 | MINUTE ENTRY for proceedings held before Senior Judge David G Campbell: Status Conference held on 8/15/2019 re: Motion to Stay Execution 84 . IT IS ORDERED the respondent shall file a response by August 19, 2019. The petitioner shall file a reply by August 26, 2019. (Court Reporter Patricia Lyons.) Hearing held 11:02 AM to 11:21 AM. (CLB) (Entered: 08/15/2019) |
| 08/16/2019 | 87 | TRANSCRIPT REQUEST by United States of America for proceedings held on 8/15/19, Judge David G Campbell hearing judge(s). (Voit, William) (Entered: 08/16/2019) |
| 08/19/2019 | 88 | RESPONSE to Motion re: 84 MOTION to Stay *Execution (Oral Argument Requested)* filed by United States of America. (Voit, William) (Entered: 08/19/2019) |
| 08/26/2019 | 89 | TRANSCRIPT REQUEST by Lezmond Mitchell for proceedings held on 8/15/2019, Judge David G Campbell hearing judge(s). (Bacchi, Celeste) (Entered: 08/26/2019) |
| 08/26/2019 | 90 | REPLY to Response to Motion re: 84 MOTION to Stay *Execution* filed by Lezmond Mitchell. (Aminoff, Jonathan) (Entered: 08/26/2019) |

---


## PACER Service Center

### Transaction Receipt

08/27/2019 12:34:57

| | | | |
|---|---|---|---|
| **PACER Login:** | fpdcac0087:2550647:0 | **Client Code:** | Mitchell |
| **Description:** | Docket Report | **Search Criteria:** | 3:09-cv-08089-DGC |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |