CA No. 18-17031

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LEZMOND CHARLES MITCHELL,

Movant-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

DC No. CV 3:09-cv-08089-DGC
(Criminal No. 3:01-cr-01062-DGC)

**DEATH PENALTY CASE**

**Urgent Motion Under Circuit Rule 27-3(b)**

**EXECUTION SET FOR DECEMBER 11, 2019**

# APPELLANT'S MOTION FOR STAY OF EXECUTION

On Appeal from the United States District Court for the District of Arizona,
The Honorable David G. Campbell Presiding

HILARY POTASHNER
Federal Public Defender
JONATHAN C. AMINOFF
Email: Jonathan_Aminoff@fd.org
CELESTE BACCHI
Email: Celeste_Bacchi@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Movant-Appellant
LEZMOND CHARLES MITCHELL

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. PARTY NAMES AND ADDRESSES ..... 1

III. CIRCUIT RULE 27-3 CERTIFICATE ..... 2

IV. PROCEDURAL HISTORY AND RELEVANT FACTS ..... 4

A. Proceedings Before the District Court and the Relevant Appeals ..... 4

B. Other Relevant Proceedings ..... 7

V. ARGUMENT ..... 8

A. Mitchell is Entitled to a Stay of Execution as a Matter of Right ..... 9

B. Alternatively, Mitchell is Entitled to a Stay as a Matter of Equity ..... 12

1. Legal Standard ..... 12

2. Mitchell Has Established a Likelihood of Success on the Merits ..... 13

3. Mitchell Will Suffer Irreparable Harm Without a Stay ..... 16

4. The Balance of Hardships Tips in Mitchell's Favor ..... 17

5. A Stay is in the Public Interest ..... 19

VI. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 15

*Barefoot v. Estelle*,
463 U.S. 880 (1983) .......... *passim*

*Beaty v. Brewer*,
649 F.3d 1071 (9th Cir. 2011) .......... 13, 17

*Buck v. Davis*,
137 S. Ct. 759 (2017) .......... 17

*Cook v. Ryan*,
688 F.3d 598 (9th Cir. 2012) .......... 11, 20

*Garrison v. Patterson*,
391 U.S. 464 (1968) .......... 10

*Gomez v. U.S. Dist. Court*,
503 U.S. 653 (1992) .......... 18

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) .......... 6

*Greenawalt v. Stewart*,
105 F.3d 1268 (9th Cir. 1997) .......... 12

*Hill v. McDonough*,
547 U.S. 573 (2006) .......... 8, 11, 12, 18

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) .......... 13

*Lonchar v. Thomas*,
517 U.S. 314 (1996) .......... 12

*Lopez v. Brewer*,
680 F.3d 1068 (9th Cir. 2012) .......... 13

## TABLE OF AUTHORITIES


**Page(s)**

*Mitchell v. United States*,
137 S. Ct. 38 (2016)....................6

*Mitchell v. United States*,
553 U.S. 1094 (2008)....................4

*Mitchell v. United States*,
790 F.3d 881 (9th Cir. 2015)....................5, 20

*Morse v. ServiceMaster Global Holdings, Inc.*,
2013 U.S. Dist. LEXIS 3663 (N.D. Cal. Jan. 8, 2013)....................13

*Nelson v. Campbell*,
541 U.S. 637 (2004)....................12, 13

*Peña-Rodriguez v. Colorado*,
137 S. Ct. 855 (2017)....................*passim*

*Preminger v. Principi*,
422 F.3d 815 (9th Cir. 2005)....................19

*Towery v. Brewer*,
672 F.3d 650 (9th Cir. 2012)....................13

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007)....................4, 16

*Wood v. Ryan*,
759 F.3d 1117 (9th Cir. 2014)....................11, 18

**Federal Statutes and Authorities**

28 U.S.C. § 2253(c)....................8, 10

28 U.S.C. § 2255....................*passim*

Federal Rule of Civil Procedure 60....................*passim*

## I. INTRODUCTION

On April 25, 2019, this Court granted Appellant Lezmond Mitchell's request for a certificate of appealability and issued a briefing schedule, allowing Mitchell to litigate the constitutionality of his death sentence. Despite this ongoing litigation, on July 25, 2019, without any prior warning, the Government gave notice that it intends to execute Mitchell on December 11, 2019.

