UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEZMOND C. MITCHELL,<br>AKA: Lezmond Charles Mitchell,<br><br>Petitioner-Appellant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent-Appellee. | C.A. No. 18-17031<br><br>D. Ct. No. CV-09-08089-PCT-DGC<br>D. Ct. No. CR-01-01062-PCT-DGC<br><br>**RESPONSE TO MOTION FOR STAY OF EXECUTION**<br><br>**(Capital Case)** |

Petitioner was convicted and sentenced to death for the double murder of a 63-year-old grandmother and her 9-year-old granddaughter, which he perpetrated in October 2001. In the nearly two decades since his crimes, Petitioner's conviction and sentence have been repeatedly upheld by every court to consider them, including the district court (twice), this Court (twice), and the Supreme Court (twice denying review). The judgment, itself now sixteen years old, is final and enforceable.

Pursuant to lawful authority, Petitioner's execution has been scheduled for December 11, 2019. The briefing in this appeal will conclude two full months before that date, by October 11, 2019. (*See* Dkt. No. 19.) This Court commonly rules on the merits of capital appeals with pending execution dates in substantially less time than that. This case presents no occasion to do otherwise.

## DISCUSSION

### I. The Court Should Rule on the Merits Briefs and Stay Motion Together

Given that Petitioner's conviction and sentence have been repeatedly upheld on both direct and collateral review, over the course of lengthy appellate proceedings, there are very strong interests in the finality of this judgment and the execution of its sentence. None of those interests is at odds with this Court's considered review of the merits briefing in this matter. When the Director of the Bureau of Prisons scheduled the execution, he did not select a date mere days or weeks away. He picked a date four and a half months in the future. That has allowed completion of the merits briefing on a normal appellate schedule, with two months available thereafter for the Court to rule.

This Court commonly rules on merits briefing and motions to stay simultaneously in capital habeas cases, and it does so in substantially less time than is available here. For example, in *Wood v. Ryan*, 759 F.3d 1117, 1119 (9th Cir. 2014), the petitioner, having failed in both his criminal and habeas appeals, filed Rule 60(b) and Rule 59(e) motions in the district court. On July 21, 2014, the district court denied both motions but granted a certificate of appealability, and the petitioner, whose execution date had been set, filed a motion to stay on appeal. *Id.* By the next day, July 22, this Court had reviewed the merits, found no abuse of discretion in denying the motions, and issued a published opinion. *Id.* at 1121. As

the petitioner had "failed to show a significant possibility of success on the merits," the Court was able to deny the motion to stay in the same opinion. *Id.* (internal quotation omitted).

Another example is *Cook v. Ryan*, 688 F.3d 598, 607-08 (9th Cir. 2012), in which the district court denied the Rule 60(b) motion on July 9, 2012. The petitioner appealed the denial of the motion and also moved to stay his execution. *Id.* Within two and a half weeks, by July 27, 2012, this Court held oral argument and ruled on the merits, holding in a lengthy opinion that the district court did not err in denying the Rule 60(b) motion. Having resolved the merits, the Court was able to simultaneously deny the motion to stay execution. *Id.* at 612-13 ("Because Cook therefore fails to show a significant possibility of success on the merits, we must deny his request for a stay.").

There are many other examples of this Court ruling within days on capital habeas matters with a scheduled execution date. For example:

- In *Bible v. Schriro*, 651 F.3d 1060, 1063-66 (9th Cir. 2011), an application to file a second or successive petition and a motion to stay execution were filed on June 25, 2011. Within three days, on June 28, the Court issued an opinion denying the application and therefore denying the motion to stay as moot. *Id.*

- In *Rhoades v. Reinke*, 671 F.3d 856, 863 (9th Cir. 2011), the motion to stay was filed on November 15, 2011, and denied a single day later, on November 16. This Court was able to analyze the merits argument and, as a result, conclude that the petitioner "has not shown that he is likely to succeed on the merits, which is required by *Winter* for injunctive relief." *Id.*
- In *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005), the district court denied injunctive relief on January 7, 2005, and the inmate appealed, seeking to stay his execution. Within a week, on January 14, this Court issued a lengthy opinion affirming the district court and denying a stay. *Id.* at 1077.

Petitioner does not explain why this Court, able to rule in mere days in other cases, would require more than two months to do so in this one. None of the issues is particularly complex, nor is the briefing voluminous. Petitioner's Opening Brief was filed with no time extensions and falls below the word limit. The same is true of the Answering Brief.

Indeed, the span of time between the execution date (December 11) and the date it was announced (July 25) has been so ample that Petitioner (a) chose to wait 11 days to file a motion to stay in the district court, (b) sought no expedited briefing, but rather briefed the motion under a normal schedule that ran until the end of

August, and (c) waited yet another 10 days after the district court denied a stay before filing his motion to stay in this Court. Even after all that, Petitioner still did not need to file the motion to stay as an emergency motion.

Petitioner argues that "[i]n the ordinary course, the Court would schedule oral argument 9-12 months after Mitchell files his reply brief." (Mot. at 3-4 (citing an FAQ webpage).) But even if that were true, as *Wood*, *Cook*, and the other cases reveal, capital habeas matters with pending execution dates do not follow the "ordinary course." *See also* 28 U.S.C. § 2266(a) ("[T]he adjudication of any motion under section 2255 by a person under sentence of death, shall be given priority . . . by the court of appeals over all noncapital matters."). As reflected in the case law, as well as the scheduling orders under which the parties are operating (Dkt. Nos. 10, 19), this matter will be of high priority. There is no reason to believe that this Court is unable to render an orderly ruling on the merits well before the execution date.

Even if this case were not a priority, a ruling before December would not be particularly unusual. According to the Court's 2018 Annual Report (at page 47), "the median time interval from filing of a notice of appeal to final disposition was 11.7 months."[1] Here, the notice of appeal was filed on October 17, 2018. (CV 81.) The execution date is just shy of 14 months thereafter. Moreover, "[o]nce an appeal was fully briefed, Ninth Circuit judges decide all types of cases fairly quickly. In

[1] Available at https://www.ca9.uscourts.gov/judicial_council/annual_reports.php.

FY 2018, the median time interval for panel decisions was 1.2 months for a case in which oral argument was held and about six days for cases submitted on briefs." 2018 Annual Report at 47.[2]

Furthermore, it is particularly important not to separate the stay motion from the merits briefing because the merits briefing involves subject matter jurisdiction. (*See* Answ. Br. Part VII.A.) "If jurisdiction is lacking at the outset," then a federal court has "no power to do anything with the case except dismiss." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (internal quotation omitted).

"Before granting a stay, therefore, federal courts must make certain that an adequate basis exists for the exercise of federal power." *Demosthenes v. Baal*, 495 U.S. 731, 737 (1990) (vacating stay of execution that had been granted where the federal court lacked jurisdiction); *see also Brewer v. Lewis*, 989 F.2d 1021, 1025 (9th Cir. 1993) (since the case involved "a jurisdictional question that must be addressed at the threshold of any case," the court could not issue a stay of execution because "[a] grant of a stay is an exercise of judicial power, and we are not authorized to exercise such power" without jurisdiction). Because the Court must

[2] Where the case is clear on the briefs, as it is here, the Court often rules without oral argument. *See, e.g.*, *Rhoades*, 671 F.3d at 863 n.*; *Wood*, 759 F.3d at 1121 n.*. Should the Court wish to hold oral argument, however, counsel for the United States would be available at any time before the scheduled execution date.

have jurisdiction to issue a stay of execution, it would be improper to separate the Court's ruling on the pending motion from the merits briefing.

In sum, prudence and common practice counsel that the Court rule on the merits briefing and motion to stay simultaneously. That is easily possible given the time available, and it will avoid unnecessary predictions about merits issues. That would also spare the victims' family the seesaw effect of staying an execution date that has been in effect for two-and-a-half months, only to have that date re-set upon an affirmance. Thus, the Court should hold the motion to stay in abeyance and rule on it simultaneously with the merits briefs.

The Court will not need to resolve any of the other arguments in the stay motion. If the Court concludes that jurisdiction exists and that the district court abused its discretion, presumably it would grant the motion to stay at that time. In the same way, if the Court affirms the district court's order (on any ground), it would deny the stay motion, either as moot or because Petitioner cannot show any likelihood of success on the merits.

## II. Petitioner Has No "Right" to a Stay of Execution

Although the Court need go no further at this point, the United States also addresses Petitioner's two stay arguments, as neither entitles him to a stay. Petitioner first claims he is "entitled to a stay of execution as a matter of right." (Mot. at 9 (capitalization adjusted).) But "[a] stay is not a matter of right, even if

irreparable injury might otherwise result to the appellant." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926).

The Supreme Court has repeatedly held that "a stay of execution is an equitable remedy" and thus "is *not* available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (emphasis added); *see Nelson v. Campbell*, 541 U.S. 637, 649 (2004) ("A stay is an equitable remedy," and the mere fact that a capital defendant states a cognizable claim "does not warrant the entry of a stay as a matter of right"); *Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 653-54 (1992) (vacating stay of execution; "Whether his claim is framed as a habeas petition or as a § 1983 action, Harris seeks an equitable remedy."). This Court must follow that binding precedent. *See Wood*, 759 F.3d at 1121 ("[A] stay of execution is an equitable remedy. It is not available as a matter of right . . . .").

Petitioner cites *Barefoot v. Estelle*, 463 U.S. 880 (1983), but that case does not afford him a "right" to stay his execution. Encouraging the creation of court rules to ensure the orderly review of habeas cases, *Barefoot* laid out "general guidelines" for appellate courts evaluating stay requests. *Id.* at 892. In doing so, it explained that "[t]he procedures adopted to facilitate the orderly consideration and disposition of habeas petitions are not legal entitlements that a defendant has a right to pursue irrespective of the contribution these procedures make toward uncovering constitutional error." *Id.* at 887-88.

The guideline Petitioner invokes (Mot. at 10) is that "a circuit court, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal." *Id.* at 893-94.

But the matter before this Court is not Petitioner's "initial habeas appeal." *Id.* at 894. That appeal ended years ago, and his conviction and sentence were affirmed in all respects. A *second* appeal in such a case, from an order denying a Rule 60(b) motion to reopen, is not the same as the "initial habeas appeal" for stay purposes. *Id.* In fact, Petitioner concedes this Court has weighed the equities of a stay, rather than granting one as a "right," in just such circumstances. (Mot. at 11.) *See, e.g.*, *Wood*, 759 F.3d at 1121; *Cook*, 688 F.3d at 608, 612-13.

Petitioner tries to distinguish *Wood* by arguing that "Wood's Rule 60 motion was, in actuality, a disguised second or successive habeas petition." (Mot. at 11.) As explained in the Answering Brief (Part VII.A), so is Petitioner's. But even if it were otherwise, the mere fact that a motion is not a second or successive petition does not create a "right" to a stay. *See, e.g.*, *Hill*, 547 U.S. at 584 (holding the 1983 action was not a second or successive petition, but nevertheless that "does not entitle the complainant to an order staying an execution as a matter of course"); *Cook*, 688 F.3d at 608, 612-13 (applying equitable test and denying stay even though the Rule

60(b)(6) motion was not a second or successive motion). *See also Autry v. Estelle*, 464 U.S. 1, 2 (1983) ("Nor are we inclined to adopt a rule calling for an automatic stay, regardless of the merits of the claims presented, where the applicant is seeking review of the denial of his first federal habeas corpus petition.").

Petitioner tries to distinguish *Cook* because "this Court denied Cook's stay request only after the parties fully briefed and argued the Rule 60 appeal, and after the Court affirmed the district court's denial." (Mot. at 11.) This is hardly a meaningful distinction, as the Court analyzed and denied the stay on the merits in the same opinion. In any event, this is precisely the practice the Court should employ here. Since *Cook* took a mere 18 days to resolve the appeal, and Petitioner's case allows for much more time, he all but concedes that the proper course is to resolve the merits briefing and stay motion together.[3]

Independently, and most importantly, Petitioner fails to establish that a stay is "necessary to prevent the case from becoming moot." *Barefoot*, 463 U.S. at 894.

---

[3] Petitioner also cites *Greenawalt v. Stewart*, 105 F.3d 1268 (9th Cir. 1997), but that case didn't analyze this question; it simply rejected the argument that *Barefoot* authorized a stay because the appeal failed on its merits. In fact, *Greenawalt* is yet another example of this Court resolving the merits briefing and stay motion together in a fraction of the time available here. The petitioner filed various applications in the appellate court, along with a motion to stay execution, on January 13, 1997. *Id.* at 1272. The Court held argument three days later and issued a lengthy opinion the next day, January 17, rejecting all of the applications on the merits. *Id.* at 1272, 1277. It thus denied the motion for stay of execution "[f]or the reasons discussed" in the merits analysis. *Id.* at 1277.

*Barefoot* pointed out that "argument on the merits may be heard at the same time the motion for a stay is considered, and the court may thereafter render a single opinion deciding both the merits and the motion." *Id.* A stay should be granted only if "exigencies of time preclude a considered decision on the merits" before the execution date. *Id. See also id.* at 889 (a stay may be necessary "if a court of appeals is unable to resolve the merits of an appeal before the scheduled date of execution").

Here, the Court is not "unable to resolve the merits of [the] appeal before the scheduled date of execution," nor do the two full months available present the kind of "exigencies" that would "preclude a considered decision on the merits." *Id.* at 889, 894. *Barefoot* itself undercuts Petitioner's assumption on this point, upholding the denial of a motion to stay execution where the *entire appellate schedule* allowed for 71 days between the district court's order and the execution date. *See id.* at 886, 890. The Court of Appeals ruled on the merits and denied the stay just one day after oral argument. *Id.* at 886. The Supreme Court held that there was no prejudice in such a schedule, and "[t]he course pursued by the Court of Appeals in this case was within the bounds" of its precedent. *Id.* at 890.

Here, far beyond the 71 days approved as sufficient in *Barefoot*, there will be 449 days between the district court's September 18, 2018 order and the December 11, 2019, execution date, allowing a standard briefing schedule and plenty of time to rule thereafter.

Similarly, in *Rodriguez v. Texas*, an inmate scheduled to be executed on November 8, 1995, was denied a stay of execution when he filed his petition for certiorari on August 15. 515 U.S. 1307, 1307-08 (1995) (Scalia, as Circuit Justice). Recognizing that a stay of execution "is no small matter, and should not be considered when no need exists," the stay request was denied because the purpose of a stay is to prevent the execution date from interfering with appellate proceedings, and "there is no reason to believe such interference will occur" where sufficient time remains for those proceedings to take place. *Id.* Here, similarly, there is no reason to think that this Court requires a stay in order to rule before the execution date.

Finally, the United States would be remiss not to respond to Petitioner's characterization of his execution date as "sudden and arbitrary." (Mot. at 10.) Four and a half months of notice—after eighteen years of litigation—is not "sudden." Nor is it "arbitrary." The law commits the scheduling of an execution to the Director of the Bureau of Prisons, 28 C.F.R. § 26.3(a)(1), and as Petitioner himself obliquely cites, his execution is part of an orderly schedule for some of the most depraved child murderers on federal death row. (*See* Mot. at 8 (linking to schedule announcement).) In every case, over the course of many years, these murderers' convictions have all been affirmed. Here, the United States announced its intention to seek Petitioner's execution almost two decades ago, when it filed the death penalty notice, and the

Supreme Court rejected Petitioner's last statutorily permissible post-conviction request for relief in 2016. Petitioner has no "right" to stay his execution at this hour.

## III. Equity Also Does Not Support a Stay Before Reaching the Merits

Petitioner next argues that he "is entitled to a stay as a matter of equity." (Mot. at 12.) To obtain an equitable stay of execution, an inmate "must demonstrate (1) that he is likely to succeed on the merits of such a claim, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). *See also Beardslee*, 395 F.3d at 1067 (describing injunctive test as a "single continuum" also encompassing situations where "serious questions are raised and the balance of hardships tips sharply in [the applicant's] favor").

These preliminary injunctive principles "apply even in the context of an impending execution." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citing *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012)). And "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Court need not delve deeply into a multifactor analysis because the first factor is dispositive. "A federal court will only grant a stay of execution where the inmate seeking the stay can show a significant possibility of success on the merits." *Moormann v. Schriro*, 672 F.3d 644, 647 (9th Cir. 2012). A stay of execution must be denied where the inmate fails to meet this burden. *See, e.g.*, *id.* at 649 (denying stay of execution because the inmate "failed to show a strong likelihood of relief on the merits"); *Cook*, 688 F.3d at 613 ("Because Cook . . . fails to show a significant possibility of success on the merits, we must deny his request for a stay [of execution].") (internal quotation omitted); *Towery*, 672 F.3d at 661 ("in light of our conclusion that [the inmates] do not raise serious questions going to the merits of their Eighth and Fourteenth Amendment claims with regard to their executions . . ., we conclude that [they] do not meet the standards under *Winter*").[4]

It is not necessary to reiterate all of the arguments in the merits briefing. (*See* Answ. Br. Part VII.) Petitioner's argument boils down to the untenable notion that

[4] The mere fact that a certificate of appealability ("COA") has been issued does not equate to a stay. *See, e.g.*, *Moran v. McDaniel*, 80 F.3d 1261, 1268 (9th Cir. 1996) ("By issuing the certificate [of appealability], Moran argues, the district court implicitly determined that a stay was justified. We disagree."); *Gretzler v. Stewart*, 146 F.3d 675, 675 (9th Cir. 1998) (granting certificate of appealability, but denying capital defendant's claim as procedurally barred and therefore denying motion for stay of execution as moot). "The standard for a stay is, in part, a showing of a substantial likelihood of success on the merits of the claims, *which is a higher standard than the one for a COA*." *Lambrix v. Sec'y, DOC*, 872 F.3d 1170, 1183 n.6 (11th Cir. 2017) (emphasis added).

*Peña-Rodriguez v. Colorado*, 137 S.Ct. 855 (2017), overruled longstanding precedent—including this Court's holding in *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972)—and by implication "create[d] a right to interview trial jurors." (Op. Br. at 17.)

As the district court recognized, no sensible reading of *Peña-Rodriguez* suggests such a thing. In the two and a half years since, no case has ever recognized this new constitutional right. Every federal court to consider that suggestion has rejected it. *See, e.g.*, *United States v. Birchette*, 908 F.3d 50, 57 (4th Cir. 2018); *United States v. Baker*, 899 F.3d 123, 133-34 (2d Cir. 2018); *United States v. Robinson*, 872 F.3d 760, 764 (6th Cir. 2017). The district court was quite right that this argument is meritless. (*See* Answ. Br. Part VII.B.)

Petitioner's unsupported speculation "that racial bias may have been a factor in his conviction" also doesn't show any likelihood of success on the merits. (Mot. at 15-16.) He repeats claims about the racial composition of his venire pool that this Court conclusively resolved against him more than a decade ago. *See United States v. Mitchell*, 502 F.3d 931, 949-59 (9th Cir. 2007). He points out that not all of his jurors found the Navajo Nation's letter mitigating, but that was not surprising. The letter, emphasizing the seriousness of taking human life, only highlighted the aggravated nature of Petitioner's heinous murders. In this Court's apt summation: "As full review of the record shows, the evidence was overwhelming. By any

reasonable measure, the mitigating factors proffered by Mitchell were weak when compared to the gruesome nature of the crimes and the impact they had on the victims' family." *Id.* at 996.[5]

Finding merit in Petitioner's argument requires going much further than just conjuring a new constitutional right from *Peña-Rodriguez*. In addition to creating a circuit split on that issue, the Court would first have to create an additional split with the Fifth Circuit as to whether there is jurisdiction to review the claim in the first place. *See In re Robinson*, 917 F.3d 856, 865 (5th Cir. 2019). (*See* Answ. Br. Part VII.A.)

And then, the Court would also have to invent and find meritorious a justification for Petitioner's flagrant disregard of the supervisory requirements of the local rule. (*See* Answ. Br. Part VII.C.) The district court denied the motion to interview jurors not just because Petitioner failed to show good cause, but also because his motion was untimely by years and because he refused to submit the required interrogatories and affidavit. He has persisted in his refusal to do so even to this very day, with no justification. To find merit in that would not only overturn the long-recognized inherent authority district courts possess to regulate post-verdict

[5] Nor are Petitioner's jurors to be suspected of "racial bias" because of "this country's history . . . of discrimination towards Native people." (Mot. at 15-16.) The jurors are individuals. Each attested that race had nothing to do with the verdict, and there has never been any evidence of racial bias in any of them.

juror contact, but it would also disregard the considered decision of the judges of the District of Arizona to maintain these supervisory requirements for decades. Petitioner does not carry his heavy burden to show a substantial likelihood of success for any of the merits issues, much less all of them.

Although the Court need go no further, the other equitable factors also cut against a stay of execution. Petitioner is not "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20-22. As discussed, there is sufficient time to rule before his execution date.

Moreover, Petitioner has been afforded a decade and a half of direct appeal and habeas reviews, all finding no error. We are well past the point at which "a presumption of finality and legality attaches to the conviction and sentence." *Autry*, 464 U.S. at 3 (quotation omitted). As such, Petitioner's only cognizable interest is in "being executed *in a constitutional manner*," *Beaty*, 649 F.3d at 1072 (emphasis added). To show irreparable harm, then, he would have to show that his execution would actually be unconstitutional, a showing he has not made because he does not have a shred of evidence, or any reason to suspect, that any of his jurors was racially biased. Since "he has not shown that this interest is threatened in this case," he is not entitled to a stay. *Id.*

Balancing the equities also cuts against Petitioner. The United States has a "strong interest in enforcing its criminal judgments." *Hill*, 547 U.S. at 584; *see also*

*Gomez*, 503 U.S. at 654 ("Equity must take into consideration the State's strong interest in proceeding with its judgment . . . ."); *Cook*, 688 F.3d at 613 (recognizing the government's "compelling interest" in seeing a lawful judgment enforced). Suits that are "dilatory or speculative" impinge on those interests, as does "[r]epetitive or piecemeal litigation." *Hill*, 547 U.S. at 584-85.

Here, Petitioner has unquestionably been dilatory, waiting a full six years past the deadline to file his motion to interview jurors, and failing to file the interrogatories and affidavit required by the rules. When filing his Rule 60(b) motion, he waited almost a full calendar year (364 days) after *Peña-Rodriguez*, and even then he *still* failed to file the interrogatories and affidavit. Measured against Petitioner's insubstantial, wholly speculative, and procedurally defective claim, the balance of the equities tips sharply in favor of the United States' ability to execute the lawful and repeatedly-upheld judgment.

Lastly, staying the execution is not in the public interest. Petitioner murdered, in depraved and agonizing fashion, two of the most vulnerable victims in society. "Only with an assurance of real finality can the State execute its moral judgment in a case" and vindicate the public's "'powerful and legitimate interest in punishing the guilty.'" *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Petitioner has no

right to embark on a baseless fishing expedition, without any evidence of racial bias, in an effort to impugn the jurors and their verdict.[6]

The victims' family members, too, have a compelling interest in finality. Petitioner knows full well that many of them have long supported a capital sentence. (*See* CV 88 at 17 & n.5 (summarizing victim impact statements attached to the Presentence Report supporting a capital sentence).) Some family members may even travel across the country for the execution, seeking a measure of closure to the deep wounds Petitioner inflicted eighteen years ago when he tortured their loved ones to death. There is a strong interest in maintaining the finality of this judgment. Equity does not entitle Petitioner to a stay.

---

[6] Petitioner asserts that "the people of Arizona" didn't want him sentenced to death for these murders. (Mot. at 20.) That is doubtful; the people of Arizona have adopted capital punishment and regularly impose it, and all of the Arizonans on his jury, including a member of the Navajo Nation, unanimously voted for a capital sentence. In any event, the public interest here is federal, not state. Whether to seek the death penalty for a crime of general applicability is committed to the judgment of the Attorney General. Here, the decision to seek, obtain, maintain, and carry out a capital sentence has been made and upheld by Attorneys General in every administration for almost two decades.

## CONCLUSION

For the foregoing reasons, the Court should decide the motion to stay at the same time as the merits briefing. Upon finding the appeal without merit, the motion to stay should be denied.

MICHAEL BAILEY
United States Attorney
District of Arizona

KRISSA M. LANHAM
Deputy Appellate Chief

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney

## I. CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 27-1(1)(d), I certify that the foregoing response does not exceed 20 pages.

September 27, 2019
Date

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney

## II. CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney