**C.A. No. 18-17031**
**CAPITAL CASE**

D. Ct. No. CV-09-08089-PCT-DGC
Criminal Case No. CR-01-01062-PCT-DGC

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

LEZMOND C. MITCHELL,
AKA: Lezmond Charles Mitchell,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

---

# BRIEF OF APPELLEE

---

MICHAEL BAILEY
United States Attorney
District of Arizona

KRISSA M. LANHAM
Deputy Appellate Chief

WILLIAM G. VOIT
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Attorneys for Appellee

Date Submitted via ECF: September 27, 2019

# I. TABLE OF CONTENTS

Page

I. Table of Contents ..... i

II. Table of Authorities ..... ii

III. Statement of Jurisdiction

A. District Court Jurisdiction ..... 1

B. Appellate Court Jurisdiction ..... 1

C. Timeliness of Appeal ..... 2

D. Bail Status ..... 2

IV. Issue Presented ..... 3

V. Statement of the Case ..... 4

VI. Summary of Arguments ..... 11

VII. Arguments

A. Petitioner's Motion is a Second or Successive Section 2255 Motion, and Thus the Court Lacks Jurisdiction ..... 12

B. The District Court Did Not Abuse its Discretion in Denying Petitioner's Rule 60(b)(6) Motion ..... 23

C. Petitioner's Motion was Properly Denied for Failure to Provide the Required Interrogatories, Failure to Provide the Required Affidavit, and Failure to be Filed in a Timely Fashion Under the Rule ..... 37

D. This Court Should Not "Grant Mitchell's Motion in the First Instance" ..... 44

VIII. Conclusion ..... 54

IX. Supplemental Statutory Addendum ..... 55

X. Statement of Related Cases ..... 56

XI. Certificate of Compliance ..... 57

XII. Certificate of Service ..... 58

## II. TABLE OF AUTHORITIES

**CASES**

*Adkins v. Corr. Corp. of Am.*, 681 F. App'x 579 (9th Cir. 2017) .................... 25, 35
*Arizona v. California*, 460 U.S. 605 (1983) ........................................................ 42
*Autry v. Estelle*, 464 U.S. 1 (1983) ....................................................................... 46
*Babbitt v. Calderon*, 151 F.3d 1170 (9th Cir. 1998) ............................................. 31
*Barefoot v. Estelle, Jr.*, 463 U.S. 880 (1983) ........................................................ 17
*Bobby v. Van Hook*, 558 U.S. 4 (2009) .................................................................. 31
*Bracy v. Gramley*, 520 U.S. 899 (1997) ................................................................. 20
*Bryson v. United States*, 238 F.2d 657 (9th Cir. 1956) .................................. 26-27
*Calderon v. Thompson*, 523 U.S. 538 (1998) ........................................................ 47
*Campbell v. Blodgett*, 982 F.2d 1356 (9th Cir. 1993) ........................................... 20
*Cota v. Ryan, No*. CV-16-03356-PHX-DJH,
2017 WL 713640 (D. Ariz. Feb. 23, 2017) ........................................................ 52
*Cuevas v. United States*, 317 F.3d 751 (7th Cir. 2003) .................................. 26, 39
*Flores v. Arizona*, 516 F.3d 1140 (9th Cir. 2008) ................................................ 24
*Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995) ................................................ 34-35
*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ......................................... 13, 15, 18, 23
*Haeberle v. Texas Int'l Airlines*, 739 F.2d 1019 (5th Cir. 1984) ..................... 35-36
*In re Robinson*, 917 F.3d 856 (5th Cir. 2019) ............................................... *passim*
*Jones v. Ryan*, 733 F.3d 825 (9th Cir. 2013) ....................................... 13, 34, 48-49
*Journal Pub. Co. v. Mechem*, 801 F.2d 1233 (10th Cir. 1986) ....................... 23, 26
*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933) ...................... 50
*Leavitt v. Arave*, 383 F.3d 809 (9th Cir. 2004) ..................................................... 14
*Lee v. Schriro*, No. CV 04-039-PHX-MHM,
2006 WL 2827162 (D. Ariz. Sept. 25, 2006) ..................................................... 52
*Lopez v. Ryan*, 678 F.3d 1131 (9th Cir. 2012) ............................................... *passim*
*McDonald v. Pless*, 238 U.S. 264 (1915) ............................................................... 26
*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ................................................... 27
*Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516 (9th Cir. 1983) ............................. 34

*Mitchell v. United States*, 137 S. Ct. 38 (2016) .......................................... 9, 48

*Mitchell v. United States*, 553 U.S. 1094 (2008) .......................................... 8

*Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015) .......................................... 9

*N. Pac. Ry. Co. v. Mely*, 219 F.2d 199 (9th Cir. 1954) .......................................... 26, 40

*Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017) .......................................... *passim*

*Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009) .......................................... 45-46

*Rich v. Calderon*, 187 F.3d 1064 (9th Cir. 1999) .......................................... 20

*Riley v. Filson*, 933 F.3d 1068 (9th Cir. 2019) .......................................... 24

*Robinson v. United States*, No. 4:00-CR-0260-Y,
2018 WL 3046255 (N.D. Tex. June 20, 2018) .......................................... 18

*Schriro v. Summerlin*, 542 U.S. 348 (2004) .......................................... 14

*Smith v. Cupp*, 457 F.2d 1098 (9th Cir. 1972) .......................................... 24, 34-35, 40

*State v. Paxton*, 701 P.2d 1204 (Ariz. App. 1985) .......................................... 52-53

*Tanner v. United States*, 483 U.S. 107 (1987) .......................................... 29, 41

*Teague v. Lane*, 489 U.S. 288 (1989) .......................................... 14

*Tejada v. Dugger*, 941 F.2d 1551 (11th Cir. 1991) .......................................... 36

*Tharpe v. Warden*, 898 F.3d 1342 (11th Cir. 2018) .......................................... 13-14

*Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion
De Costa Rica*, 614 F.2d 1247 (9th Cir. 1980) .......................................... 12

*Thompson v. Calderon*, 151 F.3d 918 (9th Cir. 1998) .......................................... 12

*Thompson v. Comm'r*, 631 F.2d 642 (9th Cir. 1980) .......................................... 43

*Towery v. Ryan*, 673 F.3d 933 (9th Cir. 2012) .......................................... 23-24

*United States v. Bagnariol*, 665 F.2d 877 (9th Cir. 1981) .......................................... 40

*United States v. Baker*, 899 F.3d 123 (2d Cir. 2018) .......................................... 31-33

*United States v. Birchette*, 908 F.3d 50 (4th Cir. 2018) .......................................... 31-32, 35

*United States v. Buenrostro*, 638 F.3d 720 (9th Cir. 2011) .......................................... 13, 21

*United States v. Davila*, 704 F.2d 749 (5th Cir. 1983) .......................................... 36

*United States v. Eagle*, 539 F.2d 1166 (8th Cir. 1976) .......................................... 36

*United States v. Eldred*, 588 F.2d 746 (9th Cir. 1978) .......................................... 23, 25, 35

*United States v. Gravely*, 840 F.2d 1156 (4th Cir. 1988) .......................................... 36

*United States v. Lewis*, 611 F.3d 1172 (9th Cir. 2010) .......................................... 42

*United States v. Lopez*, 577 F.3d 1053 (9th Cir. 2009) ........................................ 13
*United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007) ................................ *passim*
*United States v. Nerey*, 877 F.3d 956 (11th Cir. 2017) ........................................ 33
*United States v. Robinson*, 872 F.3d 760 (6th Cir. 2017) ............................... 32-33
*United States v. Venske*, 296 F.3d 1284 (11th Cir. 2002) ..................................... 39
*United States v. Washington*, 653 F.3d 1057 (9th Cir. 2011) ............. 13, 15, 17, 21
*United States v. Wright*, 506 F.3d 1293 (10th Cir. 2007) ............................... 23, 36
*Warger v. Shauers*, 574 U.S. 40 (2014) .............................................................. 26
*Wheeler v. United States*, 640 F.2d 1116 (9th Cir. 1981) ..................................... 24
*Williams v. Filson*, 908 F.3d 546 (9th Cir. 2018) ................................................ 13
*Wood v. Ryan*, 759 F.3d 1117 (9th Cir. 2014) ...................................................... 21
*Young v. Davis*, 860 F.3d 318 (5th Cir. 2017) ...................................................... 32

**STATUTES**

18 U.S.C. § 3593(f) ......................................................................................... 7, 30
28 C.F.R. § 26.3(a)(1) .......................................................................................... 2
28 U.S.C. § 2253 .................................................................................................. 1
28 U.S.C. § 2255 ........................................................................................... *passim*
28 U.S.C. § 2255(h)(2) .......................................................................... 1, 2, 11, 13
28 U.S.C. § 1291 .................................................................................................. 1

**RULES**

Fed. R. App. P. 4(a)(1)(A) ................................................................................... 2
Fed. R. Civ. P. 60(b)(6) ................................................................................. *passim*
Fed. R. Crim. P. 33(b)(2) .................................................................................... 38
LRCiv 39.2 ..................................................................................................... *passim*

**MISCELLANEOUS**

3 Federal Evidence § 6:17 (4th ed. West June 2019) .......................................... 14
Local Rules of Practice for the District of Arizona, LRCrim 24.2 (incorporating LRCiv 39.2), *available at* http://www.azd.uscourts.gov/local-rules ....................... 8

## III. STATEMENT OF JURISDICTION

### A. District Court Jurisdiction

The Petitioner-Appellant, Lezmond Charles Mitchell ("Petitioner") previously filed a case over which the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 2255 because he was a federal prisoner seeking post-conviction relief from his sentence. (CV 1; ER 155-173.)[1] However, as explained below, Petitioner's Rule 60(b)(6) motion to reopen the judgment in that case (CV 71; ER 104-117) was a second or successive Section 2255 motion over which federal courts lack jurisdiction. 28 U.S.C. § 2255(h)(2). *See infra* Part VII.A.

### B. Appellate Court Jurisdiction

Petitioner asserts this Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253 based on the district court's final order denying Petitioner's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6). (OB at

---

[1] "CV" refers to the Clerk's Record in the civil case arising from Petitioner's Section 2255 petition, No. 3:09-cv-08089-DGC, while "CR" refers to the Clerk's Record in the underlying criminal case, No. 3:01-cr-01062-DGC. Each citation is followed by the document number(s). "RT" refers to the Reporter's Transcript of the trial in the criminal case, followed by the page number(s). Consistent with court rules and the district court's orders, the names of the juvenile victim and the jurors have been redacted. (*See* CR 2 (Section 3509 order re child victim); CR 368, 493 (transcripts to be redacted to remove juror names).) "ER" refers to the Excerpts of Record, followed by the page number(s). "SER" refers to the Supplemental Excerpts of Record, followed by the page number(s). Finally, "OB" refers to Petitioner's Opening Brief, followed by the page number(s).

2.) Again, jurisdiction is lacking because Petitioner's Rule 60(b)(6) motion was a second or successive motion. 28 U.S.C. § 2255(h)(2). *See infra* Part VII.A.

**C. Timeliness of Appeal**

Following the entry of the district court's order on September 18, 2018 (CV 80; ER 1-8), Petitioner filed a notice of appeal on October 17, 2018 (CV 81; ER 77-80). The notice was timely pursuant to Fed. R. App. P. 4(a)(1)(A).

**D. Bail Status**

Petitioner is currently in custody, serving his sentence. Pursuant to 28 C.F.R. § 26.3(a)(1), his execution has been scheduled for December 11, 2019. (*See* Dkt. No. 18 Ex. A.)

## IV. ISSUE PRESENTED

This Court, like the other federal courts of appeals, has long recognized that there is no constitutional right to interrogate jurors after their service is completed in the absence of any specific claim of juror misconduct. No court has ever held that *Peña-Rodriguez v. Colorado* silently overruled these precedents and created a new constitutional right to interrogate jurors without good cause. We are now sixteen years after the verdict, and Petitioner has never adduced even a whiff of suspicion that any of his jurors was racially biased. All of them specifically affirmed that they were not. Also, Petitioner's motion was untimely by years, it flatly ignored a host of other requirements in the local rule, and it violated the jurisdictional bar on second or successive motions in Section 2255 cases.

Under these circumstances, did the district court act within its discretion to decline to reopen its prior order denying the motion to interrogate jurors?

## V. STATEMENT OF THE CASE

In 2001, in the midst of preparing for an armed robbery, Petitioner carjacked and murdered Alyce Slim, a 63-year-old grandmother, and "Jane Doe," her 9-year-old granddaughter.[2] Petitioner targeted the victims, who had picked him up while he was hitchhiking with a confederate, because he wanted to steal a getaway vehicle to use in the armed robbery.

Inside the truck, Petitioner and his confederate set upon Alyce with knives. As Jane Doe looked on, they stabbed her grandmother 33 times. Alyce was unarmed, and although she must have known it was hopeless, she fought back against the two armed men. Her body bore the marks of 16 incised defensive wounds to her hands, indicative of trying to parry or grab a knife's blade before she finally succumbed. (RT 3305-09; SER 88-92.)

After Petitioner finished killing Alyce, her body was placed in the back seat—along with Jane Doe, who was forced to ride next to her grandmother's mutilated corpse as Petitioner drove the stolen truck 30-40 miles into the mountains. Reaching a secluded area, Petitioner stopped the truck, removed Jane Doe from the back, and ordered her to "lay down on the ground and die." Then he killed her.

[2] The factual background may be found in *United States v. Mitchell*, 502 F.3d 931, 942-46 (9th Cir. 2007). Additional record citations are included as appropriate.

Petitioner slashed the 9-year-old girl's throat, twice. But Jane Doe still didn't die. So Petitioner and his confederate found large, 20-pound rocks and took turns dropping them onto Jane Doe's head until her skull was crushed in. Jane Doe's injuries were akin to those found in "people who have been ejected from high-speed motor vehicle accidents." (RT 3348; SER 94.) But her death was not so sudden. Jane Doe was still alive for long enough during the battering that bruises started to form on her brain. (RT 3348; SER 94.)

Eventually, the bodies of Alyce and Jane Doe were stripped naked, except for a pair of underwear. They were then dismembered. Petitioner and his confederate severed and buried the victims' heads and hands and dragged their naked torsos off into the woods.

Petitioner went on to use Alyce's truck to commit an armed robbery of a trading post, as well as other violent crimes. The truck was later found abandoned, and it was covered in blood. Alyce's DNA was matched to blood staining the floor, the driver's seat, the rear seat, the armrest, and the windows. (RT 3205-11; SER 72-78.)

When Petitioner was located and arrested, a butterfly knife with blood on it fell out of his pants pocket. DNA analysis confirmed that blood, too, was Alyce's. (RT 2967, 2977, 3215; SER 41, 43, 82.)

Petitioner eventually led investigators to the location of the victims' severed heads and hands. (RT 2725; SER 20.) After repeated Miranda advisals, Petitioner confessed that he had stabbed Alyce using the butterfly knife; that he "cut the throat of the young girl twice" and told her "to lay down on the ground and die"; that he then "gathered large rocks"; and that he and his confederate "took turns dropping the rocks on the girl's head." (RT 2727-30, 3112-13; SER 22-25, 53-54.)

Petitioner could tell that Jane Doe was still alive during that process. (RT 3122; SER 63.) Petitioner also admitted to the dismemberment of the victims' bodies, but he denied that he was in charge of the plan to sever the heads and hands. He said "if it was his idea, he would also have severed the feet." (RT 3122-23; SER 63-64.)

Petitioner made a variety of other inculpatory statements, including about additional violent crimes he perpetrated before being apprehended. Subsequent investigation revealed that Petitioner had also confessed to a third party that he had "killed some people," identifying his victims by their vulnerable characteristics. (RT 2783; SER 31 ("He said one was small and one was an old lady.").)

Petitioner was charged and convicted for eleven crimes, including multiple counts of Premeditated First Degree Murder, Armed Carjacking Resulting in Death, Felony Murder, Robbery, Kidnapping, and Use of a Firearm in a Crime of Violence. He was sentenced to death at the recommendation of the trial jury. The jury

unanimously found all gateway intent factors, all of the statutory aggravating factors, and the non-statutory aggravating factor alleged with respect to both victims. (RT 4196-4207; SER 109-120.) This included a unanimous jury finding that Petitioner killed both Alyce and Jane Doe "in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse." (RT 4198, 4203; SER 111.)

Trial proceeded after completion of prescreening questionnaires and over a dozen days of exhaustive, individualized voir dire. (*See* CR 253, 262, 266-270, 272, 277-78, 280, 285, 289-90, 292, 295.) The jury was instructed that it would violate the Court's orders to decide the case on any form of prejudice, and after trial, in accordance with 18 U.S.C. § 3593(f), the jury specifically certified that race played no role in the verdict. (RT 4201, 4206; SER 114, 119.) To this day, there has never been any evidence of racial bias by any member of the jury, which included a Native American (himself a member of the Navajo Nation).

The district court (then Mary H. Murguia, J.) pronounced sentence on September 15, 2003. This Court affirmed the conviction and sentence in all respects. *See Mitchell*, 502 F.3d 931. This Court rejected as meritless every single argument Petitioner made regarding his jury pool, including many of the arguments that he continues to repeat in his briefing. *See id.* at 949-59. This Court also noted "the overwhelming evidence of guilt" and the fact that any proffered mitigating factors

"were weak when compared to the gruesome nature of the crimes and the impact they had on the victims' family." *Id.* at 968, 996.

The Supreme Court denied certiorari. *Mitchell v. United States*, 553 U.S. 1094 (2008).

Six years after the verdict, on May 22, 2009, Petitioner filed a Motion for Authorization to Interview Jurors. (CV 1; ER 155-173.) Notably, the motion neither alleged nor offered any reason to believe that any juror was racially biased. The Court denied the motion because it was untimely, because Petitioner failed to provide the affidavits and interrogatories required by Local Rule 39.2,[3] and because he failed to show any good cause to interrogate the jurors six years after the trial. (CV 21; ER 11-20.)

Petitioner later sought habeas relief on this issue in his Amended Motion Under 28 U.S.C. § 2255, claiming that the district court's denial of his motion to interview jurors violated his constitutional rights. (CV 30 at 173-77; ER 127-132.) The district court denied that claim because the motion was raised in a post-conviction setting, rather than at trial or sentencing. (CV 56 at 60; ER 10.) The district court also denied all other claims and denied a certificate of appealability for this claim. (*See* CV 56 at 62; SER 2.)

---

[3] *See* Local Rules of Practice for the District of Arizona, LRCrim 24.2 (incorporating LRCiv 39.2), *available at* http://www.azd.uscourts.gov/local-rules.

Petitioner raised this uncertified claim in his appeal of the district court's denial of his Section 2255 petition. (CA No. 11-99003, Dkt. No. 23, at 78-84; SER 4-10.) This Court, while not specifically addressing the issue, rejected it by affirming the district court's judgment in all respects and affirming the denial of a certificate of appealability for the uncertified claims. *Mitchell v. United States*, 790 F.3d 881, 894 & n.7 (9th Cir. 2015).

Petitioner failed to raise this issue in either his Petition for Rehearing and Petition for Rehearing En Banc (CA 11-99003, Dkt. No. 74) or his Petition for Writ of Certiorari (S. Ct. No. 15-8725).

The Supreme Court again denied certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

On March 5, 2018, a year after the Supreme Court decided *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), Petitioner filed a motion to reopen his Section 2255 judgment in order to interview the jurors. (CV 71; ER 104-117.) Petitioner moved under "Rule 60(b)(6) for relief from the judgment of this Court," claiming that *Peña-Rodriguez* "casts doubt on this Court's prior ruling and warrants re-opening this case." (CV 71 at 2-3; ER 105-06.) But Petitioner again did not allege or offer any reason to believe his jurors were racially biased, nor did he submit an affidavit and proposed interrogatories.

The district court (now David G. Campbell, J.[4]) once again denied the motion and denied a certificate of appealability. (CV 80; ER 1-8.) Petitioner appealed (CV 81; ER 77-80) and sought a certificate of appealability (Dkt. No. 3).

This Court issued an Order stating that "[t]he district court previously determined that at least three of the constitutional claims raised in appellant's underlying 28 U.S.C. § 2255 motion met the substantive certificate of appealability standard. Accordingly, we grant the request for a certificate of appealability with respect to the following procedural issue: whether the district court properly denied appellant's motion to re-open his case pursuant to Fed. R. Civ. P. 60(b)(6) following the Supreme Court's opinion in *Peña-Rodriguez v. Colorado*." (Dkt. No. 10 at 1 (citations omitted).)

[4] The criminal and civil cases were reassigned from Judge Murguia, who had presided over the trial and denied the original motion to interview jurors, to Judge Campbell, who denied the Rule 60(b) motion and is presently assigned both cases. (*See* CV 73.)

## VI. SUMMARY OF ARGUMENT

The denial of Petitioner's motion should be affirmed for three independent reasons. First, as recently held by the Fifth Circuit, this sort of Rule 60(b)(6) motion claiming a right to interview jurors under *Peña-Rodriguez* violates Section 2255's bar on second or successive motions. In fact, Petitioner had already expressly pleaded the denial of his motion to interview jurors as a Section 2255 claim. Under 28 U.S.C. § 2255(h)(2), there is no federal court jurisdiction.

Second, under longstanding and widely-accepted precedent, there is no right to interrogate jurors after their service is completed without any evidence of juror misconduct. *Peña-Rodriguez* did not create a new constitutional right to interrogate jurors without good cause. Because Petitioner admits that he has no evidence whatsoever that any of his jurors was racially biased, he cannot claim the kind of "extraordinary circumstances" necessary to reopen the judgment. Certainly the district court did not abuse its very broad discretion in declining to do so.

Third, in order to ensure such motions are brought in a timely fashion and properly supervised, the local rule imposes a filing deadline and requires a party to submit proposed interrogatories and a supporting affidavit. Petitioner delayed six years past the deadline, and he flatly refused to file the required interrogatories and affidavit. Even now, fifteen years past the filing deadline, he still has not done so.

The district court was well within its discretion to deny Petitioner's motion.

# VII. ARGUMENTS

This Court need not reach the merits because Petitioner's Rule 60(b) motion was actually a second or successive Section 2255 motion. Even if there was jurisdiction, however, the district court rightly held that *Peña-Rodriguez* created no new constitutional right to post-trial juror interrogations without cause. Independently, the district court also rightly denied the motion for its gross untimeliness and failure to follow other fundamental requirements of the local rule.

## A. Petitioner's Motion is a Second or Successive Section 2255 Motion, and Thus the Court Lacks Jurisdiction

### 1. Standard of Review

This Court should affirm if the district court reached the right result, regardless of whether its reasoning was correct. *See Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1256 (9th Cir. 1980) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.") (quoting *Helvering v. Gowran*, 302 U.S. 238, 245 (1937)). The Court therefore should affirm "on any ground squarely presented on the record." *Id.* (quotation omitted).

This Court reviews de novo whether a Rule 60(b) motion constitutes a second or successive Section 2255 motion. *Thompson v. Calderon*, 151 F.3d 918, 921 (9th Cir. 1998), *as amended* (July 13, 1998).

2. Argument

In a Section 2255 case, a Rule 60(b) motion may be brought only to the extent that it is not inconsistent with the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005); *United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011). A petitioner "cannot utilize a Rule 60(b) motion to make an end-run around the requirements of AEDPA." *Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013).

One of AEDPA's reforms was to bar any "second or successive motion" in a Section 2255 case unless it is based on newly-discovered evidence or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). If a Rule 60(b) motion is really a disguised second or successive motion, the Court "must dismiss for lack of jurisdiction." *United States v. Washington*, 653 F.3d 1057, 1063 (9th Cir. 2011).[5]

No newly-discovered evidence is alleged here, and *Peña-Rodriguez* is not a new rule of constitutional law made retroactive on collateral review. *See, e.g.*,

[5] Recently, this Court found it "unnecessary to decide whether [the] Rule 60(b) motion was a disguised second or successive petition" because it was clear on the merits that the petitioner was not entitled to relief. *Williams v. Filson*, 908 F.3d 546, 580-81 (9th Cir. 2018). On the other hand, the Court may feel constrained to reach this issue regardless of the merits because it is jurisdictional. *See United States v. Lopez*, 577 F.3d 1053, 1066 n.12 (9th Cir. 2009).

*Tharpe v. Warden*, 898 F.3d 1342, 1344 (11th Cir. 2018) (denying certificate of appealability because the inmate's "claim arises from the rule announced in *Peña-Rodriguez v. Colorado*, and that rule does not apply retroactively") (internal citation omitted), *cert. denied sub nom. Tharpe v. Ford*, 139 S. Ct. 911 (2019); *In re Robinson*, 917 F.3d 856, 869 (5th Cir. 2019) (describing the argument that *Peña-Rodriguez* announced a new substantive rule that applies retroactively as "exceedingly doubtful," but denying relief on another basis). *See also* 3 FEDERAL EVIDENCE § 6:17 (4th ed. West June 2019) ("*Peña-Rodriguez* is considered to be a procedural change for purposes of retroactivity, meaning that it does not apply to cases reaching final judgment before the Supreme Court's opinion in *Peña-Rodriguez* was filed.").[6] Petitioner never argued otherwise below (*see* CV 71, 79; ER 104-117, 81-89), waiving any contrary argument.

Thus, this Court must determine whether Petitioner's Rule 60(b) motion is really a disguised second or successive Section 2255 motion. A bona fide Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the

[6] A new rule does not apply retroactively unless it is either substantive or a watershed rule of criminal procedure. *See Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion). *Peña-Rodriguez* merely "permit[s] the trial court to consider [certain] evidence," 137 S. Ct. at 869, and does not "alte[r] the range of conduct or the class of persons that the law punishes," *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). It therefore cannot be a substantive rule. Nor can it be described as a watershed rule, something so "groundbreaking" as to "alter our understanding of the bedrock procedural elements" of the law. *Leavitt v. Arave*, 383 F.3d 809, 824-26 (9th Cir. 2004).

merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez*, 545 U.S. at 532. "On the other hand, if the motion presents a 'claim,' i.e., 'an asserted federal basis for relief from a . . . judgment of conviction,' then it is, in substance, a new request for relief on the merits and should be treated as a disguised § 2255 motion." *Washington*, 653 F.3d at 1063 (ellipsis original) (quoting *Gonzalez*, 545 U.S. at 530).

A Rule 60(b)(6) motion is really a second or successive motion where it argues "that a subsequent change in substantive law is a 'reason justifying relief' from the previous denial of a claim." *Id.* (quoting *Gonzalez*, 545 U.S. at 531-32). That is precisely what Petitioner's Rule 60(b) motion argued, seeking "relief from the judgment of this Court" because "[t]he Supreme Court subsequently issued *Peña-Rodriguez v. Colorado*, which casts doubt on this Court's prior ruling and warrants re-opening this case to allow Mitchell to brief his right to access the jurors from his trial." (CV 71 at 2-3; ER 105-06 (citation omitted).)

When a movant who previously brought a claim for habeas relief "asserts that a previous ruling regarding one of those grounds was in error[,] he is making a habeas corpus claim." *Gonzalez*, 545 U.S. at 532 & n.4. Here, after his motion to interview jurors was denied, Petitioner expressly amended his Section 2255 petition to allege this very issue as a constitutional claim. His petition alleged that the district court "Violated [his] Constitutional Rights by Denying His Request to Interview the

Jurors In His Capital Case." (CV 30 at 173; ER 128.) He claimed that his "conviction, sentences and death judgment violate the Fifth, Sixth, and Eighth Amendments of the United States Constitution because he was deprived of the his [sic] right to fully and adequately investigate his habeas claims." (CV 30 at 173; ER 128.) He similarly argued that the district court's "denial of [his] request to reasonably and adequately investigate all possible claims violates his right to due process." (CV 30 at 177; ER 132.) He described his allegations as "claims of constitutional violations." (CV 30 at 173; ER 128.)

He likewise expressly raised this issue as a constitutional claim in his prior appeal. Petitioner argued to this Court that the district court's application of the local rule was a "violation of the Fifth Amendment's due process and equal protection guarantees," as well as other constitutional rights. (CA No. 11-99003, Dkt. No. 23, at 78-84; SER 4-10.)

Petitioner's Rule 60(b) motion explicitly reiterated that prior due process claim, asserting that "the lack of due process afforded to Mitchell constitutes an extraordinary circumstance justifying relief." (CV 71 at 6; ER 109 (capitalization adjusted).) Petitioner even acknowledged that his motion to interview jurors raised the very same issue that he raised as a claim in his Section 2255 petition, pointing out that he had previously "moved to interview the jurors in his case. *When the*

*Court denied his request, he raised the issue in his Amended 2255 Motion*." (CV 71 at 11; ER 114 (emphasis added).)

Likewise, in his Motion for Certificate of Appealability ("COA") to this Court, Petitioner acknowledged that his Rule 60(b) motion re-raised his due process claim. He asked for a COA on the issue of "whether the district court abused its discretion in denying a COA and in finding that the restriction on interviewing jurors did not deprive Mitchell of his constitutional right to due process." (Dkt. No. 3 at 1.)

Even now, in seeking a stay of execution from this Court, Petitioner strategically suggests that he does, in fact, raise "a 'claim,' i.e., 'an asserted federal basis for relief from a . . . judgment of conviction.'" *Washington*, 653 F.3d at 1063 (ellipsis original) (quoting *Gonzalez*, 545 U.S. at 530). He affirmatively asserts that the COA granted by this Court "allow[s] Mitchell to litigate the constitutionality of his death sentence." (Dkt. No. 18 at 1.) To try to shoehorn his case into guidance from *Barefoot v. Estelle* about "non-frivolous claims of constitutional error" raised in a prisoner's "initial habeas appeal," 463 U.S. 880, 889, 894 (1983), Petitioner repeatedly styles his Rule 60(b) motion as raising a "claim," arguing that he "is entitled to a stay because he has presented a nonfrivolous claim of constitutional error" that "is on equal footing with the claim presented in the first habeas petition." (Dkt. No. 18 at 10-12.)

Petitioner cannot have it both ways. His Rule 60(b) argument that *Peña-Rodriguez* "casts doubt on this Court's prior ruling and warrants re-opening this case" (CV 71 at 3; ER 106), is a quintessential "assert[ion] that a previous ruling regarding one of [the habeas] grounds was in error," *Gonzalez*, 545 U.S. at 532 & n.4, and thus it is subject to the second or successive bar.

In circumstances uncannily similar to this case, the Fifth Circuit has recognized that a Rule 60(b)(6) motion seeking to reopen the denial of a motion to interrogate jurors based on *Peña-Rodriguez* is, in fact, a disguised second or successive motion. *See Robinson*, 917 F.3d at 865. The petitioner in *Robinson*, like Petitioner here, is on federal death row for committing multiple murders, with his conviction and sentence being affirmed both on direct appeal and in a federal Section 2255 proceeding. *See id.* at 859-61.

Like Petitioner, Robinson had filed a motion to interview jurors as part of his first Section 2255 proceeding, which was denied because it ran afoul of a local rule barring post-trial juror contact. *See id.* at 865.[7] And like Petitioner, after *Peña-Rodriguez* was decided, Robinson filed a Rule 60(b)(6) motion for relief from judgment, claiming the district court "erroneously barred [him] from conducting a

[7] For the procedural history, see *Robinson v. United States*, No. 4:00-CR-0260-Y, 2018 WL 3046255, at *2-3 (N.D. Tex. June 20, 2018). The original district court order appears at Dkt. No. 2388, *Robinson v. United States*, No. 4:00-cr-00260-Y (N.D. Tex. Nov. 28, 2006) (citing N.D. Tex. LRCrim 24.1, *available at* http://www.txnd.uscourts.gov/criminal-rules).

reasonable investigation" by prohibiting juror interviews and that "the lack of due process in his post-conviction proceedings constituted an extraordinary circumstance that justified re-opening the judgment." *Id.* at 861 (quoting motion). Robinson's Rule 60(b) motion sought to "reopen the [§] 2255 proceedings so that he [can] interview jurors 'to determine what role, if any, racial bias played in his convictions and sentences.'" *Id.* at 864 (quoting motion).

Here, Petitioner's Rule 60(b)(6) motion makes exactly the same arguments—in fact, using virtually identical language in many places. (*See, e.g.*, CV 71 at 6, 8-9; ER 109, 111-12 (arguing that he was "barred from conducting" a "reasonable investigation," that "the lack of due process afforded to Mitchell constitutes an extraordinary circumstance justifying relief," and seeking to reopen the judgment "to determine what role, if any, racial bias played in his convictions and sentences") (capitalization adjusted).)

The Fifth Circuit held that "[t]he best view is that Robinson is attempting to advance a new habeas claim related to jury impartiality (in light of *Peña-Rodriguez v. Colorado*), under the guise of a Rule 60(b)(6) motion." *Robinson*, 917 F.3d at 865 (citation omitted). The court found that the motion, in reality, "seeks to re-open the proceedings for the purpose of adding new claims and, as such, is the definition of a successive claim." *Id.* (internal quotations omitted).

Petitioner claims that his Rule 60(b)(6) motion only attacks a "defect in the integrity of the federal habeas proceeding." (OB at 14.) However, denial of a motion to interrogate jurors with no indication of juror misconduct cannot be a "defect in the integrity" of a habeas proceeding. As laid out below, federal courts have long recognized that there is no right to interrogate jurors without first making some preliminary showing of juror misconduct. *See infra* Part VII.B.2. And more broadly, "there simply is no federal right, constitutional or otherwise, to discovery in habeas proceedings as a general matter." *Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993) (citing *Harris v. Nelson*, 394 U.S. 286, 296 (1989)). The law does not sanction "fishing expeditions" in habeas cases, and discovery will not be allowed so that the petitioner can "explore [his] case" looking for constitutional claims. *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999).

Rather, a petitioner can claim a right to discovery in a habeas case only by showing that his motion *is* tied to developing a substantive claim for relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). That is why motions purporting to merely investigate whether claims exist nevertheless are subject to the second or successive bar. As the Fifth Circuit agreed in *Robinson*, "because the merits of [the] discovery request to interview jurors are wrapped up with, and dependent on, his ability to bring a new claim for relief from the judgment of his conviction, his request is a paradigmatic habeas claim." 917 F.3d at 865 (internal quotation and brackets

omitted). *See also Wood v. Ryan*, 759 F.3d 1117, 1120 (9th Cir. 2014) ("[A] Rule 60(b) motion that seeks leave to develop new evidence as to the claim must be denied as an unauthorized second or successive petition.") (citing *Post v. Bradshaw*, 422 F.3d 419, 424-25 (6th Cir. 2005) (Rule 60(b) motion a second or successive petition where it "seeks discovery that might provide new evidence that he could present in support of claims previously denied")).

Even if it were otherwise, the exception for alleging defects in the integrity of the federal habeas proceeding is not satisfied by just any kind of error. "To show a defect in the integrity of his first § 2255 proceeding, [the petitioner] must point to something that happened during that proceeding *that rendered its outcome suspect*." *Buenrostro*, 638 F.3d at 722 (emphasis added). This means dispositive things like "[f]raud on the federal habeas court" or procedural rulings that actually "precluded a merits determination," like a failure to exhaust, procedural default, or falling outside the statute of limitations. *Washington*, 653 F.3d at 1063 (quoting *Gonzalez*, 545 U.S. at 532 nn.4-5). Nothing about denial of a request to interview jurors, when there is no hint of misconduct by any juror, is even remotely on that order. *See Robinson*, 917 F.3d at 865 (denial of the motion to interview jurors "did not prevent a merits determination" and "Robinson was not prevented from litigating his impartial-jury claim because of a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar").

For all these reasons, Petitioner's Rule 60(b)(6) motion was a second or successive petition. The Court should dismiss for lack of jurisdiction.

## B. The District Court Did Not Abuse its Discretion in Denying Petitioner's Rule 60(b)(6) Motion

### 1. Standard of Review

"Rule 60(b) proceedings are subject to only limited and deferential appellate review." *Gonzalez*, 545 U.S. at 535. This Court therefore reviews the district court's denial of a Rule 60(b) motion only for an abuse of discretion. *Towery v. Ryan*, 673 F.3d 933, 940 (9th Cir. 2012). A court abuses its discretion if it "fails to identify and apply the correct legal rule to the relief requested, or if its application of the correct legal standard was illogical, implausible or without support in inferences that may be drawn from the facts in the record." *Id.*

Here, there is an extra layer of discretion given the nature of the relief sought. "District courts have 'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys." *United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) (quoting *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986)). *See, e.g.*, *United States v. Eldred*, 588 F.2d 746, 752 (9th Cir. 1978) (denial of motion to interview jurors under the District of Arizona's local rule reviewed for abuse of discretion).

### 2. Argument

The district court did not abuse its broad discretion in denying Petitioner's motion. To obtain relief under the catchall provision of Rule 60(b)(6), he must first make a threshold "showing of 'extraordinary circumstances.'" *Towery*, 673 F.3d at

940 (quoting *Gonzalez*, 545 U.S. at 535); *see also Riley v. Filson*, 933 F.3d 1068, 1071 (9th Cir. 2019) (same).

This Court has "cautioned against the use of provisions of Rule 60(b) to circumvent the strong public interest in [the] timeliness and finality" of judgments. *Flores v. Arizona*, 516 F.3d 1140, 1163 (9th Cir. 2008). Thus, "[t]he standard for a Rule 60(b)(6) motion is high," and such relief should be granted only "sparingly" to avoid manifest injustice. *Riley*, 933 F.3d at 1071 (internal quotations omitted). "Such circumstances 'rarely occur in the habeas context.'" *Id.* (internal quotations omitted).

Here, Petitioner did not meet the "extraordinary," "high," "rarely" and "sparingly" used standard necessary to show any entitlement to relief, much less to show an abuse of discretion.

#### a. ***Peña-Rodriguez* did not create a constitutional right to interrogate jurors absent evidence of misconduct**

This Court has long recognized that "there is no federal constitutional problem involved in the denial of a motion to interrogate jurors where, as here, there has been no specific claim of jury misconduct." *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972). The authority for "orders issued to protect jurors after the trial has ended" stems from a "trial court's inherent power to protect the sound administration of justice." *Wheeler v. United States*, 640 F.2d 1116, 1123 (9th Cir. 1981).

This Court upheld a prior iteration of the District of Arizona's local rule requiring a preliminary showing of juror misconduct before allowing a party to interrogate jurors. *See Eldred*, 588 F.2d at 752. In *Eldred*, the district court denied a motion to interview jurors under the district's then-Local Rule 12(b), which was applied "to require some showing of sufficient reason to propound interrogatories to the jury after the verdict." This Court found no error, constitutional or otherwise, in that application of the local rule. "The jurors were under oath. Faithful performance of their official duties is presumed. No constitutional or statutory deprivation of rights occurred. The trial judge therefore did not abuse his discretion in refusing to allow postverdict interrogation of jurors." *Id.* (internal citations omitted).[8]

Indeed, as recently as 2017, soon after *Peña-Rodriguez* was decided, this Court once again affirmed an Arizona district court's denial of leave to interrogate jurors in the absence of any evidence of misconduct by the jury. *See Adkins v. Corr. Corp. of Am.*, 681 F. App'x 579, 583 (9th Cir. 2017). "Because Plaintiffs failed to provide the district court with any evidence of juror misconduct, the district court did not abuse its discretion in denying Plaintiffs' request to inquire into juror deliberations." *Id.*

---

[8] In 1977, the district's local rule was "amended to make explicit that it allows postverdict interviews with jurors 'only upon the showing of good cause.'" *Eldred*, 588 F.2d at 752 n.4.

Although Petitioner suggests otherwise, local rules regulating post-trial juror contact are actually "quite common" in federal courts. *Cuevas v. United States*, 317 F.3d 751, 753 (7th Cir. 2003). In fact, "courts have routinely shielded jurors from post-trial 'fishing expeditions' carried out by losing attorneys interested in casting doubt on the jury's verdict." *Journal Pub. Co.*, 801 F.2d at 1236.

These limits serve important policy goals, including to "encourage freedom of discussion in the jury room," "reduce the number of meritless post-trial motions," and "increase the finality of the verdict." *Cuevas*, 317 F.3d at 753. They also protect jurors from harassment by the defeated party and extraneous influences during deliberation. *See Warger v. Shauers*, 574 U.S. 40, 45 (2014); *McDonald v. Pless*, 238 U.S. 264, 267 (1915).

As this Court has emphasized, "[i]f jurors are conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred in the jury room and why, they are almost inescapably influenced to some extent," and federal courts "will not permit that potential influence to invade the jury room." *N. Pac. Ry. Co. v. Mely*, 219 F.2d 199, 205 n.1 (9th Cir. 1954) (quotation omitted). That concern is particularly acute in cases like this one, where the trial is long, grueling, and likely to subject the jurors to the ravages of unwelcome publicity. *See Bryson v. United States*, 238 F.2d 657, 665 (9th Cir. 1956) ("In view of the nature and length of the trial and the wide publicity it received, the order [prohibiting contact with jurors]

was not only proper but was highly desirable."). Thus, the propriety of rules like LRCiv 39.2 is both well-settled and well-reasoned.

Here, Petitioner claims that *Peña-Rodriguez* overturned this entire legal landscape and created a new constitutional right to post-verdict juror interrogations without good cause. He argues that the district court "abused its discretion in holding that *Peña-Rodriguez* does not create a right to interview trial jurors" and, therefore, that "the requirement that Mitchell provide evidence of racial bias prior to interviewing his trial jurors is an abuse of discretion." (OB at 17-18.)

However, to conclude that *Peña-Rodriguez* "create[d] a right to interview trial jurors" (OB at 17), notwithstanding settled law to the contrary, the Court would have to conclude that "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 892-93 (9th Cir. 2003) (en banc).[9] *Peña-Rodriguez* is not "clearly irreconcilable" with the longstanding rule that district courts have discretion to prohibit post-trial interrogation of jurors where there is no evidence of jury misconduct.

*Peña-Rodriguez* makes no mention of "creat[ing] a right to interview trial jurors." (OB at 17.) It only addressed what courts should do when presented with

[9] Petitioner conceded below that *Smith v. Cupp* "holds, pre-*Peña-Rodriguez*, that there is no federal constitutional right to interview jurors." (CR 79 at 4; ER 85.)

clear evidence of racial bias. Specifically, after a review of the no-impeachment rule and the impact of racial prejudice in the administration of justice, *Peña-Rodriguez* carved out a narrow exception to Rule 606(b): "the Court now holds that where a juror makes a clear statement that he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any denial of the jury trial guarantee." 137 S. Ct. at 869.

Far from calling into question the commonplace court rules limiting post-trial juror interrogations, the Supreme Court recognized and endorsed those rules. "The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, *both of which often limit counsel's post-trial contact with jurors*." *Id.* (emphasis added) (citing overviews of state and federal district court rules). "These limits," the Court recognized, "seek to provide jurors some protection when they return to their daily affairs after the verdict has been entered." *Id.*

Petitioner claims that enforcing those limits "leaves *Peña-Rodriguez* without any force." (OB at 19.) But compliance with just such a local rule is what happened in *Peña-Rodriguez* itself. The Supreme Court pointed out that "[p]etitioner's counsel did not seek out" the jurors because, "[p]ursuant to Colorado's mandatory jury instruction, the trial court had set limits on juror contact." 137 S. Ct. at 870.

"With the understanding that they were under no obligation to speak out, the jurors approached petitioner's counsel, within a short time after the verdict, to relay their concerns," after which, "[p]ursuant to local court rules, petitioner's counsel then sought and received permission from the court to contact the two jurors[.]" *Id*.

Relatedly, Petitioner argues that "the district court abused its discretion when it relied on the *Tanner* safeguards"[10] in lieu of conferring a right to interrogate jurors without cause. (OB at 21-23.) *Peña-Rodriguez* described *Tanner* as having "outlined existing, significant safeguards for the defendant's right to an impartial and competent jury." 137 S. Ct. at 866. *Peña-Rodriguez* simply said that those protections do not prevent courts from considering evidence of racial bias "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Id.* at 869.

Moreover, the district court here did not rely on the *Tanner* factors alone, but instead agreed with the United States that the "safeguards against racial bias *in this case* were sufficient to ensure Petitioner's right to a fair trial." (CR 80 at 3, 7; ER 3, 7 (emphasis added).) Those safeguards, which amply assured the reliability of the proceedings, went far beyond what is typical.

---

[10] *See Tanner v. United States*, 483 U.S. 107, 127 (1987) (pointing out the protections afforded by voir dire, observation of juror misconduct during trial, and pre-verdict reports by the jurors themselves).

For example, voir dire was not limited to "[g]eneric questions about juror impartiality [that] may not expose specific attitudes or biases." *Peña-Rodriguez*, 137 S. Ct. at 869. Rather, there was extraordinary, exhaustive, and individualized voir dire to ensure the jurors were impartial, including both written questionnaires and more than a dozen days of in-court questioning. (*See* CR 253, 262, 266-270, 272, 277-78, 280, 285, 289-90, 292, 295.)[11] The jurors were instructed by the district court that prejudice was improper and were reminded that they swore an oath not to make any decision based on it. (*See* RT 3457; SER 99.)

The jurors were also specifically instructed "you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victims," and "[t]o emphasize the importance" of that instruction, the Special Verdict Form contained a certification the jurors were required to sign attesting that race played no role in their decision. (RT 4103-04; SER 103-04.) After reaching their verdict, following their oath and in accordance with 18 U.S.C. § 3593(f), the jurors all signed the certification re-attesting that race played no part in their decision. (RT 4201, 4206; SER 114, 119.)

The jurors were also advised at the time of their discharge that they were free to talk with anyone about the case, including the lawyers, if they wished. (RT 4207;

[11] The written questionnaires and excerpts of voir dire were filed with this Court under seal in the prior Section 2255 appeal. *See* CA No. 11-99003, Sealed Excerpts of Record Volumes I-II.

SER 120.) The lawyers were instructed to stand right by the courtroom doors as the jurors filed past so that, if any of the jurors wanted to raise anything with the lawyers, they could do so. (RT 4195-96, 4207-08; SER 108-09, 120-21.) No juror came forward at that time, nor in the sixteen years since the verdict was rendered, to report racial bias or any form of misconduct. The district court did not abuse its discretion when it looked at the ample protections in this case and concluded that "those safeguards weigh against finding the 'extraordinary circumstances' that warrant reopening Petitioner's case." (CR 80 at 7; ER 7.)[12]

Petitioner next challenges the district court's characterization of *Peña-Rodriguez* as a "narrow" exception. (OB at 17.) But the federal courts of appeals have consistently described *Peña-Rodriguez* in that way. *See, e.g.*, *United States v. Birchette*, 908 F.3d 50, 57 (4th Cir. 2018) ("There are sound reasons to read *Peña-Rodriguez* as a narrow exception."); *United States v. Baker*, 899 F.3d 123, 133-34

---

[12] Petitioner also claims that "because the *Tanner* protections may prove insufficient," the ABA Guidelines favoring thorough investigations support his position. (OB at 23.) But those guidelines say nothing about conducting juror interviews *without* cause, and as discussed, the protections in this case went well beyond *Tanner*. In any event, "standards set by private organizations" are "only guides," not "inexorable commands," and certainly not constitutional law. *Bobby v. Van Hook*, 558 U.S. 4, 8-9 (2009). The law requires "*reasonable* investigations," *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998) (emphasis added), and reason does not mandate juror interrogations without cause years after the verdict. This Court does not "encourag[e] federal habeas lawyers to raise every conceivable (and not so conceivable) challenge." *Lopez v. Ryan*, 678 F.3d 1131, 1136 n.1 (9th Cir. 2012).

(2d Cir. 2018), *cert. denied*, 139 S. Ct. 577 (2018) (a "narrow exception"); *United States v. Robinson*, 872 F.3d 760, 764 (6th Cir. 2017), *cert. denied* 139 S. Ct. 55 (2018) (exception applies "in very limited circumstances"); *Young v. Davis*, 860 F.3d 318, 333 (5th Cir. 2017) (exception applies "narrowly").

In fact, no case has ever held that *Peña-Rodriguez* "creat[ed] a right to interview trial jurors" without cause. (OB at 17.) Just the opposite. The Fourth Circuit, for example, affirmed the denial of a motion to interview jurors under a similar local rule, Eastern District of Virginia Local Criminal Rule 24. *Birchette*, 908 F.3d at 58. The court explained that "[t]o show 'good cause,' and avoid fishing expeditions in the present context, a party should give a trial court sound reason to believe that interviews would uncover the kind of evidence that moved the Court in *Peña-Rodriguez*." *Id*. (internal citation omitted). The Fourth Circuit reasoned that the district court "properly related the good cause standard in Local Criminal Rule 24 to the relevant standard for waiving the no-impeachment rule from *Peña-Rodriguez*," and "[w]hether that standard is met is quintessentially a judgment call for district courts." *Id*.

The Second Circuit has also affirmed the denial of a motion to interview jurors in the absence of "concrete allegations of inappropriate conduct." *Baker*, 899 F.3d at 130 (quotation omitted). The *Baker* court explained that "*Peña-Rodriguez* does not address the separate question of what showing must be made before counsel is

permitted to interview jurors post-verdict to inquire into potential misconduct," and "as to this question, the decision simply reaffirms the importance of *limits* on counsel's post-trial contact with jurors 'to provide [them] some protection when they return to their daily affairs after the verdict has been entered.'" *Id.* at 134 (emphasis original) (quoting *Peña-Rodriguez*, 137 S. Ct. at 869).

Similarly, the Sixth Circuit recognized "*Peña-Rodriguez*'s reaffirmation of the validity of such local rules" in upholding a district court's dismissal of a motion for new trial based in part on alleged juror bias where the defense contacted jurors in violation of the district court's local rules. *Robinson*, 872 F.3d at 770.

The list goes on. After *Peña-Rodriguez* was decided, the Eleventh Circuit affirmed the denial of a motion to interview a juror under the Southern District of Florida's Local Rule 11.1(e), which also requires a preliminary showing of "good cause," because the defendant's "speculative and unsubstantiated allegations" were insufficient to "bring into question the validity of the jury's verdict" under Rule 606(b). *United States v. Nerey*, 877 F.3d 956, 972-74 (11th Cir. 2017). Thus, "[t]he district court did not abuse its discretion by denying Nerey's motion to interview the juror." *Id.* at 974.

Finally, the Fifth Circuit, in affirming the denial of a nearly-identical Rule 60(b)(6) motion to reopen the judgment to interview jurors under *Peña-Rodriguez*, noted in the *Robinson* case (discussed above in Part VII.A) that there was

"undoubtedly" no merit to the motion. 917 F.3d at 866 n.18. "Even if we were to find that Robinson's impartial-jury claim did not constitute a second or successive habeas petition, we would undoubtedly conclude that he fails to show that, as a result of the denial of his discovery request, extraordinary circumstances exist to justify the reopening of the final judgment under Rule 60(b)(6)." *Id.* (internal quotations and brackets omitted).

In sum, nothing in *Peña-Rodriguez* changes the longstanding and widely-accepted rule that "there is no federal constitutional problem involved in the denial of a motion to interrogate jurors where, as here, there has been no specific claim of jury misconduct." *Smith*, 457 F.2d at 1100. While Petitioner emphasizes that this is a capital case, "the pressures of death penalty litigation do not permit us to depart from established jurisprudence." *Jones*, 733 F.3d at 846. The district court did not abuse its discretion in declining to invent a constitutional right to interrogate jurors without any good cause whatsoever.

**b. Petitioner had no good cause to interrogate jurors because there has never been any hint of racial bias by any of them**

The district court acted well within its discretion in applying its local rule and finding that Petitioner had failed to show good cause. "District courts have broad discretion in interpreting and applying their local rules." *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983). "Only in rare cases will [this Court] question the exercise of discretion in connection with the application of local rules." *Ghazali*

*v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). Indeed, whether a party has shown "good cause" to interrogate jurors after trial "is quintessentially a judgment call for district courts." *Birchette*, 908 F.3d at 58.

Petitioner faults the district court for applying Local Rule 39.2 to require a preliminary showing of juror misconduct before allowing parties to interrogate them after the verdict. (OB at 19-21; *see* CV 80 at 6; ER 6.) But that is entirely consistent with this Court's longstanding precedents. *See, e.g.*, *Smith*, 457 F.2d at 1100 (no right to interview jurors absent a "specific claim of jury misconduct"); *Eldred*, 588 F.2d at 752 (proper to deny motion to interview jurors absent "some showing of sufficient reason to propound interrogatories to the jury after the verdict"); *Adkins*, 681 F. App'x at 583 ("Because Plaintiffs failed to provide the district court with any evidence of juror misconduct, the district court did not abuse its discretion in denying Plaintiffs' request to inquire into juror deliberations.").

When district courts exercise the discretion they have to follow these precedents, it is not "arbitrariness." (OB at 18.) In fact, because "[f]ederal courts have generally disfavored post-verdict interviewing of jurors," the federal courts of appeals have "uniformly refused to upset the denial of leave to interview jurors for the purpose of obtaining evidence of improprieties in the deliberations unless specific evidence of misconduct was shown by testimony or affidavit." *Haeberle v.*

*Texas Int'l Airlines*, 739 F.2d 1019, 1021 & n.2 (5th Cir. 1984) (collecting cases). The authorities for this principle across the federal courts of appeals are legion.[13]

Far from undermining the practice of requiring a threshold showing, *Peña-Rodriguez* endorsed that principle, holding that a "clear statement" of racial animus must be offered to merit a court going any further. *Peña-Rodriguez*, 137 S. Ct. at 869. "For the inquiry to proceed, there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict." *Id.* And whether that "threshold showing" has been made "is a matter committed to the substantial discretion of the trial court." *Id.*

In short, the district court had discretion to require a preliminary showing of racial animus before permitting the parties to interrogate the jurors after their service

[13] *See, e.g.*, *United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988) (request to conduct post-verdict juror interviews properly denied because there was "no threshold showing of improper outside influence"); *United States v. Davila*, 704 F.2d 749, 753-54 (5th Cir. 1983) (motion to interview jurors after the verdict properly denied under similar local rule where the "[d]efendants failed to make any preliminary showing of misconduct"); *United States v. Eagle*, 539 F.2d 1166, 1170-71 (8th Cir. 1976) (no general right to subpoena jurors after a verdict is rendered in the absence of "specific allegations that any of them engaged in overt improper acts"); *Wright*, 506 F.3d at 1303 ("This court has held that a trial judge is well within his discretion in denying leave to inquire of jurors where there was no claim of external interference with the process."); *Tejada v. Dugger*, 941 F.2d 1551, 1561 (11th Cir. 1991) (no error to deny motion to depose juror after the verdict where the petitioner "failed to demonstrate specifically and without speculation that jury impropriety has occurred" and "failed to demonstrate, or even to allege, the presence of extraneous information or outside influence").

was completed. Petitioner has no hint of evidence that any of his jurors was racially biased. The district court therefore did not abuse its discretion in denying Petitioner's motion.

### C. Petitioner's Motion was Properly Denied for Failure to Provide the Required Interrogatories, Failure to Provide the Required Affidavit, and Failure to be Filed in a Timely Fashion Under the Rule

1. Standard of Review

As noted above, the denial of Petitioner's motion is reviewed for an abuse of discretion. *Supra* Part VII.B.1. The Court may affirm for any reason presented in the record. *Supra* Part VII.A.1.

2. Argument

In addition to his failure to show good cause to interrogate jurors, Petitioner also failed to meet three supervisory requirements in the local rule: (1) that he "file with the Court written interrogatories proposed to be submitted to the juror(s)," (2) that he file "an affidavit setting forth the reasons for such proposed interrogatories," and (3) that he do so "within the time granted for a motion for a new trial." LRCiv 39.2(b).[14] Petitioner's persistent refusal to comply with these supervisory requirements was independent grounds for denial of his motion.

[14] At the time of trial, LRCiv 39.2 was Local Rule 1.11. Its language was identical to the current rule. *See* Rule 1.11, Rules of Practice of the United States District Court for the District of Arizona (effective September 15, 1999) (copy provided in the Supplemental Statutory Addendum, *infra* Part IX).

Petitioner was convicted, and a verdict returned, on May 20, 2003. (CR 325, 327.) The time in which to file a motion for new trial, and thus to request juror interviews, was seven days. Fed. R. Crim. P. 33(b)(2) (2002). Petitioner made no request to interview jurors in the wake of his trial, nor did he request an extension of time in order to do so. Instead, Petitioner filed his motion to interrogate jurors on May 22, 2009, six years past the deadline. (CV 1; ER 155-173.) And when he did file the years-untimely motion, Petitioner failed to submit proposed interrogatories and failed to submit an affidavit. In short, he ignored not just the "good cause" requirement, but the entirety of the local rule.

The United States objected to these defects (CV 18 at 11; ER 151), and the district court agreed, denying the motion both because there was no good cause and also because Petitioner "did not proffer proposed interrogatories or an affidavit and did not submit the instant request within the prescribed time limit." (CV 21 at 2; ER 12; *see also* CV 21 at 6; ER 16.)

When Petitioner filed his Rule 60(b)(6) Motion for Relief from Judgment—at that point some fifteen years after the verdict—he still made no effort to provide the proposed interrogatories and affidavit. (CV 71; ER 104-117.) The United States again objected, pointing out that the district court had previously "found that not only was the request untimely, but the defendant failed to proffer proposed interrogatories, or an affidavit as required by the Rule." (CV 76 at 4; ER 93.) The

United States also pointed out that the law of the case precluded re-litigating the prior order. (CV 76 at 5; ER 94 (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).) The district court agreed, rejecting Petitioner's argument that the law of the case would not apply. (CV 80 at 4-7; ER 4-7).[15]

These parts of the local rule fall well within the district court's wide discretion and inherent authority. *See United States v. Venske*, 296 F.3d 1284, 1291 (11th Cir. 2002), *cert. denied*, 540 U.S 1011 (2003) (collecting cases and explaining that "district courts have the power to make rules and issue orders prohibiting attorneys and parties from contacting jurors, whether directly or indirectly, absent prior court approval"). And "[r]equiring litigants to follow the local rules in contacting jurors is not a burdensome requirement. It is, and we think should be, standard practice." *Cuevas*, 317 F.3d at 753.

Here, the federal judges of the District of Arizona have maintained these supervisory requirements in the rule over the course of decades, and for valid reasons. Even if a party shows good cause to interview jurors, many interrogatories would still be off limits. For example, jurors "may not be questioned about the

[15] The only explanation Petitioner offered for his repeated and persistent violations of the rule was a statement in a footnote, unaccompanied by any argument or citation to authority, that "Local Rule 39.2 is unduly burdensome." (CV 71 at 4; ER 107.) Petitioner then attempted to dictate terms for his compliance with the local rule, stating that he would submit the required interrogatories (though omitting an affidavit) only "if" the district court first "grants this motion" and then "insists on [his] compliance." (CV 71 at 4; ER 107.)

deliberative process or subjective effects of extraneous information." *United States v. Bagnariol*, 665 F.2d 877, 884 (9th Cir. 1981). It is both "improper and unethical for lawyers to interview jurors to discover what was the course of deliberation of a trial jury." *Smith*, 457 F.2d at 1100.

In addition to the substance of an interrogatory, the manner of questioning can also raise concerns. This Court, for example, has "emphatically condemned" any "searching or pointed examination of jurors" after the trial is over, observing that "[i]t is incumbent upon the courts to protect jurors from" that sort of questioning. *N. Pac. Ry. Co.*, 219 F.2d at 205 n.1. The interrogatory and affidavit process required by the local rule helps to ensure that does not happen.

Petitioner stood on particularly shaky ground in seeking to interrogate jurors about supposed racial bias without court supervision. All the jurors took an oath to decide the case without prejudice and specifically certified that race played no role in their verdict. To the extent that Petitioner now seeks to develop evidence of "racial bias amongst his jurors" (OB at 21), he is implicitly seeking to develop evidence that the jurors perjured themselves. Or at the very least, that they committed "juror misconduct," and apparently his interrogations will be designed to link the jurors to historical "examples of racism in the death-penalty context, and towards the Native American people generally." (OB at 28.) This would be inappropriate, and it is doubtful that defense inquisitors would make clear to the

jurors that their client seeks to undermine the verdict by accusing them of racism, misconduct, and perjury—all without any cause. Petitioner's refusal to disclose what questions he would ask only confirms that, without supervision, he would overstep.

Similarly, the rationale behind the rule's timeliness requirement is at its apex given the extreme passage of time here. "Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process." *Tanner*, 483 U.S. at 120. We are now well beyond the "days, weeks, or months" that give pause, *id.*; we are *sixteen years* removed from the verdict. Memories have faded, people can be affected by inaccurate reporting and post-verdict publicity, and some jurors may not even be available to rebut whatever new arguments Petitioner seeks to generate. Expectations in the finality of this verdict have settled, as it has been maintained by the district court (twice), this Court (twice), and the Supreme Court (twice denying review). To set a party loose on the jurors now, sixteen years after their verdict with no cause whatsoever, would violate the very substantial concerns that permeate the federal case law discussed above.

Since courts are indisputably vested with the supervisory power embodied in the district's local rule, and since Petitioner has flatly ignored those requirements for

a decade and a half, the district court cannot have abused its discretion in denying the motion.

Independently, when the district court held in 2009 that Petitioner's motion to interview jurors should be denied because of his refusal to follow these rules, that holding became the law of the case. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Although the doctrine generally is discretionary, that discretion "is limited," and "[t]he prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *United States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010) (internal quotation omitted).

Petitioner cannot claim substantially different evidence was adduced at a subsequent trial. Everything Petitioner now claims as factual support for his supposed right to interview jurors took place in his criminal case before the verdict was returned. Nothing stopped him from bringing his motion in a timely fashion. Nor can Petitioner claim the district court's decision is clearly erroneous or works a manifest injustice. Requiring a litigant to follow simple procedures is neither, and Petitioner has no justification for failing to act until years past the deadline. His trial

counsel obviously saw no need to make such a motion, and despite filing a Section 2255 petition that is hundreds of pages long and makes myriad ineffective assistance arguments, Petitioner has never claimed that his trial counsel were deficient in not seeking to interview jurors in the time required by rule.

If Petitioner means now to argue, for the first time in his Reply Brief on appeal, that *Peña-Rodriguez* not only silently created a constitutional right to interrogate jurors without cause, but also silently created a constitutional right to do so with no court notice of the proposed interrogatories, and with no timeliness limits, this Court should reject that argument. It is procedurally improper. *Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980). And of course, for the reasons laid out above, *Peña-Rodriguez* doesn't create any sort of constitutional right to interrogate jurors without cause. *See supra* Part VII.B.2.a.

But even assuming such a right did exist, Petitioner has never even attempted to show that *Peña-Rodriguez* also undermines these supervisory aspects of the local rule. Just the opposite; when the jurors came forward in *Peña-Rodriguez*, the resulting investigation took place only "with the court's supervision" and with the jurors' affidavits "limited to recounting the exact statements made by [the juror] that exhibited racial bias." 137 S. Ct. at 861, 870. Thus, *Peña-Rodriguez* only reaffirms the validity of the district court's supervisory powers as reflected in LRCiv 39.2.

Petitioner has failed to follow the entirety of the local rule, and he has persisted in that failure on two separate occasions before two different district court judges. Both denied his motion. Both were within their discretion to do so.

**D. This Court Should Not "Grant Mitchell's Motion in the First Instance"**

Petitioner concludes by asking this Court, "after finding that the district court's decision was erroneous," to sweep aside the district court's local rules and supervisory powers and "grant [his] motion in the first instance." (OB at 23 (capitalization adjusted).) As the district court's denial of the motion was correct for each of the three reasons discussed above, *see supra* Parts VII.A-C, there is no occasion to reach this argument. In an abundance of caution, however, the United States respectfully objects to it.

By asking this Court to remand "with instructions to allow Mitchell to interview the trial jurors" (OB at 34), Petitioner seeks to circumvent the supervisory authority of the district court. His request would do an end-run around the district court's requirement and decades-long practice of prescreening interrogatories, an important rule that Petitioner has flagrantly ignored for over fifteen years without any justification. This Court should not permit Petitioner to elide the district court's legitimate supervisory role in this manner.

While appellate courts do have discretion to decide the merits of Rule 60(b) motions in the first instance, "[o]rdinarily, this analysis will be conducted by district

courts." *Phelps v. Alameida*, 569 F.3d 1120, 1134 (9th Cir. 2009). *Phelps* emphasized that this ordinary practice could be upset by "unusual circumstances," such as where the district court has been dilatory. *See, e.g.*, *id.* at 1135 (explaining that "because this appeal presents unusual circumstances—specifically, that Phelps has already suffered extremely prolonged delay in the consideration of his federal habeas petition and the district court has already had three opportunities to rule on Phelps' motion for reconsideration—we exercise that discretion and decide the merits of Phelps' Rule 60(b)(6) motion"). But that is not the case here.

1. <u>The Six Factors</u>

None of the factors to which this Court traditionally looks in deciding whether to grant Rule 60(b) relief on appeal is helpful to Petitioner.

"The first factor considers the nature of the intervening change in the law." *Lopez*, 678 F.3d at 1135. Reopening may be proper where "the intervening change in the law directly overruled the decision for which reconsideration was sought." *Phelps*, 569 F.3d at 1139. But where a change in law is "hardly extraordinary" for the petitioner's case, then "this factor weigh[s] strongly against" him. *Id.* at 1135-36. Even "a remarkable—if limited—development" in the Supreme Court's jurisprudence will only "weigh slightly" in the analysis. *Id.* at 1136. Here, as laid out above, there is no intervening change in law granting Petitioner the right to unfettered juror interrogations without cause. The change effected by *Peña-*

*Rodriguez* has universally been described as a "narrow" exception, and it applies in circumstances not present here. No court has held otherwise. This factor weighs strongly against Petitioner.

The second factor is diligence, *see id.*, which also weighs very heavily against Petitioner. As discussed, there was never any impediment to bringing the motion in a timely fashion under the rule, yet Petitioner waited for six years past the deadline. The motion was denied both because of this gross untimeliness and also because of Petitioner's patent refusal to follow the local rule's requirements enabling district court supervision. Even after *Peña-Rodriguez*, Petitioner waited a full twelve months (literally 364 days) before filing his Rule 60(b) motion, and even then he again refused to provide the required interrogatories and affidavit. To this very day, sixteen years after his verdict, he has never identified what questions he would actually put to the jurors if given the chance. Unlike the "sterling example of diligence" in *Phelps*, 569 F.3d at 1137, Petitioner has been both truant and recalcitrant in his refusal to follow the rule.

"The third factor relates to the interest in finality." *Lopez*, 678 F.3d at 1136. "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence." *Autry v. Estelle*, 464 U.S. 1, 3 (1983) (quotation omitted). "A State's interests in finality are compelling when a

federal court of appeals issues a mandate denying federal habeas relief." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).

Here, Petitioner's conviction and sentence have been repeatedly affirmed, in both the criminal and habeas cases, by every court to consider them. There has never been any doubt about Petitioner's guilt or eligibility for the death penalty. In this Court's own words, a "full review of the record shows [that] the evidence was overwhelming," and "[b]y any reasonable measure, the mitigating factors proffered by Mitchell were weak when compared to the gruesome nature of the crimes and the impact they had on the victims' family." *Mitchell*, 502 F.3d at 996.

In a case as brutal as this one, the public has a very strong interest in the finality of the judgment. "Finality is essential to both the retributive and the deterrent functions of criminal law," and "[w]ithout finality, the criminal law is deprived of much of its deterrent effect." *Calderon*, 523 U.S. at 555 (quotation omitted). "Only with an assurance of real finality can the State execute its moral judgment in a case" and vindicate the public's "'powerful and legitimate interest in punishing the guilty.'" *Id.* at 556 (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Petitioner's crimes were heinous, cruel, and depraved. The public has a strong interest in executing its moral judgment and the just punishment imposed and repeatedly affirmed in this case.

So too do members of the victims' family. As one would expect, there are diverse views among family members about capital punishment. Many, including the father of the murdered girl, strongly support a capital sentence. (*See* CV 88 at 17 & n.5 (summarizing victim impact statements attached to the Presentence Report supporting a capital sentence).) Others do not. But regardless of each family member's views on capital punishment, all of them have a strong interest in the finality of the judgment. Since Petitioner's plan appears to be to try to undermine *the entire verdict* by accusing his jurors of racial animus, he is seeking to subject the victims' family to years of additional litigation, yet another trial, and additional decades of appeals. The interest in the finality of the judgment "weighs strongly against" Petitioner's motion at this late hour. *Jones*, 733 F.3d at 840.[16]

The fourth factor takes into account the time between the finality of the judgment and the motion for Rule 60(b)(6) relief. *Lopez*, 678 F.3d at 1136. "This factor stands for the principle that a change in the law should not indefinitely render preexisting judgments subject to potential challenge." *Jones*, 733 F.3d at 840. Here, the Supreme Court denied review of the habeas case on October 3, 2016. *Mitchell*, 137 S. Ct. 38. Petitioner's Rule 60(b) Motion was filed on March 5, 2018, some

[16] Additionally, the interest in finality "weighs strongly against" a petitioner's Rule 60(b) motion where an execution date has been set. *Jones*, 733 F.3d at 840; *see also Lopez*, 678 F.3d at 1136 ("The State's and the victim's interests in finality, especially after a warrant of execution has been obtained and an execution date set, weigh against granting post-judgment relief.").

seventeen months later. This is a substantial period of time and weighs against reopening a long-closed judgment.

"The fifth factor looks to the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law." *Jones*, 733 F.3d at 840. As discussed, there is no such relationship here. Petitioner is seeking to read *Peña-Rodriguez* in a way that no court has ever read it. This weighs strongly against reopening.

The sixth factor is comity. To the extent relevant, "[g]ranting his motion would upset principles of comity" where the petitioner "seeks to bring merits claims disguised as a Rule 60(b) motion," a practice that undermines both the letter and the spirit of AEDPA. *Id.* That is precisely what is happening here. *See supra* Part VII.A. Also, where the petitioner's merits argument is weak and he has failed to show diligence, "the comity factor does not favor reconsideration." *Lopez*, 678 F.3d at 1137. This factor does not support Petitioner.

2. <u>Equity</u>

Lastly, Petitioner argues that equitable considerations entitle him to interrogate the jurors, without good cause, at this very late date. (OB at 30-33.) Equity does not support subjecting jurors to post-trial interrogations about "racial bias" that no one has any reason to believe exists. These jurors completed their public service in a lengthy trial about a gruesome and emotionally wrenching double

murder. The jurors had to look at photos of the naked, dismembered bodies of a grandmother and a child. They had to listen to grief-stricken testimony about the impact of these murders on the lives of others. And they had to submit themselves to searching inquiries about their private lives, including on issues of race. They repeatedly swore on penalty of perjury that their verdict had nothing to do with it. These jurors have earned the right to peace and protection from a baseless fishing expedition to try to impugn their verdict years later.

Petitioner seeks equitable relief, but "[h]e who comes into equity must come with clean hands." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933). Petitioner's hands are not clean in any sense. He failed to file his request until six years past the deadline, with no explanation. When he did file the untimely motion, he failed to follow the rules, again without explanation. When he filed the Rule 60(b) motion, at that point fifteen years past the deadline, he still failed to follow the rules. He cannot lay claim to the benefits of equity.

Each of Petitioner's contrary arguments is meritless. In fact, this Court has already rejected most of them. The Court previously rejected all of his arguments about the jury pool, the voir dire process, the use of peremptory and for-cause challenges, and the ultimate composition of the petit jury. *See Mitchell*, 502 F.3d at 949-59. Contrary to the arguments Petitioner continues to recycle from his prior appeal, this Court specifically held that the jury pool was fair and representative,

affirming the district court's findings that "36 of the 207-person venire (17.39%) identified themselves as Native American" while "Native Americans comprise 16.7% of the Prescott master jury wheel (from which the jury was drawn in this case)" and "the adult population of the Prescott Division was 18.64% Native American." *Id.* at 950.[17] This Court also rejected all of Petitioner's arguments about seeking and obtaining a capital sentence in this case. *Id.* at 946-49.

Petitioner's objection to "variability" among local district court rules also fails. (OB at 32-33.) As laid out above, this Court has strongly disapproved of post-trial juror interrogations and repeatedly affirmed the discretion district courts have to prohibit them absent a showing of good cause. *See supra* Part VII.B.2. The district's views align with the principles this Court has adopted, and any diversity of views amongst the bench only confirms the breadth of the discretion with which the federal district courts are inherently vested on this issue.

Lastly, Petitioner suggests that had he been convicted of these murders in an Arizona state court, he would have an unqualified right to interrogate jurors without good cause. (OB at 33.) Petitioner represents that "all 116 inmates on death row in

[17] By ignoring this Court's holding on these issues in order to suggest (without any evidence) that his jury panel was unfair, Petitioner reveals why the jurors need protection. The jurors are not intrinsically suspect because of the color of their skin, nor are they to be saddled with a "shameful history of oppressing the Native American people" or "a long history of racial injustice." (OB at 31.) The jurors are individuals, entitled to be judged on the content of their own character, and there is no reason to suspect racial animus in any of them.

Arizona" are free to informally interview jurors in their habeas cases. (OB at 33.) Not so. Some judges in Section 2254 cases in the District of Arizona, including capital habeas cases, have prohibited juror contact absent a preliminary showing of cause.[18]

As explained by Judge Humetewa in one such case, "[w]hile there is no corresponding rule prohibiting counsel from invading the provenance of state jurors in federal habeas proceedings, the absence of a rule is not dispositive, as the Court is no less concerned with the protection of state jurors than federal jurors, and has the discretion to address these concerns on a case by case basis." *Cota*, 2017 WL 713640, at *2.

In the same way, Arizona state courts robustly endorse the principles embodied in LRCiv 39.2, permitting state judges to impose good cause requirements that bar post-trial juror interrogations, regardless of what the rules might be in a later habeas case. For instance, in *State v. Paxton*, "[a]t the conclusion of the trial, the trial judge ordered that there be no contact or communication with the jurors unless

[18] *See, e.g.*, *Cota v. Ryan*, No. CV-16-03356-PHX-DJH, 2017 WL 713640, at *1-3 (D. Ariz. Feb. 23, 2017) (Diane J. Humetewa, J.) (granting motion to preclude juror contact in a capital habeas case; "the proper way for Petitioner to proceed is to first make a preliminary showing that extraneous prejudicial information or outside influence was improperly brought to the jury's attention, and seek leave of the court to approach the jury"); *Lee v. Schriro*, No. CV 04-039-PHX-MHM, 2006 WL 2827162, at *13-14 (D. Ariz. Sept. 25, 2006) (Mary H. Murguia, J.) (denying petitioner's motion in a capital habeas case to "interview and obtain statements from jurors" where the petitioner failed to articulate a valid basis for the request).

a motion with accompanying affidavit establishing good cause was granted." 701 P.2d 1204, 1205 (Ariz. App. 1985). The Court of Appeals affirmed, finding that such orders are within the trial court's discretion and that the motion to interview jurors "was speculative at best and does not provide sufficient grounds to warrant further investigation." *Id.* The Court of Appeals expressly held that there was no constitutional right, federal or state, to interview jurors in a state case: "we do not find any United States or Arizona constitutional guarantee of a fair and impartial trial violated by the procedure followed." *Id.*[19]

In sum, neither law nor equity supports Petitioner's request to brush aside the district court's longstanding local rule. He does not show the extraordinary circumstances necessary for Rule 60(b) relief.

---

[19] Recognizing this practice, the state ethical rules prohibit communication with a juror "after discharge of the jury if . . . the communication is prohibited by law *or court order*." Ariz. R. Prof'l Conduct, ER 3.5(c)(1) (emphasis added). All counsel practicing in the District of Arizona are bound by the Arizona Rules of Professional Conduct. LRCiv 83.2(e); LRCrim 57.13.

## VIII. CONCLUSION

For the foregoing reasons, the district court did not abuse its discretion. Its order should be affirmed.

MICHAEL BAILEY
United States Attorney
District of Arizona

KRISSA M. LANHAM
Deputy Appellate Chief

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney

# IX. SUPPLEMENTAL STATUTORY ADDENDUM

## Rule 1.11, Rules of Practice of the United States District Court for the District of Arizona (effective September 15, 1999)

UNITED STATES DISTRICT COURT

Rule 1.11

COMMUNICATIONS WITH TRIAL JURORS

(a) **Before or During Trial**. Absent an order of the Court and except in the course of in-court proceedings, no one shall directly or indirectly communicate with or cause another to communicate with a juror, prospective juror, or member of such juror's or prospective juror's family before or during a trial.

(b) **After Trial**. Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. See Federal Rules of Evidence, Rule 606(b). Following the interview, a second affidavit must be filed indicating the scope and results of the interviews with jurors and setting out the answers given to the interrogatories.

(c) **Juror's Rights**. Except in response to a Court order, no juror is compelled to communicate with anyone concerning any trial in which the juror has been a participant.

## X. STATEMENT OF RELATED CASES

To the knowledge of counsel, there are no related cases pending.

## XI. CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 18-17031

I certify that: (check appropriate option(s))

☒ 1. Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening/answering/reply/cross-appeal brief is

☒ Proportionately spaced, has a typeface of 14 points or more and contains 12,759 words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words), or is

☐ Monospaced, has 10.5 or fewer characters per inch and contains _____ words or ___ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

☐ 2. The attached brief is **not** subject to the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because

☐ This brief complies with Fed. R. App. P. 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages;

☐ This brief complies with a page or size-volume limitation established by separate court order dated __ and is

☐ Proportionately spaced, has a typeface of 14 points or more and contains ___ words, or is

☐ Monospaced, has 10.5 or fewer characters per inch and contains pages or ___ words or __ lines of text.

September 27, 2019
Date

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney

## XII. CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September, 2019, I electronically filed the Brief of Appellee with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney