CA No. 18-17031

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LEZMOND CHARLES MITCHELL,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

DC No. 3:09-cv-08089-DGC
(Criminal No. 3:01-cr-01062-DGC)

**DEATH PENALTY CASE**

# PETITIONER-APPELLANT'S PETITION FOR REHEARING/REHEARING EN BANC

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

The Honorable David G. Campbell
United States District Judge

AMY M. KARLIN
Interim Federal Public Defender
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310
Email: Jonathan_Aminoff@fd.org
Attorneys for Petitioner-Appellant
LEZMOND CHARLES MITCHELL

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................... 1

II. BACKGROUND ........................................................................... 2

III. REASONS FOR GRANTING THE PETITION ........................................... 4

A. The Panel's opinion conflicts with *Peña-Rodriguez* because it deprives defendants of the ability to unearth the evidence that the Supreme Court has held defendants are constitutionally entitled to present........................................................................... 4

B. The Panel's opinion overlooks material points of law and fact by failing to consider all of the factors that govern the "extraordinary circumstances" analysis........................................................... 11

IV. CONCLUSION........................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Buck v. Davis*,
137 S. Ct. 759 (2017)....................13, 15, 16

*California v. Brown*,
479 U.S. 538 (1987)....................10

*Furman v. Georgia*,
408 U.S. 238 (1972)....................8

*Hall v. Haws*,
861 F.3d 977 (9th Cir. 2017) ....................12

*Mitchell v. United States*,
790 F.3d 881 (9th Cir. 2015) ....................3, 14

*Mitchell v. United States*,
958 F.3d 775 (9th Cir. 2020) ....................*passim*

*Peña-Rodriguez v. Colorado*,
137 S. Ct 855 (2017)....................*passim*

*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009) ....................12, 13, 16

*In re Robinson*,
917 F.3d 856 (5th Cir. 2019) ....................8

*Tharpe v. Ford*,
139 S. Ct. 911 (2019)....................6

*United States v. Baker*,
899 F.3d 123 (2d Cir. 2018) ....................7, 8

*United States v. Birchette*,
908 F.3d 50 (4th Cir. 2018) ....................7, 8

*United States v. Duncan*,
643 F.3d 1242 (9th Cir. 2011) ....................10

## TABLE OF AUTHORITIES

**Page(s)**

*United States v. Fell*,
360 F.3d 135 (2d Cir. 2004) ....................................................................9

*United States v. Gallaher*,
624 F.3d 934 (9th Cir. 2010) ..................................................................13

*United States v. Lee*,
374 F.3d 637 (8th Cir. 2004) ....................................................................9

*United States v. Mikhel and Kadamovas*,
889 F.3d 1003 (9th Cir. 2018) ................................................................10

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007) ..........................................................14, 15

*United States v. Pulliam*,
405 F.3d 782 (9th Cir. 2005) ....................................................................7

*United States v. Robinson*,
872 F.3d 760 (6th Cir. 2017) ................................................................7, 8

*Woodson v. North Carolina*,
428 U.S. 280 (1976)...................................................................................8

**Federal Statutes**

18 U.S.C. § 3598 ......................................................................................13

28 U.S.C. § 2255 ........................................................................2, 3, 9, 10

**Other Authorities**

Federal Rule of Appellate Procedure 35 ...........................................1, 10

Federal Rule of Civil Procedure 60 ..........................................................*passim*

Federal Rule of Criminal Procedure 33 .....................................................2

Federal Rule of Evidence 606(b) .....................................................2, 7, 8, 11

D. Alaska Local Rule 39.5(b) ....................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

D. Arizona Local Civil Rule 39.2(b) ..........................................................2, 5, 8, 9

D. Arizona Local Criminal Rule 24.2......................................................................2

D. Montana Local Criminal Rule 24.2(b)...............................................................9

E.D. Washington Local Criminal Rule 31(e) .........................................................9

W.D. Washington Local Criminal Rule 31(e) ........................................................9

## I. INTRODUCTION

In affirming the denial of Lezmond Mitchell's request to conduct post-verdict juror interviews to investigate the possibility of racial bias, the Panel's opinion concludes: "Our decision today does not mean that defendants will lack opportunities to learn of racial bias occurring in their cases." *Mitchell v. United States*, 958 F.3d 775, 792 (9th Cir. 2020) ("*Mitchell III*"). Yet, the Panel's opinion expressly allows district courts to bar defendants from interviewing their trial jurors about racial bias. Defendants who find themselves in the unlucky position of having been tried in the District of Arizona, Montana, and Alaska are explicitly deprived of the opportunity to carry out a reasonable investigation into juror bias because of overly restrictive local rules in those districts. As a result, the panel proposes to send Mitchell to his execution without affording him the ability to conduct a reasonable post-conviction investigation, of the sort that most federal capital and non-capital movants would be permitted to pursue.

En banc review is required because this proceeding involves questions of exceptional importance. *See* Fed. R. App. P. 35(b)(1)(B). First: Must defendants be required to prove racial misconduct before being allowed to contact jurors to investigate whether racial bias affected the verdict? Second: When does a new law constitute "extraordinary circumstances" for purposes of Federal Rule of Civil

Procedure 60(b)(6), and what are the factors that should be considered in that analysis?

## II. BACKGROUND

Lezmond Mitchell was sentenced to death by the United States District Court for the District of Arizona in 2003. Arizona District Court Local Civil Rule 39.2(b), made applicable to criminal matters via Local Criminal Rule 24.2, states that:

> Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial[1]. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. *See* Federal Rules of Evidence, Rule 606(b). Following the interview, a second affidavit must be filed indicating the scope and results of the interviews with jurors and setting out the answers given to the interrogatories.

In accordance with these rules, on May 22, 2009, Mitchell moved the district court for authorization to interview his jurors in advance of filing his 28 U.S.C. section 2255 motion. 2ER 155-173. In that motion, Mitchell argued that in order

[1] Per Federal Rule of Criminal Procedure 33(b)(2), a motion for new trial is timely if filed within 14 days of the verdict.

to complete a thorough investigation in support of his section 2255 litigation, Mitchell needed access to the jurors to determine, *inter alia*, whether jurors "allowed bias or prejudice to cloud their judgment." 2ER 156. Additionally, Mitchell laid out several grounds to establish good cause. 2ER 158-62. The district court denied Mitchell's request and ultimately denied Mitchell's section 2255 motion without affording him an evidentiary hearing. 1ER 9-20. This court affirmed. *Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015) ("*Mitchell II*").

In 2017, the Supreme Court decided *Peña-Rodriguez v. Colorado*, 137 S. Ct 855 (2017), which created a constitutional exception to evidentiary rules barring post-trial statements of jurors concerning racial bias that may have affected the verdict. Mitchell filed a motion to re-open his section 2255 proceedings pursuant to Rule 60(b)(6). 2ER 104-117. The district court denied that motion, finding that Mitchell had failed to establish extraordinary circumstances because *Peña-Rodriguez* does not give Mitchell the right to interview jurors absent a reason to believe his jurors may have been biased against him. 1ER 1-8. After this Court granted Mitchell a COA on the issue of whether the district court appropriately denied the Rule 60(b) motion, the Department of Justice scheduled Mitchell's execution for December 11, 2019. This Court stayed the execution pending resolution of this appeal. DE 26. On April 30, 2020, the panel issued its opinion

affirming the district court's denial of Mitchell's Rule 60(b). *Mitchell III*, 958 F.3d 775 (9th Cir. 2020).

## III. REASONS FOR GRANTING THE PETITION

### A. The Panel's opinion conflicts with *Peña-Rodriguez* because it deprives defendants of the ability to unearth the evidence that the Supreme Court has held defendants are constitutionally entitled to present.

The *Peña-Rodriguez* Court noted that the "practical mechanics of acquiring and presenting [evidence of racial bias amongst jurors] will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Peña-Rodriguez*, 137 S. Ct. at 869. Seizing on this language, the Panel's opinion holds that *Peña-Rodriguez* did not affect the law governing juror investigation. *Mitchell III*, 958 F.3d at 790. Indeed, the Panel's opinion interpreted *Peña-Rodriguez* as supporting limitations on access to jurors. *Id.* at 790.

But this narrow focus is inconsistent with the scope and impact of *Peña-Rodriguez*. As one justice noted, the majority opinion is a "startling development" that drastically changes "the age-old" no-impeachment rule such that "it is doubtful that there are principled grounds for preventing the expansion of [that] holding." *Peña-Rodriguez*, 137 S. Ct. at 874 (Alito, J., dissenting). And there are no principled grounds for prioritizing local rules that virtually eliminate the ability of capital defendants to interview jurors over the clearly established constitutional

right to a jury trial free from racism. To exemplify the limits on juror access that the *Peña-Rodriguez* Court actually contemplated, the Court cited to jury instructions from Colorado, Florida, Massachusetts, and New Jersey, none of which impose any limitation on an attorney contacting a juror. *Id.* at 870. Rather, each of these instructions merely informs the jurors that they may be approached by counsel after the trial, and that they are under no obligation to speak with counsel, but may do so if they wish. *Id*.

Far from supporting a limitation like Arizona Local Rule 39.2, the *Peña-Rodriguez* Court instructed lower courts to treat racial bias with added precaution, holding that a "constitutional rule that racial bias in the justice system must be addressed—including, in some instances, after the verdict has been entered—is necessary to prevent a systemic loss of confidence in jury verdicts, a confidence that is a central premise of the Sixth Amendment trial right." *Id*. at 869. Indeed, in dissent, Justice Alito noted that many jurisdictions have rules that actually prohibit or restrict post-verdict contact with jurors, and "whether those rules will survive today's decision is an open question…." *Id*. at 884 (Alito, J. dissenting). As Justice Alito explained, "the majority approvingly refers to the widespread rules limiting attorney's contact with jurors. But under the reasoning of the majority opinion, it is not clear why such rules should be enforced when they come into

conflict with a defendant's attempt to introduce evidence of racial bias." *Id*. at 884 n.15.

Here, the Panel's opinion disregarded Justice Alito's view and answered the question left open by *Peña-Rodriguez*, finding that if a death-sentenced petitioner finds himself in the unfortunate position of being sentenced in a jurisdiction which bars jury interviews, then that petitioner may not investigate potential violations of his constitutional rights. This violates the spirit of *Peña-Rodriguez* because it stymies the ability of a petitioner to investigate, and leaves meaningless a constitutional right to present evidence of juror bias in the absence of a right to investigate. Notwithstanding *Peña-Rodriguez*'s recognition that racial bias is "a familiar and recurring evil," 137 S. Ct. at 868, the Panel's opinion has left *Peña-Rodriguez* without any force. If "[t]he work of "purg[ing] racial prejudice from the administration of justice" is far from done, *Tharpe v. Ford*, 139 S. Ct. 911, 913 (2019) (quoting *Peña-Rodriguez,* 137 S. Ct. at 867) (Sotomayor J., respecting the denial of certiorari), then it is incumbent on the Court to recognize that *Peña-Rodriguez* is not just an exception to the rules of evidence, but also to the rules barring post-conviction interviews with jurors. Otherwise, for those like Mitchell who find themselves in a jurisdiction that requires evidence of racial bias on the jury before they can investigate and present evidence of racial bias on the jury, *Peña-Rodriguez* "comes dangerously close to creating a right without a remedy,

something which is strongly disfavored in American jurisprudence." *United States v. Pulliam*, 405 F.3d 782, 796 (9th Cir. 2005) (Wardlaw, J., dissenting).

In support of its contention that *Peña-Rodriguez* did not make any change in the law regarding access to jurors, the Panel's opinion asserts that all other circuits that have reached this issue are in accord. *Mitchell III*, 958 F.3d at 791 (citing *United States v. Baker*, 899 F.3d 123 (2d Cir. 2018); *United States v. Birchette*, 908 F.3d 50 (4th Cir. 2018); and *United States v. Robinson*, 872 F.3d 760 (6th Cir. 2017)). However, there are crucial distinctions between the three cases relied upon by the Panel's opinion and Mitchell's case. Notably, *Baker*, *Birchette*, and *Robinson* are all non-capital cases, and therefore do not have the same heightened reliability requirement guaranteed for petitioners sentenced to death. Moreover, the circumstances of each case are readily distinguishable from Mitchell's. For example, the petitioner in *Baker* was tried in the Northern District of New York, which (unlike the District of Arizona) does not have a local rule barring post-verdict juror interviews. There, a juror approached trial counsel and sent him a lengthy email detailing what the juror felt were improprieties with the deliberations. The Second Circuit affirmed the trial court's ruling that the contents of the juror's email, which did not involve racial issues, were barred by Rule 606(b) notwithstanding *Peña-Rodriguez*. Similarly, in *Birchette*, a juror approached trial counsel and detailed issues that arose during the deliberations

between the jurors. The Fourth Circuit affirmed the trial court's holding that the statements of the juror were not admissible under Rule 606(b) notwithstanding *Peña-Rodriguez*. Finally, in *Robinson*, trial counsel interviewed two jurors and then used those statements in support of a motion for new trial. The Sixth Circuit affirmed the trial court's ruling that the statements, which did not involve racial bias directed at the defendant, were not admissible under Rule 606(b) and *Peña-Rodriguez.* Therefore, in stark contrast to Mitchell's case, counsel for the petitioners in *Baker*, *Birchette*, and *Robinson* had the benefit of having been able to communicate with the jurors, and the reviewing court was able to consider the contents of those jurors' statements. The only post-*Peña-Rodriguez* circuit decision that supports barring a death-sentenced petitioner from having any contact with his jurors is *In re Robinson*, 917 F.3d 856 (5th Cir. 2019), a decision the Panel's opinion expressly declined to follow. *Mitchell III*, 958 F.3d at 785-86. The Panel's opinion improperly overlooks these important distinctions, to Mitchell's detriment.

The Panel's opinion also failed to address Mitchell's argument that equity favors departing from Local Rule 39.2. This omission conflicts with longstanding Supreme Court precedent requiring heightened reliability in capital proceedings. *See, e.g., Furman v. Georgia*, 408 U.S. 238 (1972); *Woodson v. North Carolina*, 428 U.S. 280 (1976); *see also* DE 13 at 18-19, 30-33; DE 28 at 12-13 and n.3. In

order to achieve such increased reliability, courts should consider more evidence, not less, in deciding capital cases. *United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004) (citing *Gregg v. Georgia*, 428 U.S. 153, 203-04 (1976)); *United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004). Yet, the Panel's opinion closes the door on petitioners, like Mitchell, from investigating and then proffering evidence in his case.

The Panel's opinion also overlooks the arbitrariness of which defendants will have the opportunity to develop evidence of racial bias. Indeed, Mitchell is barred from investigating evidence of juror bias in his case purely by virtue of the fact that he was tried in Arizona. Within the Ninth Circuit, there are 15 federal judicial districts. Of those, 10 do not pose any limitation on attorneys contacting jurors post trial. Two require leave of court without a "good cause" showing. E.D. WA LR CR 31(e); W.D. WA LR CR 31(e). Two require a good cause showing and have a strict time limitation that bars post-conviction counsel from conducting this investigation. D. AZ. LR Civ 39.2; D. MT LR CR 24.2(b). And one bars all post-verdict interviews unless the juror initiates contact. D. AK LR CV 39.5(b). Had Mitchell been tried in any one of the first 10 districts mentioned, he would have interviewed his jurors prior to filing his section 2255 motion and could have raised all appropriate claims at that time. Had Mitchell been tried in either district in Washington, his motion to interview jurors may have been granted and, if so, he

could have used the fruits of that investigation to support his section 2255 motion. Obviously Mitchell's motion was denied in Arizona, which means it likely would have been denied in Montana and Alaska. The constitutional implications of this striking variation in post-verdict juror access within this Circuit warrants review as a matter of exceptional importance. Fed. R. App. P. 35.

The fact that Mitchell's ability to conduct an adequate post-conviction investigation is entirely dependent on the location of his trial indicates that the death-penalty process is marred by arbitrariness of the sort the Supreme Court found intolerable in the death-penalty context. *California v. Brown*, 479 U.S. 538, 541 (1987) ("death penalty statutes [must] be structured so as to prevent the penalty from being administered in an arbitrary and unpredictable fashion"). In more concrete terms, at present, there are four men under a federal death sentence from within the Ninth Circuit. Joseph Duncan was sentenced to death by the District Court for the District of Idaho. *United States v. Duncan*, 643 F.3d 1242 (9th Cir. 2011). Iouri Mikhel and Jurijus Kadamovas were sentenced to death by the District Court for the Central District of California. *United States v. Mikhel and Kadamovas*, 889 F.3d 1003 (9th Cir. 2018). There is no local rule barring Duncan, Mikhel, or Kadamovas from interviewing their jurors. But Mitchell, the only person of color amongst this group of four, shall go to his execution not knowing how racial bias influenced his jury. Such arbitrariness in the application

of the death penalty cannot stand, and shall lead to the type of "systemic loss of confidence in jury verdicts" that the *Peña-Rodriguez* Court described as contrary to the Sixth Amendment trial right. 137 S. Ct. at 869.

**B. The Panel's opinion overlooks material points of law and fact by failing to consider all of the factors that govern the "extraordinary circumstances" analysis.**

The Panel's opinion finds that Mitchell did not meet the "extraordinary circumstances" requirement of Rule 60(b)(6) because while "*Peña-Rodriguez* established a new exception to Rule 606(b), this change in law left untouched the law governing investigating and interviewing jurors." *Mitchell III*, 958 F.3d at 790. As a result, *Peña-Rodriguez* "did not make any change in the law regarding lawyer access to jurors, let alone one so significant that it would constitute 'extraordinary circumstances' for purposes of Rule 60(b)." *Id.* As Mitchell argues in Part A, *supra*, the Panel's opinion conflicts with *Peña-Rodriguez* in its assessment of how that case actually changed the law regarding access to jurors. And as the Court's first-ever exception to the no-impeachment rule, it is certainly monumental in its effort to "eliminate[]" the "pernicious" effect of racial discrimination "in the administration of justice." *Peña-Rodriguez*, 137 S. Ct. at 868 (internal quotations omitted).

The Panel's opinion's analysis of Rule 60(b)(6)'s extraordinary circumstances doctrine also misapprehends Ninth Circuit and Supreme Court law

by placing undue emphasis on whether *Peña-Rodriguez*, standing alone, is sufficiently significant as an "intervening change in law" to warrant relief. *Mitchell III*, 958 at 790-91. While the impact of a change in law is undoubtedly important, this Circuit has made clear that it is not the only element to consider. *Phelps v. Alameida*, 569 F.3d 1120, 1135-40 (9th Cir. 2009). Factors supporting Rule 60(b)(6) relief include "(1) a showing of extraordinary circumstances, such as a change in intervening law; (2) the petitioner's exercise of diligence in pursuing the issue during federal habeas proceedings; (3) interest in finality; (4) delay between the finality of the judgment and the motion for Rule 60(b)(6) relief; (5) degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought; and (6) comity." *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) (citing *Phelps*, 569 F.3d at 1135) (emphasis added).

In his briefing, Mitchell set forth extensive facts and argument explaining how he satisfies the *Phelps* factors and how the unique facts of this case warrant Rule 60(b)(6) relief. DE 13 at 24-30. As discussed above, the Panel's opinion found only that *Peña-Rodriguez* is not an extraordinary circumstance, and failed to address the entirety of Mitchell's arguments, including how he satisfied the remaining *Phelps* factors and the extraordinary facts that led to Mitchell's conviction and death sentence. With this omission, the Panel's opinion conflicts with *Phelps*, which requires courts "to intensively balance *numerous factors*,

including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Phelps*, 569 F.3d at 1124 (citing *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007) (internal quotation marks omitted)). As the *Phelps* Court itself recognized, the factors set forth in that opinion are not "a rigid or exhaustive checklist." *Id.* at 1135. This is because "Rule 60(b)(6) is a grand reservoir of equitable power, and it affords courts the discretion and power to vacate judgments whenever such action is appropriate to accomplish justice." *Id.* (internal citations and quotation marks omitted); *see also Buck v. Davis*, 137 S. Ct. 759, 778 (2017) ("In determining whether extraordinary circumstances are present, a court may consider a wide range of factors," including "the risk of injustice to the parties.") In this case, the risk of injustice to Mitchell is, in fact, extraordinary—as extraordinary as the confluence of unique factors that resulted in Mitchell being the only Native American on federal death row:

- Like all but one of the over 500 federally-recognized Native American and Alaska Native tribes, the Navajo Nation did not opt-in to the Federal Death Penalty Act, thereby denying the federal government the ability to sentence a tribal member to death for an intra-Indian crime occurring on tribal land. 18 U.S.C. § 3598; *United States v. Gallaher*, 624 F.3d 934, 936 (9th Cir. 2010).

- Nevertheless, in "an aggressive expansion of the federal death penalty," *Mitchell II*, 790 F.3d at 894-97 (Reinhardt, J., dissenting) resulting in "a betrayal of a promise made to the Navajo Nation," *Mitchell III*, 958 F.3d at 793, the government arbitrarily pursued a death sentence against Mitchell not for murder, but for the federal crime of carjacking, thereby avoiding the application of the tribal option. Mitchell's case is the only one where the federal government has broken its promise to Native Americans not to pursue the death penalty unless the tribe explicitly accepts that exercise of the federal government's jurisdiction.
- The Navajo Nation, members of the victims' family, and even the local United States Attorney's Office all vociferously objected to Mitchell's capital prosecution. *Mitchell II*, 790 F.3d at 894-897 (Reinhardt, J., dissenting). Those requests were 'ignored and dishonored." *Id.*
- On the government's motion, Mitchell's trial was moved from Prescott, AZ (the closest federal courthouse to the Navajo Nation) to Phoenix, AZ, over 100 miles away. *United States v. Mitchell*, 502 F.3d 931, 950 (9th Cir. 2007).
- Mitchell was then tried before a jury that consisted of only one Native American. The jury was picked from a 207-person venire which included 30 Native Americans. Of those 30 people, 12 were excluded

due to their Navajo language and/or beliefs. In fact, when the government attempted to exclude the lone surviving Native American juror, the Court sustained Mitchell's *Batson* objection and denied the government's strike. The government was, however, successful in removing the only African American juror on the venire. DE 13 at 31-32.

- The Government's closing argument to the jury was "riddled with comments that should not have been made." *United States v. Mitchell*, 502 F.3d 931, 995 (9th Cir. 2007) ("*Mitchell I*"). These comments included references to Navajo religion and culture, and also to the Old West wherein Mitchell "would have been taken out back, strung up." *Id*.
- Mitchell's jury was presented with a letter from the Navajo Nation stating that they opposed capital punishment generally and as applied to Mitchell. Only 7 jurors found the Navajo Nation's plea for their member's life, and objections on sovereignty grounds, mitigating.

DE 13 at 30. These events are all relevant to the extraordinary circumstances inquiry and whether justice and equity favor granting Mitchell's Rule 60(b)(6) motion. *Buck*, 137 S. Ct. at 778. The Panel's opinion improperly dismisses them from consideration because the claims "did not constitute errors at trial" without citing to any authority for such a proposition. *Mitchell III*, 958 F.3d at 791. Such

reasoning is antithetical to Rule 60(b) analysis: it is often precisely because no error was found in previous proceedings that a petitioner seeks Rule 60(b) relief. For example, in *Buck v. Davis*, the petitioner raised claims alleging racial bias during his trial that were repeatedly denied by state and federal courts. *See, e.g.*, *Buck*, 137 S. Ct. at 770-72. Those claims, their denials, and subsequent developments in the law were all considered by the Supreme Court as part of the universe of extraordinary circumstances warranting Rule 60(b) relief in Buck's case. *Id.* at 777-80. It was simply wrong for the Panel to rely on this Court's previous denial of his racial bias-related claims in its assessment of his extraordinary circumstances argument. *Id.*; *see also Phelps*, 569 F.3d at 1124 (a court analyzing a Rule 60(b) claim has an obligation to heed the "incessant command of the court's conscience that justice be done in light of all the facts.").

While some of the extraordinary and disturbing elements of Mitchell's prosecution and conviction were separately addressed in the concurring opinions of Judges Christen, *Mitchell III*, 958 F.3d at 792-93, and Hurwitz, *Id.* at 793-94, they rightly should have been considered by the panel as part of the extraordinary circumstances calculus. As the Panel's opinion now stands, it contravenes *Buck* because "the equitable factors offered in conjunction with the strength of the underlying constitutional error alleged enables [petitioner] to satisfy the high standard of Rule 60(b)(6)." *Buck*, 137 S. Ct. at 778.

## IV. CONCLUSION

The *Peña-Rodriguez* Court instructed that "[t]he Nation must continue to make strides to overcome race-based discrimination." 137 S. Ct. at 871. The Panel's opinion makes no such strides, but instead stands pat. An investigation into racial bias should be welcomed by the parties and encouraged by the courts. For the above reasons, the Panel should grant Mitchell's Petition for Rehearing, vacate the Opinion, and order briefing and re-argument. Alternatively, the Court should grant Mitchell's Petition for Rehearing *En Banc* and grant relief.

Respectfully submitted,

AMY KARLIN
Interim Federal Public Defender

DATED: June 15, 2020 By */s/ Jonathan C. Aminoff*

JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorney for Petitioner-Appellant
LEZMOND CHARLES MITCHELL

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing or Answers

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 18-17031

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 3,853.

*(Petitions and answers must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** /s/ Jonathan C. Aminoff **Date** Jun 15, 2020

*(use* "s/[typed name]" *to sign electronically-filed documents)*