UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEZMOND C. MITCHELL,<br>AKA Lezmond Charles Mitchell,<br><br>Petitioner-Appellant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent-Appellee. | C.A. No. 18-17031<br><br>D. Ct. No. 3:09-cv-08089-DGC<br>Criminal Case No. 3:01-cr-01062-DGC<br><br>**RESPONSE TO MOTION TO STAY MANDATE**<br><br>**(Capital Case)**<br><br>**Ruling Requested by July 15, 2020** |

The United States respectfully opposes Petitioner's motion to stay the mandate. Mitchell fails to cite, let alone meet, the applicable standard for a stay pending disposition of a petition for certiorari. Instead, he plans to raise an argument that has been uniformly rejected by the Courts of Appeals and, just five months ago, the Supreme Court itself. Petitioner's requested five-month delay in issuing the mandate would simply delay the lawful execution of a repeatedly-affirmed sentence. It should be denied, and the mandate issued as scheduled. The Supreme Court, not this Court, is the appropriate forum from which to seek further relief, and Petitioner has sufficient time in which to attempt to do so.

**DISCUSSION**

To obtain a stay of the mandate pending the filing of a petition for a writ of certiorari, the movant "must show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). The standards for granting such a stay are "well established":

> There must be a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction; there must be a significant possibility of reversal of the lower court's decision; and there must be a likelihood that irreparable harm will result if that decision is not stayed.

*White v. Fla.*, 458 U.S. 1301, 1302 (1982) (alteration omitted) (quoting *Times-Picayune Publ'g Corp. v. Schulingkamp*, 419 U.S. 1301, 1305 (1974) (both by Powell, J., in chambers)).

The Courts of Appeals apply this standard. *See, e.g.*, *United States v. Silver*, 954 F.3d 455, 457-58 (2d Cir. 2020); *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007); *Al-Marbu v. Mukasey*, 525 F.3d 497, 499 (7th Cir. 2008); *John Doe I v. Miller*, 418 F.3d 950, 951 (8th Cir. 2005). *See generally United States v. Holland*, 1 F.3d 454, 456-57 (7th Cir. 1993) (surveying Supreme Court case law and noting that "judges of the lower courts are to apply the same criteria"). *Cf. Makekau v. State*, 943 F.3d 1200, 1204-05 (9th Cir. 2019) (noting standard applies to stays of execution).

Petitioner references only Circuit Rule 41-1, which provides that a motion to stay the mandate "will be denied if the Court determines that the petition for certiorari would be frivolous or filed merely for delay." The absence of a frivolous or bad faith cert petition is a necessary, but not sufficient, condition for staying issuance of the mandate. The same rule emphasizes that a motion to stay the mandate "will not be granted as a matter of course." Ninth Cir. Rule 41-1. If all that were required was the absence of a frivolous or bad faith petition, stays of the mandate would, by definition, be "a matter of course." Rather, under Federal Rule 41, the petition must present a "*substantial* question," and there must also be "good cause for a stay." Fed. R. App. P. 41(d)(1) (emphasis added). Here, Petitioner's motion fails to meet any part of the applicable standard.

### A. The Forecasted Certiorari Petition is Meritless and Stands No Substantial Chance of Success.

Petitioner fails to show that his petition would present a substantial question that would garner four votes for review, much less five votes to overrule this Court. Indeed, the Supreme Court's denial of certiorari to a petition raising the same issue fewer than five months ago defeats the possibility of such a showing.

In evaluating whether the Supreme Court is likely to grant certiorari, this Court should "consider the issues that the applicant plans to raise in the certiorari petition in the context of the case history, the Supreme Court's treatment of other

cases presenting similar issues and the considerations that guide the Supreme Court in determining whether to issue a writ of certiorari." *Al-Marbu*, 525 F.3d at 499.

Petitioner forecasts a cert petition claiming that *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), created a new constitutional right to post-trial juror interrogations without any showing of good cause. The district court rejected this argument. The panel unanimously rejected it. No Judge of this Court found it worthy of en banc review. (Dkt. No. 39.) It is not reasonably probable that the requisite number of Justices would countenance it either. Indeed, no court has ever recognized such a right, and this Court's decision is in line with every other Circuit to consider the holding of *Peña-Rodriguez*.

It is settled law that there is no right to post-trial juror interrogations where "there has been no specific claim of jury misconduct." *Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020) ("*Mitchell III*") (quoting *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972)). Indeed, this Court has long admonished that "it is improper and unethical for lawyers to interview jurors to discover what was the course of deliberation of a trial jury," *Guam v. Marquez*, 963 F.2d 1311, 1315 (9th Cir. 1992), and "[i]t is incumbent upon the courts to protect jurors from the annoyance and harassment of such conduct," *Bryson v. United States*, 238 F.2d 657, 665 (9th Cir. 1956).

That is not just the view of this Circuit. The federal Courts of Appeals have "uniformly refused to upset the denial of leave to interview jurors for the purpose of obtaining evidence of improprieties in the deliberations unless specific evidence of misconduct was shown by testimony or affidavit." *Haeberle v. Texas Int'l Airlines*, 739 F.2d 1019, 1021 & n.2 (5th Cir. 1984) (collecting cases). To protect jurors from post-trial harassment, among other evils, rules regulating post-trial juror contacts are "quite common" in federal courts. *Cuevas v. United States*, 317 F.3d 751, 753 (7th Cir. 2003). Thus, "courts have routinely shielded jurors from post-trial 'fishing expeditions' carried out by losing attorneys interested in casting doubt on the jury's verdict." *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986).

*Peña-Rodriguez* did not upset this uniform and well-settled consensus. As the panel held, *see Mitchell III*, 958 F.3d at 788-89, the Supreme Court simply recognized an exception to Colorado's rule limiting juror testimony about deliberations where "a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict," *Peña-Rodriguez*, 137 S. Ct. at 869. Far from overturning the commonplace court rules limiting post-trial juror contacts in the absence of such statements, the Supreme Court expressly endorsed them: "The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id.* "These limits," the

Court recognized, are important to "provide jurors some protection when they return to their daily affairs after the verdict." *Id.*

Furthermore, Petitioner will advance his argument against the backdrop of uniform agreement by the Courts of Appeals about the meaning of *Peña-Rodriguez*. As the panel here pointed out, "[a]ll other circuits that have considered this issue have reached the same conclusion." *Mitchell III*, 958 F.3d at 790-91 (citing *United States v. Baker*, 899 F.3d 123, 134 (2d Cir. 2018); *United States v. Birchette*, 908 F.3d 50, 55-60 (4th Cir. 2018); *United States v. Robinson*, 872 F.3d 760, 770 (6th Cir. 2017)). In all of these other cases, the Supreme Court denied certiorari with no noted dissents. *See Baker v. United States*, 139 S. Ct. 577 (2018) (denying cert); *Birchette v. United States*, 140 S. Ct. 162 (2019) (denying cert); *Robinson v. United States*, 139 S. Ct. 55 (2018) (denying cert). This posture cuts strongly against staying the mandate. *See, e.g.*, *McBride v. CSX Transp., Inc.*, 611 F.3d 316, 318 (7th Cir. 2010) (denying motion to stay mandate where "our decision is in conformity with the law of this and every other federal circuit that has addressed the issue"); *Silver*, 954 F.3d at 458 (denying motion to stay mandate where the petitioner "cannot show that the Opinion conflicts with the decision of another United States court of appeals," and where, "far from conflicting with relevant Supreme Court decisions, the Opinion reconciles recent Supreme Court decisions with this Court's precedent and the case law of other circuits") (internal quotations and brackets omitted).

Indeed, Petitioner's very argument was presented to the Supreme Court just a few months ago in the cert petition for *In re Robinson*, 917 F.3d 856 (5th Cir. 2019). *Robinson* was a capital case in which the Fifth Circuit affirmed the district court's denial (based on a local rule) of the inmate's Rule 60(b)(6) motion, which likewise had claimed a right to interview jurors based on *Peña-Rodriguez*. The defendant in *Robinson*, represented by the same lawyers representing Petitioner here, filed a cert petition arguing that "barring criminal defendants from access to their trial jurors, particularly in death penalty cases, contradicts this court's decision in *Peña-Rodriguez v. Colorado*." *See Julius O. Robinson v. United States*, No. 19-5535 (U.S.), Petition for Writ of Certiorari at 15, *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-5535.html. On February 24, 2020, the Supreme Court denied certiorari. *Robinson v. United States*, 140 S. Ct. 1128 (2020). No Justice noted dissent from that denial. *See id.*

Because the Supreme Court has recently denied a similar cert petition, a stay of the mandate is not proper. *See, e.g.*, *S. Park Indep. Sch. Dist. v. United States*, 453 U.S. 1301, 1303-04 (1981) (Powell, J., in chambers) (denying motion to stay mandate, stating "I cannot conclude that there is a 'reasonable probability' four Members of the Court will vote to grant certiorari. The issues presented by applicants are almost identical to those presented three years ago, when the Court

voted to deny certiorari."); *Al-Marbu*, 525 F.3d at 500 (denying motion to stay mandate pending cert petition where the court of appeals relied on a case in which the Supreme Court had recently denied certiorari).

Petitioner points out that this Court disagreed with *Robinson* on the jurisdictional issue of whether Petitioner's Rule 60(b) motion was a second-or-successive 2255 motion. (Mot. at 3.) But Petitioner presumably will not be seeking certiorari on that issue, because he prevailed on it before the panel, and further review of the issue would not affect the outcome of his case. On the merits issue he proposes to present to the Supreme Court, this Court and the Fifth Circuit are in full accord. *See Mitchell III*, 958 F.3d at 785 n.7 ("*In re Robinson* adds that '[e]ven if we were to find that Robinson's impartial-jury claim did not constitute a second or successive habeas petition, we would undoubtedly conclude that he fails to show that, as a result of the denial of his discovery request, extraordinary circumstances exist to justify the reopening of the final judgment under Rule 60(b)(6).'") (quoting 917 F.3d at 866 n.18). There is no circuit split that would support a cert petition, or his motion to stay this Court's mandate.

Petitioner claims that his cert petition will be supported "by at least three Supreme Court Justices," citing the dissenters in *Peña-Rodriguez*. (Mot. at 3.) Those dissenters opposed creating any sort of exception to the limitations on juror inquiry; it is therefore exceedingly improbable that they would grant certiorari in

order to invalidate longstanding local rules under an even broader theory. And what the dissent focused on as an "open question" is not whether such rules are valid in the *absence* of a clear statement of racial animus, but rather in the *presence* of such a statement. *See Peña-Rodriguez*, 137 S. Ct. at 884 & n.15 (Alito, J., dissenting) (questioning "what will happen when a lawyer obtains clear evidence of racist statements by contacting jurors in violation of a local rule?"). That issue is not even arguably presented in this case.

And just like the majority, the dissent recognized that the holding of *Peña-Rodriguez* was limited to exempting clear statements of racial bias from rules precluding inquiry into jury deliberations. *See id.* at 879, 884 (recognizing that "the Court holds that no-impeachment rules violate the Sixth Amendment to the extent that they preclude courts from considering evidence of a juror's racially biased comments" and "the Court says that only 'clear' expressions of bias must be admitted"). No Justice, nor any lower-court judge, has ever suggested the holding does, or should, apply beyond that scenario.

Any suggestion that the Supreme Court would grant certiorari and afford relief to Petitioner is even more doubtful when one considers the case-specific problems that he must, but cannot, overcome. *See, e.g., Silver*, 954 F.3d at 460 (denying motion to stay mandate where the applicant's "case has an unusual factual context not conducive to review by the Supreme Court for the purposes of resolving broad,

open questions of law"); *Senne v. Vill. of Palatine*, *Ill.*, 695 F.3d 617, 622 (7th Cir. 2012) (denying motion to stay mandate where "[t]he procedural posture of this litigation also makes this case a very poor candidate for a grant of certiorari").

*First*, the procedural posture. As Petitioner points out, his claim depends not just on his novel reading of *Peña-Rodriguez*, but also on his ability to show "extraordinary circumstances" under Rule 60(b)(6) that would warrant reopening collateral proceedings that have already become final. (Mot. at 3 (citing *Gonzalez v. Crosby*, 545 U.S. 524 (2005)).) But far from an additional ground for certiorari, this posture is an impediment to it, because it adds an additional procedural obstacle—demonstrating that *Peña-Rodriguez* is "clearly irreconcilable" with the longstanding and binding precedent that compelled the denial of this claim in his 2009 collateral attack—on top of the merits of his argument. *See Mitchell III*, 958 F.3d at 790 (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003)).

*Second*, Petitioner ignores the "significant steps to prevent racial bias" in his particular case, including exhaustive jury questionnaires, weeks of searching voir dire, strong jury instructions, the jurors' signed attestations disavowing racial bias, and clear direction that the jurors could come forward on their own terms. *Id*. at 791. The sufficiency of those protections is necessarily a fact-bound determination, and further undermines any claim that he would ultimately be entitled to the jury interviews that he seeks.

*Third*, Petitioner's motion to interview jurors was independently defective because of its other violations of the local rule at issue here (LRCiv 39.2), including extreme untimeliness and failure to provide interrogatories and an affidavit. Petitioner cannot be granted relief without also justifying these independent failures, which he has never attempted to do. These are precisely the kind of case-specific issues the Supreme Court will decline to review.

For all these reasons, Petitioner fails to establish that four Justices would vote to grant a cert petition or that five Justices would vote to afford him relief. In the face of a contrary view from every judge and every court to consider this issue, he simply does not present a substantial question with any chance of success in the Supreme Court. This failure alone requires denial of his motion.

### B. Petitioner Will be Afforded Sufficient Time to Seek Relief in the Supreme Court Without a Stay of the Mandate.

Independently, Petitioner cannot show that a stay of the mandate is necessary to avoid injury. Petitioner has been, and will be, afforded more than enough time to seek a stay from the Supreme Court, should that Court believe that his arguments have sufficient merit to proceed.

As Petitioner notes, unless stayed, the mandate is due to issue on July 15, 2020. (Mot. at 2 (citing Fed. R. App. P. 41(b).) By July 15, Petitioner will already have had two and a half months since the April 30, 2020, Opinion to prepare his cert petition. Further, by regulation, Petitioner will have at least an additional 20 days'

notice of a new execution date. 28 C.F.R. § 26.4(a). The United States further represents that it will not carry out Petitioner's execution until August 24, 2020, at the earliest. This will give Petitioner more than a fair opportunity—a month and a half—to seek a stay from the Supreme Court after this Court issues the mandate as scheduled on July 15, 2020.

In recent separate litigation over the federal government's death penalty protocol, in which the district court had enjoined several inmates' executions, the Supreme Court made clear that it "expect[s] that the Court of Appeals will render its decision with appropriate dispatch." *Barr v. Roane*, 140 S. Ct. 353, 353 (2019). Holding itself to the same standard, the Supreme Court expedited consideration of the petition for writ of certiorari filed on June 5, 2020, denying the petition and stay application on June 29, 2020. *See Alfred Bourgeois et al. v. Barr et al.*, No. 19-1348, 2020 WL 3492763 (U.S. June 29, 2020). There is no reason to think that a stay of the mandate would be necessary for Petitioner to seek relief from the Supreme Court when more than six weeks remain for him to do so. And the Supreme Court could then itself determine whether any stay of execution that Petitioner might request would in fact be warranted.[1]

---

[1] Petitioner notes that under current order of the Supreme Court, he has 150 days in which to file a cert petition (Mot. at 3), notwithstanding Rule 41(d)'s reference to 90 days. The delay of at least five months that he requests cuts against him, too. *Cf. Bell v. Thompson*, 545 U.S. 794, 805 (2005) ("Even assuming, however, that a court

This Court has already stayed Petitioner's lawful execution for more than nine months. (*See* Dkt. No. 24.) "In a capital case the grant of a stay of execution" imposes upon the court "the concomitant duty to take all steps necessary to ensure a prompt resolution of the matter, consistent with its duty to give full and fair consideration to all of the issues presented in the case." *In re Blodgett*, 502 U.S. 236, 240 (1992). Over the last nine months, this Court has given more than "full and fair consideration" to Petitioner's argument. *Id*. Like the district court, this Court unanimously found that argument meritless, with no judge seeking to consider the case en banc. The Court now must "ensure a prompt resolution of the matter." *Id*.

Contrasted against Petitioner's meritless claim, the United States' interest in enforcing its final and lawful judgment is great. "Finality is essential to both the retributive and the deterrent functions of criminal law," and in a case as horrific as this one, with an overwhelmingly "'powerful and legitimate interest in punishing the guilty,'" the need for "finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 555-56 (1998) (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Here, the United States intends to carry out these functions against a man who, in order to carjack a vehicle, tortured and

---

could effect a stay for a short period of time by withholding the mandate, a delay of five months is different in kind.").

murdered a grandmother and a nine-year-old girl. The interests of the United States, the murdered victims, and their family members strongly weigh against further staying the mandate. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019).[2]

[2] As in any capital case, relatives of the victims have a range of opinions, but numerous members of the victims' families here have long supported a capital sentence for Petitioner's nightmarish crimes against their loved ones. (*See, e.g.*, *United States v. Lezmond Mitchell*, No. CR 01-1062 (D. Ariz.), PSR & Att., Statements of K.H. ("I [am] requesting that the defendant Lezmond Mitchell pay for what he has done to my mother and niece and how he has hurt our family/families. I'm for the death penalty. He knew right from wrong."), B.H. ("He had no respect for life and no remorse for what he did to my grandma and cousin. I want the death penalty for him."), D.H. ("I want Justice which is the death penalty.").)

## CONCLUSION AND REQUEST FOR RULING

If Petitioner believes there is any error in the uniform agreement of the district court, every Judge on this Court, and every other court to consider *Peña-Rodriguez*, then he is free to seek relief from the Supreme Court. But in this Court, he shows neither that his argument is likely to lead to relief from the Supreme Court, nor that he requires a stay to be able to seek such relief, nor any just reason for further delay of a lawful sentence that every reviewing court has affirmed for almost two decades. As such, his motion should be denied and the mandate should issue forthwith.

The United States respectfully requests a ruling on the pending motion, and issuance of the mandate, by July 15, 2020, as scheduled.

MICHAEL BAILEY
United States Attorney
District of Arizona

KRISSA M. LANHAM
Appellate Chief

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney

# CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 27-1(1)(d), I certify that the foregoing response does not exceed 20 pages.

July 9, 2020
Date

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of July, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ William G. Voit*
WILLIAM G. VOIT
Assistant U.S. Attorney