CA No. 18-17031

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LEZMOND CHARLES MITCHELL,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

DC No. 3:09-cv-08089-DGC
(Criminal No. 3:01-cr-01062-DGC)

**DEATH PENALTY CASE**

# PETITIONER-APPELLANT'S REPLY IN SUPPORT OF MOTION TO STAY THE MANDATE

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

The Honorable David G. Campbell
United States District Judge

CUAUHTEMOC ORTEGA
Interim Federal Public Defender
CELESTE BACCHI
Celeste_Bacchi@fd.org
JONATHAN C. AMINOFF
Jonathan_Aminoff@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Tel: (213) 894-5374; Fax: (213) 894-0310
Attorneys for Petitioner-Appellant
LEZMOND CHARLES MITCHELL

# I. INTRODUCTION

The Government's opposition to Lezmond Mitchell's motion to stay the mandate is yet another attempt to shortchange the judicial review to which this Court has already held Mitchell is entitled. The Government's continuing attempts to dictate this Court's appellate procedures should be rejected.

# II. ARGUMENT

## A. This Court need not bow to the Government's arbitrary schedule.

Mitchell's Section 2255 proceedings concluded on October 3, 2016, when the Supreme Court denied his petition for writ of certiorari. The Government chose not to schedule Mitchell's execution.[1] After the Supreme Court issued its decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), Mitchell timely filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). When that motion was denied, Mitchell timely sought a certificate of appealability in this Court, which granted the request and issued a briefing schedule. Docket Entry ("D.E.") 10-1.

Before the due date for Mitchell's Opening Brief, the Government arbitrarily scheduled Mitchell's execution for December 11, 2019, D.E. 18-2, and then expected this Court to bow to its scheduling demands. *See* D.E. 20 (urging this Court to decide

[1] The last time the Government executed anyone was in 2003. Since then, there was a period of *over seven years* when the Government reported no substantive developments in its efforts to resume federal executions. *See Roane v. Gonzales*, DDC Case No. 05-CV-2337, D.E. 288-93, 295, 298-303, 305-07, 313-16, 319-20, 322-31, 335, 337-46, 348-61, 364-65, 367-71, 374-78, 383, 385.

the motion for stay of execution with the merits briefing and issue a final decision within 60 days). This Court rejected the Government's demands and ordered that the appeal would continue in the ordinary course. D.E. 26. Unwilling to accept this Court's ability to manage its own docket, the Government again tries to circumvent commonplace procedures to accommodate its schedule. Apparently, the Government intends to execute Mitchell in late August 2020.[2] D.E. 41 at 12 ("The United States further represents that it will not carry out Petitioner's execution until August 24, 2020, at the earliest."). Thus, despite the pandemic that is presently crippling the country—prompting the Supreme Court to extend due dates for all petitions for certiorari to 150 days—the Government urges this Court to deny the stay of the mandate by July 15, 2020, allowing Mitchell just 40 days to seek review, and a stay of execution, from the Supreme Court. This Court should follow the law of this case and allow Mitchell to seek review in the ordinary course, not subject to the Government's schedule.

The approach Mitchell advances has been adopted by federal courts across the country who are similarly concerned by the Government's sudden attempt to rush federal inmates to execution after years of Government delay. Much like the present case, the Government set a new execution date for Wesley Purkey while the Seventh Circuit was considering his appeal. *Purkey v. United States*, --- F.3d ---, 2020 WL

[2] Mitchell has not been provided notice of an execution date.

3603779 at *5 (notwithstanding the court's scheduled oral argument on June 16, 2020, the Government announced on June 15, 2020 its intention to execute Purkey on July 15, 2020.). Despite the Government's insistence that the Seventh Circuit expedite appellate proceedings and modify its rules to accommodate the Government's schedule, the Seventh Circuit held that Purkey would be afforded the usual time to prepare a petition for rehearing or rehearing en banc. *Id.* at *11 ("[J]ust because the death penalty is involved is no reason to take shortcuts—indeed, it is a reason not to do so."). *See also Purkey v. United States*, Seventh Circuit Case No. 19-3318, D.E. 46 (denying the Government's motion for reconsideration and confirming that all deadlines remain in place). Similarly, this morning, the District Court in Washington D.C. issued stays of the execution dates for Daniel Lee (July 13, 2020), Purkey (July 15, 2020), and Dustin Honken (July 17, 2020) noting that the "Government is entitled to choose dates, but the court cannot take short cuts in its obligations in order to accommodate those dates."). *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, D.D.C. Case No. 19-MC-145, Dkt. 135 at 3.

In accordance with this Circuit's rules, this Court should grant Mitchell a stay of the mandate while he seeks further review from the Supreme Court. If the Government wants that Court to depart from its rules affording Mitchell 150 days to seek review, the Government is free to make that request.

### B. The Government confuses the legal standard for staying a mandate with the standard for a stay of execution, and their argument is therefore fatally flawed and unpersuasive.

The Government's opposition is inherently flawed because it applies an incorrect standard to the matter at hand. Relying on out-of-circuit case law and Supreme Court decisions addressing the propriety of stays *after* the issuance of the mandate, the Government argues that Mitchell must show "a reasonable probability that four members of the [Supreme] Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction [and] there must be a significant possibility of reversal of the lower court's decision." D.E. 41 at 2 (citing *White v. Florida*, 458 U.S. 1301, 1302 (1982) (internal citations omitted)). The Government claims that "[t]he Courts of Appeals apply this standard" without acknowledging that *this* Court of Appeal does not apply that standard at all. In fact, the only case the Government cites from this Circuit in support of its erroneous argument is *Makekau v. State*, 943 F.3d 1200 (9th Cir 2019), which makes no mention of mandates whatsoever. Rather, *Makekau* discusses the applicable standards for stays of execution under *Barefoot v. Estelle*, 463 U.S. 880 (1983) and *Hill v. McDonough*, 547 U.S. 573 (2006), standards which Mitchell has already met. D.E. 26 (granting a stay of execution pending the final resolution of this proceeding).

The law in this Circuit is clear: a stay of the mandate pending petition to the Supreme Court "will not be granted as a matter of course, but will be denied if the Court determines that the petition for certiorari would be frivolous or filed merely for

delay." Fed. R. App. Pro. 41(b); 9th Cir. R. 41-1. No exceptional circumstances need be shown to justify a stay, no analysis need take place about the petitioner's ultimate chances of success, and the matter of whether to grant a stay is entrusted to this Court's sound discretion. *See Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528-29 (9th Cir. 1989); *see also Campbell v. Wood*, 20 F.3d 1050, 1051 (9th Cir. 1994).[3]

The Government's erroneous approach renders futile all of its subsequent arguments in opposition. For example, the Government relies upon the panel opinion as evidence that Mitchell cannot establish a reasonable probability of a certiorari grant, as though that cuts against the motion to stay the mandate. D.E. 41 at 4-5. In fact, it does the opposite. It is not Mitchell's burden to persuade this Court to change its mind, but only to show that a challenge to its position is not "frivolous." 9th Cir. R. 41-1. Although Mitchell recognizes the panel's view that *Peña-Rodriguez* does not invalidate local rules barring post-verdict contact with jurors to investigate racial bias, it is certainly not frivolous to suggest otherwise—especially when three Justices of the

[3] It is striking that the Government seeks to apply a more stringent analysis to Mitchell's case when it regularly relies on Rule 41-1's "not frivolous" standard when it is the *Government* requesting a stay of the mandate. *See, e.g., United States v. Sineneng-Smith*, Case No. 15-10614 (9th Cir.), D.E. 123 (Government's motion) and 2019 U.S. App. LEXIS 13799 (granting stay); *United States v. Kay*, Case No. 17-10122 (9th Cir.), D.E. 39 (no opposition from the United States Attorney for the District of Arizona to a stay motion pursuant to Rule 41-1) and 2018 U.S. App. LEXIS 15692 (granting stay); *Ross v. Williams*, Case No. 16-16533, D.E. 74 and 2020 U.S. App. LEXIS 8554 (9th Cir. 2020) (granting stay); *Democratic National Committee, et al., v. Hobbs, et al.*, Case No. 18-15845, D.E. 124 (Government's motion) and 2020 U.S. App. LEXIS 4208 (9th Cir. 2020) (granting stay).

Supreme Court have acknowledged that the majority opinion of *Peña-Rodriguez* is a "startling development" that drastically changes "the age-old" no-impeachment rule, such that "it is doubtful that there are principled grounds for preventing the expansion of [that] holding." *Peña-Rodriguez,* 137 S. Ct. at 874 (Alito, J., dissenting, joined by Roberts, C.J., and Thomas, J.).

The Government ignores *stare decisis* when it argues that the *Peña-Rodriguez* dissenters opposed exceptions to the limitations on admissibility of post-verdict juror statements, and therefore would be unlikely to grant certiorari on the question of whether limitations on post-verdict interviews are permissible (D.E. 41 at 7-8). *See June Medical Services L.L.C v. Russo*, --- S. Ct. --- (2020 WL 3492640 at *22-*23) (2020) (Roberts CJ., concurring) (explaining the principle of stare decisis and the importance of following the Court's prior decisions). Now that *Peña-Rodriguez* is the law, the Court will need to resolve the issues it has created. As Justice Alito writes in dissent, "Many jurisdictions now have rules that prohibit or restrict post-verdict contact with jurors, but whether those rules will survive today's decision is an open question—as is the effect of this decision on privilege rules such as those noted at the outset of this opinion." *Peña-Rodriguez*, 137 S. Ct. at 884 (Alito, J., dissenting).[4]

[4] The Government incorrectly claims that Justice Alito's "open question" is whether such rules remain valid in the presence of evidence of racial bias. D.E. 41 at 9. Although Justice Alito did offer additional questions in footnote 15, his dissent is crystal clear that the "open question" is the validity of these rules generally.

Similarly, the Government's reliance on the denial of the petition for rehearing as somehow relevant to Mitchell's request for a stay of the mandate is belied by this Court's own practice, which regularly denies rehearing and then stays the mandate in capital cases. *See, e.g.*, *Cain v. Chappell*, Case No. 13-99008, Dkts. 72, 74-76; *Fairbank v. Ayers*, Case No. 08-99018, Dkts. 80, 87-90; *Visciotti v. Martel*, Case No. 11-99008, Dkts. 80, 85-87. The Government is under the mistaken impression that just because this Court denied en banc review, Mitchell cannot successfully seek a stay of the mandate to raise the claim in a certiorari petition. D.E. 41 at 13. But that argument gets the standard exactly backwards. "[A] party seeking a stay of the mandate following this court's judgment need not demonstrate that exceptional circumstances justify a stay." *Bryant*, 886 F.2d at 1528. The test is frivolity, and Mitchell easily passes it. In fact, because the Government insists on applying an improper standard, it fails to even describe Mitchell's contemplated certiorari petition as frivolous; thus, a stay is in order for that reason alone.

The Government continues its flawed analysis by asserting that Mitchell's request for a stay of the mandate should be rejected because the Supreme Court recently denied certiorari in a case presenting a similar Rule 60(b) claim. D.E. 41 at 7. However, the fact that the Supreme Court has denied a prior petition raising this question does not mean that the same result will occur here. For example, in *Hill*, 547 U.S. 573, the Supreme Court granted certiorari to address whether a capital defendant could raise a method-of-execution challenge under 42 U.S.C. § 1983. The Supreme

Court ruled unanimously in Hill's favor, despite the fact that lower courts had repeatedly rejected the claim and the Supreme Court had previously denied numerous stays of execution and petitions for writs of certiorari making the very same argument.[5] Moreover, the Government's implication that certiorari denials have some precedential or prospective impact has been rejected by the Supreme Court. "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." *Atlantic Coast Line R. Co. v. Powe*, 283 U.S. 401, 404 (1931) (internal citations omitted).

In sum, the Government's focus on this Court's prior rulings is misguided. No winning party needs to file a motion to stay the mandate; therefore, if rejection at the circuit always precluded such a request, no stay would ever be issued. And since stays of the mandate are granted in capital cases in this Circuit, and expressly authorized by the rules and standards described *supra*, the Government's argument cannot withstand scrutiny. For the purpose of determining whether a stay of the mandate should issue, the only relevant aspect of this panel's disagreement with Mitchell's argument is that the issue is fully preserved for a certiorari petition. All that Mitchell asks is that he be

[5] *See, e.g.*, *Vickers v. Johnson*, 124 S. Ct. 1196 (2004), *Zimmerman v. Johnson*, 124 S. Ct. 979 (2003), *In re Roe*, 124 S. Ct. 1196 (2004).

granted the proper amount of time to study these complex issues and prepare his certiorari petition in accordance with the Supreme Court's own rules.

Finally, the Government insists that Mitchell's "lawful execution" has been postponed long enough, that he has no valid reason to seek delay, and that the interests of the United States, the murdered victims, and their family members[6] outweigh Mitchell's right to have the mandate stayed. D.E. 41 at 13-14. However, there is nothing untoward about wanting to remain alive to exhaust one's legitimate appellate remedies. A corporation can seek a stay of the mandate to avoid monetary loss before filing a certiorari petition. *See, e.g.*, *Patel v. Facebook*, No. 18-15982, D.E. 109 (Order, filed Oct. 30, 2019) (granting such a stay). Surely, a death row litigant can reasonably do so to avoid the loss of his life pending the same proceeding. It is difficult to see how a few more months will have any measurable impact on finality,

---

[6] The Government's invocation of the victims' family is troubling. D.E. 41. In *Peterson v. Barr*, S.D. IN 20-CV-350, victims' relatives sought to postpone the execution of Daniel Lee because they are unable to travel to Indiana to witness the execution due to the Covid-19 pandemic. There, the Government took the position that the victims' family is outside the "zone of interests" protected by law, and the Government's interest in executing Lee trumps the victims' family's interest in participating. D.E. No. 10. The district court stayed Lee's execution on this basis, but the Government successfully appealed to the Seventh Circuit, ensuring that the victims' family will not be able to attend this execution. *Peterson v. Barr*, Seventh Circuit Case No. 20-2252. The Government in this case has already stated that they believe that "[s]ome family members may even travel across the country for the execution," yet they propose to schedule the execution when the Covid-19 epidemic would make that journey incredibly dangerous. D.E. 20 at 19. The Government's invocation of the victims' family is disingenuous.

given that the delay was of the Government's own making.[7] Rather, a stay of the mandate will allow Mitchell to continue with his appeal, something that is appropriate given the life-or-death stakes in this case.

## III. CONCLUSION

For the foregoing reasons, Mitchell respectfully requests that this Court stay the mandate and allow Mitchell to pursue his rights in the ordinary course of proceedings.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED: July 13 2020 By: */s/ Celeste Bacchi*
CELESTE BACCHI
JONATHAN C. AMINOFF
Deputy Federal Public Defenders

Attorney for Petitioner-Appellant
LEZMOND CHARLES MITCHELL

[7] The Government's citation to *Barr v. Roane*, 140 S. Ct. 353 (2019) is a red herring. D.E. 41 at 12. Mitchell was not a party to that suit; more importantly, the *Roane* Court upheld the stays of execution so the D.C. Circuit could adequately consider the case on appeal. The Government's reliance on *Bell v. Thompson*, 545 U.S. 794 (2005) is similarly problematic. In *Thompson*, the Sixth Circuit stayed the mandate pending petition for certiorari, which was eventually denied. The Sixth Circuit continued to stay the mandate, ultimately issuing an amended opinion granting Thompson relief. The state then moved to stay *that* mandate, which was granted, while the state petitioned for certiorari. Thus, the five-month delay the Government references (D.E. 41 at 12-13 n.1) occurred after the Supreme Court had denied certiorari and before the Sixth Circuit issued its amended opinion.

## CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 27-1(1)(d), I certify that the foregoing response does not exceed 10 pages.

DATED: July 13 2020

*/s/ Celeste Bacchi*
CELESTE BACCHI
Deputy Federal Public Defender