Mitchell respectfully moves this Court for a stay of execution such that he may litigate his appeal to conclusion. There are two types of stays of execution: stays as a matter of right and stays as a matter of equity. Under either standard, Mitchell is entitled to a stay until such time as the issues raised in his appeal are resolved and this Court issues its mandate.

## II. PARTY NAMES AND ADDRESSES

Although not required by Circuit Rule 27-3(b) for an urgent motion, Mitchell provides the names and addresses of all relevant parties for the Court's convenience:

**Counsel for Petitioner Lezmond Mitchell**

Jonathan C. Aminoff
Celeste Bacchi
Deputy Federal Public Defenders
Office of the Federal Public Defender
321 East Second Street
Los Angeles, CA 90012

**Counsel for Respondent, United States of America**

William G. Voit
Sharon K. Sexton
Assistant United States Attorneys
Office of the United States Attorney
Two Renaissance Square, Suite 1200
40 N. Central Avenue
Phoenix, AZ 85004

**Warden, United States Penitentiary at Terre Haute**

T.J. Watson
Complex Warden
Federal Correctional Complex, Terre Haute, Indiana
4700 Bureau Road South
Terre Haute, IN 47802

## III. CIRCUIT RULE 27-3 CERTIFICATE

Circuit Rule 27-3(b)(4) states "if the relief sought in the motion was available in the district court, Bankruptcy Appellate Panel or agency, the motion shall state whether all grounds advanced in support thereof in this Court were submitted to the district court, panel or agency, and if not, why the motion should not be remanded or denied."

On July 25, 2019, T.J. Watson, Warden of the United States Penitentiary at Terre Haute, informed Mitchell via letter that his execution date was set for December 11, 2019. Ex. A, 7/25/2019 Letter setting date.[1]

On August 5, 2019, Mitchell filed a motion for stay of execution in the district court. 2ER[2] 77-80. After the Government filed an opposition (2ER 37-55), and Mitchell filed a reply (2ER 21-36), the district court held that it did not have jurisdiction to consider Mitchell's motion and denied the motion on that basis alone. Ex. C, District Court Order, August 30, 2019.

Circuit Rule 27-3(b) allows for urgent consideration of a motion in order to avoid irreparable harm by a specific date, so long as the relief is not needed within 21 days. Counsel certifies that Mitchell will suffer such harm if his December 11, 2019 execution is not stayed. Mitchell's opening brief was filed on August 28, 2019; the Government's answering brief is due on September 27, 2019; and Mitchell's reply brief is due on October 18, 2019. In the ordinary course, the Court would schedule oral argument 9-12 months after Mitchell files his reply

---

[1] Due to errors in the letter dated July 25, 2019, the Warden subsequently issued an amended letter on July 31, 2019 notifying Mitchell of his impending execution. (Ex. B, 7/31/2019 Letter setting date). The date of his execution (December 11, 2019) remains the same.

[2] "ER" refers to Mitchell's excerpts of record filed in conjunction with his opening brief on appeal on August 28, 2019. Ninth Circuit Docket Entry ("DE") 14-1 and 14-2.

brief. *See* Ninth Circuit Office of the Clerk, Frequently Asked Questions, "Briefing/Hearing Process," available at: https://www.ca9.uscourts.gov/content/faq.php. Thus, it is unlikely that the Court would decide Mitchell's case prior to December 11, 2019. Moreover, this is not a last-minute appeal, but rather one that has been pending for months. This Court should not allow Respondent to moot out pending litigation by arbitrarily setting an execution date before this appeal concludes.

## IV. PROCEDURAL HISTORY AND RELEVANT FACTS

### A. Proceedings Before the District Court and the Relevant Appeals

Mitchell was sentenced to death on September 15, 2003. *United States v. Mitchell*, CR-01-1062, Dkt. No. 425. The Court affirmed Mitchell's convictions and sentences, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), and the Supreme Court denied certiorari. *Mitchell v. United States*, 553 U.S. 1094 (2008).

On June 8, 2009, Mitchell moved the district court to vacate his convictions and sentences pursuant to 28 U.S.C. § 2255. *Mitchell v. United States*, 09-cv-8089, Doc. 9. Before filing his section 2255 motion, however, Mitchell moved the district court for authorization to interview the jurors from his capital trial. 2ER 155-73. Leave of court was required pursuant to a District of Arizona rule that prohibits attorneys from contacting jurors after trial unless they submit written interrogatories to the district court "within the time granted for a motion for a new

trial" and show "good cause" for the requested interviews. D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2. In that motion, Mitchell, a member of the Navajo Nation, specifically requested to speak with jurors out of a concern that the jury panel "allowed bias or prejudice to cloud their judgment." 2ER 156. The government opposed the motion. 2ER 141-54.

The district court denied Mitchell's request to interview the trial jurors on two grounds. 1ER 11-20. First, it indicated that Mitchell had not followed the local rule's procedures regarding the submission of proposed interrogatories and an affidavit, and did not file within the time granted for a motion for a new trial. 1ER 12. Alternatively, the court concluded that Mitchell had not shown "good cause" for contacting the jurors. 1ER 12-20. Mitchell then amended his section 2255 motion to include a claim that the lower court violated his constitutional rights by denying him access to the jurors. 2ER 118-21.

The district court subsequently denied Mitchell's section 2255 motion without holding an evidentiary hearing. Doc. 56. Mitchell appealed on several grounds, including the denial of his motion to interview jurors. *Mitchell v. United States*, Ninth Circuit Case No. 11-99003, *see* DE 23 (opening brief) at pages 78-85. This Court's opinion affirming the denial of his section 2255 motion does not address the juror interviews. *Mitchell v. United States*, 790 F.3d 881 (9th Cir.

2015). The Supreme Court denied certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

On March 6, 2017, the Supreme Court issued its decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). On March 5, 2018, Mitchell filed a motion in the district court to re-open his section 2255 proceedings pursuant to Federal Rule of Civil Procedure 60(b)(6), arguing that *Peña-Rodriguez* established that he was erroneously denied the opportunity to interview the jurors from his trial. 2ER 104-17. This error prevented Mitchell from presenting a fully investigated section 2255 motion to the district court and prevented the court from conducting a full merits determination, which resulted in a "defect in the integrity of [his] federal habeas proceeding" under *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). 2ER 107. On September 18, 2018, the district court denied Mitchell's Rule 60(b) motion. 1ER 1-8. In doing so, the lower court rejected the Government's jurisdictional argument that Mitchell's motion was a disguised second or successive petition under 28 U.S.C. § 2255. 1ER 3-4. Rather, the court denied the motion on the merits and denied a certificate of appealability ("COA"). 1ER 4-8. Mitchell timely appealed. 2ER 77-80.

On April 25, 2019, this Court granted Mitchell's motion for a COA on the following issue: "whether the district court properly denied appellant's motion to re-open his case pursuant to Fed. R. Civ. P. 60(b)(6) following the Supreme

Court's opinion in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017)." *Mitchell v. United States*, No. 18-17031, DE 10. On that same day, the Court issued its briefing schedule. Doc. 10. No party has requested any extensions of time and Mitchell timely filed his opening brief on August 28, 2019. DE 13.

On August 5, 2019, Mitchell filed a motion for stay of execution in the district court; the Government filed an opposition, and Mitchell filed a reply brief. 2ER 77-80; 37-55; 21-36. On August 30, 2019, the district court denied Mitchell's motion, finding that jurisdiction had passed to this Court and therefore the lower court lacked the authority to consider the matter. Ex. C.

**B. Other Relevant Proceedings**

In December 2005, a group of death-sentenced inmates filed a lawsuit against the Attorney General, *et. al.*, in the District Court for the District of Columbia challenging the legality of the method of execution that the Government intended to use to carry out the plaintiffs' death sentences. *Roane v. Gonzales*, D.C. Dist. Court Case No. 05-CV-2337. In 2011, the defendants informed the court that the Bureau of Prisons had decided to modify its lethal injection protocol, but the protocol revisions had yet to be finalized. The district court then stayed the matter pending the finalization of the protocol with the intention of re-opening discovery within 30 days of the issuance of the new protocol. *Id*. at Order

(November 3, 2011). On July 25, 2019, the defendants filed a notice indicating that they had adopted a revised lethal injection protocol. DC Doc. No. 385.

That same day, July 25, 2019, the Warden informed Mitchell of his December 11, 2019 execution date. Ex. A. Neither the Warden's letter, nor a press release issued by the Department of Justice that same day, indicated an awareness of the current litigation before the Ninth Circuit. *See*: https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse (Last visited Sept.9, 2019) (Stating that Mitchell and four other federal inmates set for execution have "exhausted their appellate and post-conviction remedies, and currently no legal impediments prevent their executions.").

## V. ARGUMENT

If Mitchell is successful in his appeal, his original section 2255 proceeding would be re-opened to allow him to conduct an adequate investigation into the jurors who sentenced him to death. As such, Mitchell is entitled to a stay of execution as a matter of right under *Barefoot v. Estelle*, 463 U.S. 880, 888 (1983) *superseded on other grounds by* 28 U.S.C. § 2253(c). Alternatively, Mitchell is entitled to a stay of execution as a matter of equity under *Hill v. McDonough*, 547 U.S. 573, 584 (2006), because he meets all four factors of the injunction standard.

## A. Mitchell is Entitled to a Stay of Execution as a Matter of Right

Under *Barefoot,* a "sentence of death cannot begin to be carried out by the State while substantial legal issues remain outstanding." 463 U.S. at 888. Mitchell is entitled to a stay of execution if he demonstrates "substantial grounds upon which relief might be granted." *Id.* at 895. When there is not enough time to resolve the merits of a claim before the scheduled execution date, a court should grant a stay to "give non-frivolous claims of constitutional errors the attention they deserve." *Id.* at 888-89.

Mitchell is entitled to a stay because he has demonstrated substantial grounds for relief. The Rule 60(b) appeal pending before this Court asks whether Mitchell should be allowed to re-open proceedings to conduct an investigation into racial bias on the part of his jury. *Peña-Rodriguez* shows this type of investigation is crucial to ensuring that the death penalty was imposed in accordance with the Sixth Amendment. The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee, that general evidence rules must be modified to root out racism in the criminal justice system. *Peña-Rodriguez,* 137 S. Ct. at 871. Yet Mitchell was deprived of the opportunity to look into racial bias. This was particularly concerning in this case given the United States Government's history of mistreatment of the Native American people, the unique nature of this prosecution,

and the fact that Native Americans were almost entirely excluded from serving on Mitchell's jury. *See* DE 13 at 30-33 (explaining how justice and the equities weigh in favor of granting Mitchell's Rule 60(b)(6) motion given the particular circumstances of this case).

At a minimum, Mitchell is entitled to a stay because he has presented a non-frivolous claim of constitutional error. The Court found that Mitchell had met the applicable standard for a COA, and therefore his appeal should be permitted to continue unabated by the Government's sudden and arbitrary scheduling of his execution. *Barefoot*, 463 U.S. at 893-94 ("[A] circuit court, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal.")[3]; *see Garrison v. Patterson*, 391 U.S. 464, 466 (1968) (per curiam) (holding that "[i]f an appellant persuades an appropriate tribunal that probable cause for an appeal exists, he must then be afforded an opportunity to address the underlying merits").

---

[3] The standard for the issuance of a certificate of probable cause and the standard for the issuance of a COA are similar: a certificate of probable cause required the petitioner to make a "substantial showing of the denial of a federal right," *Barefoot*, 463 U.S. at 893, while the COA standard requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In at least two instances, this Court has evaluated stay requests based on Rule 60 appeals under *Hill v. McDonough* rather than *Barefoot*. *See Wood v. Ryan*, 759 F.3d 1117 (9th Cir. 2014) and *Cook v. Ryan*, 688 F.3d 598 (9th Cir. 2012). However, those cases are distinguishable. In *Wood*, the Court applied the *Hill* standard to Wood's Rule 60 appeal filed in conjunction with his original habeas petition. There, however, both the district court and this Court found that Wood's Rule 60 motion was, in actuality, a disguised second or successive habeas petition, *id*. at 1121, and therefore *Barefoot* would not apply. In contrast, the court below explicitly found that Mitchell's juror claim was properly raised in a Rule 60 motion rather than a second or successive habeas petition. 1ER 3-4. And in *Cook*, this Court denied Cook's stay request only after the parties fully briefed and argued the Rule 60 appeal, and after the Court affirmed the district court's denial. 688 F.3d at 608-13. As a result, when the Court denied Cook's request for a stay, there was no appeal pending on which a COA had been granted—and therefore no concern that this Court would not be able to decide the appeal prior to an execution date.

Mitchell urges the Court to apply *Barefoot*, rather than *Hill*, to his stay request because the question at issue in his Rule 60 appeal goes to the adequacy of his initial section 2255 proceeding. Logically, if the claim raised in his Rule 60(b) motion is not second or successive, then that claim is on equal footing with the

claim presented in the first habeas petition. *Cf. Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (holding that if a district court lacks authority to directly dispose of the petition on the merits, it would abuse its discretion by attempting to achieve the same result indirectly by denying a stay). Just as it makes sense to stay an execution to allow an appeal to go forward from an initial section 2255 proceeding, so too does it make sense that this appeal should go forward to resolve whether Mitchell's initial section 2255 proceedings were adequate to protect his constitutional rights. *See Greenawalt v. Stewart*, 105 F.3d 1268, 1277 (9th Cir. 1997) (applying the *Barefoot* standard to the petitioner's request for a stay regarding his appeal of the denial of his Rule 60(b)(6) motion).

## B. Alternatively, Mitchell is Entitled to a Stay as a Matter of Equity

### 1. Legal Standard

Mitchell is entitled to a stay as a matter of equity. In *Hill v. McDonough*, 547 U.S. 573, 584 (2006) and *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004) the Supreme Court held that "like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584. In considering a request for a stay of execution, the Court considers "not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has

delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649-50. In order to obtain a stay of execution as a matter of equity, a death-row prisoner must show that the following four factors, balanced against each other, weigh in his favor: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm unless a stay is issued; (3) the balance of hardships tips in the prisoner's favor; and (4) a stay is in the public interest. *See Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7 (2008)). "[A] stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012); *see also Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) (same).

### 2. Mitchell Has Established a Likelihood of Success on the Merits

It is Mitchell's burden to establish that his appeal presents a "substantial case for relief on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). "The Ninth Circuit has not clearly defined this phrase. Often a 'substantial case' is one that raises genuine matters of first impression within the Ninth Circuit." *Morse v. ServiceMaster Global Holdings, Inc.*, 2013 U.S. Dist. LEXIS 3663, at *3 (N.D. Cal. Jan. 8, 2013) (citing *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)).

*Peña-Rodriguez* establishes the admissibility of evidence showing that racial bias influenced the jury's verdict. The decision specifically contemplates the

"practical mechanics" of acquiring evidence of juror bias, and relies on "state rules of professional ethics and local court rules" to define those mechanics. *Id*. at 869. Yet because Mitchell was tried in Arizona, versus virtually any other district in the Ninth Circuit, and tried by the federal government, as opposed to a state prosecution in Arizona, he is deprived of the ability to conduct an adequate investigation into his jury. *See* DE 13 at 32 (comparing local rules for all of the districts in the Ninth Circuit and establishing that only two of fifteen require a "good cause" showing to interview trial jurors) and at 33 (establishing that Local Rule 39.2 does not apply to the 116 people on Arizona's state death row). This intra-circuit variation in whether and when an individual might investigate possible racial bias leads to the obvious conclusion that a criminal defendant tried in federal district court in Arizona will have a much more difficult time rooting out racial bias in his case than a similarly situated individual tried in state court or basically any other district court in the Ninth Circuit. Such disparity runs contrary to the intent of *Peña-Rodriguez*, which recognizes that general evidentiary rules must be modified to root out racism in the criminal justice system. *Peña-Rodriguez*, 137 S. Ct. at 871.

This Court has not weighed in on these inequities or what the "practical mechanics" referred to in *Peña-Rodriguez* actually require. Perhaps resolving these issues is why this Court granted Mitchell's request for a certificate of

appealability in the first place, and Mitchell's exposure of these inequities is why he is likely to be successful on the merits. As Mitchell has established that Local Rule 39.2 poses the most extreme limitations on investigating juror bias, he is likely to succeed on the merits and establish that Rule 39.2 controverts *Peña-Rodriguez.*

However, if the Court does not find that Mitchell has established a likelihood of success on the merits, this finding is not fatal to Mitchell's entitlement to a stay. Mitchell may alternatively demonstrate that "serious questions going to the merits" of his claims are presented in his appeal, and obtain a stay as long as the other three factors weigh in his favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Mitchell has established that he has been deprived of the ability to litigate a fully investigated section 2255 motion because he was barred from interviewing the jurors in his trial. Given the circumstances of his prosecution, however, there are indications in the record that racial bias may have been a factor in his conviction. The record establishes that despite a 207-person venire which included 29 Native Americans, only one Navajo made it onto Mitchell's jury. The record further establishes that only seven of Mitchell's 12 jurors found a letter from the Navajo Nation expressing its views against capital punishment mitigating. *Mitchell*, 502 F.3d at 989. And this country's history is littered with examples of

discrimination towards Native people generally, and minorities in the death penalty context specifically. Dkt. No. 71 at 5. Accordingly, Mitchell's inability to investigate racial bias at his trial is a serious question going to the merits of his case.

### 3. Mitchell Will Suffer Irreparable Harm Without a Stay

If the Court does not grant Mitchell a stay, he will be executed before his appeal can be resolved.[4] Mitchell's appeal concerns the adequacy of his initial section 2255 proceeding. Post-conviction review of a criminal conviction, particularly in the death penalty context, serves the essential function of ensuring the constitutional reliability of a petitioner's conviction and sentence. Here, because of a defect in the integrity of Mitchell's post-conviction proceedings, there is a glaring hole in the reliability of his convictions and sentence. Unless this appeal is resolved, Mitchell will be deprived of the opportunity that every other death-sentenced inmate in the country receives: an adequate opportunity for post-conviction review. It is beyond dispute that Mitchell will suffer irreparable harm without a stay.

---

[4] If for some reason the appeal is resolved prior to the December 11, 2019 execution date, then the stay would be dissolved.

### 4. The Balance of Hardships Tips in Mitchell's Favor

This Court has consistently acknowledged that death-row prisoners have a "strong interest in being executed in a constitutional manner." *Beaty*, 649 F.3d at 1072. Thus Mitchell will suffer serious injury if the denial of his Sixth Amendment right to an unbiased jury and adequate post-conviction review leads directly to his execution.

Conversely, the Government suffers no injury should this Court enter a stay to allow for the consideration of Mitchell's "appeal in the normal course." *Buck v. Davis*, 137 S. Ct. 759, 774 (2017). There has not been a federal execution since 2003, the year Mitchell was sentenced to death, and the Government has been "modifying" its lethal injection protocol since 2011. A stay long enough to allow this appeal to resolve cannot realistically be considered an injury to the Government after such a long delay of the Government's own creation. Moreover, the Government has no interest in pursuing an execution tainted by racial bias or infirmities, and therefore the Government should welcome the opportunity to have this appeal resolved.

Generally, when courts find that the balance-of-hardships factor weighs in favor of the Government, it is due to a last-minute request for stay of execution or some other delay on the part of the movant. *See, e.g., Gomez v. U.S. Dist. Court,* 503 U.S. 653, 654 (1992) (per curiam) (noting that the "last-minute nature of an

application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay) and *Hill*, 547 U.S. at 584 (explaining that where a prisoner has delayed bringing his claim, the equities cut sharply against him). But that is not the case here. Mitchell filed his Rule 60 motion within one year of the Supreme Court issuing its decision in *Peña-Rodriguez.* When the court below denied Mitchell's motion, the court did not find that Mitchell's motion was untimely. 1ER 1-8. Nor was the motion filed in response to the Government's filing of the execution warrant. Rather, the motion was filed over sixteen months *prior* to the Government's sudden announcement that it planned to execute Mitchell, and well after the Ninth Circuit had set a briefing schedule for Mitchell's appeal. *Contra Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) ("[T]he filing of the Rule 60(b) motion on the eve of the execution … weigh[s] against issuing a stay."). And the motion relates to issues that Mitchell has repeatedly raised in conjunction with his post-conviction proceedings, starting with the *first* pleading he filed in the district court prior to filing his section 2255 motion. *See* 2ER 155-73 ("Motion For Authorization to Interview Jurors In Support of Motion to Vacate, Set Aside, Or Correct the Sentence").

The balance of hardships clearly weighs in Mitchell's favor and support granting a stay.

### 5. A Stay is in the Public Interest

Generally, the public has an interest in finality of judgments. However, *Peña-Rodriguez* is an exception to the rule of finality. Indeed, the Court struggled with this issue extensively in the *Peña -Rodriguez* decision, *see* 137 S. Ct. at 863-69, 885 (Alito, J., dissenting), but ultimately decided that the interest in finality is outweighed by the principle that "discrimination on the basis of race, 'odious in all aspects, is especially pernicious in the administration of justice.'" *Id*. at 868 (quoting *Rose v. Mitchell*, 443 U.S. 545, 555 (1979)); *see also id*. ("The jury is to be a criminal defendant's fundamental protection of life and liberty against race or color prejudice. Permitting racial prejudice in the jury system damages both the fact and the perception of the jury's role as a vital check against the wrongful exercise of power by the State.") (internal quotations and citations omitted).

Further, the public interest is served by enforcing constitutional rights. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). As a result, given that Mitchell is trying to vindicate his rights under *Peña-Rodriguez* and conduct an adequate investigation to ensure his capital trial was not tainted by racial bias, finality of judgment does not weigh against Mitchell.

In prior cases, the Ninth Circuit has decided that the citizens of the location from which the prosecution originated have an interest in seeing lawful judgments enforced and that interest weighs against the movant. *Cook*, 688 F.3d at 613.

Here, however, the local United States Attorney's Office and the Navajo Nation all urged the Department of Justice not to seek death in this case. *Mitchell v. United States*, 790 F.3d 881, 896 (9th Cir. 2015) ("In light of the position of the Navajo Nation and the family of the victims, United States Attorney Charlton, a local Arizonan appointed by President George W. Bush, who was intimately familiar with the relations between the Navajo tribe and the citizens of the State of Arizona, declined to seek the death penalty.") (Reinhardt J. dissenting). The general presumption that the public has an interest in seeing a judgment enforced is rebutted here because the public's view is explicit: the people of Arizona, as represented by the local United States Attorney's Office, did not want a capital prosecution in this case.

The Ninth Circuit has also found that victims' families have a particularly compelling interest in finality. *See, e.g., Cook*, 688 F.3d at 613 ("In addition, the citizens of the State of Arizona—especially the families of [the victims]—have a compelling interest in seeing that Arizona's lawful judgments against Cook are enforced."). Again, this maxim does not hold true in this case, as the victims' family requested that the Government not seek death against Mitchell. *Mitchell*, 790 F.3d at 896 ("[I]n the words of the victims' family, the request that the federal government not seek the death penalty was ultimately 'ignored and dishonored.'") (Reinhardt J. dissenting).

This factor, like the other four, weighs heavily in Mitchell's favor.

## VI. CONCLUSION

For the foregoing reasons, the Court should stay Mitchell's execution until such time as the Court can hear Mitchell's appeal and issue its Mandate.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: September 9, 2019 By *__/s/ Jonathan C. Aminoff__*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

Attorney for Movant-Appellant
LEZMOND C. MITCHELL

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. 27(d)(2)(A), I certify that this motion for stay of execution is proportionally spaced, has a typeface of 14 points or more, and contains approximately 4,683 words.

DATED: September 9, 2019

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF